**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **HOUSTON REAL ESTATE PROPERTIES,** | § | **CASE NO. 22-32998** |
| **LLC,** | § | **(Chapter 7)** |
| Debtor. | § | |
| | § | |
| **JOHN QUINLAN, OMAR KHAWAJA,** | § | |
| **AND OSAMA ABDULLATIF,** | § | |
| Movants, | § | **ADVERSARY NO. _____** |
| | § | |
| **v.** | § | |
| | § | |
| **HOUSTON REAL ESTATE PROPERTIES,** | § | |
| **LLC, et al.,** | § | |
| Respondents. | § | |

## JOHN QUINLAN, OMAR KHAWAJA, AND OSAMA ABDULLATIF'S ORIGINAL COMPLAINT

Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, file this Original Complaint against, Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Texas REIT LLC, Dalio Holdings I, LLC, Dalio Holdings II, LLC, Houston Real Estate Properties, LLC *[Debtor]*[1], Shahnaz Choudhri, Ali Choudhri, Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, and Galleria Loop Note Holder LLC.

### Summary Of Action

1.     This lawsuit shall prove that Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Texas REIT LLC, Dalio Holdings I, LLC, Dalio Holdings II, LLC, Houston Real Estate Properties, LLC, Shahnaz Choudhri, Ali Choudhri,

---

[1] The Court lifted the stay to allow pursuit of this action via ECF Document Number 132 in this case.

Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, and Galleria Loop Note Holder LLC, (collectively the "Choudhri Defendants") are alter egos of each other and intentionally acting in a manner to defraud creditors and evade legal obligations through a series of fraudulent transfers.  The evidence will demonstrate that Ali Choudhri is the puppeteer controlling his web of business entities, which hold his various properties and other assets.  This web includes Houston Real Estate Properties, LLC and Jetall Companies, Inc., as well as the other named defendants.

## Parties

2.      Plaintiff, John Quinlan ("Quinlan"), is an individual, who resides in Houston, Texas.

3.      Plaintiff, Omar Khawaja ("Khawaja"), is an individual, who resides in Houston, Texas.

4.      Plaintiff, Osama Abdullatif ("Abdullatif"), is an individual, who resides in Houston, Texas.

5.      Defendant, Jetall Companies, Inc. ("Jetall"), is a domestic corporation, that may be served with process by serving its registered agent, Legal Registered Agent Services, Inc., at its place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731 or wherever it is located.

6.      Defendant, Arabella PH 3201 LLC ("Arabella"), is a domestic limited liability company, that may be served with process by serving its registered agent, Linda Day, at her place of business located at 114 E. Louisiana Street, McKinney, Texas 75069 or wherever she is located.

7.      Defendant, 9201 Memorial Dr. LLC ("Memorial"), is a Wyoming limited liability company, that may be served with process through the Secretary of State by serving its registered agent, Mountain Business Center LLC, at its place of business located at 960 Alpine Lane 4, P.O.

Box 12200, Jackson, Wyoming 83001 or wherever it is located.

8.      Defendant, 2727 Kirby 26L LLC ("Kirby"), is a foreign limited liability company, that may be served with process by serving its registered agent, TXRA Services, LLC, at its place of business located at 25688 Magnolia Pines Drive, Magnolia, Texas 77355 or wherever it is located.

9.      Defendant, Texas REIT LLC ("REIT"), is a domestic limited liability company, that may be served with process by serving its registered agent, Legal Registered Agent Services, Inc., at its place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731 or wherever it is located.

10.      Defendant, Dalio Holdings I, LLC ("Dalio I"), is a Delaware limited liability company, that may be served with process through the Secretary of State by serving its registered agent, Capitol Services, Inc., at its place of business located at 3139 W. Holcombe Blvd., Suite 845, Houston, Texas 77025 or wherever it is located.

11.      Defendant, Dalio Holdings II, LLC ("Dalio II"), is a Delaware limited liability company, that may be served with process through the Secretary of State by serving its registered agent, Capitol Services, Inc., at its place of business located at 3139 W. Holcombe Blvd., Suite 845, Houston, Texas 77025 or wherever it is located.

12.      Defendant, Houston Real Estate Properties, LLC ("HREP"), is a domestic limited liability company and debtor in this cause, that may be served by agreement through Tim Wentworth, who is legal counsel on behalf of Chapter 7 Trustee Randy W. Williams for debtor.

13.      Defendant, Shahnaz Choudhri, is an individual residing in Harris County, Texas and may be served with process by personal service at 1001 West Loop South, Suite 700, Houston, Texas 77027 or 2500 West Loop South, #255, Houston, Texas 77027 or 11511 Gallant Lane, Houston, Texas 77082 or 4521 San Felipe St., Unit 3201, Houston, Texas 77027 or wherever she may be

found.

14.     Defendant, Ali Choudhri ("Choudhri"), is an individual residing in Harris County, Texas and may be served with process by personal service at 1001 West Loop South, Suite 700, Houston, Texas 77027 or 2500 West Loop South, #255, Houston, Texas 77027 or 11511 Gallant Lane, Houston, Texas 77082 or 4521 San Felipe St., Unit 3201, Houston, Texas 77027 or wherever he may be found.

15.     Defendant, Shepherd-Huldy Development I, LLC ("Shepherd I"), is a domestic limited liability company, that may be served with process by serving its registered agent, Registered Agents Inc., at its place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731 or wherever it is located.

16.     Defendant, Shepherd-Huldy Development II, LLC ("Shepherd II"), is a domestic limited liability company, that may be served with process by serving its registered agent, Registered Agents Inc., at its place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731 or wherever it is located.

17.     Defendant, Galleria Loop Note Holder LLC ("Galleria Loop"), is a domestic limited liability company, that may be served with process by serving its registered agent, Registered Agents Inc., at its place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731 or wherever it is located.

## Jurisdiction And Venue

18.     This Court maintains jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334(b) in that this action arises under, arises in, and or relates to, cases pending under Chapter 7 of the Bankruptcy Code.

19.     All of the Defendants are subject to personal jurisdiction in this Court.  This action

is, in part, a core proceeding and, in part, a non-core proceeding. To the extent it is a core proceeding, this Court may enter final orders and judgments under 28 U.S.C. § 157. To the extent it is a non-core proceeding, the Chapter 7 Trustee consents to the Court's entry of final orders and judgments.

20.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and or 1409, because the above-captioned bankruptcy cases are pending in this district.

21.     The Court has authority to grant the relief requested in this Complaint pursuant to Bankruptcy Code §§ 105, 541, 544 and 550 and other applicable statutes and state law.

## Preliminary Statement

22.     Choudhri utilizes Jetall and other business entities to hide assets, evade creditors and or shield his identity and involvement, in business dealings.  He organizes, creates and operates, these sham business entities as an extension of himself and Jetall but attempts to hide this truth through corporate fiction.  Additionally, Choudhri and Jetall have complete control over these sham business entities irrespective of what the corporate documents state.  The Choudhri Defendants also commingle funds.  More specifically, Choudhri, Jetall and his other business entities, use and access multiple bank accounts as a personal piggy bank to pay for whatever debt or expense that becomes due—irrespective of whether those funds used to pay such debt belong to the particular entity that owes the debt (or not) and without like consideration. Choudhri views HREP, Jetall, and himself, as well as the other named defendants, as one and the same and utilizes them in such fashion.  In other words, there is unity between Choudhri, HREP, Jetall, and his other business entities such that the separateness of the business entities has ceased, and thus this Court should treat the Choudhri Defendants accordingly to protect Plaintiffs/the creditors.  And this is where this lawsuit begins.

5

## Background

23.    Plaintiffs are upstanding, honest, and respectable, businessmen, real estate developers, attorneys, and or a combination of all. Collectively, Plaintiffs hold three judgements and stand in the shoes of four different judgment-creditors against Jetall, Choudhri, and or HREP.

      a.   On November 21, 2022, Plaintiff, Osama Abdullatif, obtained a final judgment in Cause No. 2013-41273, *Osama Abdullatif and Abdullatif & Company, LLC v. Ali Choudhri and Houston Real Estate Properties, LLC*; filed in the 334th Judicial District Court of Harris County ("Lawsuit 1"). In that case, HREP and Choudhri were found liable for statutory fraud and fraud in a real estate transaction, and Osama Abdullatif and Abdullatif & Company, LLC are the judgment holders.

      b.   On February 17, 2023, Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, obtained an assignment of the judgment rendered on June 23, 2020, in Cause No. 2017-10832, *Jetall Companies, Inc. and Declaration Title Company, LLC v. Allan B. Daughtry, Attorney at Law, Richard Heil, Todd Oakum and Renee Davy f/k/a Renee Oakum*; filed in the 152nd Judicial District Court of Harris County, Texas ("Lawsuit 2").[2] In this cause, Plaintiffs received assignments from both judgment-creditors against judgment-debtor, Jetall.

      c.   Also on February 17, 2023, Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, obtained an assignment of the judgment rendered on October 31, 2020, in Cause No. 2020-38738, *Jetall Companies, Inc. v. Hoover Slovacek LLP*; filed in the 164th Judicial District Court of Harris County, Texas ("Lawsuit 3").[3] In this cause, Plaintiffs received an assignment from the judgment-creditor against judgment-debtor, Jetall.

The aforementioned judgments, whether against HREP, Choudhri, or Jetall, should be found jointly and severally collectible through any and all of the Choudhri Defendants, because they are all alter egos of each other. Further, these judgments are ripe and unpaid, because the Choudhri Defendants have made numerous fraudulent transfers to avoid payment.

---

[2] Attached as <u>Exhibit 1</u> is a true and correct copy of both Assignments for the two judgment-creditors of Lawsuit 2.
[3] Attached as <u>Exhibit 2</u> is a true and correct copy of the Assignment for Lawsuit 3.

## Facts

24.     Choudhri is a self-proclaimed businessman in the Houston community, who took over his father's company, Jetall, and promptly caused it to become embroiled in numerous and substantial legal troubles and litigation.  Choudhri is well-known throughout the legal community for engaging in repugnant and unethical conduct, including perjury, which has led to sanctions and other similar findings being levied against him or Jetall or other companies he creates or controls. However, for purposes of this lawsuit, Plaintiffs direct the Court to the year 2013.[4]

25.     On or about April 16, 2013, Choudhri falsified the existence of a promissory note and lien.  This act, inter alia, forced the filing of Lawsuit 1, styled Cause No. 2013-41273, *Osama Abdullatif and Abdullatif & Company, LLC v. Ali Choudhri and Houston Real Estate Properties, LLC*, filed in the 334th Judicial District Court of Harris County.  Ultimately, on November 21, 2022, after a jury trial, judgment was entered against Choudhri and HREP finding, inter alia, that Choudhri and HREP committed fraud, filed a fraudulent lien, and that there was no promissory note as Choudhri and HREP alleged.[5]

26.     On or about February 16, 2017, Jetall, at the behest of Choudhri, filed a frivolous lawsuit wherein he falsified the existence of two different agreements, which would purport to transfer, to Jetall, ownership of a title company.  This filing is Lawsuit 2, styled Cause No. 2017-10832, *Jetall Companies, Inc. and Declaration Title Company, LLC v. Allan B. Daughtry, Attorney at Law, Richard Heil, Todd Oakum and Renee Davy f/k/a Renee Oakum*; filed in the 152nd Judicial District Court of Harris County, Texas.  Ultimately, on June 23, 2020, after a jury trial, judgment

---

[4] Please note that this lawsuit only discusses a small sampling of the Choudhri Defendants' bad acts and that there are numerous and additional examples that can be found in the public record describing these other bad acts, which are not addresses in this matter.
[5] Attached as Exhibit 3 is a true and correct copy of the Judgment in Lawsuit 1.

was entered against Jetall finding, inter alia, that neither of the alleged agreements were valid as Jetall falsely claimed.[6]

27.     Six (6) days after losing Lawsuit 2—on June 29, 2020—Jetall, at the behest of Choudhri, filed another frivolous lawsuit—out of spite this time, against his opposing counsel's law firm in Lawsuit 2.  This filing is Lawsuit 3, styled Cause No. 2020-38738, *Jetall Companies, Inc. v. Hoover Slovacek LLP*; filed in the 164th Judicial District Court of Harris County, Texas.  On October 31, 2020, the Court dismissed Lawsuit 3 and found, inter alia, in its judgment that, Jetall has [i] sued its opposing counsel in past matters, on multiple occasions,[7] [ii] been sanctioned multiple times in past litigation for engaging in improper and repugnant actions, and [iii] brought this lawsuit *[Lawsuit 3]* for an improper purpose, which was to harass and increase the cost of litigation and to cause opposing counsel to personally incur unnecessary expenses so as to dissuade its opposing counsel from representing parties adverse to Jetall.[8]   Jetall was also sanctioned $90,000.00 for pursuing yet another meritless lawsuit.

28.     The judgments from Lawsuit 1, Lawsuit 2, and Lawsuit 3, resulted in monetary damages, attorneys' fees, and or sanctions, against Choudhri, Jetall, and or HREP.  The judgments are owned by one or all of Plaintiffs and wholly unpaid.  Each of these lawsuits were caused by either a blatant misrepresentation, lie, or anger, on the part of either Choudhri, Jetall, and or HREP.  And finally, Choudhri, Jetall, and or HREP, knew or should have known that an adverse judgment

---

[6] Attached as <u>Exhibit 4</u> is a true and correct copy of the Judgment in Lawsuit 2.
[7] It should be mentioned that in 2018, Jetall filed suit against two different attorneys, personally, who were representing different parties/defendants, in Lawsuit 2, in an effort to intimidate them from continued representation of parties adverse to Jetall.  It did not work, and that particular lawsuit resulted in a dismissal and significant monetary sanctions, of more than $120,000.00 in total, levied against Jetall. *See* Cause No. 2018-59629; *Jetall v. Mike Johanson and Michael Ballases*; In the 333rd Judicial District Court of Harris County, Texas.
[8] Attached as <u>Exhibit 5</u> is a true and correct copy of the Judgment in Lawsuit 3.

would be taken against Choudhri, Jetall, and or HREP, since those lawsuits were based solely upon lies and misrepresentations.

**The Choudhri Defendants operate as alter egos of one another.**

29.     Jetall, Arabella, Memorial, Kirby, REIT, Dalio I, Dalio II, HREP, Shahnaz Choudhri, Choudhri, Shepherd I, Shepherd II, and Galleria Loop, are one and the same acting as alter egos of one another.  Generally, proving alter ego involves two elements: (i) that such unity between the corporation and individual that the separateness of the corporation has ceased; and (ii) a finding that holding only the corporation liable would result in injustice. *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 516 (Tex. App.—San Antonio 2001, pet. denied).  These requirements stem from the rationale that if the owner or owners of the entity themselves disregard the legal separation, distinct properties, or proper formalities of the different corporate entities, then the law will likewise disregard them too so far as is necessary to protect individual and corporate creditors. *Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd., 740 S.W.2d 838, 843 (Tex. App.—Houston [1st Dist.] 1987, no writ)*.  Unity between an entity and its alter ego is often established by evidence showing a blending of identities or blurring of lines of distinction. *Id.*  When determining the question of alter ego, a court may consider: [i] the payment of alleged corporate debts with personal checks or other commingling of funds; [ii] representations that the individual will financially back the corporation; [iii] the diversion of company profits to the individual for his personal use; [iv] inadequate capitalization; and [v] other failures to keep corporate and personal assets separate. *Sparks v. Booth, 232 S.W.3d 853, 865-68 (Tex. App.—Dallas 2007, no pet.)*.

30.     The Choudhri Defendants have blended identities and blurred lines of distinction such that they should be found to be alter egos of each other.  Without the benefit of discovery, Plaintiffs identify the following support for their claims.

31.     The Choudhri Defendants commingle funds, pay the debts of the other, and divert company profits.[9]  On or about July 10, 2020, Galleria Loop paid the personal income taxes to the Internal Revenue Service of Shahnaz Choudhri.[10]  On or about January 31, 2022, Jetall paid the real property taxes for real property owned by Kirby.[11]  Also on January 31, 2022, Jetall paid the real property taxes for real property owned by Memorial.[12]  Also on January 31, 2022, Jetall paid the real property taxes for real property owned by Arabella.[13]  Further, on August 16, 2022, Jetall paid the real property taxes for real property owned by Kirby.[14]  Additionally, on October 26, 2022, Galleria Loop paid the real property taxes for real property owned by Arabella.[15]  Plaintiffs aver that discovery will yield a plethora of other similar transactions in support of their claims and causes of action.

32.     Choudhri routinely tries to sway juries by making representations that he financially backs Jetall or HREP or whichever one of his business entities is in litigation then.  Choudhri testified that he is HREP and that HREP is him, as detailed below.[16]

```
17        Q.    And you're the manager of HREP, correct?
18        A.    Correct, yes.
19        Q.    And you don't know whether or not you have a
20   company agreement, correct?  Is strike that.  You don't
21   know what's in your company agreement, do you?
22        A.    Not as I sit here because it's really 100% my
23   entity so it's whatever.
```

---

[9] Attached as Exhibit 6 is a Declaration from a former Jetall employee and whistleblower, who notes that Jetall comingles funds and pays the debts of another without consideration and disregards corporate formalities.
[10] Attached as Exhibit 7 is a check from Galleria Loop to pay the personal income taxes of Shahnaz Choudhri.
[11] Attached as Exhibit 8 is a check from Jetall for the benefit of Kirby to pay the property taxes.
[12] Attached as Exhibit 9 is a check from Jetall for the benefit of Memorial to pay the property taxes.
[13] Attached as Exhibit 10 is a check from Jetall for the benefit of Arabella to pay the property taxes.
[14] Attached as Exhibit 11 is another check from Jetall for the benefit of Kirby to pay the property taxes.
[15] Attached as Exhibit 12 is a check from Galleria Loop for the benefit of Arabella to pay the property taxes.
[16] Attached as Exhibit 13 is testimony of Choudhri in Cause No. 2013-41273; *Osama Abdullatif, et al, v. Ali Choudhri; In the Judicial District Court, Trial Testimony*, page 121 from the 8-11-22 transcript and page 42 from the 8-15-22 transcript.

```
16        Q.    Look, I want you to so we can avoid this, be
17   when I say you, if it's either HREP your you I'm talking
18   about the same thing?
19        A.    It's the same, yeah.
20        Q.    Okay.  You consider yourself, you mentioned
21   this pass through concept.  When I say you, do you
22   understand I'm talking either HREP or you?
23        A.    I do, yes.
24        Q.    You meaning Ali Choudhri?
25        A.    Yes, that's right.
```

Choudhri also testified that he is the 100% owner of Jetall and implied that he is responsible for the debts of Jetall.  Here is an excerpt of such testimony wherein Choudhri is claiming that he would be responsible for the debts of Jetall.[17]

```
1                 So the plan was to settle it,
2    negotiate it or fight it.  Take it on.
3        Q.    And what happened -- what happened if -- if
4    you lost the verdict or you lost the appeal?
5        A.    I would be responsible.  I would have to
6    pay for it, whatever it cost.
```

---

[17] Attached as Exhibit 14 is testimony of Choudhri in Case No. 2017-10832; *Jetall Companies, Inc. v. Alan B. Daughtry, Richard Heil, Todd Oakum, and Renee Davy;* In the 152nd Judicial District Court.  The first excerpt is from the Trial Testimony of Ali Choudhri dated March 12, 2020, Reporter's Record, Vol. 1 of 1, page 32.  The second excerpt is from the Trial Testimony of Ali Choudhri dated March 16, 2020, Reporter's Record, Vol. 5 of 11, page 170.

```
15   Q.      (MR. JOHANSON) Do you remember testifying last Thursday that, if

16   you lost the Verdict or lost the appeal, that you -- "I would be

17   responsible and would have to pay for it whatever the cost," you

18   remember saying that?

19   A.     Yes.

20   Q.     That was an absolute lie, wasn't it?

21   A.     No.
```

In that same trial Choudhri later testified that he is obligated to financially back Jetall.[18]

```
12   Q.    Okay.  And this draft, by the way, it doesn't obligate Jetall to

13         put a penny into Declaration Title, does it?

14   A.    Incorrect.

15   Q.    Okay.  And that's where -- where are they obligated to put a

16         penny to the Company?

17   A.    Well, I'm taking on the Verdict and the claims and I'm stepping

18         in the shoes of the firing line where you're firing on Todd and

19         Renee and Declaration.  I'm stepping in the shoes of that.  So,

20         that obligates me to put money in the Company and fight you and

21         your Verdict.

22   Q.    You're not obligated to pay any of it, if you lose?

23   A.    I disagree.
```

---

[18] *See* Exhibit 14, testimony of Choudhri in Case No. 2017-10832; *Jetall Companies, Inc. v. Alan B. Daughtry, Richard Heil, Todd Oakum, and Renee Davy;* In the 152nd Judicial District Court.  This excerpt is from the Trial Testimony of Ali Choudhri dated March 16, 2020, Reporter's Record, Vol. 5 of 11, page 192.

Choudhri further claimed that he financially backed Jetall again later in the same trial.[19]

```
11  Q.   Did you tell Renee on the phone that you -- that Jetall would
12       guarantee that she wouldn't have any future liability?  That you
13       would cover any potential liability arising out of the Heil
14       matter?
15            Did you tell her that?
16  A.   I told her that I would take care of the Heil matter.  It was my
17       responsibility.  My obligation.
```

It is Choudhri's pattern and practice to tell juries that he is personally responsible for his various business entities simply because he is the owner.   Choudhri has also admitted to diverting profits. In fact, Choudhri testified that funds received by HREP were actually his funds.[20]

```
5         MR. DRINNON:  Oh, I'm sorry, I didn't
6    complete -- it's line 22 through 25.  It says:  So we
7    didn't read 20 through 25.  20 through 25 -- so HREP,
8    when I say you, of course I mean HREP got the money and
9    your answer was, I mean, it's a pass through.  It's my
10   company.  It's a passthrough through me so I got the
11   money.
12         Did I read that correctly?
13   A.   Yeah.
14   Q.   (BY MR. DRINNON)  Okay.  Thank you, sir.
15         So at the time of the transaction, then,
16   you got $552,000, correct?  We just went through this.
17   At the time of the transaction you got $552,000 --
18   $552,970, correct?
19   A.   Correct.
```

[19] *See* Exhibit 14, testimony of Choudhri in Case No. 2017-10832; *Jetall Companies, Inc. v. Alan B. Daughtry, Richard Heil, Todd Oakum, and Renee Davy;* In the 152nd Judicial District Court.  This excerpt is from the Trial Testimony of Ali Choudhri dated March 16, 2020, Reporter's Record, Vol. 5 of 11, page 226.
[20] *See* Exhibit 13, testimony of Choudhri in Cause No. 2013-41273; *Osama Abdullatif, et al, v. Ali Choudhri;* In the Judicial District Court, Trial Testimony, pages 110-111 from the 8-10-22 transcript.

33.     Further evidence of the Choudhri Defendants being alter egos of each other is demonstrated by the documents they submit themselves to the government, which further blend their identities and blur any lines of distinction.  On or about August 15, 2017, Jetall filed a Texas Franchise Tax Report for the year ended December 31, 2016.  In the report, Jetall identifies a slew of business entities that Jetall claims are each an "affiliate" of Jetall when in fact there is no legal connection between the companies.[21]  Two of the companies identified as "affiliates" of Jetall are REIT and HREP.   Additionally, Choudhri filed documents with the State of Texas claiming that he is the President, manager, and member, of HREP,[22] but this assertion is inconsistent with the HREP's sworn Schedules in this case.

34.     All of these acts were intentional and completed in an effort to feign the appearance that these entities are distinct and separate when in fact they are not.  In short, all of the Choudhri Defendants are either owned or controlled by Choudhri and are also insiders as well alter egos of him.

**Choudhri through Jetall, HREP, and the other Choudhri Defendants, fraudulently transferred assets to avoid liabilities.**

35.     Jetall, Arabella, Memorial, Kirby, REIT, Dalio I, Dalio II, HREP, Shahnaz Choudhri, Choudhri, Shepherd I, Shepherd II, and Galleria Loop, are alter egos of each other and have all made intentional fraudulent transfers to avoid paying their creditors. The purpose of the Fraudulent Transfer Act is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach. *Mladenka v. Mladenka*, 130 S.W.3d 397,404 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  Fraudulent transfer causes of action are statutory. They are governed by Chapter 24 of the Texas Business and Commerce Code (the Texas Statute)

---

[21] Attached as <u>Exhibit 15</u> is Jetall's Texas Franchise Tax Report for the year ended December 31, 2016.
[22] Attached as <u>Exhibit 16</u> is the Texas governmental documents for HREP.

and Section 548 of the United States Bankruptcy Code, though other laws and principles of equity supplement the Texas statutory cause of action. TEX. BUS. & COM. CODE § 24.011. The Texas statute is modeled on the Uniform Fraudulent Transfer Act ("UFTA") and should be applied so as "to make uniform the law with respect to the subject of this chapter among states enacting it." Id. Both the Texas and federal statutes allow the plaintiff creditor to avoid both intentional and constructive fraudulent transfers or obligations.  The Texas statute identifies multiple "badges of fraud", which can be utilized as circumstantial evidence to prove intent to hinder, delay, or defraud. *Johnston v. Crook*, 93 S.W.3d 263, 273 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); TEX. BUS. & COM. CODE § 24.005(b).  Some of those badges include, inter alia, [i] transferring assets to an insider, [ii] retaining control or possession of an asset after an alleged transfer, [iii] concealing the transfer, [iv] not receiving like or reasonable value for the transferred asset, [v] encumbering the asset with debt or liabilities, and [vi] making the transfer around the time the bad actor knew or should have known the bad actor was about to incur debt or liability.

36.    The Choudhri Defendants have committed numerous fraudulent transfers in order to prevent creditors from collection.  Without the benefit of discovery, Plaintiffs identify the following support for their claims.

37.    Choudhri reserved ownership interests in certain alter ego companies and concealed transfers through the utilization of agency agreements despite making it appear as though he was no longer an owner or involved.  These include, *at least*,[23] REIT, Dalio I, Dalio II[24], Shepherd I, Shepherd II.[25]   The purpose of these agency agreements was to allow Choudhri to hide his

---

[23] Plaintiffs aver that there are numerous other agency agreements applicable to this lawsuit and the Choudhri Defendants.
[24] Attached as Exhibit 17 is an Agency Agreement involving Choudhri, REIT, Dalio I, and Dalio II.
[25] Attached as Exhibit 18 is an Agency Agreement involving Choudhri, Shepherd I, and Shepherd II.

ownership interest, involvement, and control of the assets, as well as conceal his assets from creditors.  For example, the Choudhri Defendants use of the agency agreements was noted by a Commercial Arbitration Tribunal from the American Arbitration Association, that found, inter alia, that Choudhri [i] lied under oath about the existence of the agency agreements, [ii] refused to produce the agency agreements (which had to be obtained from third-parties), [iii] intentionally hid his involvement in certain transactions by use of the agency agreements, [iv] was not credible as a witness, [v] acted improper, wrongful, and not in good faith, [vi] knowingly and intentionally, with malice, committed fraud, and [vii] awarded substantial exemplary damages ($250,000.00) for fraud and breach of fiduciary duty, against Choudhri and some of the other Choudhri Defendants noted herein.[26]

38.    Choudhri made fraudulent transfers of personal property (i.e., cash), as previously shown in paragraph 31 hereinabove, to deprive his creditors from collection.[27]  Moreover, those transfer were not for like or reasonable value and were after the time the Choudhri Defendants knew or should have known that a debt and or liability (and now judgments held by Plaintiffs) would be incurred.  Plaintiffs aver that the Choudhri Defendants have made numerous and additional other fraudulent transfers, which will be exposed in the discovery process in this matter.

39.    Choudhri falsified and misrepresented his net worth.  On December 7, 2022, to avoid paying an appeal bond equal to the sum of compensatory damages and interest awarded to one of the Plaintiffs herein in Lawsuit 1, Choudhri filed a fraudulent Net Worth Affidavit[28] claiming a personal net worth of [–$67,951,728.25].  However, shortly thereafter, documents were receipted from a third-party showing that in November 2021—approximately one year before

---

[26] Attached as Exhibit 19 is the Arbitration Award.
[27] See Exhibit 6 – Exhibit 12.
[28] Attached as Exhibit 20 is Choudhri's fraudulent Net Worth Affidavit filed in Lawsuit 1.

Choudhri signed his fraudulent Net Worth Affidavit—Choudhri provided a Personal Financial Statement asserting that his personal net worth was $246,440,100.00.[29]  A comparison of this Personal Financial Statement and the fraudulent Net Worth Affidavit represents an alleged decrease in net worth by a total of $314,391,828.25 in a single year.

40.     The Choudhri Defendants are also encumbering assets with liabilities to dissuade creditors from collection, which further supports a fraudulent transfer finding.  On the last page of Exhibit 21, Choudhri's November 2021, Financial Statement[30] is a list of properties allegedly owned by Choudhri along with the liabilities associated with each.[31]  Seven (7) of those properties were unencumbered by any "liabilities."[32]  Keep in mind that this is Choudhri's own document. But since that time, Choudhri has systematically encumbered the properties with debt for no apparent business purpose and absconding with the cash.  Some of the properties allegedly encumbered or transferred by the Choudhri Defendants include: [i] **9201 Memorial Drive.**  On November 2, 2022, Choudhri obtained a loan for $2,760,000.00 from Cypress BridgeCo, LLC, another "mezzanine" or "hard money" lender, pledging the previously unencumbered 9201 Memorial Dr. property as collateral; [ii] **2727 Kirby 26L.**  Also on November 2, 2022, Choudhri obtained another loan for $2,079,000.00 from Cypress BridgeCo, LLC pledging the previously unencumbered 2727 Kirby 26L property as collateral; [iii] Memorial Glen Cove, LLC is a Texas limited liability company owned and or controlled by Choudhri. Pursuant to the Texas Secretary of State, Memorial Glen Cove LLC is managed by Memorial Park LLC.  A Texas limited liability company also owned and or controlled by Choudhri.[33]  VGRP Holdings LLC allegedly obtained a

---

[29] Attached as Exhibit 21 is Choudhri's November 2021, Personal Financial Statement, first page.
[30] *See* Exhibit 21, last page.
[31] Id.
[32] Id.
[33] Curiously, Memorial Park LLC is managed by Memorial Glen Cove LLC.  Choudhri often uses circular member-manager schemes to hide his ownership in various "pass-through" entities.

deed of trust in its favor after presumably loaning money to Choudhri secured by properties that he owned individually but then placed into Memorial Glen Cove LLC. Memorial Glen Cove LLC, Memorial Park LLC, and VGRP Holdings LLC, are Texas limited liability companies all owned and or controlled by Choudhri. Note that, at least, the first two aforementioned debts were allegedly incurred a mere nineteen (19) days before the final judgment in Lawsuit 1 was rendered.

41.     Choudhri also made fraudulent transfers of real property too. The following real properties were deeded from Choudhri to Memorial Glen Cove LLC (another entity Choudhri owns or controls) just before the judgment in Lawsuit 1 was rendered against Choudhri and HREP. [i] **402 Terrace Dr.** On November 15, 2022, Choudhri allegedly transferred a property identified as 402 Terrace Dr., Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [ii] **3550 Charleston St.** Also, on November 15, 2022, Choudhri transferred a property identified as 3550 Charleston St., Houston, Texas 70021 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [iii] **6531 Rodrigo St.** Again, on November 15, 2022, Choudhri transferred a property identified as 6531 Rodrigo St., Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [iv] **5803 Blossom St.** Again, on November 15, 2022, Choudhri transferred a property identified as 5803 Blossom Street, Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [v] **207 Malone St.** Again, on November 15, 2022, Choudhri transferred a property identified as 207 Malone Street, Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash

and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; and [vi] **4401 Schurmier Road.** Again, on November 15, 2022, Choudhri transferred a property identified as 4401 Schurmier Road, Houston, Texas 77048 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged." Upon information and belief, Choudhri has been transferring properties like these and the others, between himself and other business entities that he owns or controls or to various third parties (not for reasonable value) in an effort to hinder and delay Plaintiffs efforts of collecting their judgment. As a reminder—***each and every one of these aforementioned transfers occurred exactly six (6) days before the judgment was rendered in Lawsuit 1***.

42.     All of these acts are intentional, fraudulent, and completed in an effort to place assets beyond the reach of creditors. As a result, Plaintiffs are left with no choice but to pursue these claims.

## Causes Of Action

43.     Jetall, Arabella, Memorial, Kirby, REIT, Dalio I, Dalio II, HREP, Shahnaz Choudhri, Choudhri, Shepherd I, Shepherd II, and Galleria Loop, act as alter egos of one another to defraud creditors by placing assets beyond the creditor's reach, transferring assets for less than value, and or causing the incurrence of debt upon those assets.

### Fraudulent Transfer (All Defendants)

44.     The Choudhri Defendants committed fraudulent transfers. Under the Texas Uniform Fraudulent Transfers Act, a judgment creditor may bring a claim for fraudulent transfer if debtor's conveyances were made with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or

obligation. TEX. BUS. & COM. CODE § 24.005. The Choudhri Defendants' concealment and facilitation of certain transactions, only some of which are discussed herein, constitute fraudulent conveyances under TEX. BUS. & COM. CODE §§ 24.005 and 24.006.

45.    The Choudhri Defendants fraudulent conveyances of these properties are the latest in a long history of obfuscation of justice and attempts at evasion, as he seeks to hinder, delay, and defraud Plaintiffs as judgment creditors. Further, Choudhri desires to devalue his personal assets and, upon information and belief, has not received a reasonably equivalent value in return for these transfers, to discourage his creditors from seizing assets.  Pursuant to TEX. BUS. & COM. CODE § 24.008, Plaintiffs seek: [i] an avoidance of the transfer or obligation to the extent necessary to satisfy their claim; [ii] an injunction and injunctive relief against further disposition by the Choudhri Defendants, or a transferee, or both, of the asset transferred or of other property; [iii] their reasonable and necessary attorneys' fees and court costs; [iv] that a constructive trust be imposed for the assets fraudulently transferred; and [v] after obtaining a judgment against the Choudhri Defendants for their violations, Plaintiffs ask that they be authorized to levy execution on the assets found to have been fraudulently transferred or their proceeds as well as any other relief the circumstances may require.

**Fraud (Choudhri).**

46.    Choudhri committed fraud.  The elements of a fraud claim are: (a) that a material representation was made; (b) the representation was false; (c) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (d) the speaker made the representation with the intent that the other party should act upon it; (e) the party acted in reliance on the representation; and (f) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

Choudhri's misrepresentations regarding his net worth, fraudulent conveyances, attempts to transfer assets between the Choudhri Defendants and others, and efforts to preclude Plaintiffs from collecting upon their debts, have damaged not only the Plaintiffs, but the court as well, and constitute fraud.

**Alter Ego (All Defendants).**

47.     Plaintiffs allege that the Choudhri Defendants are all alter egos of each other.  The Choudhri Defendants have utilized their corporate fiction for an illegitimate purpose, meaning "actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory." TEX. BUS. ORG. CODE §§ 21.223(a)-(b). *SSP Partners v. Gladstrong Inv. (USA) Corp.*, 275 S.W.3d 444, 451-52 (Tex. 2007). Plaintiffs aver that various business entities, including the Choudhri Defendants, are alter egos of each other and being used to conceal assets and therefore are all liable for the full judgment amounts in Lawsuit 1, Lawsuit 2, and Lawsuit 3.

**Joint Enterprise Liability (All Defendants).**

48.     The Choudhri Defendants were engaged in a joint enterprise because they had an understanding or common purpose to be carried out by the enterprise, a community of pecuniary interest in that common purpose and an equal right to direct and control the enterprise.   The Choudhri Defendants also committed one or more torts against Plaintiffs while acting within the scope of the enterprise.  Plaintiffs have been damaged as a result.

**Exemplary Damages**

49.     Plaintiffs are entitled to exemplary damages.  Under Texas law, a plaintiff suing for fraud may recover exemplary damages. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006). Plaintiffs further seek exemplary damages as a result of the Choudhri Defendants'

actions pursuant to TEX. CIV. PRAC. & REM. CODE §§ 41.003 and § 41.008, which state that in an action in which a claimant seeks recovery of damages, the trier of fact shall determine the amount of economic damages separately from the amount of other compensatory damages.

### Attorneys' Fees

50.     Plaintiffs seek recovery of all their attorneys' fees.  Plaintiffs are entitled to an award of their attorneys' fees through section 24.013 of the Texas Business and Commerce Code as well as any other applicable legal or equitable authority.

### Conclusion

Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, request that all defendants, Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Texas REIT LLC, Dalio Holdings I, LLC, Dalio Holdings II, LLC, Houston Real Estate Properties, LLC *[Debtor]*, Shahnaz Choudhri, Ali Choudhri, Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, and Galleria Loop Note Holder LLC, be cited to appear and answer, and that on final trial, Plaintiffs have the following relief against all defendants, jointly and severally:

> a)    Judgment against all defendants for actual, economic, and consequential damages in an amount within the jurisdictional limits of the court;
>
> b)    Exemplary damages;
>
> c)    Pre- and post-judgment interest on the damages awarded as provided by law;
>
> d)    Reasonable and necessary attorneys' fees for trial, and if necessary, appeal;
>
> e)    Costs of Court and Suit;
>
> f)    Avoidance of the transfers or obligations to the extent necessary to satisfy Plaintiffs' claims;

g)      An injunction against further disposition by defendants, or a transferee, or both, of the assets transferred or of other property;

h)      A constructive trust be imposed for the assets fraudulently transferred;

i)      After obtaining a judgment against defendants for their violations, Plaintiffs ask that they be authorized to levy execution on the assets found to have been fraudulently transferred or their proceeds as well as any other relief the circumstances may require; and

j)      All other relief, at law or in equity, to which Plaintiffs are or may be justly entitled.

DATED:      July 28, 2023

Respectfully submitted,

**HOOVER SLOVACEK LLP**

By: _____

T. Michael Ballases
State Bar No. 24036179
ballases@hooverslovacek.com
Steve A. Leyh
State Bar No. 12318300
leyh@hooverslovacek.com
Angeline V. Kell
State Bar No. 24040009
kell@hooverslovacek.com
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395

**ATTORNEYS FOR MOVANTS, JOHN QUINLAN, OMAR KHAWAJA, AND OSAMA ABDULLATIF**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on July 28, 2023, a true and correct copy of John Quinlan, Omar Khawaja, and Osama Abdullatif's Original Complaint was served electronically via the Court's CM/ECF system.

_____
T. Michael Ballases