IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOUSTON REAL ESTATE PROPERTIES, LLC, | § | CASE NO. 22-32998 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| JOHN QUINLAN, OMAR KHAWAJA, AND OSAMA ABDULLATIF, | § | |
| | § | |
| Plaintiffs, | § | ADVERSARY NO. 23-03141 |
| | § | |
| v. | § | |
| | § | |
| HOUSTON REAL ESTATE PROPERTIES, LLC, et al., | § | |
| | § | |
| Choudhri Defendants. | § | |

**JOHN QUINLAN, OMAR KHAWAJA, and OSAMA ABDULLATIF'S
RESPONSE TO HOUSTON REAL PROPERTIES, LLC's MOTION TO DISMISS
COMPLAINT PURSUANT TO PURSUANT TO [SIC] FED. R. CIV. P. 8(a), 9(b) and
12(b)(1) and 12(b)(6) [DOCKET NO. 47] AND BRIEF IN SUPPORT**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, file this Response to Houston Real Estate Properties, LLC's ("HREP" or "Debtor") Motion to Dismiss Complaint Pursuant to Pursuant to [sic] Fed. R. Civ. P. 8(a), 9(b) and 12(b)(1) and 12(b)(6) and Brief in Support of Plaintiffs' opposition thereto.

## I. SUMMARY OF RESPONSE

1.      Debtor asserts that Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the Court does not have jurisdiction over the claims asserted. As shown herein, the Court possesses jurisdiction over the claims pursuant to 28 U.S.C. §§ 1334 & 157(b)(1), and the Court already specifically and intentionally granted Plaintiffs standing to prosecute these claims.

2.      Debtor further asserts that Plaintiffs inadequately pleaded claims of fraudulent transfer, fraud, and alter-ego. However, as shown in Plaintiffs' Brief in Support, *infra*, Plaintiffs sufficiently pleaded facts, which meet the standard stated in *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (stating the task of a court under Rule 12(b)(6) is not to evaluate the plaintiff's likelihood of success—instead, a court must only decide whether the plaintiff states a "legally cognizable claim that is plausible").

3.      Finally, even if the Court were persuaded, by Debtor, that Plaintiffs failed to properly plead some or all of their claims, the Court must allow them an opportunity to cure any such pleading defects.

## II. STATEMENT OF FACTS

4.       Plaintiffs collectively hold three judgments and stand in the shoes of four judgment-creditors against Defendants Jetall Companies, Inc. ("Jetall"), Ali Choudhri ("Choudhri"), and Houston Real Estate Properties, LLC ("HREP" or "Debtor"):

    a.  On November 21, 2022, Plaintiff, Osama Abdullatif, obtained a final judgment in Cause No. 2013-41273, *Osama Abdullatif and Abdullatif & Company, LLC v. Ali Choudhri and Houston Real Estate Properties, LLC*, filed in the District Court of Harris County. In that case, Choudhri was found liable for statutory fraud and fraud in a real estate transaction.

    b.  On February 17, 2023, Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, obtained an assignment of the judgment rendered on June 23, 2020, in Cause No. 2017-10832, *Jetall Companies, Inc. and Declaration Title Company, LLC v. Allan B. Daughtry, Attorney at Law, Richard Heil, Todd Oakum and Reny Davy f/k/a Renee Oakum*, filed in the District Court of Harris County, Texas, 152nd Judicial District. In this cause, Plaintiffs received assignments from both judgment-creditors against judgment-debtor, Jetall.

    c.  On February 17, 2023, Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, obtained an assignment of the judgment rendered on October 31, 2020, in Cause No. 2020-38738, *Jetall Companies, Inc. v. Hoover Slovacek LLP*, filed in the District Court of Harris County, Texas, 164th Judicial District against Jetall. In that case, the Court saw fit to include the following finding in its judgment, "Jetall has been sanctioned multiple times in past litigation for engaging in improper and repugnant actions, in courts of law."

These judgments are unpaid and ripe.

5.       On December 7, 2022, to avoid paying an appeal bond equal to the sum of the compensatory damages and interest awarded to Plaintiffs in Cause No. 2013-41273, Choudhri filed a fraudulent Net Worth Affidavit claiming a personal net worth of –$67,951,728.25. This is contrary to multiple public statements, articles, and personal financial statements attested to by Choudhri himself in the recent past.

6.       On or about February 10, 2023, Plaintiffs received documents from a third-party confirming that in November 2021, approximately one year before Choudhri signed his fraudulent Net Worth Affidavit, Choudhri provided a Personal Financial Statement to a "mezzanine" or "hard

money" lender asserting that his personal net worth was $246,440,100.00. A comparison of this Personal Financial Statement and the fraudulent Net Worth Affidavit represents an alleged decrease in net worth by a total of $314,391,828.25 in just over one (1) year.

7.     Upon information and belief, Defendants have been transferring assets and properties between themselves and various third parties in an effort to hinder and delay Plaintiffs' efforts of collecting their judgments. For example, attached to Choudhri's November 12, 2021, Financial Statement is a list of properties allegedly owned by Choudhri along with the liabilities associated with each. Seven (7) of those properties, valued by Choudhri at $15,575,000, were *un*encumbered by any "liabilities." Since November 2021, Choudhri has systematically encumbered the properties with debt for no apparent business purpose or transferred the properties and absconded with the cash.

8.     The encumbering or transferring of these properties occurred after the jury verdict and mere days before Plaintiff Osama Abdullatif's judgment became final in Cause No. 2013-41273. That judgment was in excess of $5,000,000. Properties so encumbered or transferred include those properties controlled by Defendants.[1]

---

[1] Properties so encumbered or transferred by Defendants are detailed in Plaintiffs' Complaint [Docket No. 1] as along with the actions taken by Choudhri Defendants to unlawfully encumber such properties:

a.  **9201 Memorial Drive.** On November 2, 2022, Choudhri obtained a loan for $2,760,000.00 from Cypress BridgeCo, LLC, another "mezzanine" or "hard money" lender, pledging the previously unencumbered 9201 Memorial Dr. property as collateral.
b.  **2727 Kirby 26L.** Also on November 2, 2022, Choudhri obtained another loan for $2,079,000.00 from Cypress BridgeCo, LLC pledging the previously unencumbered 2727 Kirby 26L property as collateral.
c.  **The Memorial Glen Cove, LLC Properties, formerly properties owned individually by Ali Choudhri.** Upon information and belief, Memorial Glen Cove, LLC is a Texas limited liability company owned by Ali Choudhri. According to the Texas Secretary of State, Memorial Glen Cove LLC is managed by Memorial Park LLC, a Texas limited liability company also owned by Choudhri. Curiously, Memorial Park LLC is managed by Memorial Glen Cove. Choudhri often uses this circular member/manager scheme to hide his ownership in various "pass-through" entities. VGRP Holdings LLC obtained a deed of trust in its favor after presumably loaning money to Choudhri secured by properties that he owned individually but then placed into Memorial Glen Cove LLC. Memorial Glen Cove LLC, Memorial Park LLC, and VGRP Holdings LLC are Texas limited liability companies all owned by Ali Choudhri.
d.  **402 Terrace Dr.** On November 15, 2022, Choudhri transferred a property identified as 402 Terrace Dr., Houston, TX 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration,

PLAINTIFFS' RESPONSE TO DEBTOR'S MOTION TO DISMISS

### III.   PROCEDURAL BACKGROUND

9.      On October 7, 2022, Debtor filed a Voluntary Petition for relief under Chapter 11

of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

10.     One of the creditors moved to convert the case to Chapter 7 and or appoint a

Trustee. [Main Case, Docket No. 57].  The case was converted to Chapter 7 on March 8, 2023.

[Main Case, Docket No. 74]. The Court appointed Randy Williams as Trustee ("Trustee").

11.     On June 28, 2023, Plaintiffs moved for relief from the automatic stay pursuant to

11 U.S.C. § 362(d) so that Movants could "exercise whatever legal rights and remedies they might

have against the Debtor and the properties and or related entities, and for such other relief and

further relief to which it may be entitled." [Docket No. 112]. Therein, Plaintiffs identified, to the

Court, what contentions would be lodged and what claims they sought to bring, in the adversary

proceeding:

> "6.  Movants contend that Jetall Companies Inc. ("Jetall"), Arabella PH 3201 LLC,
> 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Texas REIT LLC ("REIT"), Dalio
> Holdings I, LLC, Dalio Holdings II, LLC, Shahnaz Choudhri, Ali Choudhri
> ("Choudhri"), and HREP, are the alter egos of each other and are intentionally
> acting in a manner to defraud creditors and evade obligations. Choudhri controls a
> web of shell entities that hold his various properties. This web also includes HREP

---

the receipt and sufficiency of which are hereby acknowledged." Upon information and belief, Choudhri has been
transferring properties like this one, and the others listed below, between the named Defendants and various third
parties in an effort to hinder and delay Plaintiffs' efforts of collecting their judgment.

e.   **3550 Charleston St.** Also on November 15, 2022, Choudhri transferred a property identified as 3550 Charleston
St., Houston, TX 70021 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged."

f.   **6531 Rodrigo St.** Again, on November 15, 2022, Choudhri transferred a property identified as 6531 Rodrigo St.,
Houston, TX 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged."

g.   **5803 Blossom St.** Again, on November 15, 2022, Choudhri transferred a property identified as 5803 Blossom
Street, Houston, TX 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged."

h.   **207 Malone St.** Again, on November 15, 2022, Choudhri transferred a property identified as 207 Malone Street,
Houston, TX 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged."

i.   **4401 Schurmier Road.** Again, on November 15, 2022, Choudhri transferred a property identified as 4401
Schurmier Road, Houston, TX 77048 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good
and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."

PLAINTIFFS' RESPONSE TO DEBTOR'S MOTION TO DISMISS

and Jetall. Choudhri sees HREP/Jetall/himself as one and the same. He utilizes the Debtor and Jetall as "pass through" entities.

7.   Movants seek to bring all the properties that are part of HREP and Choudhri web into this proceeding for the benefit of the creditors.

8.   Choudhri, the single owner of the Debtor, HREP, treats the Debtor like his personal bank, co-mingling personal funds with the Debtor's funds and the funds of other related entities. Claims of alter ego, substantive consolidation, conspiracy, joint enterprise, veil piercing and reverse veil piercing exist here and are relevant to this proceeding."

[Docket No. 112, paragraphs 6-8]. Based on these assertions, Plaintiffs sought permission from the Court to lift the automatic stay and proceed with the adversary proceedings to litigate these claims. The Trustee was unopposed, or acquiesced, to the relief requested and the actions of Plaintiffs. After oral hearing on the motion in which the Debtor asserted objections to the request, the Court granted the requested relief sought by Plaintiffs finding that: "[Plaintiffs] seek relief only against the Trustee so that the [Plaintiffs] may sue the debtor in an adversary proceeding. Again, this relief is unopposed by the Trustee, and on that basis, it is granted." [Docket No. 132].

12.   Upon being granted such relief from the Court, Plaintiffs initiated this adversary proceeding through their Original Complaint [Docket No. 1] in which the claims of fraudulent transfer, fraud, alter ego and joint business enterprise, were asserted against Debtor, Jetall and other Choudhri related entities in accordance with the relief granted to Movant pursuant to the Court's Order Granting Motion for Relief from Stay.

13.   Debtor now moves to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Docket No. 47].

## IV.   ARGUMENTS & AUTHORITIES

A.   **This court maintains jurisdiction and Plaintiffs possess standing to bring their claims in this adversary proceeding.**

14.     Debtor challenges the Court's jurisdiction to adjudicate the claims set forth in Plaintiffs' adversary proceeding. Jurisdiction over bankruptcy cases and proceedings is conferred on federal district courts under 28 U.S.C. § 1334; *U.S. Brass Corp. v. Travelers Ins. Grp. (In re U.S. Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002). The jurisdiction of a bankruptcy court was generally described in *In re US Brass Corp.* as follows:

> Section 1334 grants the federal district courts jurisdiction over four types of bankruptcy matters: (1) "cases under title 11," (2) "proceedings arising under title 11," (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. The first category refers to the bankruptcy petition itself. The second, third, and fourth categories, all listed in § 1334(b), "operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." A proceeding is "related to" a bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."
>
> ***
>
> Specifically, § 157(b)(1) gives bankruptcy courts full judicial power over "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under . . . this section . . . .Non-core proceedings that are "otherwise related to a case under title 11" may be heard by a bankruptcy judge, but any final order or judgment must be entered by the district court. Thus, if a matter within the broad scope of § 1334(b) satisfies the more precise notion of a core proceeding, § 157 authorizes the bankruptcy court to decide the matter and enter a final judgment. Although the statute does not define core proceedings, subsection (b)(2) does provide a nonexclusive list of examples. Moreover, we have held that § 157 equates core proceedings with the categories of "arising under" and "arising in" proceedings; therefore, a "proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.

*Id.* at 303-04.  Said another way, "an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 526 (5th Cir. 2014).

15.     Plaintiffs' Complaint pleads that this proceeding is a both a core (an arising matter) and non-core proceeding (a related-to matter). [Docket No. 1]. The Fifth Circuit has held that the bankruptcy court had jurisdiction over claims similar to those brought here wherein the judgment creditor's claims against the third-party defendants as such claims had some conceivable effect on the debtor's estate. *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 587-88 (5th Cir. 1999). The court affirmed the bankruptcy court's jurisdiction on the basis that any amount collected by the judgment creditor from the third-party defendants may affect the total amount claimed against the estate. *Id*. at 586. "This decrease would inure to the benefit of all other unsecured creditors, each of whom would then share in the disbursement that would otherwise have been paid to [the judgment creditor]." *Id*.

16.     Debtor is erroneous in its assertion that *Stern v. Marshall*, 564 U.S. 462 (2011) determined that a bankruptcy court does not have authority to adjudicate state common law claims. *Stern* held that a bankruptcy court did not have authority to adjudicate a debtor's state law counterclaim when the resolution of a creditor's claim would not necessarily resolve the debtor's counterclaim. *Id.* at 503. For example, an situation analogous to *Stern* would be Debtor initiating a counterclaim based on state law in this adversary proceeding. This is different from the situation in this case, where Plaintiffs' claims specifically arise from or relate to the estate.  As such, this Court has subject matter jurisdiction to preside over this adversary proceeding.

17.     Debtor further asserts that Plaintiffs lack standing to bring their claims in the adversary proceeding. First, the Court has specifically granted Plaintiffs' standing to bring forth their claims in the adversary proceeding. As stated *supra*, this adversary proceeding was filed pursuant to the Court's Order lifting the automatic stay so that Plaintiffs "may sue the [D]ebtor in an adversary proceeding." [Docket No. 132]. The Bankruptcy Code expressly authorizes a trustee

PLAINTIFFS' RESPONSE TO DEBTOR'S MOTION TO DISMISS

(or debtor-in-possession) to bring an adversary proceeding to avoid certain transfers as preferential or fraudulent. *PW Enters., Inc. v. N.D. Racing Comm'n* (*In re Racing Servs., Inc.*), 540 F.3d 892, 898 & n. 7 (8th Cir. 2008). In some cases, however, courts have allowed creditors to bring such "avoidance claims" if it would benefit the estate. *Id*. A creditor who brings avoidance claims in place of the trustee is said to possess "derivative standing." *Id*. This adversary proceeding was brought upon the Court granting Plaintiffs such standing through its order lifting the stay specifically to permit Plaintiffs to bring this suit.

18.     The concept of derivative standing was evaluated in *In re Cooper,* wherein the court recognized, in dicta, a bankruptcy court's ability to grant standing upon a creditor to bring claims against the estate and third parties:

> This court is ever mindful that it is a court of equity, and the grant of derivative status to a party to pursue litigation, as a representative for another, is a long standing equitable remedy with deep roots in our jurisprudence. The equitable remedy was employed by courts when the intended system broke down for one reason or another. More specifically: The concept of derivative standing arose when, despite a lack of express statutory authorization, courts of equity allowed shareholders to pursue valuable actions when the nominal plaintiff (the corporation) unreasonably refused to do so.

*In re Cooper*, 405 B.R. 801, 814 (N.D. Tex. 2009) (internal citations omitted). The *Cooper* court further opined that derivative standing may be available upon a showing by the individual creditor of a compelling case that warrants such relief. *Id*. The *Cooper* court ultimately determined that the judgment creditor did not have a compelling case that warranted derivative standing in part because the trustee opposed the adversary proceeding. *Id*. That, of course, differs from this matter, where the Trustee has consented to this adversary proceeding and the Court specifically identified the reason for permitting this adversary action to move forward.

19.     A fellow Fifth Circuit court has analyzed when derivative standing was proper and held that derivative standing was appropriate when an individual creditor establishes that the claim

PLAINTIFFS' RESPONSE TO DEBTOR'S MOTION TO DISMISS

is colorable, that the debtor-in-possession has unjustifiably refused to pursue the claim, and that the creditor first received a letter to sue from the bankruptcy court. *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988). Here, the Complaint identifies a colorable claim for fraudulent transfer, the trustee acquiesced to Plaintiffs pursuing these claims, and the Plaintiffs received permission from the Court to bring such claims. As such, Plaintiffs have standing to bring this cause of action.

**B.    Plaintiffs sufficiently stated their claims for which relief can be granted.**

20.    Debtor asserts generally that Plaintiffs failed to sufficiently plead a cause of action for all claims asserted. In short, Plaintiffs' complaint asserts a viable theory of alter ego and joint enterprise liability to claim that Debtor and the other Defendants are, in essence, one in the same. As such, any transfer effectuated by Choudhri with the utilization of one Defendant or of Debtor is, in essence, a transfer for the benefit or detriment of all.

*i.    Plaintiffs sufficiently pleaded all elements of an alter-ego theory of recovery.*

21.    Debtor asserts that Plaintiffs failed to sufficiently plead facts that support a vicarious liability theory of alter-ego. [Docket No. 47]. Under an alter ego theory, the corporate veil can be pierced if the corporation was organized and operated as a mere tool or business conduit of a person or another corporation. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). To show an alter-ego, a plaintiff must show a unity between the parties such that the separateness of a single corporation has ceased and that holding only the single corporation liable would result in injustice. *Id*. The injustice, to be avoided, can be leaving a plaintiff empty-handed, with an uncollectable judgment against one party while the party's alter ego goes free. *Mancorp, Inc. v. Culpepper,* 836 S.W.2d 844, 846 (Tex. App.—Houston [1st Dist.] 1992, no pet.).

PLAINTIFFS' RESPONSE TO DEBTOR'S MOTION TO DISMISS

22.     Paragraphs 29-34 of Plaintiffs' Complaint recite sufficient factual allegations to sustain that a separateness between Debtor and or all Defendants ceased, and that Plaintiffs will suffer an injustice in that the utilization of the alter ego may leave Plaintiffs with an uncollectable judgment while letting the other Defendants go free. [Docket No. 1]. The Choudhri Defendants have blended identities and blurred lines of distinction such that they should be found to be alter egos of each other. Without the benefit of discovery, Plaintiffs have identified the following support for their claims.

23.     The Choudhri Defendants commingle funds, pay the debts of the other, and divert company profits. On or about July 10, 2020, Galleria Loop paid the personal income taxes of Shahnaz Choudhri to the Internal Revenue Service. On or about January 31, 2022, Jetall paid the real property taxes for real property owned by Defendant Kirby. Also on January 31, 2022, Jetall paid the real property taxes for real property owned by Defendant Memorial. Also on January 31, 2022, Jetall paid the real property taxes for real property owned by Defendant Arabella. Further, on August 16, 2022, Jetall paid the real property taxes for real property owned by Defendant Kirby. Additionally, on October 26, 2022, Galleria Loop paid the real property taxes for real property owned by Arabella. Plaintiffs aver that discovery will yield a plethora of other similar transactions in support of their claims and causes of action.

24.     Choudhri testified that he financially backs Jetall or HREP, or whichever one of his business entities is in litigation at the time. Choudhri testified that he is HREP and that HREP is him. Choudhri also testified that he is the 100% owner of Jetall and implied that he is responsible for the debts of Jetall. It is Choudhri's pattern and practice to tell juries that he is personally responsible for his various business entities simply because he is the owner. Choudhri has also

admitted to diverting profits. In fact, Choudhri testified that funds received by HREP were actually his funds.

25.      Further evidence of the Choudhri Defendants being alter egos of each other is demonstrated by the documents that they submit to the government, which also blend their identities and blur any lines of distinction. On or about August 15, 2017, Jetall filed a Texas Franchise Tax Report for the year ending December 31, 2016. In the report, Jetall identifies a plethora of business entities that Jetall claims are each an "affiliate" of Jetall when, in fact, there is no legal connection between the companies. Two of the companies identified as "affiliates" of Jetall are REIT and HREP. Additionally, Choudhri filed documents with the State of Texas claiming that he is the President, manager, and member of HREP, but this assertion is inconsistent with the HREP's sworn Schedules in this case.

26.      All of these acts were intentional and completed in an effort to feign the appearance that these entities are distinct and separate when in fact they are not. Plaintiffs' assertions are sufficient to state a "legally cognizable claim that is plausible" for an alter ego theory of recovery.

ii.      **Plaintiffs properly pleaded claims for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COM. CODE §§ 24.005 and 24.006.**

27.      Debtor further asserts that Plaintiffs failed to plead enough facts to support a claim of fraudulent transfer. Plaintiffs pleaded that their claims of fraudulent transfer are brought under both Texas Business and Commerce Code §§ 24.005 and 24.006. [Docket No. 1]. Under Section 24.005(a)(1), a transfer is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, if the debtor made it with actual intent to hinder, delay, or defraud its creditors. TEX. BUS. & COM. CODE § 24.005. To summarize, the elements of an actual fraudulent transfer under TUFTA are: (1) a creditor; (2) a debtor; (3) the

debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay or defraud any of the debtor's creditors. *See* TEX. BUS. & COM. CODE § 24.005; *see also Jones v. Dyna Drill Techs., LLC,* No. 01-16-01008-CV, 2018 Tex. App. LEXIS 6689, at *14 (Tex. App.—Houston [1st Dist.] Aug. 23, 2018). "Actual fraudulent intent is rarely susceptible to direct proof; therefore, the requisite intent may be proved circumstantially by presenting evidence of certain 'badges of fraud' that may cumulatively give rise to an inference of intent to hinder, delay, or defraud." *ASARCO LLC v. America Mining Corp.*, 396 B.R. 278, 370 (S.D. Tex. 2008).

28.     Plaintiffs' Complaint stated sufficient facts in paragraphs 35-41 to support the claim of fraudulent transfer. [Docket No. 1]. Plaintiff pleaded that they are creditors and Defendants are debtors. [Docket No. 1]. Additionally, Plaintiffs identify a series of badges of fraud in which Defendants acted in an attempt to hinder collection of the debt or defraud Plaintiffs. For example, the following badges of fraud were identified in the Complaint:

(a)     Choudhri reserved ownership interests in certain alter ego companies and concealed transfers through the utilization of agency agreements despite making it appear as though he was no longer an owner or involved. These include, *at least*, REIT, Dalio I, Dalio II, Shepherd I, Shepherd II. The purpose of these agency agreements was to allow Choudhri to hide his ownership interest, involvement, and control of the assets, as well as conceal his assets from creditors.

(b)     Choudhri Defendants are encumbered assets with liabilities to dissuade creditors from collection, which further supports a fraudulent transfer finding. On the last page of Exhibit 21, Choudhri's November 2021, Financial Statement is a list of properties allegedly owned by Choudhri along with the liabilities associated with each. Seven (7) of those properties were unencumbered by any "liabilities." Since that time, Choudhri has systematically encumbered the properties with debt for no apparent business purpose and absconding with the cash. Some of the properties allegedly encumbered or transferred by the Choudhri Defendants include: [i] **9201 Memorial Drive.** On November 2, 2022, Choudhri obtained a loan for $2,760,000.00 from Cypress BridgeCo, LLC, another "mezzanine" or "hard money" lender, pledging the previously unencumbered 9201 Memorial Dr. property as collateral; [ii] **2727 Kirby 26L.** Also on November 2, 2022, Choudhri obtained another loan for $2,079,000.00 from Cypress BridgeCo, LLC pledging the previously unencumbered 2727 Kirby 26L property as collateral; [iii] Memorial Glen Cove, LLC is a Texas limited liability company owned and or controlled by Choudhri. Pursuant to the Texas Secretary of State, Memorial Glen Cove LLC is managed by Memorial Park LLC. A Texas limited liability company

PLAINTIFFS' RESPONSE TO DEBTOR'S MOTION TO DISMISS

also owned and or controlled by Choudhri.33 VGRP Holdings LLC allegedly obtained a deed of trust in its favor after presumably loaning money to Choudhri secured by properties that he owned individually but then placed into Memorial Glen Cove LLC. Memorial Glen Cove LLC, Memorial Park LLC, and VGRP Holdings LLC, are Texas limited liability companies all owned and or controlled by Choudhri. Note that, at least, the first two aforementioned debts were allegedly incurred a mere nineteen (19) days before the final judgment in Cause No. 2013-41273 was rendered.

(c)     Days before final judgment was entered in Cause No. 2013-41273, Choudhri transferred real properties to Memorial Glen Cove LLC (another entity Choudhri owns or controls) just before the judgment in Lawsuit 1 was rendered against Choudhri and HREP. [i] **402 Terrace Dr.** On November 15, 2022, Choudhri allegedly transferred a property identified as 402 Terrace Dr., Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [ii] **3550 Charleston St.** Also, on November 15, 2022, Choudhri transferred a property identified as 3550 Charleston St., Houston, Texas 70021 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [iii] **6531 Rodrigo St.** Again, on November 15, 2022, Choudhri transferred a property identified as 6531 Rodrigo St., Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [iv] **5803 Blossom St.** Again, on November 15, 2022, Choudhri transferred a property identified as 5803 Blossom Street, Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [v] **207 Malone St.** Again, on November 15, 2022, Choudhri transferred a property identified as 207 Malone Street, Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; and [vi] **4401 Schurmier Road.** Again, on November 15, 2022, Choudhri transferred a property identified as 4401 Schurmier Road, Houston, Texas 77048 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged." Upon information and belief, Choudhri has been transferring properties like these and the others, between himself and other business entities that he owns or controls or to various third parties (not for reasonable value) in an effort to hinder and delay Plaintiffs efforts of collecting their judgment.

[Docket No. 1, pgs. 14-19, paras. 35-41]. These pleaded badges of fraud are sufficient to identify a plausible claim.

29.     Debtor further complains that the claim of fraudulent transfer is deficient because there is no pleading or showing that the entity allegedly making the transfers was insolvent or rendered insolvent by those transfers. [Docket No. 47]. This argument is misplaced. While a

PLAINTIFFS' RESPONSE TO DEBTOR'S MOTION TO DISMISS

burden of showing insolvency by the transferring party is present in a claim under Texas Business and Commerce Code § 24.006, it is not an element of fraudulent transfer under Section 24.005. TEX. BUS. & COM. CODE § 24.005. As it pertains to Plaintiffs' claim under Section 24.006, this section specifically provides that a debtor's transfer is fraudulent as to a creditor whose claim arose before the transfer if the debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or became insolvent as a result of the transfer. TEX. BUS. & COM. CODE § 24.006. This adversary proceeding is occurring in a bankruptcy proceeding wherein Debtor is clearly insolvent. Additionally, the facts pleaded in support of the badges of fraud identify numerous entities controlling assets that have been stripped of all worth through the fraudulent transfers. As such, Plaintiffs' Complaint sufficiently identifies a plausible claim for fraudulent transfer.

       ***iii.***      ***Joint enterprise liability is a recognized theory of liability in Texas jurisprudence.***

       30.     Debtor asserts that Plaintiffs have not adequately pleaded a claim for joint enterprise liability because the "cause of action" no longer exists under Texas law. [Docket No. 47]. Choudhri Defendants cite *SSP Partners v. Gladstrong Investments,* 275 S.W.3d 444, 456 (Tex. 2008) in support of their assertion. However, *SSP Partners* analyzed the "single business enterprise" theory, not joint enterprise liability. Joint enterprise liability has been recognized as a distinct claim of liability upon a showing that Defendant and other parties involved had an express or implied agreement, a common purpose, a community of pecuniary interest, and an equal right to a voice in the direction of the enterprise. *Texas DOT v. Able*, 35 S.W.3d 608, 613 (Tex. 2000); *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513 (Tex. 2000); *Seareau v. ExxonMobil Corp.* 274 S.W.3d 206, 222 (Tex. App.—Houston [14th Dist.] 2008, no pet.). These were the elements pleaded by Plaintiff in support of joint enterprise liability. [Docket No. 1]. Plaintiffs' Complaint sufficiently

PLAINTIFFS' RESPONSE TO DEBTOR'S MOTION TO DISMISS

pleads facts which show that the Choudhri Defendants were in agreement to effectuate a common purpose to divest the entities of assets and utilize all entities as one to effectuate this purpose.

### iv.    *Plaintiffs have sufficiently pleaded a cause of action of fraud against Choudhri.*

31.    Federal Rule of Civil Procedure 9 made applicable through Bankruptcy Rule 7009, states that "[i]n alleging fraud or mistake, a Party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs' Complaint specifically identifies those actionable misrepresentations in support of the fraud claim as being Choudhri's misrepresentations regarding (a) his net worth, (b) the fraudulent conveyances he made through Debtor and Choudhri Defendants, (c) attempts to transfer assets between Choudhri Defendants and others, and (d) efforts to preclude Plaintiffs from collecting upon their debts. The facts supporting each of the representations are shown in paragraphs 35-41 of Plaintiffs' Complaint. [Docket No. 1, pg. 14-19]. Debtor mischaracterizes Plaintiffs' complaint as merely reciting the elements of fraud. That is not accurate. While Plaintiffs certainly identify the elements of fraud, Plaintiffs additionally have identified those representations for which the fraud claim is brought, and further expounded on the facts giving rise to the claim and the damages caused by those misrepresentations. *Id.*

## V. Conclusion & Prayer

WHEREFORE, Plaintiffs have shown that their Complaint complies with Federal Rule of Civil Procedure 12(b)(6) and thus Plaintiffs respectfully request that the Debtor's Motion be denied, and that Plaintiffs may be granted all such other relief that they may show themselves entitled.

DATED:  October 3, 2023

Respectfully submitted,

**HOOVER SLOVACEK LLP**

By: */s/ T. Michael Ballases*
        Steve A. Leyh
        State Bar No. 12318300
        T. Michael Ballases
        State Bar No.  24036179
        Angeline V. Kell
        State Bar No. 24040009
        5051 Westheimer, Suite 1200
        Houston, Texas 77056
        Telephone: (713) 977-8686
        Facsimile: (713) 977-5395
        leyh@hooverslovacek.com
        ballases@hooverslovacek.com
        kell@hooverslovacek.com

**ATTORNEYS FOR MOVANTS AND OR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document, *Brief in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss*, has been served electronically upon each of the parties identified on the Court's ECF Service List maintained in this case, on October 3, 2023, and as additionally noted below.

**23-03141 Notice will be electronically mailed to:**

Houston Real Estate Properties, LLC
2500 West Loop South, Suite 255
Houston, Texas 77027
jamesp@thepopelawfirm.com
mhayward@haywardfirm.com

Ali Choudhri
2500 West Loop South, Suite 255
Houston, Texas 77027
jmac@jlm-law.com
jamesp@thepopelawfirm.com

Shahnaz Choudhri
2500 West Loop South, Suite 255
Houston, Texas 77027
jamesp@thepopelawfirm.com
jim@jamespierce.com

Jeannie Lee Anderson
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Texas 77253-3064
Houston_bankruptcy@lgbs.com

Rodney Lee Drinnon
McCathern Houston
2000 West Loop South, Suite 1850
Houston, Texas 77027
ndrinnon@mccathernlaw.com

Michael J. Durrschmidt
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002
mdurrschmidt@hirschwest.com

Bennett Greg Fisher
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Bennett.fisher@lewisbrisbois.com

Melissa S. Hayward
Hayward PLLC
1050 N. Central Expwy, Suite 106
Dallas, Texas 75231
mhayward@haywardfirm.com

James Q. Pope
The Pope Law Firm
6161 Savoy, Suite 1125
Houston, Texas 77036
ecf@thepopelawfirm.com

Melissa E. Valdez
Perdue Brandon Felder Collins & Mott
1235 North Loop West, Suite 600
Houston, Texas 77008
mvaldez@pbfcm.com

Ruth A. Van Meter
Hayward PLLC
10501 N. Central Expwy, Suite 106
Dallas, Texas 75231
rvanmeter@haywardfirm.com

Timothy L. Wentworth
Okin Adams, LLP
1113 Vine St., Suite 240
Houston, Texas 77002
twentworth@okinadams.com

Jana Smith Whitworth
Office of United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
Jana.whitworth@usdoj.gov

A. Kelly Williams
12140 Wickchester Ln., Suite 100
Houston, Texas 77079
Akw@milestoneVG.com
Kelly.williams@bridgecofinancial.com

Cypress Bridgeco, LLC and Magnolia Bridgeco, LLC
Bobby Debelak
McDowell Hetherington
1001 Fannin St., Suite 2400
Houston, Texas 77002
bobby.debelak@mhllp.com

By: */s/ T. Michael Ballases*
T. Michael Ballases