IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| HOUSTON REAL ESTATE PROPERTIES, LLC, | § § § | CASE NO. 22-32998 (Chapter 7) |
| Debtor. | § § | |
| JOHN QUINLAN, OMAR KHAWAJA, AND OSAMA ABDULLATIF, | § § § | |
| Plaintiffs, | § § | ADVERSARY NO. 23-03141 |
| v. | § § § | |
| HOUSTON REAL ESTATE PROPERTIES, LLC, et al., | § § § | |
| Respondents. | § | |

**JOHN QUINLAN, OMAR KHAWAJA, AND OSAMA ABDULLATIF'S RESPONSE TO JETALL COMPANIES, INC., ARABELLA PH 3201 LLC, 9201 MEMORIAL DR. LLC, 2727 KIRBY 26L LLC, DALIO HOLDINGS I, LLC, DALIO HOLDINGS II, LLC, SHEPHERD-HULDY DEVELOPMENT I, LLC, SHEPHERD-HULDY DEVELOPMENT II, LLC, AND GALLERIA LOOP NOTE HOLDER LLC MOTION TO DISMISS COMPLAINT (ECF NO. 261), SHANAZ CHOUDHRI'S MOTION TO DISMISS COMPLAINT (ECF NO. 260), AND ALI CHOUDHRI'S JOINDER IN THE MOTION TO DISMISS, WITHDRAWAL OF REFERENCE AND STATEMENT OF CONSENT (ECF NO. 264) AND BRIEF IN SUPPORT**

Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif (collectively the "Plaintiffs"), file this response to Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Dalio Holdings I, LLC, Dalio Holdings II, LLC, Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, and Galleria Loop Note Holder LLC Motion to Dismiss Complaint (ECF No. 261), Shanaz Choudhri's Motion to Dismiss Complaint (ECF No. 260), and Ali Choudhri's Joinder in the Motion to Dismiss, Withdrawal of Reference

1

and Statement of Consent (ECF No. 264) (collectively the "Motions to Dismiss") and Brief in Support of Plaintiffs' opposition thereto and would respectfully show the Court as follows:

### I. SUMMARY OF RESPONSE

1. Defendants, Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Dalio Holdings I, LLC, Dalio Holdings II, LLC, Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, Galleria Loop Note Holder LLC, Shanaz Choudhri, and Ali Choudhri (collectively the "Defendants"), have each filed identical motions to dismiss Plaintiffs' Complaint (ECF Nos. 261, 260, 264). Plaintiffs file this brief in response to all three of the motions to dismiss.

2. In their motions, Defendants assert that the Court lacks constitutional authority and subject matter jurisdiction over the claims, that the Plaintiffs failed to satisfy the pleading standards under Federal Rule of Civil Procedure 8(a), 9(b), and 12(b)(6), and that Plaintiffs improperly pleaded alter ego and joint enterprise theories of liability. However, as discussed at length below, the Court has jurisdiction over this dispute because it is at least "related to" the bankruptcy proceeding, and the narrow limitation imposed by *Stern* does not apply or deprive the Court of its jurisdiction over this proceeding. Further, Plaintiffs' Complaint contains sufficient factual allegations to support their claim for fraudulent transfer and for the imposition of liability under an alter ego theory. Even if the Court were persuaded that Plaintiffs failed to properly plead some or all of their claims, the Court must allow them an opportunity to cure any such pleading defects. Finally, both joint enterprise and alter ego are recognized bases for imposing liability under Texas law. Thus, the Court should deny Defendants' Motions to Dismiss.

## II. Background

3. On October 7, 2022, Debtor filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

4. One of the creditors moved to convert the case to Chapter 7 and or appoint a Trustee (Main Case, ECF No. 57). The case was converted to Chapter 7 on March 8, 2023 (Main Case, ECF No. 74). The Court appointed Randy Williams as Trustee ("Trustee").

5. On June 28, 2023, Plaintiffs moved for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) so that Movants could "exercise whatever legal rights and remedies they might have against the Debtor and the properties and or related entities, and for such other relief and further relief to which it may be entitled." (Main Case, ECF No. 112). Therein, Plaintiffs identified the contentions that would be made and the claims they sought to bring in the adversary proceeding (Main Case, ECF No. 112, para. 6–8). The Trustee was unopposed, or acquiesced, to the relief requested and the actions of Plaintiffs. After oral hearing on the motion in which the Debtor asserted objections to the request, the Court granted the requested relief sought by Plaintiffs finding that "[Plaintiffs] seek relief only against the Trustee so that the [Plaintiffs] may sue the debtor in an adversary proceeding. Again, this relief is unopposed by the Trustee, and on that basis, it is granted." (Main Case, ECF No. 132).

6. Upon being granted such relief from the Court, Plaintiffs initiated this adversary proceeding through their Original Complaint in which the claims for fraudulent transfer, fraud, alter ego liability, and joint business enterprise liability were asserted against Debtor and Defendants (ECF No. 1).

7. Defendants now move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6) (ECF Nos. 261, 260, 264).

### III. ARGUMENTS & AUTHORITIES

**A. Defendants' Motions to Dismiss should be denied because the Court has subject matter jurisdiction over Plaintiffs' claims.**

8. Debtor challenges the Court's jurisdiction to adjudicate the claims set forth in Plaintiffs' adversary proceeding. Jurisdiction over bankruptcy cases and proceedings is conferred on federal district courts under 28 U.S.C. § 1334. *See* 28 U.S.C. § 1334. The jurisdiction of a bankruptcy court was described in *In re US Brass Corp.* as follows:

> Section 1334 grants the federal district courts jurisdiction over four types of bankruptcy matters: (1) "cases under title 11," (2) "proceedings arising under title 11," (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. The first category refers to the bankruptcy petition itself. The second, third, and fourth categories, all listed in § 1334(b), "operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." A proceeding is "related to" a bankruptcy if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."
>
> \*\*\*
>
> Specifically, § 157(b)(1) gives bankruptcy courts full judicial power over "all cases under title 11 and all core proceedings arising under title 11, or arising in [or related to] a case under title 11, referred under…this section…" Non-core proceedings that are "otherwise related to a case under title 11" may be heard by a bankruptcy judge, but any final order or judgment must be entered by the district court. Thus, if a matter within the broad scope of § 1334(b) satisfies the more precise notion of a core proceeding, § 157 authorizes the bankruptcy court to decide the matter and enter a final judgment. Although the statute does not define core proceedings, subsection (b)(2) does provide a nonexclusive list of examples. Moreover, we have held that § 157 equates core proceedings with the categories of "arising under" and "arising in" proceedings; therefore, a "proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

*In re U.S. Brass Corp.*, 301 F.3d 296, 303–04 (5th Cir. 2002). "Core proceedings include…proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H). In determining whether a matter is "related to" a bankruptcy proceeding, "[c]ertainty…is 'unnecessary; an action is 'related to' bankruptcy if the outcome could alter,

4

positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.'" *In re TMT Procurement Corp.*, 764 F.3d 512, 526 (5th Cir. 2014). "[J]urisdiction will attach on a finding of any *conceivable* effect." *See In re Canion*, 196 F.3d 579, 587 (5th Cir. 1999).

9. In *In re Canion*, the Fifth Circuit found that the bankruptcy court had jurisdiction over a judgment creditor's claims against associates of the debtor for conspiracy, fraud, fraudulent transfer under the Texas Uniform Fraudulent Transfer Act, and alter ego liability where the judgment creditor alleged that the defendants conspired to conceal the debtor's asserts and thwart collection efforts. *See In re Canion*, 196 F.3d 579, 581–82 (5th Cir. 1999). In determining that the bankruptcy court had jurisdiction over the claims, the court noted that it was only necessary to determine whether the matter was at least "related to" the bankruptcy. *Id*. at 584. The court concluded that the matter was at least "related to" the bankruptcy because, at the time the case was referred to the bankruptcy court, the outcome of the claims could have affected the debtor's bankruptcy estate including by potentially reducing the claims against the bankruptcy estate. *Id*. at 586–87. "This decrease would inure to the benefit of all other unsecured creditors, each of whom would then share in the disbursement that would otherwise have been paid to [the judgment creditor]." *Id*.

10. Similarly, here, Plaintiffs asserted that Debtor and Defendants are alter egos of each other and defrauded creditors through a series of fraudulent transfers (ECF No. 1). Plaintiffs pleaded claims against Debtor and associates of the Debtor for fraudulent transfer, fraud, alter ego liability, and joint enterprise liability (ECF No. 1). Like in *In re Canion*, if the Debtor and Defendants are found to have engaged in fraudulent transfers, are shown to be alter egos of each other, or are shown to have engaged in a joint enterprise, then the outcome of this proceeding could

"conceivably have any effect on the estate being administered in bankruptcy." *See, e.g., In re Canion*, 196 F.3d at 585. Specifically, if Plaintiffs can collect from Defendants the judgments held against Debtor, then the total amounts due on claims against the Debtor's bankruptcy estate may be affected. *See id* at 587. Further, Plaintiffs' claim for fraudulent transfer is a core proceeding under the plain text of § 157(b)(2)(H). Thus, the Court has jurisdiction over this dispute because it is at least "related to" the bankruptcy proceeding.

11. Defendants are erroneous in their assertion that *Stern v. Marshall*, 564 U.S. 462 (2011) determined that a bankruptcy court does not have authority to adjudicate state common law claims. This Court previously recognized that "[i]n *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court 'lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of a ruling on a creditor's proof of claim.'" *See In re Ford Steel, LLC*, 629 B.R. 871, 877–78 (Bankr. S.D. Tex. 2021). This Court further found that "[t]he ruling in *Stern* was limited to the one specific type of core proceeding involved in that dispute, which is not implicated here." *Id*. Thus, Defendants' argument is without merit and the "narrow limitation imposed by *Stern*" does not deprive the Court of jurisdiction over this proceeding. As a result, this Court has subject matter jurisdiction to preside over this adversary proceeding and should deny Defendants' Motions to Dismiss.

**B. Defendants' Motions to Dismiss should be denied because Plaintiffs' Complaint satisfies the applicable pleadings standards.**

12. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable through Bankruptcy Rule 7012, is appropriate only if the movant has not provided fair notice of its claims and factual allegations that—when accepted as true—are plausible and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Bankr. P. 7012.

6

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). According to the Fifth Circuit, motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *See Collins v. Morgan Stanley DeanWitter*, 224 F.3d 496, 498 (5th Cir. 2000). The task of a court under Rule 12(b)(6) is not to evaluate the plaintiff's likelihood of success—instead, a court must only decide whether the plaintiff states a "legally cognizable claim that is plausible." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). Under Rule 12(b)(6), the issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

13. Federal Rule of Civil Procedure 8(a)(2), made applicable through Bankruptcy Rule 7008, requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (1989). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

14. Defendants assert that the Court should dismiss the Complaint under Federal Rule of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6) because Plaintiffs failed to meet the pleading standards. However, as shown below, Plaintiffs have pleaded sufficient facts to state a plausible claim for relief and satisfy the applicable pleading standards.

7

> ***i. Plaintiffs have pleaded sufficient factual allegations to support their claim for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act.***

15. Under Federal Rule of Civil Procedure 9, made applicable through Bankruptcy Rule 7009, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See id*.

16. In this case, Plaintiffs' claim for fraudulent transfer is brought under sections 24.005 and 24.006 of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See* Tex. Bus. & Com. Code §§ 24.005, 24.006. Under Section 24.005(a)(1), a transfer is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, if the debtor made it with actual intent to hinder, delay, or defraud its creditors. *See* Tex. Bus. & Com. Code § 24.005(a)(1). Thus, the elements of an actual fraudulent transfer under TUFTA are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay or defraud any of the debtor's creditors. *See* Tex. Bus. & Com. Code § 24.005; *see also Jones v. Dyna Drill Techs., LLC,* No. 01-16-01008-CV, 2018 Tex. App. LEXIS 6689, at *14 (Tex. App.—Houston [1st Dist.] Aug. 23, 2018, no pet.). "Actual fraudulent intent is rarely susceptible to direct proof; therefore, the requisite intent may be proved circumstantially by presenting evidence of certain 'badges of fraud' that may cumulatively give rise to an inference of intent to hinder, delay, or defraud." *ASARCO LLC v. America Mining Corp.*, 396 B.R. 278, 370 (S.D. Tex. 2008).

17. Plaintiffs pleaded sufficient facts to support the elements of fraudulent transfer and several badges of fraud in paragraphs 37-41 of the Complaint (ECF No. 1). Specifically, Plaintiffs alleged that they have several judgments against Defendants making them creditors and making Defendants debtors (ECF No. 1). Additionally, Plaintiffs identify a series of specific factual

scenarios in which Defendants acted in an attempt to hinder collection of the debt or defraud Plaintiffs. For example, the following facts supporting several badges of fraud were identified in the Complaint:

(a) Choudhri reserved ownership interests in certain alter ego companies and concealed transfers through the utilization of agency agreements despite making it appear as though he was no longer an owner or involved. These include, *at least*, REIT, Dalio I, Dalio II, Shepherd I, Shepherd II. The purpose of these agency agreements was to allow Choudhri to hide his ownership interest, involvement, and control of the assets, as well as conceal his assets from creditors.

(b) The Choudhri Defendants comingle funds, pay the debts of the other, and divert company profits. On or about July 10, 2020, Galleria Loop paid the personal income taxes to the Internal Revenue Service of Shanaz Choudhri. On or about January 31, 2022, Jetall paid the real property taxes for real property owned by Kirby. Also on January 31, 2022 Jetall paid the real property taxes for real property owned by Memorial. Also on January 31, 2022, Jetall paid the real property taxes for real property owned by Arabella. Further, on August 16, 2022, Jetall paid the real property taxes for the real property owned by Kirby. Additionally, on October 26, 2022, Galleria Loop paid the real property taxes for the real property owned by Arabella.

(c) The Choudhri Defendants are also encumbering assets with liabilities to dissuade creditors from collection, which further supports a fraudulent transfer finding. On the last page of Exhibit 21, Choudhri's November 2021, Financial Statement is a list of properties allegedly owned by Choudhri along with the liabilities associated with each. Seven (7) of those properties were unencumbered by any "liabilities." Since that time, Choudhri has systematically encumbered the properties with debt for no apparent business purpose and absconding with the cash. Some of the properties allegedly encumbered or transferred by the Choudhri Defendants include: [i] **9201 Memorial Drive.** On November 2, 2022, Choudhri obtained a loan for $2,760,000.00 from Cypress BridgeCo, LLC, another "mezzanine" or "hard money" lender, pledging the previously unencumbered 9201 Memorial Dr. property as collateral; [ii] **2727 Kirby 26L.** Also on November 2, 2022, Choudhri obtained another loan for $2,079,000.00 from Cypress BridgeCo, LLC pledging the previously unencumbered 2727 Kirby 26L property as collateral; [iii] Memorial Glen Cove, LLC is a Texas limited liability company owned and or controlled by Choudhri. Pursuant to the Texas Secretary of State, Memorial Glen Cove LLC is managed by Memorial Park LLC. A Texas limited liability company also owned and or controlled by Choudhri.33 VGRP Holdings LLC allegedly obtained a deed of trust in its favor after presumably loaning money to Choudhri secured by properties that he owned individually but then placed into Memorial Glen Cove LLC. Memorial Glen Cove LLC, Memorial Park LLC, and VGRP Holdings LLC, are Texas limited liability companies all owned and or controlled by Choudhri.

      Note that, at least, the first two aforementioned debts were allegedly incurred a mere nineteen (19) days before the final judgment in Lawsuit 1 was rendered.

(d)    Choudhri also made fraudulent transfers of real property too. The following real properties were deeded from Choudhri to Memorial Glen Cove LLC (another entity that Choudhri owns or controls) just before judgment in Lawsuit 1 was rendered against Choudhri and HREP. [i] **402 Terrace Dr.** On November 15, 2022, Choudhri allegedly transferred a property identified as 402 Terrace Dr., Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [ii] **3550 Charleston St.** Also, on November 15, 2022, Choudhri transferred a property identified as 3550 Charleston St., Houston, Texas 70021 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [iii] **6531 Rodrigo St.** Again, on November 15, 2022, Choudhri transferred a property identified as 6531 Rodrigo St., Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [iv] **5803 Blossom St.** Again, on November 15, 2022, Choudhri transferred a property identified as 5803 Blossom Street, Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; [v] **207 Malone St.** Again, on November 15, 2022, Choudhri transferred a property identified as 207 Malone Street, Houston, Texas 77007 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."; and [vi] **4401 Schurmier Road.** Again, on November 15, 2022, Choudhri transferred a property identified as 4401 Schurmier Road, Houston, Texas 77048 to the entity coined Memorial Glen Cove, LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged." Upon information and belief, Choudhri has been transferring properties like these and the others, between himself and other business entities that he owns or controls or to various third parties (not for reasonable value) in an effort to hinder and delay Plaintiffs efforts of collecting their judgment.

(ECF No. 1, paras. 35-41). These facts are sufficient to identify a plausible claim under Federal Rule of Civil Procedure 12(b)(6) and satisfy the pleading standards imposed by Federal Rules of Civil Procedure 8(a)(2) and 9(b).

    18.    Defendants further complain that the Complaint is deficient because there is no showing that less than a reasonably equivalent value was received in exchange or that the entity allegedly making the transfers was insolvent or rendered insolvent by those transfers (ECF Nos.

261, 260, 264). However, these are not elements of a cause of action under section 24.005. *See* Tex. Bus. & Com. Code § 24.005. Additionally, as it relates to Plaintiffs' claim under section 24.006, Plaintiffs alleged that the obligations arose beginning in 2020 (ECF No. 1, para. 23). The Complaint acknowledges the Debtor's bankruptcy proceeding and identifies numerous entities that were stripped of all assets through the transfers. Plaintiffs' Complaint details a series of transactions that occurred in November of 2022 and alleges that reasonably equivalent values were not received in exchange for the transfers (ECF No. 1, para. 35–41). As such, Plaintiffs satisfied the pleading standards applicable to their claim for fraudulent transfer.

### ii. *Plaintiffs have sufficiently pleaded all elements of an alter ego theory of recovery.*

19. Defendants further assert that Plaintiffs failed to plead sufficient facts that support a vicarious liability theory of alter-ego (ECF Nos. 261, 260, 264). Under an alter ego theory, the corporate veil can be pierced if the corporation was organized and operated as a mere tool or business conduit of a person or another corporation. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). To show alter-ego, a plaintiff must show a unity between the parties such that the separateness of a single corporation has ceased and that holding only the single corporation liable would result in injustice. *Id*.

20. Paragraphs 29 through 34 of Plaintiffs' Complaint recite sufficient factual allegations to show a unity between Debtor and/or Defendants (ECF No. 1). Specifically, Plaintiffs alleged that Defendants commingle funds, pay the debts of the other, and divert company profits (ECF No. 1, para. 31). The Complaint provides that on or about July 10, 2020, Galleria Loop paid the personal income taxes of Shahnaz Choudhri to the Internal Revenue Service (ECF No. 1, para. 31). The Complaint further provides that Jetall paid the real property taxes for real property owned by Kirby, Memorial, and Arabella (ECF No. 1, para. 31). Additionally, the Complaint alleges that

on October 26, 2022, Galleria Loop paid the real property taxes for real property owned by Arabella (ECF No. 1, para. 31).

21. Further, Plaintiffs alleged that Choudhri testified that he financially backs Jetall or HREP, or whichever one of his business entities is in litigation at the time (ECF No. 1, para. 32). The Complaint alleges that Choudhri testified that he is HREP and that HREP is him (ECF No. 1, para. 32). Plaintiffs further allege in the Complaint that Choudhri testified that he is the 100% owner of Jetall and implied that he is responsible for the debts of Jetall (ECF No. 1, para. 32). The Complaint further provides that Choudhri has admitted to diverting profits and that Choudhri testified that funds received by HREP were actually his funds (ECF No. 1, para. 32).

22. Plaintiffs also pleaded that on or about August 15, 2017, Jetall filed a Texas Franchise Tax Report identifying a plethora of business entities that Jetall claims are "affiliates" of Jetall when, in fact, there is no legal connection between the companies (ECF No. 1, para. 33). The Complaint states that two of the companies identified as "affiliates" of Jetall are REIT and HREP (ECF No. 1, para. 33). Additionally, the Complaint asserts that Choudhri filed documents with the State of Texas claiming that he is the President, manager, and member of HREP, but this assertion is inconsistent with the HREP's sworn Schedules in this case (ECF No. 1, para. 33).

23. Thus, Plaintiffs' assertions are sufficient to state a "legally cognizable claim that is plausible" for an alter ego theory of liability.

**C. Defendants' Motions to Dismiss should be denied because alter ego and joint enterprise liability are recognized bases for imposing liability in Texas jurisprudence.**

24. Finally, Defendants assert that the Complaint should be dismissed because alter ego and joint enterprise liability are not causes of action under Texas law (ECF Nos. 261, 260, 264). However, both alter ego and joint enterprise are recognized theories for imposing liability on a defendant.

12

25. Defendants cite *SSP Partners v. Gladstrong Investments,* 275 S.W.3d 444, 456 (Tex. 2008) in support of their assertion that a plaintiff cannot pierce the corporate veil merely because the corporations were acting as a "single business enterprise" (ECF Nos. 261, 260, 264). However, as explicitly recognized by Defendants in their motion, *SSP Partners* analyzed the "single business enterprise" theory, not joint enterprise liability that Plaintiffs assert here. *See SSP Partners,* 275 S.W.3d at 451 ("SSP does not contend that Gladstrong USA and Gladstrong Hong Kong are jointly liable as participants in what Texas law calls a joint venture or joint enterprise (not to be confused with single business enterprise)").

26. Contrary to Defendants' assertions, both joint enterprise and alter ego are recognized as means for imposing liability on a defendant. Joint enterprise liability has been recognized as a distinct theory of liability available upon a showing that a defendant and other parties had an express or implied agreement, a common purpose, a community of pecuniary interest, and an equal right to a voice in the direction of the enterprise. *See Texas DOT v. Able*, 35 S.W.3d 608, 613 (Tex. 2000); *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513 (Tex. 2000); *Seareau v. ExxonMobil Corp*. 274 S.W.3d 206, 222 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Further, the corporate veil may be pierced upon a theory of alter ego "where a corporation is organized and operated as a mere tool or business conduit of another…" *Tryco Enters. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd). Thus, joint enterprise and alter ego are recognized bases for imposing liability under Texas law and the Court should deny the Motions to Dismiss.

## IV. PRAYER

Plaintiffs have shown that the Court has constitutional authority and subject matter jurisdiction, and that their Complaint complies with pleading standards of the Federal Rules of Civil Procedure. Thus, Plaintiffs respectfully request that the Court deny Defendants' Motions to Dismiss, and that Plaintiffs be granted all such other relief that they may show themselves entitled.

DATED: November 22, 2024.

Respectfully submitted,

**HOOVER SLOVACEK LLP**

By: */s/ Christopher J. Kronzer*
Steve A. Leyh
State Bar No. 12318300
Email: leyh@hooverslovacek.com
T. Michael Ballases
State Bar No. 24036179
Email: ballases@hooverslovacek.com
Angeline V. Kell
State Bar No. 24040009
Email: kell@hooverslovacek.com
Christopher J. Kronzer
State Bar No. 24060120
Email: kronzer@hooverslovacek.com
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing document, *Plaintiffs' Response to Defendants' Motions to Dismiss and Brief in Support*, has been served electronically upon each of the parties on the Court's ECF Service List maintained in this case on November 22, 2024, and as evidenced below.

| | | |
|---|---|---|
| Houston Real Estate Properties, LLC<br>2500 West Loop South, Suite 255<br>Houston, Texas 77027<br>ali@jetallcompanies.com | Ali Choudhri<br>2500 West Loop South, Suite 255<br>Houston, Texas 77027<br>ali@jetallcompanies.com | Shahnaz Choudhri<br>2500 West Loop South, Suite 255<br>Houston, Texas 77027<br>ali@jetallcompanies.com |
| Jeannie Lee Anderson<br>Linebarger Goggan Blair & Sampson LLP<br>P.O. Box 3064<br>Houston, Texas 77253-3064<br>Houston_bankruptcy@lgbs.com | Rodney Lee Drinnon<br>McCathern Houston<br>2000 West Loop South, Suite 1850<br>Houston, Texas 77027<br>ndrinnon@mccathernlaw.com | Michael J. Durrschmidt<br>Hirsch & Westheimer, P.C.<br>1415 Louisiana, 36th Floor<br>Houston, Texas 77002<br>mdurrschmidt@hirschwest.com |
| Bennett Greg Fisher<br>Lewis Brisbois Bisgaard & Smith<br>24 Greenway Plaza, Suite 1400<br>Houston, Texas 77046<br>Bennett.fisher@lewisbrisbois.com | Melissa S. Hayward<br>Hayward PLLC<br>1050 N. Central Expwy, Suite 106<br>Dallas, Texas 75231<br>mhayward@haywardfirm.com | James Q. Pope<br>The Pope Law Firm<br>6161 Savoy, Suite 1125<br>Houston, Texas 77036<br>ecf@thepopelawfirm.com |
| Melissa E. Valdez<br>Perdue Brandon Felder Collins & Mott<br>1235 North Loop West, Suite 600<br>Houston, Texas 77008<br>mvaldez@pbfcm.com | Ruth A. Van Meter<br>Hayward PLLC<br>10501 N. Central Expwy, Suite 106<br>Dallas, Texas 75231<br>rvanmeter@haywardfirm.com | Timothy L. Wentworth<br>Okin Adams, LLP<br>1113 Vine St., Suite 240<br>Houston, Texas 77002<br>twentworth@okinadams.com |
| Jana Smith Whitworth<br>Office of United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Jana.whitworth@usdoj.gov | info@bridgecofinancial.com | Kelly.williams@bridgecofinancial.com |
| glancaster@lancasterlawfirmpllc.com | Akw@milestoneVG.com | jamesp@thepopelawfirm.com |

jmac@jlm-law.com

                              By: */s/ Christopher J. Kronzer*
                                   Christohper J. Kronzer