IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOUSTON REAL ESTATE PROPERTIES, LLC, | § | CASE NO. 22-32998 |
| | § | (Chapter 7) |
| Debtor. | § | |
| _____ | § | |
| JOHN QUINLAN, OMAR KHAWAJA, | § | |
| AND OSAMA ABDULLATIF, | § | |
| Plaintiffs, | § | ADVERSARY NO. 23-03141 |
| | § | |
| v. | § | |
| | § | |
| HOUSTON REAL ESTATE PROPERTIES, | § | |
| LLC, et al., | § | |
| Defendants. | § | |

---

**JOHN QUINLAN's, OMAR KHAWAJA's, and OSAMA ABDULLATIF's
RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(ECF NO. 266) and BRIEF IN SUPPORT**

---

Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, file this Response to Defendants'[1] Motion for Summary Judgment and request for this Court to deny Defendants' summary judgment (the "**Motion**").

## I. SUMMARY OF RESPONSE

1.     Defendants[2] seek summary judgment on Plaintiffs' claim for fraud and liability based on an alter ego theory. Importantly, the fraud claims for which Defendants' Motion seeks summary judgment is brought solely against Defendant, Ali Choudhri, who has not joined

---

[1] ECF Doc. No. 266, the Motion, was filed by "Rob Teir", who has never, to the best of the undersigned counsel's recollection, made an appearance in this case and who claims to now be co-counsel for the debtor, Houston Real Estate Properties, LLC.

[2] Note also that the Motion does not purport to seek summary judgment for Ali Choudhri or Shahnaz Choudhri.

Defendants in their Motion. The fraud-related claims asserted against certain Defendants were for claims of fraudulent transfer, a distinct cause of action for which summary judgment is not sought by Defendants.

2.      The Court should deny Defendants' Motion because Defendants failed to meet their burden of demonstrating an absence of evidence to support Plaintiffs' claims. Additionally, Defendants' Motion should be denied as Plaintiffs have presented sufficient evidence to support Plaintiffs' claim for fraud and alter ego theory of liability. Plaintiffs submit this brief to identify the pertinent facts and arguments in support of Plaintiffs' response.

## II. INTRODUCTION

3.      Plaintiffs in this case are John Quinlan, Omar Khawaja, and Osama Abdullatif ("**Plaintiffs**"). Defendants are Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Texas REIT LLC[3], Dalio Holdings I, LLC, Dalio Holdings II, LLC, Houston Real Estate Properties, LLC *[Debtor]*, Shahnaz Choudhri, Ali Choudhri, Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, Galleria Loop Note Holder LLC, Otisco rdX, LLC, MCITBE, LLC, Jetall/Croix Properties LP, and its general partner Jetall/Croix GP, LLC.

4.      In this suit, Plaintiffs contend that Defendants are alter egos of each other and have intentionally acted in a manner to defraud creditors and evade legal obligations through a series of fraudulent transfers of real and personal property. Ali Choudhri is the puppeteer controlling his web of business entities, which hold his various properties and other assets. This web includes Houston Real Estate Properties, LLC and Jetall Companies, Inc., as well as the other named defendants.

---

[3] This entity filed for bankruptcy protection and this response is not intended to violate any stay or bankruptcy rule. Moreover, the claims against REIT have been severed and are abated.  See ECF No. 148 in this case.

5.      On October 7, 2022, HREP filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

6.      On August 1, 2023, Plaintiffs filed their Original Complaint (ECF No. 1), asserting claims against Jetall Companies, Inc. ("**Jetall**"), Arabella PH 3201 LLC ("**Arabella**"), 9201 Memorial Dr. LLC ("**Memorial**"), 2727 Kirby 26L LLC ("**Kirby**"), Texas REIT LLC ("**REIT**")[4], Dalio Holdings I, LLC ("**Dalio I**"), Dalio Holdings II, LLC ("**Dalio II**"), Houston Real Estate Properties, LLC *[Debtor]* ("**HREP**"), Shahnaz Choudhri ("**S. Choudhri**"), Ali Choudhri ("**Choudhri**"), Shepherd-Huldy Development I, LLC ("**Shepherd I**"), Shepherd-Huldy Development II, LLC ("**Shepherd II**"), and Galleria Loop Note Holder LLC ("**Galleria Loop**") for fraudulent transfers under the Chapter 24 of the Texas Business and Commerce Code ("**TUFTA**"), alter ego, and joint enterprise liability. In addition, Plaintiffs asserted a claim for fraud against Choudhri.

7.      On March 20, 2024, Plaintiffs filed their Second Supplemental Complain (ECF No. 158) to add Otisco rdX, LLC ("**Otisco rdX**") as a defendant. Plaintiffs claim Otisco rdX is liable under theories of alter ego and joint enterprise liability.

8.      On June 10, 2024, Plaintiffs filed their Third Supplemental Complaint (ECF No. 174) to add MCITBE, LLC ("**MCITBE**"), Jetall/Croix Properties LP ("**Jetall/Croix LP**"), and Jetall/Croix GP, LLC ("**Jetall/Croix GP**") as defendants. Plaintiffs asserted theories of liability under alter ego and joint enterprise liability.

9.      Summary judgment is improper in this case because Defendants failed to meet their initial burden and Plaintiffs have presented substantial evidence that not only raises an issue of material fact on their claims, but conclusively establishes each element.

---

[4] This entity filed for bankruptcy protection. The claims against REIT have been severed and are abated. See ECF No. 148 in this case.

### III. STATEMENT OF FACTS

10.     Plaintiffs collectively hold three judgments and stand in the shoes of four different

judgment-creditors against Jetall, Choudhri, and HREP, noted below:

    a.    On June 23, 2020, the trial court in Cause No. 2017-10832, *Jetall Companies, Inc., v. Richard Heil, et al.*; filed in the 152nd Judicial District Court of Harris County, Texas (the "**2017 Lawsuit**") rendered a final judgment against Jetall Companies (the "**Heil Judgment**").[5] The final judgment was affirmed and rendered by the First District Court of Appeals on August 16, 2022.[6] Subsequently, on February 17, 2023, Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, obtained an assignment of the Heil Judgment from both judgment creditors.[7]

    b.    On October 31, 2020, the trial court in Cause No. 2020-38738, *Jetall Companies, Inc. v. Hoover Slovacek LLP*; filed in the 164th Judicial District Court of Harris County, Texas ("**2020 Lawsuit**") rendered a final judgment against Jetall Companies (the "**HS Judgment**").[8] The final judgment was affirmed and rendered by the Fourteenth District Court of Appeals on March 29, 2022.[9] Subsequently, on February 17, 2023, Plaintiffs, John Quinlan, Omar Khawaja, and Osama Abdullatif, obtained an assignment of the HS Judgment from the judgment creditor.[10]

    c.    On November 21, 2022, the trial court in Cause No. 2013-41273, styled *Osama Abdullatif and Abdullatif & Company, LLC v. Ali Choudhri and Houston Real Estate Properties, LLC*, in the 334th Judicial District Court of Harris County (the "**2013 Lawsuit**") rendered a final judgment against Choudhri and HREP (the "**Abdullatif Judgment**").[11] Osama Abdullatif and Abdullatif & Company, LLC are the judgment holders.

These judgments against HREP and the respective Defendants remain unpaid.

---

[5] *See* **Ex. A**, Heil Judgment. *See also* Ex. 1 (92-1 to 92-4) from ECF Doc. No. 92, which is incorporated herein by reference.

[6] *See* **Ex. A**, Heil Judgment.

[7] *See* **Ex. B**, Assignment of Heil Judgment; **Ex. III**, Abdullatif Declaration. *See also* Ex. 1 (92-1) from ECF Doc. No. 92, which is incorporated by reference herein.

[8] *See* **Ex. C**, HS Judgment. See also Ex. 1 (92-1 to 92-4) from ECF Doc. No. 92, which is incorporated herein by reference.

[9] *See* **Ex. C**, HS Judgment.

[10] *See* **Ex. D**, Assignment of HS Judgment.  See also Ex. 1 (92-1 to 92-4) from ECF Doc. No. 92, which is incorporated herein by reference.

[11] *See* **Ex. E**, Abdullatif Judgment.

## APPENDIX OF PLAINTIFFS' SUMMARY-JUDGMENT EVIDENCE

| Exhibit | Document |
|---------|----------|
| **A.** | Heil Judgment (*See ECF. 92-1 to 92-4*) |
| **B.** | Assignment of Heil Judgment (*See ECF. 92-1 to 92-4*) |
| **C.** | HS Judgment (*See ECF. 92-1 to 92-4*) |
| **D.** | Assignment of HS Judgment (*See ECF. 92-1 to 92-4*) |
| **E.** | Abdullatif Judgment |
| **F.** | Jetall's 2016 Texas Franchise Tax EZ Computation Report (*See ECF. 92-5 to 92-8*) |
| **G.** | Jetall's 2022 Texas Franchise Tax Public Information Report |
| **H.** | MCITBE's 2024 Texas Franchise Tax Public Information Report |
| **I.** | 9201 Memorial's 2022 Wyoming Limited Liability Company Annual Report |
| **J.** | 2727 Kirby's 2022 Wyoming Limited Liability Company Annual Report |
| **K.** | HREP's 2024 Texas Franchise Tax Public Information Report |
| **L.** | Shepherd-Huldy I's 2022 Texas Franchise Tax Public Information Report |
| **M.** | Shepherd-Huldy II's 2022 Texas Franchise Tax Public Information Report |
| **N.** | Galleria Loop's 2023 Texas Franchise Tax Public Information Report |
| **O.** | Jetall/Croix Properties LP's 2024 Texas Franchise Tax Public Information Report |
| **P.** | Jetall/Croix Properties GP, LLC's 2024 Texas Franchise Tax Public Information Report |
| **Q.** | 9201 Memorial's Wyoming Certificate of Reinstatement from 2022 |
| **R.** | Otisco rdX's Application for Reinstatement from 2024 |
| **S.** | Skaneateles rdX's Application for Reinstatement from 2024 |
| **T.** | Otisco rdX's 2024 Texas Franchise Tax Public Information Report |
| **U.** | Skaneateles rdX's 2024 Texas Franchise Tax Public Information Report |
| **V.** | Galleria Loop's 2022 Texas Franchise Tax Public Information Report |
| **W.** | HREP's 2022 Texas Franchise Tax Public Information Report |
| **X.** | Dalio Agency Agreement (*See ECF. 92-5 to 92-8*) |
| **Y.** | Shepherd-Huldy Agency Agreement (*See ECF. 92-5 to 92-8*) |
| **Z.** | BridgeCo Business Records Affidavit with Shahnaz Choudhri Agency Agreement (BridgeCo 70-77) |

| AA. | Affidavit of T. Michael Ballases in Support of Attorneys' Fees and Sanctions |
|---|---|
| AA-1. | Arbitration Award making findings of fraud and lying under oath (Case No. 01-19-0002-7577) |
| BB. | Unsworn Declaration of Christopher Wyatt dated August 25, 2022 |
| CC. | BridgeCo Business Records Affidavit with Choudhri Bancorp Statements (BRIDGECO 78-89) |
| DD. | Choudhri Personal Financial Statement |
| EE. | Galleria Loop Check No. 10010357 (*See ECF. 92-17 to 92-25*) |
| FF. | Check No. 2445 (*See ECF. 92-17 to 92-25*) |
| GG. | Check No. 2444 (*See ECF. 92-17 to 92-25*) |
| HH. | Check No. 2446 (*See ECF. 92-17 to 92-25*) |
| II. | Check No. 2626 (*See ECF. 92-17 to 92-25*) |
| JJ. | Galleria Loop Check No. 10874 (*See ECF. 92-17 to 92-25*) |
| KK. | 801 Malone and Tenants checks (to Choudhri) |
| LL. | Deed to 801 Malone (to HREP) |
| MM. | Choudhri Depo. (Cause No 2013-41273) |
| NN. | Choudhri Deposition excerpts (Cause No. 2017-10832) |
| OO. | Business Records Affidavit from Golden Bank with certain records attached |
| PP. | Application for Registration for 2401 Fountainview |
| QQ. | BridgeCo Business Records Affidavit with UBank bank statements (BRIDGECO 105-122) |
| RR. | Shepherd-Huldy Deed of Trust |
| SS. | 2727 Kirby Deed of Trust |
| TT. | 9201 Memorial Deed of Trust |
| UU. | Malone Deed of Trust |
| VV. | Memorial Glen Cove LLC 2016 Texas Franchise Tax Public Information Report |
| WW. | Memorial Glen Cove LLC 2021 Texas Franchise Tax Public Information Report |
| XX. | Memorial Glen Cove LLC Application for Reinstatement |
| YY. | Shahnaz Choudhri Deposition Excerpts |
| ZZ. | Business Record Affidavit for Frost Bank records with certain records attached |
| AAA. | Business Record Affidavit for Cadence Bank records with certain records attached |

| BBB. | Ali Choudhri deeds showing fraudulent transfers |
| CCC. | Meandering Bend LLC 2022 Texas Franchise Tax Public Information Report |
| DDD. | PBAC 507 Holdings, LLC 2023 Texas Franchise Tax Public Information Report |
| EEE. | 50BH Acquisition LLC 2023 Certificate of Formation |
| FFF. | BDFI LLC 2023 Texas Franchise Tax Public Information Report |
| GGG. | VGRP Holdings, LLC 2023 Texas Franchise Tax Public Information Report |
| HHH. | Unsworn Declaration of Christopher Wyatt dated October 19, 2023 |
| III. | Unsworn Declaration of Osama Abdullatif |
| JJJ. | Choudhri Deposition excerpts |

## IV. ARGUMENTS & AUTHORITIES

11.     In instances where a defendant moves for summary judgment on a plaintiff's claims based on the pleadings, a defendant may satisfy its summary judgment burden in one of two ways: (a) the defendant may submit summary-judgment evidence that negates the existence of an essential element of the plaintiff's claim, *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990); or (b) the defendant may show there is no evidence to support an essential element of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the defendant seeks to show that there is no evidence to support a claim, the movant bears the burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Gearhart v. Eye Care Ctrs. of Am.*, 888 F. Supp. 814, 818 (S.D. Tex. 1995).[12]

---

[12] Interestingly, Defendants cite *Sossaman v. Lone Star State of Tex.*, 560 F.3d 316 (5th Cir. 2009) for the proposition that there may be a different summary judgment standard. However, that case confirms that Defendants bear the initial burden to identify the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Id*. at 326 (citing *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005)).

12.     However, a defendant's motion for summary judgment fails when the defendant's brief consists of only conclusory statements that the record lacks evidence as to the elements of a claim. *See St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000). "When a party moves for summary judgment…it is not enough for the moving party to merely make a conclusory statement that the other party has no evidence to prove his case." *Id.* (internal quotations omitted). "Before the nonmoving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues warranting trial." *Id.* (internal quotations omitted).

13.     Upon such a showing by the movant, the non-movant's burden is merely to set forth specific facts showing the existence of a genuine issue for trial and advances convincing theories supporting their materiality. *Id.* The nonmoving party does not have to produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**A.      Defendants' Motion merely makes conclusory statements that Plaintiffs' have no evidence to support their claims and therefore have failed to meet their initial burden.**

14.     Here, Defendants, as movants, have the initial burden to show "that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp.*, 477 U.S. at 325. Defendants failed to meet this burden in their Motion. Instead, Defendants merely make conclusory allegations that there is an absence of evidence to support essential each of the elements and assert that Plaintiffs must produce "more than a scintilla of evidence on **every one** of these elements." (ECF No. 266). Defendants cite absolutely no evidence in their Motion to show an absence of a genuine issue of material fact or an absence of evidence to support Plaintiffs' claims. At best, Defendants assert generally they are not alter-egos of each other, which will be addressed *infra*, but do not raise issues as to any absence of genuine issues of material fact, even in passing.

**B.**   **Plaintiffs have presented substantial evidence that not only raises an issue of material fact on their claims, but conclusively establishes each element of their claims.**

15.     Without any guidance in Defendants' Motion as to which elements of the claims are being disputed, Plaintiffs provide evidence herein which conclusively establishes each element of their claims.

> *i.*     *There is sufficient evidence to establish that Defendants are alter egos of HREP and Choudhri.*

16.     To pierce the corporate veil and impose liability under an alter ego theory, a plaintiff must show: (1) that the entity on which it seeks to impose liability is the alter ego of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit. *U.S. KingKing, LLC v. Precision Energy Servs.*, 555 S.W.3d 200, 213–14 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Generally, proving alter ego involves two elements: (i) unity between the corporation and individual such that the separateness of the corporation has ceased; and (ii) a finding that holding only the corporation liable would result in injustice. *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 516 (Tex. App.—San Antonio 2001, pet. denied). Unity between an entity and its alter ego is often established by evidence showing a blending of identities or blurring of lines of distinction. *Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838, 843 (Tex. App.—Houston [1st Dist.] 1987, no writ).

17.     In determining alter ego status, courts consider whether: (1) the entities shared common business names, offices, employees, or accounting; (2) one company paid the others' employees; (3) one entity performed services on behalf of the other; (4) one entity made undocumented transfers of funds to the other; (5) there is a clear allocation of profits and losses between the two entities; (6) there was a commingling of funds, or one entity paid the debts of

another; (7) one entity represented that it would financially back the other; (8) company profits were diverted from one entity to the other; (9) there was inadequate capitalization on one entity; and (10) there were other failures to keep assets separate. *Salvex, Inc. v. Transfair N. Am. Int'l Freight Servs.*, No. 4:18-cv-1175, 2020 U.S. Dist. LEXIS 144293, at *23 (S.D. Tex. 2020). A court may also consider: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failures to keep corporate and personal assets separate. *Sparks v. Booth*, 232 S.W.3d 853, 865-68 (Tex. App.—Dallas 2007, no pet.). "Courts will disregard the corporate fiction 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.'" *Durham v. Accardi*, 587 S.W.3d 179, 185 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

18.     The evidence here establishes that HREP, Choudhri, and Defendants are one and the same, acting as alter egos of one another. HREP, Choudhri, and Defendants shared the same offices, directors, and employees. Jetall's Franchise Tax Public Information Report indicates that Choudhri is the president of the company.[13] The Texas Franchise Tax Public Information Report for Texas REIT[14] and HREP similarly list Choudhri as Director and Member, respectively.[15] Similarly, for other entities, the chart below lists the information from the annual reports filed by Defendants with either the Texas Secretary of State or the Wyoming Secretary of State, which establish clear commonalities between the entities, denoted in green:

| Defendant | Director Listed | Address Listed | Report Signed by |
|-----------|-----------------|----------------|------------------|

---

[13] *See* **Ex. F**, Texas Franchise Tax EZ Computation Report for the year ended December 31, 2016, for Jetall.  See also Ex. 2 (92-5 to 92-8) from ECF Doc. No. 92, which is incorporated herein by reference.

[14] Plaintiffs' claims against Texas REIT were abated and severed pending further order of this Court, because Texas REIT filed bankruptcy after the filing of this adversary case. *See* ECF Doc.  No. 148.

[15] *See* **Ex. F**, Texas Franchise Tax EZ Computation Report for the year ended December 31, 2016, for Jetall.

| | | | |
|---|---|---|---|
| **Jetall**[16] | Ali Choudhri, *President and Director* | 1001 West Loop South, Ste 700 Houston, TX 77027 | Ali Choudhri |
| **MCITBE**[17] | Ali Choudhri, *Director* | 1001 West Loop South, Ste 700 Houston, TX 77027 | Jennifer MacGeorge[18] |
| **Memorial**[19] | *None* | 9201 Memorial Dr. Houston, TX 77021 | Jennifer MacGeorge |
| **Kirby 26L**[20] | *None* | 2727 Kirby #26L Houston, TX 77098 | Jennifer MacGeorge |
| **REIT** | Ali Choudhri, *Manager and Director* | 1001 West Loop South, Ste 700 Houston, TX 77027 | Ali Choudhri |
| **HREP**[21] | Ali Choudhri, *Member* | 1001 West Loop South, Ste 700 Houston, Texas 77027 | Jennifer MacGeorge |
| **Shepherd I**[22] | Shepherd II, *Manager* | 1001 West Loop South, Ste 700 Houston, Texas 77027 | Ali Choudhri |
| **Shepherd II**[23] | Ali Choudhri, *Manager* | 1001 West Loop South, Ste 700 Houston, Texas 77027 | Ali Choudhri |
| **Galleria Loop Note Holder LLC**[24] | Ali Choudhri, *Manager* | 1001 West Loop South, Ste 700 Houston, Texas 77027 | Jennifer MacGeorge |
| **Jetall/Croix Properties LP**[25] | Ali Choudhri, *General PA* | 2500 West Loop South, Suite 255 Houston, Texas 77027 | Scott Simpson |
| **Jetall/Croix Properties GP, LLC**[26] | Ali Choudhri, *Manager* | P.O. Box 132977, Spring, Texas 77393 | Scott Simpson |

---

[16] **Ex. G**, 2022 Texas Franchise Tax Public Information Report for Jetall.

[17] *See* **Ex. H**, 2024 Texas Franchise Tax Public Information Report for MCITBE.

[18] Jennifer MacGeorge is an agent of Jetall. She has appeared in this lawsuit as an attorney for Jetall. (*See* ECF Doc. No. 206) and signs as an agent on numerous corporate documents for Defendants. **See Ex. H, I, J, K, N, Q, FFF.**

[19] **Ex. I**, 2022 Wyoming Limited Liability Company Annual Report for 9201 Memorial.

[20] **Ex. J**, 2022 Wyoming Limited Liability Company Annual Report for 2727 Kirby.

[21] **Ex. K**, 2024 Texas Franchise Tax Public Information Report for HREP.

[22] **Ex. L**, 2022 Texas Franchise Tax Public Information Report for Shepherd-Huldy I.

[23] **Ex. M**, 2022 Texas Franchise Tax Public Information Report for Shepherd-Huldy II.

[24] **Ex. N**, 2023 Texas Franchise Tax Public Information Report for Galleria Loop.

[25] **Ex. O**, 2024 Texas Franchise Tax Public Information Report for Jetall/Croix Properties LP.

[26] **Ex. P**, 2024 Texas Franchise Tax Public Information Report for Jetall/Croix Properties GP, LLC.

19.     Other governmental filings by the Defendants further blend their identities and blur any lines of distinction. In the Texas Franchise Tax Report for Report Year 2017, Jetall identified a slew of business entities that were claimed to be "affiliates" of Jetall despite there being no legal connection between the companies.[27]  Two of the companies identified as "affiliates" of Jetall are REIT and HREP.[28]

20.     Moreover, many of the public filings by the Defendants demonstrate an intent to conceal the commonalities between the parties. For example, while the public filings for Memorial do not list Choudhri or Jetall, the certificate of reinstatement issued by the Wyoming Secretary of State revealed that the "Contact Person" for Memorial is listed as "Evon Hood" with the following email address: evon@**jetallcompanies**.com—ultimately showing that it is related to Jetall and Choudhri.[29]  Similarly, while the public filings for Otisco rdX and Skaneateles rdX do not mention or list Choudhri or Jetall, the reinstatement applications filed with the Texas Secretary of State for Otisco rdX and Skaneateles rdX are signed "/schoudri/" as the "President of Manager"—a direct reference to S. Choudhri.[30] However, the public filings do not disclose S. Choudhri or Choudhri's involvement, but rather both Otisco rdX and Skaneateles rdX list each other as their manager.[31] In other words, while Otisco rdX and Skaneateles rdX publicly report to be each other's manager, these entities are privately controlled by S. Choudhri as their president.

21.     Additionally, in the 2021 Texas Franchise Tax Public Information Report, Galleria Loop listed "Jetall Companies" as its principal place of business but subsequent removed this reference in later filings.[32] Choudhri also filed documents with the State of Texas claiming that he

---

[27] **Ex. F**, Texas Franchise Tax EZ Computation Report for the year ended December 31, 2016, for Jetall.
[28] **Ex. F**, Texas Franchise Tax EZ Computation Report for the year ended December 31, 2016, for Jetall.
[29] **Ex. Q**, Wyoming Certificate of Reinstatement for 9201 Memorial (emphasis added).
[30] **Ex. R**, Application for Reinstatement for Otisco rdX; **Ex. S**, Application for Reinstatement for Skaneateles rdX.
[31] **Ex. T**, 2024 Texas Franchise Tax Public Information Report for Otisco rdX; **Ex. U**, 2024 Texas Franchise Tax Public Information Report Skaneateles rdX.
[32] **Ex. V**, 2022 Texas Franchise Tax Public Information Report for Galleria Loop.

is the President, manager, and member of HREP,[33] but this assertion is inconsistent with the HREP's sworn Schedules in this case, showing Dward Darjean as manager.[34]

22.     For the Defendants that are not publicly related to Choudhri or Jetall, Choudhri privately and clandestinely controlled these entities through the use of agency agreements. For example, through an Agency Agreement, Choudhri appointed Azeemeh Zaheer as an "Agent," to acquire and hold record title to investment properties on behalf of Choudhri through various "Agency Entities," but Choudhri reserved all ownership in the entities and properties for himself.[35] Under this agreement, the "Agency Entities" include Dalio I, Dalio II, and Dalio III as entities formed by Zaheer "to purchase various properties **on behalf of [Choudhri]**."[36] The recitals in this Agency Agreement alone are incredibly troubling, as they detail the framework of their ploy:[37]



**AGENCY AGREEMENT**

THIS AGENCY AGREEMENT is effective as of the 4th day of _July_, 2018 (this "**Agreement**"), by and between ALI CHOUDHRI ("**Principal**"), and BRADLEY S. PARKER and the entities listed in Exhibit A attached hereto and made a part hereof for all purposes formed by Bradley S. Parker (collectively, "**Agent**").

**RECITALS:**

A.     The "**Agency Entities**" (as defined in Exhibit A) have been formed and are held by Bradley S. Parker ("**Parker**") as the organizer or manager or member under various articles of organization and other organizational documents, including, without limitation, regulations and company agreements to purchase various properties on behalf of the Principal, including, without limitation, holding record title to the properties ("**Investment Properties**") owned by any of the Agency Entities and the parties agree that Principal owns (directly or indirectly) one hundred percent (100%) of each of the Agency Entities. The ("**Agent**"), is holding the Agency Entities and Investment Properties solely as the trustee for, or as the nominee of, Ali Choudhri, an individual residing in Texas (the "**Beneficial Owner**"), who is, and has been since the Company's formation, the beneficial owner of 100% of the Agency Entities and Investment Properties and whatever rights, privileges and benefits held, or duties, detriments and obligations owed by the Agency Entities and Investment Properties, belong to, and since the formation of the Company, have belonged to, the Beneficial Owner.

---

[33] **Ex. W**, 2022 Texas Franchise Tax Public Information Report for HREP.
[34] *See* ECF Doc. No. 25 in the main case (Case 22-32998).
[35] **Ex. X**, Dalio Agency Agreement; **Ex. HHH**, Wyatt Declaration.  See also Ex. 2 (92-5 to 92-8) from ECF Doc. No. 92, which is incorporated herein by reference.
[36] **Ex. X**, Dalio Agency Agreement.
[37] **Ex. X**, Dalio Agency Agreement.

Similarly, through another agency agreement, Choudhri appointed Bradley S. Parker as an "Agent" to acquire and hold title to investment properties on behalf of Choudhri.[38] Under this agreement, the "Agency Entities" include Shepherd I and Shepherd II, as entities formed by Parker "to purchase various properties on behalf of [Choudhri]."[39]

23.     Through the use of these agency agreements, Choudhri attempted to create a framework that enables him to control various entities, including Dalio I, Dalio II, Shepherd I, and Shepherd II, maintain complete ownership of the entities and investment properties, but conceal his relation to the entities and his ownership of investment properties. All of these acts are intentional and completed in an effort to feign the appearance that these entities are distinct and separate when in fact they are not. In fact, a Commercial Arbitration Tribunal from the American Arbitration Association has found that Choudhri used these very same agreements to place the agents as "a front" to conceal Choudhri's ownership and involvement in entities.[40]

24.     HREP, Choudhri, and Defendants also commingle funds, pay the debts of the other, and divert company profits.[41] This is supported by the affidavit testimony of the former Chief Operating Officer of Jetall, Christopher Wyatt, who testified that he personally witnessed Choudhri "frequently transfer money between various entities he owns or operates or controls in disregard

---

[38] **Ex. Y**, Shepherd-Huldy Agency Agreement; **Ex. HHH**, Wyatt Declaration.  See also Ex. 2 (92-5 to 92-8) from ECF Doc. No. 92, which is incorporated herein by reference.

[39] **Ex. Y**, Shepherd-Huldy Agency Agreement (July 9, 2018); **Ex. HHH**, Wyatt Declaration.  **Ex. Z**, see also an agency agreement utilized by Shahnaz Choudhri (from BridgeCo Bus. Rec. Aff.).

[40] **Ex. AA-1**, Arbitration Award. In the award, the Panel found, *inter alia*, that Choudhri [i] lied under oath about the existence of the agency agreements, [ii] refused to produce the agency agreements (which had to be obtained from third-parties), [iii] intentionally hid his involvement in certain transactions by use of the agency agreements, [iv] was not credible as a witness, [v] acted improper, wrongful, and not in good faith, [vi] knowingly and intentionally, with malice, committed fraud, and [vii] awarded substantial exemplary damages ($250,000.00) for fraud and breach of fiduciary duty, against Choudhri and some of the other Defendants noted herein.

[41] Attached as **Ex. BB** is a Declaration from a former Jetall employee and whistleblower, who notes that Jetall comingles funds and pays the debts of another without consideration and disregards corporate formalities.

of their corporate formalities or without consideration between the entities, and how he used company assets to pay for his and other's personal expenses[.]"[42]

25.     Defendants Choudhri and S. Choudhri also share a bank account at BancorpSouth that is utilized for business and personal use.[43] For example, there are numerous wire transfers into and out of this account from title companies and business deals for millions of dollars.[44]  The BancorpSouth records further show a payment of $160,000 to Jennifer MacGeorge[45], the individual who signed the annual public filings for MCITBE, Memorial, Kirby, HREP, and Galleria Loop and Telsa Motors[46] for personal uses.

26.     In addition, Choudhri listed the assets belonging to Memorial, Kirby, HREP in reporting for his personal financial statements.[47] More specifically, prior to foreclosure in this matter, Choudhri had assets such as 9201 Memorial (owned by Memorial), 2727 Kirby (owned by Kirby), 206-207 Malone (owned by HREP), which he listed as his own personal assets.[48]

27.     Other banking records further indicate that Defendants pay the debts of the other and commingle funds. On or about July 10, 2020, Galleria Loop issued a check for $204,168.00 to pay the personal income taxes of S. Choudhri to the Internal Revenue Service.[49] On January 31, 2022, Jetall issued three checks to the Harris County Tax Assessor-Collector to pay the debts of three Defendants. Specifically, Jetall issued a check for $62,535.91 on behalf of Kirby,[50] Jetall

---

[42] **Ex. BB**, Wyatt Dec. ¶ 3.
[43] **Ex. CC**, BridgeCo. Business Records Affidavit with Choudhri Bancorp Statements (BRIDGECO 78-89).
[44] **Ex. CC**, BridgeCo. Business Records Affidavit with Choudhri Bancorp Statements (BRIDGECO 78, 84, 88).
[45] **Ex. CC**, BridgeCo. Business Records Affidavit with Choudhri Bancorp Statements (BRIDGECO 88); **Ex. H**, MCITBE's 2024 Texas Franchise Tax Public Information Report; **Ex. I**, 9201 Memorial's 2022 Annual Report; **Ex. J**, 2727 Kirby's 2022 Limited Liability Company Annual Report; **Ex. K**, HREP's 2024 Texas Franchise Tax Public Information Report; **Ex. N**, Galleria Loop's 2023 Texas Franchise Tax Public Information Report; **Ex. Q, Ex. FFF**.
[46] **Ex. CC**, BridgeCo. Business Records Affidavit with Choudhri Bancorp Statements (BRIDGECO 82, 88)
[47] **Ex. DD**, Choudhri Personal Financial Statement; **Ex. JJJ**, Choudhri Dep., 153:16-25.
[48] **Ex. DD**, Choudhri Personal Financial Statement; **Ex. JJJ**, Choudhri Dep., 153:16-25.
[49] **Ex. EE**, Gallería Loop Check No. 10010357; **Ex. JJJ**, Choudhri Dep., 70:11-22.  See also Ex. 2 (92-17 to 92-25) from ECF Doc. No. 92, which is incorporated herein by reference.
[50] **Ex. FF**, Check No. 2445; **Ex. JJJ**, Choudhri Dep., 65:9-66:2.  See also Ex. 2 (92-17 to 92-25) from ECF Doc. No. 92, which is incorporated herein by reference.

issued a check for $20,974.21 on behalf of Memorial,[51] and Jetall issued a check for $56,943.38

on behalf of Ahmed Anosh in conjunction with Arabella.[52] On August 16, 2022, Jetall paid the

property taxes for property owned by Kirby.[53] Additionally, on October 26, 2022, Galleria Loop

paid the real property taxes for real property owned by Arabella.[54]

28.     The diversion of profits is shown by the checks accepted by Choudhri on behalf of

one entity that are then deposited in the bank of another. For example, Choudhri collects checks

for rent payments made for the property located at 801 Malone Street.[55] However, the real property

records indicate that 801 Malone Street was owned by HREP.[56] Yet, the checks are paid to the

order "Ali Choudhri."[57]

29.     Choudhri and Defendants further commingled and hid funds away from creditors

in a Frost Bank account owned by S. Choudhri. S. Choudhri testified under oath that she only

worked for two or three years in the early 2000s, with her husband before his passing in 2012; and

that since that time she has been retired.[58] However, a review of her bank records show that

business has been plentiful of late, and the reason for this is because Choudhri and Defendants

conduct business through her accounts. One such bank account is S. Choudhri's bank account at

Frost Bank, where Choudhri is not an account holder or signatory.[59] On or about February 3, 2021,

Choudhri directed $1,000,000 to his mother's/S. Choudhri's Frost bank account from one of his

---

[51] **Ex. GG**, Check No. 2444; **Ex. JJJ**, Choudhri Dep., 66:3-13.  See also Ex. 2 (92-17 to 92-25) from ECF Doc. No. 92, which is incorporated herein by reference.
[52] **Ex. HH**, Check No. 2446; **Ex. JJJ**, Choudhri Dep., 63:2-65:6.  See also Ex. 2 (92-17 to 92-25) from ECF Doc. No. 92, which is incorporated herein by reference.
[53] **Ex. II**, Check No. 2626; **Ex. JJJ**, Choudhri Dep., 66:16-24. See also Ex. 2 (92-17 to 92-25) from ECF Doc. No. 92, which is incorporated herein by reference.
[54] **Ex. JJ**, Galleria Loop Check No. 10874; **Ex. JJJ**, Choudhri Dep., 68:5-13. See also Ex. 2 (92-17 to 92-25) from ECF Doc. No. 92, which is incorporated herein by reference.
[55] **Ex. KK**, 801 Malone and Tenants checks (to Choudhri); **Ex. JJJ**, Choudhri Dep., 131:5-132:18.
[56] **Ex. LL**, Deed to 801 Malone (to HREP)
[57] **Ex. KK**, 801 Malone and Tenants checks; **Ex. JJJ**, Choudhri Dep., 131:5-132:18.
[58] **Ex. YY**, which are deposition excerpts from S. Choudhri (p. 12, ln. 8 – p. 13, ln. 11 and p. 14, lns. 7-22).
[59] Attached as **Ex. ZZ** is a business records affidavit from Frost Bank with certain bank records attached (p. 19-20).

businesses, to avoid creditors claiming these funds.[60] On or about November 15, 2021, Choudhri directed another $1,000,000 to his mother's/S. Choudhri's Frost bank account from another one of his businesses, to avoid creditors claiming these funds.[61] On or about November 9, 2022, Choudhri directed $4,650,000 to his mother's/S. Choudhri's Frost bank account, to avoid creditors claiming these funds.[62] On or about December 14, 2022, Choudhri directed $1,125,203.56 stemming, from a refund in his business dealings, to his mother's/S. Choudhri's Frost bank account, to avoid creditors claiming these funds.[63] On or about January 30, 2023, Choudhri directed $500,000 stemming, from a refund in his business dealings, to his mother's/S. Choudhri's Frost bank account, to avoid creditors claiming these funds.[64] On or about February 14, 2023, Choudhri directed $6,051,000 stemming, from a refund in his business dealings, to his mother's/S. Choudhri's Frost bank account, to avoid creditors claiming these funds.[65] On or about February 26, 2024, Choudhri directed $100,000 stemming, from a refund of his earnest money in his business dealings, to his mother's/S. Choudhri's Frost bank account, to avoid creditors claiming these funds.[66] On or about August 24, 2021, Choudhri caused his mother/S. Choudhri to wire or transfer $869,000 from her Frost bank account for his business dealings.[67] On or about November 22, 2022, Choudhri caused his mother/S. Choudhri to wire or transfer $1,125,203.56 from her

---

[60] **Ex. ZZ** is a business records affidavit from Frost Bank with certain bank records attached (p. 21). Note that Meandering Bend LLC, the originator or sender of the funds, is a limited liability company controlled by Choudhri. Attached as **Ex. CCC** is Texas Franchise Tax Public Information Report for Meandering Bend LLC in 2022 showing Choudhri as its manager.
[61] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 23). Note that PBAC 507 Holdings, LLC, the originator or sender of the funds, is a limited liability company controlled by Choudhri. Attached as **Ex. DDD** is the Texas Franchise Tax Public Information Report for PBAC 507 Holdings, LLC in 2023 showing Choudhri as its member.
[62] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 25).
[63] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 27).
[64] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 30).
[65] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 33).
[66] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 36).
[67] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 39).

Frost bank account for his business dealings.[68] On or about January 30, 2023, Choudhri caused his mother/S. Choudhri to wire or transfer $4,000,000 from her Frost bank account for his business dealings.[69] On or about April 28, 2023, Choudhri caused his mother/S. Choudhri to wire or transfer $244,923.29 from her Frost bank account for his business dealings at BridgeCo Financial, LLC.[70] On or about October 31, 2023, Choudhri caused his mother/S. Choudhri to wire or transfer $50,000 from her Frost bank account to pay his attorneys' fees.[71] On or about November 16, 2023, Choudhri caused his mother/S. Choudhri to wire or transfer $109,202.53 from her Frost bank account to Jetall/Croix LP.[72] On or about February 26, 2024, Choudhri caused his mother/S. Choudhri to wire or transfer $100,000 from her Frost bank account to Jetall.[73] On or about April 12, 2024, Choudhri caused his mother/S. Choudhri to wire or transfer $30,000 from her Frost bank account to Jetall for payroll.[74] On or about September 20, 2022, Choudhri caused his mother/S. Choudhri to pay Geroge Lee $500,000 via cashier's check from her Frost bank account for Choudhri's litigation and or business dealings.[75] On or about February 17, 2023, Choudhri caused his mother/S. Choudhri to pay the Harris County District Clerk $1,726,200.14 via cashier's check from her Frost bank account for Choudhri's litigation.[76] On or about February 23, 2023, Choudhri caused his mother/S. Choudhri to pay the Harris County District Clerk an additional $133,717.40 via cashier's check from her Frost bank account for Choudhri's litigation.[77] On or about February 2, 2024, Choudhri caused his mother/S. Choudhri to prepare seven (7) total cashier's checks

---

[68] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 41).
[69] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 44).
[70] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 47).
[71] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 50).
[72] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 53).
[73] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 56).
[74] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 59).
[75] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 64).
[76] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 65).
[77] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 66).

totaling $2,700,000 via cashier's check from her Frost bank account for Choudhri's business dealings with 50 BH Acquisitions LLC.[78] On or about April 2, 2024, Choudhri caused his mother/S. Choudhri to pay his attorney, Jennifer MacGeorge, $50,000 via cashier's check from her Frost bank account for Choudhri's litigation.[79] Finally, on or about February 1, 2021, Choudhri directly deposited $82,786.96 into his mother's/S. Choudhri's Frost bank account to avoid creditors.[80]

30.      Choudhri and Defendants further commingled and hid funds away from creditors in a Cadence Bank account[81] owned by S. Choudhri. S. Choudhri opened multiple bank accounts with Cadence Bank f/k/a BancorpSouth Bank f/k/a Icon Bank.[82] One account was only in her name (the "**Shahnaz Cadence Account**").[83] Originally, only S. Choudhri was a signatory on the Shahnaz Cadence Account, but on or about October 13, 2022, S. Choudhri made her son, Choudhri, a signatory on said account too, so he could surreptitiously conduct business and treat the account as his own.[84] For example, Choudhri initially funded this account with $1,000,000 from another account that was in his name.[85] He then deposited another $2,050,010 from that same account (that was in his name) to further fund the Shahnaz Cadence Account.[86] By making those transfers Choudhri took money that could have been seized to pay creditors from his account—and put those monies (in excess of $3M) in the Shahnaz Cadence Account, which is only in S. Choudhri's name.

---

[78] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (pgs. 65-80). Attached as **Ex. EEE** is the Certificate of Formation for 50 BH Acquisitions LLC showing Jetall's address.
[79] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 83).
[80] **Ex. ZZ**, which is a business records affidavit from Frost Bank with certain bank records attached (p. 84).
[81] The Court can take judicial notice of public records showing that Cadence Bank was once also known as BancorpSouth Bank and Icon Capital Bank.
[82] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 24-30).
[83] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 24-25).
[84] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 26-27).
[85] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (pgs. 31, 81).
[86] Id.

This way it is beyond the reach of creditors. In addition, on or about October 3, 2022, Choudhri directed S. Choudhri to wire or transfer $747,000 from her Shahnaz Cadence Account for one of the one of The Shepherd-Huldy defendants.[87] Also, on or about October 3, 2022, Choudhri caused a title company to deposit or transfer $1,901,054.13 into the Shahnaz Cadence Account, from his business dealings. On or about November 15, 2022, Choudhri directed S. Choudhri to wire or transfer $500,000 from her Shahnaz Cadence Account to service his debt, from his business dealings, with another lender.[88] On or about January 30, 2023, Choudhri directed S. Choudhri to wire or transfer $2,551,000 from her Shahnaz Cadence Account for the benefit of one of Choudhri's business entities.[89]

31.    Another account that S. Choudhri opened at Cadence Bank was in the name of Otisco. (the "**Otisco Account**").[90] Despite not working, the Otisco Account was opened S. Choudhri, who was the only signatory on the account.[91] On or about May 18, 2023, Choudhri caused a title company to deposit or transfer $454,261.50 into the Otisco Account, from his business dealings.[92] On or about June 5, 2023, Choudhri directed S. Choudhri to wire or transfer $150,000 from the Otisco Account to pay his lawyers.[93] On or about August 14, 2023, Choudhri directed S. Choudhri to wire or transfer $50,000 from the Otisco Account to Jetall.[94] On or about September 21, 2023, Choudhri directed S. Choudhri to wire or transfer another $50,000 from the

---

[87] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 33).
[88] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 34). The Court can take public notice that Romspen US Master Mortgage is a private commercial mortgage lender. See https://www.romspen.com/about/.
[89] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 36). Recall that **Ex. DDD** is the Texas Franchise Tax Public Information Report for PBAC 507 Holdings, LLC in 2023 showing Choudhri as its member.
[90] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 28-29).
[91] Id.
[92] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 38).
[93] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 40). The Court can take public notice that Akin Gump has appeared in numerous legal matters for Choudhri and his business entities. And further S. Choudhri testified that she has never hired Akin Gump.
[94] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 42).

Otisco Account to pay his lawyers.[95] Finally, on or about September 21, 2023, Choudhri directed S. Choudhri to wire or transfer $187,235.60 from the Otisco Account to service his debt, from his business dealings, with another lender.[96]

32.     The final account at Cadence was opened by both S. Choudhri and Choudhri (the "**Joint Cadence Account**").[97] The Joint Cadence Account was the oldest account at Cadence, being opened in 2011. In the Joint Cadence Account there were ample bad acts and fraudulent transfers well. On or about March 26, 2019, $30,000 was wired or transferred from the Joint Cadence Account to Jetall.[98] On or about May 20, 2019, $90,000 was wired or transferred from the Joint Cadence Account to another of Choudhri's businesses.[99] On or about April 6, 2020, $160,000 was wired or transferred into the Joint Cadence Account from one of Choudhri's businesses.[100]   On or about January 14, 2021 $31,000 was wired or transferred from the Joint Cadence Account to Jetall.[101]   On or about June 17, 2021 $172,046.49 was wired or transferred from the Joint Cadence Account to for the benefit of one of the Shepherd-Huldy defendants.[102]   On or about November 12, 2021 $9,483,411.74 was wired or transferred into the Joint Cadence Account from the sale of 1708 River Oaks property, which was owned by VGRP, LLC (another

---

[95] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 44).  The Court can take public notice that Akin Gump has appeared in numerous legal matters for Choudhri and his business entities.  And further S. Choudhri testified that she has never hired Akin Gump.

[96] Id.  The Court can take public notice that CAZ Creek Holdings is a private company that offers property tax loans.  See   https://taxease.com/   and   https://www.bbb.org/us/tx/dallas/profile/property-tax-lenders/caz-creek-tx-llc-0875-91070407.

[97] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 30).

[98] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 46).

[99] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 47).  Note that BDFI, LLC is a limited liability company controlled by Choudhri.  Attached as **Ex. FFF** is the Texas Franchise Tax Public Information Report for BDFI, LLC in 2023 showing Choudhri as its member.

[100] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 51).  Note that VGRP Holdings, LLC is a limited liability company controlled by Choudhri.  Attached as **Ex. GGG** is the Texas Franchise Tax Public Information Report for VGRP Holdings, LLC in 2022 showing that it was filed by Choudhri and located at Jetall's address.

[101] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 53).

[102] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 58).

Choudhri business).[103]  In December of 2021, Choudhri caused his businesses to deposit in excess of $7M into the Joint Cadence Account but then also caused more than $15M to be transferred out of that same account for his business dealings.[104]  On or about February 22, 2022, Choudhri caused $60,000 to be wired or transferred from the Joint Cadence Account for the benefit of one of his businesses.[105] Also on or about February 22, 2022, Choudhri caused $213,500 to be wired or transferred from the Joint Account for the benefit of another of his businesses.[106] On or about July 19, 2022, Choudhri caused $300,000 to be wired or transferred from the Joint Cadence Account for the benefit of another of his businesses.[107] On or about August 19, 2022, Choudhri caused $400,000 to be wired or transferred from the Joint Cadence Account for the benefit of another of his businesses.[108] As apparent from all of the transfers, Defendants are utilizing these accounts to hide money from creditors all while conducting business operations.

33.     In further support of their alter ego status, the deposition testimony of Choudhri shows that the entities are subject to his direct control. For example, Choudhri has testified that he is HREP, and HREP is him, as shown from the testimony below: [109]

**Q.**     And you're the manager of HREP, correct?

**A.**     Correct, yes.

---

[103] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 61).

[104] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p.64-66).

[105] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p.69).  Note that Meandering Bend LLC is a limited liability company controlled by Choudhri.  Attached as **Ex. CCC** is Texas Franchise Tax Public Information Report for Meandering Bend LLC in 2022 showing Choudhri as its manager.

[106] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p. 69). Note that PBAC 507 Holdings, LLC is a limited liability company controlled by Choudhri.  Attached as **Ex. DDD** is the Texas Franchise Tax Public Information Report for PBAC 507 Holdings, LLC in 2023 showing Choudhri as its member.

[107] **Ex. AAA** which is a business records affidavit from Cadence Bank with certain bank records attached (p.73).  Note that BDFI, LLC is a limited liability company controlled by Choudhri.  Attached as **Ex. FFF** is the Texas Franchise Tax Public Information Report for BDFI, LLC in 2023 showing Choudhri as its member.

[108] **Ex. AAA**, which is a business records affidavit from Cadence Bank with certain bank records attached (p.78).  The Court can take public notice that Romspen US Master Mortgage is a private commercial mortgage lender. See https://www.romspen.com/about/.

[109] **Ex. MM**, Choudhri Dep. (Cause No 2013-41271) 121:17–23; *see also id.* 42:16–25 (Choudhri testimony that he and HREP are the same thing).

Q.     And you don't know whether or not you have a company agreement, correct? Is strike that. You don't know what's in your company agreement, do you?

A.     Not as I sit here because it's really 100% my entity so it's whatever.

34.     Choudhri also testified that he is the 100% owner of Jetall and indicates that he is responsible for the debts of Jetall.  As shown by the testimony from Choudhri below, Choudhri testified that he would be responsible for a verdict against Jetall:[110]

A.     […] So the plan was to settle it, negotiate it or fight it. Take it on.

Q.     And what happened -- what happened if – if you lost the verdict or you lost the appeal?

A.     I would be responsible. I would have to pay for it, whatever it cost.

Choudhri similarly testified that he is obligated to financially back Jetall.[111]

Q.     Okay. And this draft, by the way, it doesn't obligate Jetall to put a penny into Declaration Title, does it?

A.     Incorrect.

Q.     Okay. And that's where -- where are they obligated to put a penny to the Company?

A.     Well, I'm taking on the Verdict and the claims and I'm stepping in the shoes of the firing line where you're firing on Todd and Renee and Declaration. I'm stepping in the shoes of that. So, that obligates me to put money in the Company and fight you and your Verdict.

Q.     You're not obligated to pay any of it, if you lose?

A.     I disagree.

* * *

Q.     Did you tell Renee on the phone that you -- that Jetall would guarantee that she wouldn't have any future liability? That you would cover any potential liability arising out of the Heil matter?

Did you tell her that?

A.     I told her that I would take care of the Heil matter. It was my responsibility. My obligation.

---

[110] **Ex. NN**, Choudhri Depo. (Cause No. 2017-10832) 32:1–6; 170:15–23.
[111] **Ex. NN**, Choudhri Depo. (Cause No. 2017-10832) 192:12–23: 226:11–17.

35.     In his testimony at trial in state court proceedings, Choudhri testified that the funds received by HREP belonged to him, effectively admitting to the diversion of funds and profits, as shown below:[112]

| | |
|---|---|
| **Q.** | MR. DRINNON: Oh, I'm sorry, I didn't complete -- it's line 22 through 25. It says: So we didn't read 20 through 25. 20 through 25 -- so HREP, when I say you, of course I mean HREP got the money and your answer was, I mean, it's a pass through. It's my company. It's a passthrough through me so I got the money. |
| | Did I read that correctly? |
| **A.** | Yeah. |
| **Q.** | (BY MR. DRINNON) Okay. Thank you, sir. So at the time of the transaction, then, you got $552,000, correct? We just went through this. At the time of the transaction you got $552,000 -- $552,970, correct? |
| **A.** | Correct. |

36.     Ultimately, there is more than sufficient evidence to support the elements of alter ego liability. Defendants' Motion should be denied.

*ii.*     ***There is sufficient evidence to support Plaintiffs claim that Choudhri and Defendants have fraudulently transferred assets after Plaintiffs' claims arose and that such transfers were made with the intent to hinder, delay, and defraud Plaintiffs.***

37.     "The purpose of [T]UFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach." *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). "To establish a claim under TUFTA, a plaintiff must prove that (1) she is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *Dontos v. Vendomation NZ, Ltd.*, 582 F. App'x 338, 344 (5th Cir. 2014); Tex. Bus. & Com. Code § 24.005(a)(1). The TUFTA claims further supports the alter-ego theory as the Fifth Circuit has held that "establishing that a transfer is fraudulent under the actual fraud prong

---

[112] **Ex. MM**, Choudhri Depo. (Cause No 2013-41273) 110:5–19.

of TUFTA is sufficient to satisfy the actual fraud requirement of veil-piercing[.]" *Husky Int'l Elecs., Inc. v. Ritz* (*In re Ritz*), 832 F.3d 560, 567 (5th Cir. 2016).

38.      In determining whether the debtor made the transfer with actual intent to hinder, delay, or defraud, the court considers the non-exhaustive list of the "badges of fraud":

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

39.      *Id* at *12–13 (quoting TEX. BUS. & COMM. CODE § 24.005(b)(1-11)). When analyzing facts under TUFTA, the Fifth Circuit has noted that "[s]ince direct proof of fraud often is not available, courts **may** rely on circumstantial evidence to establish the fraudulent intent." *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988).

40.      Courts further look to non-statutory badges of fraud to aid in the determination of whether a fraudulent transfer exists. These include:

> (1)      Unusual conveyances. *Mladenka v. Mladenka*, 130 S.W.3d 397,406 (Tex. App.— Houston [14th Dist.] 2004, no pet.) (debtor transferred all his non-exempt property when there was no vendor's lien, promissory note, or deed of trust retained by debtor when he transferred property to his brother on credit); *Texas Sand Co.*, 381 S.W.2d at 53 (debtor conveyed all non-exempt property, including notes, accounts receivable, and land and excluded property exempt from execution).

> (2)      Effort to become judgment proof. Transfers of a doctor's property to make himself judgment proof so he would not need malpractice insurance. *In re Johnson*, 54 B.R. 582 (S.D. Tex. 1985).

> (3)      Bankruptcy planning. The transfers were done just prior to the filing of the debtor's bankruptcy petition. *In re Sissom*, 366 B.R. 677, 692-693 (S.D. Tex. 2007) (citing

*In re Lacounte*, 342 B.R. 809, 816 (Bankr. D. Mont. 2005)); *West v. Seiffert* (*In re Houston Drywall, Inc.*), 2008 Bankr. LEXIS 4060 (Bankr. S.D. Tex. July 10, 2008).

(4)    No explanation. The Debtor is unable to explain the disappearance of assets. *Sissom*, 366 B.R. at 693 (*citing Lacounte*, 342 B.R. at 815); *In re Houston Drywall, Inc.*, 2008 Bankr. LEXIS 4060.

(5)    Sharp dealing. The Debtor has engaged in a pattern of "sharp dealing" prior to bankruptcy. *Sissom*, 366 B.R. at 693 (*citing In re Agnew*, 355 B.R. 276, 285 (Bankr. D. Kan. 2006)) (converting assets into cashier's check which wife then held and used as she needed); *In re Houston Drywall, Inc.*, 2008 Bankr. LEXIS 4060 (debtor transferred receivables to his daughters and others).

(6)    Ponzi scheme. Where a debtor is operated as a Ponzi scheme at the time of the transfer, actual intent to defraud can be inferred. *SEC v. Resource Development Int'l LLC*, 487 F.3d 295,301 (5th Cir. 2007); *Smith v. Suarez (In re IFS Fin. Corp.)*, 417 B.R. 419, 439 (Bankr. S.D. Tex. 2009) (the existence of a fraudulent scheme itself is sufficient to find that a transfer made in furtherance of that scheme was made with fraudulent intent).

(7)    No memory. Inability to remember or document alleged innocent version of transactions is a non-statutory badge of fraud. *Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 413 B.R. 438,481 (Bankr. N.D. Tex. 2009).

(8)    Fictitious consideration. Part of the recited consideration for a deed of trust was fictitious. *Griffin v. McCullough Tool Co.*, 265 S.W.2d 131, 135 (Tex. App.—Fort Worth 1954, writ refd n.r.e.).

While a single badge of fraud is not conclusive, a concurrence of many badges in the same case will always make a strong case of fraud. *Tex. Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 313 (Tex. App.—El Paso 2009, mand. denied). The level of intent required need not rise to the level of common law fraud. S*ee Ingalls v. SMTC Corp. (In re SMTC Mfg. of Tex.*), 421 B.R. 251, 299 (Bankr. W.D. Tex. 2009).

41.    Here, Plaintiffs' status as creditors is established through the judgments and assignments. Plaintiffs are creditors with a claim against Jetall by virtue of the Heil Judgment,

rendered June 23, 2020, in the 2017 Lawsuit.[113] The rights and interests of the judgment creditors under the Heil Judgment were subsequently assigned to Plaintiffs by and through written assignments dated February 17, 2023.[114] Second, Plaintiffs are creditors with a claim against Jetall by virtue of the HS Judgment rendered on October 31, 2020, in the 2020 Lawsuit.[115] The rights and interests of the judgment creditors under the HS Judgment were subsequently assigned to Plaintiffs by and through written assignments dated February 17, 2023.[116] In addition, Abdullatif is a creditor with a claim against Choudhri and HREP by virtue of the Abdullatif Judgment rendered on November 21, 2022, in the 2013 Lawsuit.[117]

42.     Further, as alter egos of the judgment debtors, Defendants are treated as "Debtors" for purposes of TUFTA. *See Renate Nixdorf GmbH & Co. KG v. TRA Midland Props., LLC*, No. 05-17-00577-CV, 2019 Tex. App. LEXIS 26, at *18 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) ("Accepting the allegations in the second amended petition as true and construing them in favor of appellants, we conclude the second amended petition alleges facts that support treating TRA and Apt West as alter egos of Brauss and Martin and, thus, debtors of appellants under TUFTA.").

43.     After Plaintiffs' claims arose, and after the filing of the respective lawsuits or claims therein, Defendants made a series of transfers, including real-property conveyances, monetary payments and transfers, and the creation of encumbrances, all which constitute "transfers" under TUFTA. *See Katchadurian v. NGP Energy Capital Mgmt., LLC (In re Northstar Offshore Grp., LLC)*, 616 B.R. 695, 734-35 (Bankr. S.D. Tex. 2020) **(**"TUFTA defines "transfer" as 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with

---

[113] **Ex. A**, Heil Judgment.
[114] **Ex. B**, Assignment of Heil Judgment; **Ex. III**, Abdullatif Declaration.
[115] **Ex. C**, HS Judgment.
[116] **Ex. D**, Assignment of HS Judgment.
[117] **Ex. E**, Abdullatif Judgment.

an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or *other encumbrance*.'").

44.     On June 28, 2018, Jetall initiated a wire transfer from its bank account with Golden Bank ending in 3896 for $3,000,000 to "2401 FV LLC."[118] It is clear that this monetary transfer was made to an insider, as the memo line to the wire transfer read: "2401 FV LLC" in reference to another entity owned by Choudhri, 2401 Fountainview Houston, LP.[119] After this transfer, the bank account was left with a balance of $126,632.72. However, this bank account was finally depleted following a withdrawal of $125,000 by Choudhri on January 30, 2020.[120]

45.     Jetall also made a series of monetary transfers in the form of payments on behalf of various insiders. On January 31, 2022, Jetall issued three checks to the Harris County Tax Assessor-Collector on behalf of three separate entities. Jetall issued a check for $62,535.91 on behalf of 2727 Kirby.[121] Jetall also issued a check for $20,974.21 on behalf of 9201 Memorial.[122] Jetall issued a check for $56,943.38 for the benefit of Arabella.[123] Such payments were made on behalf of an insider, which are all owned or controlled by Choudhri.

46.     On March 23, 2022, Choudhri initiated a wire transfer of $3,500,000 from his bank account ending in 3995 with UBank to an undisclosed account, with a memo line reading "Ali Choudhri Wires."[124] Additionally, as noted above and without restating the same, Defendants participated in a litany of fraudulent transfer of money and cash in various bank accounts where one Defendant transferred funds to another Defendant.[125]

---

[118] **Ex. OO**, Business records affidavit from Golden Bank with certain records attached (p. 30).
[119] **Ex. PP**, Application for Registration for 2401 Fountainview.
[120] **Ex. OO**, Business records affidavit from Golden Bank with certain records attached (p.32).
[121] **Ex. FF**, Check No. 2445; **Ex. JJJ**, Choudhri Dep., 65:9-66:2.
[122] **Ex. GG**, Check No. 2444; **Ex. JJJ**, Choudhri Dep., 66:3-13.
[123] **Ex. HH**, Check No. 2446; **Ex. JJJ**, Choudhri Dep., 63:2-65:6.
[124] **Ex. QQ**, Business records affidavit from BridgeCo. with certain records attached (See BRIDGECO 113).
[125] Paragraphs 22 - 32 above.

47.     On October 4, 2022, Defendants pledged the properties commonly known as 2503 S. Shepherd Dr., 2421 S. Shepherd Dr., 2502 Huldy St., and 2424 Huldy St. to Magnolia BridgeCo, LLC.[126] On November 4, 2022, Defendants, through different entities, pledged two other real-property assets. First, 2727 Kirby pledged real property to Cypress BridgeCo, LLC.[127] Second, 9201 Memorial pledged the real property commonly known as 9201 Memorial, Houston, Texas 77024, to Cypress BridgeCo, LLC.[128] These previously unencumbered assets were pledged to "mezzanine" or "hard money" lenders in the weeks leading up to the final judgment in the 2013 Lawsuit until Defendants sucked the equity out of them. This was done so Choudhri could suck the equity from those properties to the detriment of creditors, like Plaintiffs.

48.     Subsequently, on November 9, 2022—less than two weeks before the Abdullatif Judgment was rendered—HREP pledged real property commonly known as 801 Malone Street, Houston, Texas 77007 to Defendant, Skaneateles, rdX.[129] However, as previously discussed, Skaneateles, rdX is an alter ego of Defendants, with S. Choudhri as its president.[130] Therefore, this transfer was made to an insider days before a judgment was rendered against HREP.

49.     In addition, days before judgment was rendered against HREP and Choudhri in the 2013 Lawsuit, Choudhri also made a series of fraudulent transfers of real property. Specifically, on November 15, 2022, Choudhri conveyed the following real property to Memorial Glen Cove LLC for "[c]ash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged" (a) 402 Terrace Dr., Houston, Texas 77007[131]; (b) 3550 Charleston St.,

---

[126] **Ex. RR**, Shepherd-Huldy Deed of Trust.
[127] **Ex. SS**, 2727 Kirby Deed of Trust.
[128] **Ex. TT**, 9201 Memorial Deed of Trust.
[129] **Ex. UU**, Malone Deed of Trust.
[130] **Ex. R**, Otisco rdX's Application for Reinstatement; **Ex. S**, Skaneateles rdX's Application for Reinstatement.  Recall that S. Choudhri testified that she does not work and has never done business with her son, Choudhri (**Ex. YY**).
[131] **Ex. BBB**, Deed showing Choudhri's fraudulent transfer of real property to an entity he controls only days before the Abdullatif Judgment was entered.

Houston, Texas 70021[132]; (c) 6531 Rodrigo St., Houston, Texas 77007[133]; (d) 5803 Blossom Street, Houston, Texas 77007[134]; (e) 207 Malone Street, Houston, Texas 77007[135]; and (f) 4401 Schurmier Road, Houston, Texas 77048.[136]

50.     The transfers noted above took place **exactly 6 days** before the Abdullatif Judgment was rendered. These transfers were also made to company owned and controlled by Choudhri, as shown by early public filings made by Memorial Glen Cove LLC with the Texas Secretary of State.[137] In fact, Choudhri attempted to conceal his relationship to Memorial Glen Cove LLC by removing himself as the Manager in public filings and instead listing an entity named "Memorial Park LLC" as the purported manager.[138] However, after the charter of Memorial Glen Cove LLC's charter was forfeited by the Texas Secretary of State, Memorial Glen Cove LLC filed an for reinstatement, which Choudhri signed as Manager under the penalty of perjury, as shown below:[139]



**APPLICATION FOR REINSTATEMENT AND
REQUEST TO SET ASIDE REVOCATION OR FORFEITURE**

1.     File Number: **802053805**

2.     The name of the entity is: **Memorial Glen Cove LLC**

---

[132] **Ex. BBB**.
[133] **Ex. BBB**.
[134] **Ex. BBB**.
[135] **Ex. BBB**.
[136] **Ex. BBB**.
[137] **Ex. VV**, 2016 Texas Franchise Tax Public Information Report for Memorial Glen Cove LLC (listing Choudhri as Manager).
[138] *Compare* **Ex. VV**, 2016 Texas Franchise Tax Public Information Report for Memorial Glen Cove LLC (listing Choudhri as Manager) *with* **Ex. WW**, 2021 Texas Franchise Tax Public Information Report for Memorial Glen Cove LLC (listing Memorial Park LLC as Manager).
[139] **Ex. XX**, Application for Reinstatement for Memorial Glen Cove LLC.

> 8. **Execution:** The undersigned signs this document subject penalties imposed by law for the submission of a materially false or fraudulent instrument.
>
> Date: **March 16, 2021**        By **Ali Choudhri**
>                                     **Manager**
>
> FILING OFFICE COPY

The evidence ultimately shows that Choudhri transferred property days before the Abdullatif Judgment to a company that he owned and controlled and that Choudhri attempted to conceal the fact that Memorial Glen Cove LLC was owned and controlled by him.

51.     Finally, Plaintiffs again direct the Court to Choudhri's use of agency agreements to conceal transfers and the American Arbitration Association's finding that Choudhri [i] lied under oath about the existence of the agency agreements, [ii] refused to produce the agency agreements (which had to be obtained from third-parties), [iii] intentionally hid his involvement in certain transactions by use of the agency agreements, [iv] was not credible as a witness, [v] acted improperly, wrongfully, and not in good faith, [vi] knowingly and intentionally, with malice, committed fraud, and [vii] awarded substantial exemplary damages in the amount of $250,000.00 for fraud and breach of fiduciary duty against Choudhri and some of the other Defendants noted herein.[140]

52.     The evidence presented shows that the aforementioned acts are intentional, fraudulent, and completed in an effort to place assets beyond the reach of creditors. Moreover, the evidence shows that the transfers were not for like or reasonable value and were after the time Defendants knew or should have known that a debt and/or liability (including judgments held by Plaintiffs) would be incurred.

---

[140] **Ex. AA-1**, Arbitration Award.

53.     In sum, there is sufficient evidence to show that Defendants' concealment and facilitation of certain transactions constitute fraudulent conveyances under TUFTA. Therefore, Defendants' summary judgment should be denied.

### iii.    *There is sufficient evidence supporting Plaintiffs' claim of fraud against Choudhri.*

54.     Plaintiffs' Complaint specifically identifies those actionable misrepresentations in support of the fraud claim as being Choudhri's misrepresentations regarding (a) his net worth, (b) the fraudulent conveyances he made through HREP and Defendants, (c) attempts to transfer assets between Defendants and others, and (d) efforts to preclude Plaintiffs from collecting their debts. The facts supporting each of the misrepresentations are detailed above.

55.     This claim is further supported by a Net Worth Affidavit filed by Choudhri in the 2013 Lawsuit. Specifically, on December 7, 2022, to avoid paying an appeal bond equal to the sum of compensatory damages and interest awarded, Choudhri filed a fraudulent Net Worth Affidavit[141] claiming a personal net worth of –$67,951,728.25. However, in November 2021—approximately one year before Choudhri signed his fraudulent Net Worth Affidavit—Choudhri provided a Personal Financial Statement asserting that his personal net worth was $246,440,100.00.[142] A comparison of this Personal Financial Statement and the fraudulent Net Worth Affidavit represents an alleged decrease in net worth by a total of $314,391,828.25 in a single year.  Thus, there is sufficient evidence to support Plaintiffs' claim for fraud against Choudhri. Defendants' summary judgment should be denied.[143]

56.

---

[141] **Ex. HHH**, Choudhri's Net Worth Affidavit.
[142] **Ex. III**, Choudhri's Personal Financial Statement (p. 1).
[143] Plaintiffs further incorporate by reference their affirmative motion for summary judgment as well as all evidence attached to it into this response.  The referenced affirmative motion for summary judgment is located at ECF. Doc. Nos. 348 and 350.

## V. CONCLUSION & PRAYER

The Court should deny Defendants' Motion for Summary Judgment because there is sufficient material evidence supporting Plaintiffs' claims and theories of liability. Based on the foregoing, Plaintiffs respectfully request that the Defendants' Motion be denied, and that Plaintiffs may be granted all such other relief that they may show themselves entitled.

DATED: December 6, 2024.

Respectfully submitted,

**HOOVER SLOVACEK LLP**

By: */s/ T. Michael Ballases*
      Steve A. Leyh
      State Bar No. 12318300
      T. Michael Ballases
      State Bar No.  24036179
      Christopher J. Kronzer
      State Bar No. 24060120
      Angeline V. Kell
      State Bar No. 24040009
      5051 Westheimer, Suite 1200
      Houston, Texas 77056
      Telephone: (713) 977-8686
      Facsimile: (713) 977-5395
      leyh@hooverslovacek.com
      ballases@hooverslovacek.com
      kronzer@hooverslovacek.com
      kell@hooverslovacek.com

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on December 6, 2024, a true and correct copy of this filing was served electronically via the Court's CM/ECF system, and or as evidenced below.

**23-03141 Notice will be electronically mailed to:**

James Pope
Jennifer MacGeorge
**Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Dalio Holdings I, LLC, Dalio Holdings II, LLC, Houston Real Estate Properties, LLC *[Debtor]*, Shahnaz Choudhri, Ali Choudhri, Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, Galleria Loop Note Holder LLC, Otisco rdX, LLC, MCITBE, LLC, Jetall/Croix Properties LP, and its general partner Jetall/Croix GP, LLC**
The Pope Law Firm
6161 Savoy, Suite 1125
Houston, Texas 77036
jamesp@thepopelawfirm.com
jmac@jlm-law.com
ecf@thepopelawfirm.com

Jana Smith Whitworth
Office of United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
Jana.whitworth@usdoj.gov

Timothy L. Wentworth
**Randy Williams**
**Houston Real Estate Properties, LLC**
Okin Adams, LLP
1113 Vine St., Suite 240
Houston, Texas 77002
twentworth@okinadams.com

By: */s/ T. Michael Ballases*
   T. Michael Ballases