1          REPORTER'S RECORD

2        TRIAL COURT CAUSE NO. 2015-36895

3

4  IN THE MATTER OF          ) IN THE DISTRICT COURT OF
   THE MARRIAGE OF           )
5                            )
   HIRA AZHAR                ) HARRIS COUNTY, T E X A S
6  and                       )
   MOHAMMAD ALI CHOUDHRI     ) 312TH JUDICIAL DISTRICT
7

8

9  *********************************************************

10                    ORAL HEARING

11                 AUGUST 19, 2019

12 *********************************************************

13

14

15

16

17      On the 19th day of August, 2019, the following
   proceedings came on to be heard in the above-entitled
18 and -numbered cause before the Honorable John
   Wooldridge, Judge Presiding, held in Houston, Harris
19 County, Texas.

20      Proceedings reported by a certified shorthand
   reporter and machine shorthand/computer-aided
21 transcription.

22

23

24

25                                          EXHIBIT
                                               7

```
 1                    A P P E A R A N C E S

 2   ALAN DAUGHTRY
     Bar No. 00793583
 3   Alan Daughtry Law
     3355 W. Alabama, Suite 444
 4   Houston, Texas  77098
     281-300-5202
 5   Counsel present for Petitioner, Hira Azhar

 6   BERNADETTE BARBEE
     Myres & Associates
 7   One Greenway Plaza, Suite 450
     Houston, Texas  77046
 8   713-622-1600
     Counsel present for Petitioner, Hira Azhar
 9
     LLOYD KELLEY
10   MICHELLE FRAGA
     The Kelley Law Firm
11   2726 Bissonnet, Suite 240
     Houston, Texas  77005
12   281-492-7766
     Counsel present for Respondent, Ali Choudhri
13
     JEFF JOYCE
14   Joyce & McFarland, LLP
     712 Main, Suite 1500
15   Houston, Texas  77002
     713-222-1113
16   Counsel present for Respondent, Ali Choudhri

17   DAVID MEDINA
     Chamberlain Hrdlicka
18   1200 Smith Street, 14th floor
     Houston, Texas  77002
19   Counsel present for Respondent, Ali Choudhri

20

21

22

23

24

25
```

1           THE COURT:  I call Cause No. 2015-36895.

2           Welcome Jodi, our court reporter here

3   today.  Glad to work with you again, Jodi.

4           May I have the announcements of the parties

5   present, please?

6           MR. MEDINA:  David Medina for Mr. Choudhri.

7           MR. DAUGHTRY:  Alan Daughtry and Bernadette

8   Barbee for Petitioner, Hira Azhar.

9           MR. JOYCE:  Jeff Joyce for Ali Choudhri.

10          MS. FRAGA:  Michelle Fraga for Respondent,

11   Ali Choudhri.

12          MR. KELLEY:  Lloyd Kelley for Ali Choudhri.

13          THE COURT:  Okay.  The last hearing was

14   August the 9th, 2019.  At that hearing -- to recap, a

15   hearing on entry of order of judgment regarding the

16   divorce and Petitioner's objection to Respondent's

17   proposed judgment, quote/unquote; order signed on

18   partial dismissal order to mediation with Mr. Uzick on

19   August 19, 2020, a hearing/trial of whether the

20   Pakistani Supreme Court addressed property division or

21   not was discussed.  That was kind of my shorthand

22   rendition.

23          You went to mediation, I understand?

24          MR. DAUGHTRY:  Yes.

25          THE COURT:  Not successful?

1              MR. DAUGHTRY:  Yes.  Not at all.

2              THE COURT:  Okay.  Under Texas Civil

3    Practice and Remedies Code 154 and the Texas Rules of

4    Civil Procedure 166 I'm required to determine whether

5    the parties have attempted to resolve their case without

6    court intervention.  I think I've done that.

7              Anything I can do to help you resolve it

8    and close the gap?  I don't get the benefit knowing what

9    you-all, nor do I want to know, what you-all discussed

10   in that mediation.  Is there anything I can do to help

11   you close the gap today under those two statutory

12   provisions?

13             MR. KELLEY:  Yes, Judge.  You ordered, and

14   I was here and I asked for it, I believe it's April,

15   that the Petitioner provide us all of the proof about

16   what she owes to a third party named Osama Abdullatif,

17   and we've not gotten that; and I don't want to go into

18   it but that is causing a huge problem with getting the

19   case resolved.

20             So if we could get that order actually

21   enforced because we never got it and it's always a

22   moving target and it should be an easy target.  There

23   would be three sources of that.  The lawyers got the

24   money, she signed the note, and Osama supposedly gave

25   her money.  From those three sources we can't get an

1    honest answer as to what's owed.

2              So to comply with your order, not talking

3    about the substance of what was mediated, but in order

4    to comply with your order we would ask that that be

5    compelled and complied with.

6              MR. DAUGHTRY:  Your Honor, if we want to

7    talk about compliance with orders on production I got

8    hardly anything from them.  We produced everything.  We

9    produced our bills, updated bills.  We didn't create a

10   new document regarding that.  We produced all our bills

11   about what the total of fees was.

12             So -- and I don't -- based upon my

13   understanding of the parties' negotiations when it was

14   declared an impasse, I don't think that would be helpful

15   at all at this point.

16             THE COURT:  I don't want to know all that.

17             MR. DAUGHTRY:  I just --

18             THE COURT:  So -- thank you.

19             What's the gentleman's name again?

20             MR. KELLEY:  Osama Abdullatif has a blank

21   note.  We've known about this now for about four years.

22   The fill-in of the blank of that note has never been

23   provided to us.  It's a one answer deal.  This is what's

24   owed under the note --

25             THE COURT:  Did you get that?

1                    MR. KELLEY:  No, never got it.  They

2     refused to give it to us.  They give us future stuff

3     that could be applied but not what is today owed on the

4     note.  This lady ought to know it.  She ought to be able

5     to testify to it.  Osama ought to be able to testify to

6     it.  Since it's a note that's theoretically enforceable

7     in Texas, it ought to have a defined amount.  That

8     amount has caused us problems since April.

9                    THE COURT:  Okay.

10                   MR. DAUGHTRY:  We provided information and

11    indication that it was in between 1.1 and $1.2 million.

12    That's it.

13                   THE COURT:  Does she have a note?

14                   MR. DAUGHTRY:  She has a note with a blank

15    in it and we don't have anything more.

16                   THE COURT:  A blank note?

17                   MR. DAUGHTRY:  It's a note with I'll pay

18    you back what you give me.

19                   THE COURT:  And how much has he given her?

20                   MR. DAUGHTRY:  Approximately 1.1 to

21    $1.2 million paid indirectly through attorneys and fees

22    and experts and things like that.

23                   THE COURT:  I tell you what, why don't you

24    conference with her and you get a commitment from her on

25    a specific amount.  If it's 1.2 to be safe, give it to

1  them.  Give them the number.  Here it is.  This is it.

2  And she's bound by that.  She'll be bound by that.

3  We'll put her up on the stand and put her under oath if

4  we have to.  But just give them that number.

5              MR. DAUGHTRY:  Sure.

6              THE COURT:  Not a between -- you know, not

7  a hundred thousand dollar difference.  I want, here it

8  is.  This is it.

9              MR. DAUGHTRY:  Okay.

10              THE COURT:  What else?

11              MR. DAUGHTRY:  I didn't get -- I didn't get

12  bank statements or things.  There were missing gaps,

13  missing things.  I understand from a different case that

14  there had been $4 million in cash sitting in a different

15  thing that Mr. Choudhri's done.  We didn't get that type

16  of information.  We haven't gotten their attorney's

17  fees.  To be determined.  To be determined.  To be

18  determined.  So many different blanks.  I don't know

19  what they've been paid.  And that doesn't even count

20  having all the, you know, other accounts on

21  (unintelligible).  We never got their fees.

22              THE COURT:  What's the relevancy of their

23  attorney's fees and your attorney's fees for that

24  purpose?

25              MR. DAUGHTRY:  Well, the relevancy is

1  simply it's a just and right division which is sort of

2  begging the question about what's going on.

3             THE COURT:  What's going on?

4             MR. DAUGHTRY:  Well, you know, how many

5  fees have been incurred.  So without getting into

6  settlement negotiations and claims made potentially

7  against client and counsel over fees, then that's the

8  only relevancy would be based upon --

9             THE COURT:  They would be seeking fees that

10  you were paid --

11             MR. DAUGHTRY:  Yes.

12             THE COURT:  -- that they'll pay back?  What

13  if everybody gets their own fees?

14             MR. DAUGHTRY:  Oh, no, they won't be

15  seeking fees that we've been paid.

16             THE COURT:  Right.  Okay.  So what --

17             MR. DAUGHTRY:  I'm sorry.  To the extent --

18  actually, what I understand is, to the extent that she's

19  obtained any fees from him and/or that have gone to

20  counsel indication is they maybe seeking those back.

21  Maybe against her or also maybe against counsel.

22             THE COURT:  All right.  What's the

23  relevancy of the amount paid to Osama Abdullatif?

24             MR. KELLEY:  Without going into detail,

25  we're trying to pay her money to make her go away.  So

1  we need a number.  It's always, this guy is owed money

2  so we've got to find out how much he's owed.  It went

3  from 800,000 to a million five, to a million six all

4  within -- if you check with the mediator --

5          THE COURT:  I don't want to check with the

6  mediator.

7          MR. KELLEY:  -- if I could get it narrowed

8  down.  It's not him paying us money, it's us paying him

9  money.

10          THE COURT:  Okay.  I get it.  I'm with you.

11  I'm smarter than I look.

12          Let's take a break.  I'm going to go

13  freshen up my coffee.  Go get a number.  I want to know

14  how much her attorney -- I want you to tell them, this

15  is 166 and 154.  You tell them exactly -- this is what

16  we're bound to.  We want 1.2 for Osama Abdullatif and I

17  want 1.2 for attorney's fees, whatever it is.  Here it

18  is.  That's it.  I'm going to be bound by that.

19          If Osama Abdullatif wants to come in later

20  on and call her note early, that's her problem.  So go

21  get a number, give it to them and let's go.

22          MR. DAUGHTRY:  Okay.

23          THE COURT:  And then you take that number

24  and you do -- you do your magic with it.  That's your

25  side of the table, okay?

```
 1                    MR. KELLEY:  Thank you, Your Honor.
 2                    THE COURT:  I could step out if you want.
 3                    MR. DAUGHTRY:  I'll have to make a phone
 4   call.
 5                    THE COURT:  Yeah, make a phone call.
 6   Please.
 7                    (Break; off the record)
 8                    (Lunch break)
 9                    THE COURT:  We're back on the record.  Let
10   the record reflect all persons present at the last
11   session are again present.  Please be seated.
12                    This morning we spent quite a time off the
13   record.  This morning the Court took the opportunity
14   again under Texas Civil Practice and Remedies Code 154
15   and Texas Rules of Civil Procedure 166 to see if the
16   parties attempted to resolve their case without Court
17   intervention.  In fact, it's somewhat mandatory under
18   166 that I do the pretrial matter to determine in my
19   discretion if resolution is an option.  So I've taken
20   that up and you-all have worked diligently in that
21   process.
22                    So does everyone agree with the Court's
23   summation of at least what we discussed briefly this
24   morning off the record?
25                    MR. MEDINA:  Yes, we do, for Mr. Choudhri.
```

1           THE COURT:  You can add to it if you like.

2           MR. DAUGHTRY:  Yes.  Sure.

3           THE COURT:  We had some discussion on

4   resolution of the case.  Just a synopsis.  I don't need

5   to dictate everything that I said or you've said.

6           All right, sir.  At this time you wish to

7   put some stipulations on the record?

8           MR. DAUGHTRY:  Yes, Your Honor.  And again,

9   I may ask Mr. Osama Abdullatif who is a creditor of Hira

10  Azhar to confirm some of this after I make some

11  statements and since he's here I'm going to ask --

12          THE COURT:  All right, sir.  If you will

13  stand up and raise your right hand.

14          (Witness sworn)

15          THE COURT:  All right, sir.  You may

16  proceed.

17          MR. DAUGHTRY:  Okay.  It's my understanding

18  that Mr. Osama Abdullatif has paid out of pocket

19  approximately $1.107 million towards expenses and

20  attorney's fees and other types of things for which

21  there is like an obligation to repay, based somewhat on

22  a line of credit.

23          Additionally at this time as of today's

24  date there is $147,000 in fees owed to Bobby Newman,

25  $56,000 in fees owed to Bernadette Barbee who has not

1  been paid in two years; and 47,500 approximately owed to

2  Alan Daughtry based upon billings from January 30, 2019

3  to date, so for this year; bringing it to a total of

4  obligations of $1.357 million, fees and expenses.

5                    OSAMA ABDULLATIF,

6  having been duly sworn, testified as follows:

7                    DIRECT EXAMINATION

8  BY MR. DAUGHTRY:

9     Q.   Mr. Abdullatif, is it accurate that the amount

10 of funds that you have expended to date are

11 approximately $1,107,000 for which Ms. Azhar owes you

12 for those expenses?

13    A.   Yes.  I think that number also included the

14 last bill that you sent out of 40-something thousand

15 dollars or 50-something thousand dollars.

16    Q.   No, no --

17    A.   Approximately.  I would have access to the

18 books this morning, Judge, when I was asked that

19 question but approximately $1.1 million is what I was

20 told.

21    Q.   Okay.  In advancing these funds does she have a

22 house or anything that she lives in?

23    A.   No.

24    Q.   Does she have a car or any means --

25    A.   No.

1          MR. KELLEY:  Objection; that's hearsay.
2   How would he know?

3          THE COURT:  Stop.  Overruled.  Finish up.
4   I've got questions, too.

5      A.  She come stay at my house, Judge, when she
6   comes -- when she's (inaudible).

7      Q.  (By Mr. Daughtry) Does she have a job?

8      A.  Not that I know of, no.

9      Q.  Okay.  Up until the point where the support
10  payments that were coming to her, was she having any
11  other sources of living expenses or income other than
12  what you might have provided?

13     A.  No, not that I know of.

14         THE COURT:  All right.  So I took the
15  number.  I heard "approximate, close to, maybe,"
16  whatever.

17         MR. DAUGHTRY:  But "no more than."

18         THE COURT:  That's it.  That's it.  So for
19  the purposes of your continued discussion under -- you
20  know, for resolution, that's it.  We're not going to
21  be -- that's the number they can rely on.

22         MR. DAUGHTRY:  You heard 1.357?

23         THE COURT:  That's it.

24         MR. DAUGHTRY:  Yes.

25         MR. KELLEY:  Judge, can I ask him some

1    questions?

2                    THE COURT:  What do you want to ask him?

3                    MR. KELLEY:  He put a big number out there.

4    It's other expenses.  So I would like to have him break

5    down this 1.107 because it suddenly went from attorney's

6    fees to expenses to other things.

7                    THE COURT:  Why don't you flush that out

8    before getting into being here all day.  The 1.107, you

9    said expenses and attorney's fees but then you have

10   Newman, Barbee and Daughtry here on attorney's fees.  So

11   what -- break out the 1.107 because he actually said he

12   thought the last bill covered your fees.

13                   MR. DAUGHTRY:  Well, he was wrong because I

14   just sent it this morning and it's for the entire year

15   and he hasn't paid it and it was a 50 percent discount

16   pretty much.

17                   THE COURT:  Well, there you go.

18   Congratulations.  You got a deal.

19                   MR. DAUGHTRY:  It's not congratulations.

20                   THE COURT:  So flush the 1.107 out, please.

21        Q.   (By Mr. Daughtry) The 1.107, is that

22   predominantly a payment of attorney's fees and expert

23   expenses?

24        A.   Expert and other expenses that Hira basically

25   has.

1      Q.   Why don't you summarize some of those other

2  expenses, other than expert fees and attorney's fees,

3  and try to ballpark for us what those might entail.

4      A.   I believe approximately $900,000 or 950 --

5           Judge, I'm going to say "approximately"

6  because I don't have access to the records and spend

7  time since the last time I looked at it and when I asked

8  that question I basically calculated stuff based on the

9  amount of money that we have discussed previously.

10           THE COURT:  Thanks but don't inflate --

11  please do not inflate your number.  Give us your best

12  knowledge because I'm going to hold you to that.  And if

13  I really get upset I'm going to make you go produce it

14  somehow or another and it's going to be painful.

15           So I need you to tell me -- I understand

16  you don't have those records, but I'm trying to get this

17  case resolved today and I need you to tell me that it's

18  not -- I'm not asking for a penny more or a penny less.

19  This is what my recollection is and I'm going with this

20  number.

21           So you need to -- your best recollection --

22  and if you can't do it, I'll make you go home and get it

23  and come back.  So I don't want to do that.  I want to

24  get this over with today.  You're settling your case.

25           Let me just go back while we're on the

1   record.  Some of my diatribe I had before.  I know

2   exactly what's going on.  I did not come down with the

3   last drop of rain.  You are settling your case.  It's

4   going to be painful, okay?  We're getting her paid,

5   money in her pocket to live; he's paying, and then

6   you-all go fight on something else.  I'm taking her out

7   of this equation, okay?

8               I know exactly what's going on and I've had

9   enough of it.  The Court's patience has been exhausted.

10  We've had this for two years and I've stretched this out

11  and I'm going to be affirmed when it goes up to the

12  Court of Appeals and you're going to spend another

13  $1.357 million in the next two, three years.  So let's

14  stop the madness, get off of the train, get your case

15  settled today, or I'm going to make it painful, okay?

16  You understand?

17              I know how this works.  I've been around

18  the world twice.  I've negotiated big deals for big

19  companies and I'm going to settle this case and I'm

20  taking this lady out of the mix because she's had

21  enough, okay?  I know exactly what's going on.  He's

22  going to write a check and we're going to get you-all --

23  then you-all go fight another battle another place and

24  I'll see you again in another trial.  Be happy to have

25  you back, okay, with your business dispute.

1          I'm tired of having this lady be the pawn

2 in this whole process.  Got it?  So I'm holding your

3 feet to the fire and you better be right on the money

4 because if I don't like it I'm going to send you out and

5 I'm going to flip you upside down doing discovery.  I

6 want this over with today.  And if you two have to sit

7 down in a room and settle your case, you will do it.

8 It's going to be over today, tomorrow at the latest.

9 Got it?  Am I clear?

10          MR. ABDULLATIF:  Yes, sir.  May I say

11 something, Judge, please?

12          THE COURT:  No.  You're going to answer his

13 questions.  Please answer his questions.  Let's get this

14 over with.

15    Q.   (By Mr. Daughtry) Of the 1.107 amount is any of

16 that amount for which she owes you for living expenses

17 or other types of expenses other than expert witness

18 fees and case expense and attorney's fees?

19    A.   School expense and some credit card expense.

20          But, Judge, I have to say something,

21 please, if you will allow -- the Court allows me since I

22 don't have an attorney to respond to the Court's

23 comments.  I'm not in the case to settle the case.

24 That's just very important.  And I'll be more than happy

25 to provide you with the records with regard to Hira

1    Azhar as a loan to her.  I would have the records.  I

2    was given short notice to appear here in front of you.

3    With all due respect to the Court, I would love to get

4    ample time to provide you that record.

5              This morning when I received the call I

6    called my assistant.  She had to fly -- she's down in

7    Virginia for her father being very sick.  And those

8    items is not something that I'm trying to settle my

9    case, as the Court indicated.

10             If I knew that was going to be a process of

11   the Court today, I would have been very happy to be able

12   to at least bring an attorney to be able to respond to

13   any questions that the Court have.

14             But from my perspective, Judge, to be very

15   clear on the record, I know for sure as of July to

16   August -- August 2017 a lot of fees were paid to Bobby

17   Newman and his office.  I also after that I advanced her

18   some fees for -- the legal fees that was provided by

19   Alan Daughtry and other experts that they hired to be

20   able to work on it.

21             I have not really been involved on the

22   record how much money that was spent.  There's certain

23   times that Hira had needed school expenses that she

24   had -- or living expenses that she have and other

25   expenses for going back and forth and issues she need

1    for her and her family to be able to travel.

2              I don't have a record, Judge, to be able to

3    give you a different number; but I can tell you for sure

4    exactly, to the best of my knowledge at this time, that

5    fees were approximately $950,000 out of that money,

6    close to a million dollars.  And I understand the

7    Court's position.  I really do, that you need an exact

8    concrete number; but I was not given ample time to be

9    able to put that record together and bring it to you.

10             We have --

11             THE COURT:  Okay.

12             MR. ABDULLATIF:  Everything was either on a

13   credit card or a check that was written to a third

14   party.

15             THE COURT:  Thank you.  Thank you for that.

16   Just a couple --

17             MR. ABDULLATIF:  I want to --

18             THE COURT:  Just stop.  The good news is

19   when I speak everybody stops.

20             Two observations.  The worst thing you can

21   say to a judge is "with all due respect."  Okay?

22             MR. ABDULLATIF:  Sorry about that.

23             THE COURT:  So don't ever say that to me.

24   Because what that means is, Judge, you're just an idiot,

25   you don't get it.

1          MR. ABDULLATIF:  Sorry.

2          THE COURT:  Second thing is, when -- the

3    reason I get to talk and you get to listen is this

4    lovely lady sitting right here is taking down everything

5    that's being said.  She can't take down both of us

6    speaking at the same time.  So I've indulged you to let

7    you speak; do the same with me, okay?  So that's the

8    first thing.  Don't say that.  I write down stuff.  We

9    all keep notes.

10          Second of all, nobody -- and I've been

11   judging for 20 years.  I'm a Civil District court

12   primarily, okay?  In 20 years I've never heard of or

13   seen anybody have a loan contract with a blank and

14   that's been represented to this Court today that you

15   have a loan to this lady with a blank.  Never seen it

16   before.  It doesn't happen, okay?

17          I know exactly what's going on and I need a

18   number from you today, okay, to tell me -- to settle

19   your case, to get it resolved today.  You need to tell

20   him, him, him, her, him, him, the number you will take

21   to resolve all the money you've spent on attorney's fees

22   and the blank loan which doesn't exist, okay?

23          It fails for consideration.  It fails, I'm

24   telling you.  If you try to sue on a note like that it's

25   not going very far.  Typically we have lines of credit

1   with -- but it's got an end to it, like a million dollar

2   line of credit.  You've got to pay them.  But a blank

3   loan which has been represented to this Court?  It

4   doesn't exist.  It's not going very far.

5            The whole point of this here -- please,

6   sir -- is you tell him and you tell them today what you

7   will take on that blank loan to this lady so that we can

8   figure out how much we're going to pay, they are going

9   to pay, that you are going to accept on her loan and get

10  these fine lawyers paid and have money left over for her

11  so she can continue or start a life and be productive.

12  Here, New York, wherever she wants to go.

13            That's it.  It is simple.  It's very, very,

14  very simple, everybody.  This is so simple it's not even

15  funny.  You've wrapped this up in some big divorce case

16  which it is not.  How much are you going to take?

17  Figure it out.  Let's get 'er done.  It's simple.  And

18  then you two go fight on the next business deal

19  someplace else.  We would love to have you back in.  If

20  you ever come back, please don't say "with all due

21  respect."  That's a bad thing.

22            MR. ABDULLATIF:  (Unintelligible).

23            THE COURT:  No, I got it.  And I do

24  appreciate, sir, you coming down here because I can make

25  life miserable and I don't want to do that.  I want to

1 get this off Judge Wells' docket.  It's been on here too

2 long, okay?  As much as I enjoy being down here and it

3 keeps me employed, keeps these guys employed, you-all

4 get it over with so she can go do something else,

5 you-all can go fight on another business deal someplace

6 else, and we can all go have lunch, okay?  You got it?

7                I need you to -- I got your stipulation on

8 the record.  I don't like the "approximately."  You tell

9 him how much.  You go and say, I will take this to be

10 done with it for what you've spent on her.  You got it?

11                MR. ABDULLATIF:  Yes, sir.

12                THE COURT:  Anybody have any other

13 questions?

14                MR. KELLEY:  I have one.

15                THE COURT:  Don't mess it up.

16                MR. ABDULLATIF:  Judge --

17                MR. KELLEY:  Can him, maybe her, go in that

18 jury room and get this done?

19                THE COURT:  I'm all in favor of clients

20 keeping lawyers out of the loop when you get to this

21 deal.

22                MR. DAUGHTRY:  I understand.

23                THE COURT:  But I cannot mandate that nor

24 will I mandate that.  I encourage it.

25                MR. KELLEY:  May they use your jury room to

1    do that?

2              THE COURT:  They certainly can.  And she

3    needs to and you need to consult your attorney but

4    sometimes lawyers get in the way.  But if you're

5    comfortable with your lawyers and you're uncomfortable

6    not being -- I'm not going to force you.  I cannot and I

7    will not do that.

8              You listen to them.  But sometimes lawyers

9    get in the way to getting a business dispute resolved,

10   okay?  We're getting you some money in your pocket.  You

11   hear what I'm saying?  Because it could go down with

12   zero later on and the equitable thing to do is to get

13   this case resolved because if I go through and I'll be

14   clear, I'm here to determine whether the Pakistani

15   court, high court has resolved your divorce completely.

16   You're divorced in the eyes of this court.

17             The property division is the only thing

18   that's left out which is the money which I'm trying to

19   get in your pocket because if I rule the Pakistani court

20   resolved that, you're over.  Done.  Finese.  Zippo.  And

21   then you just go on down to the Court of Appeals and get

22   me reversed, hopefully, and then they're going to take

23   me right up to the Supreme Court and then about four,

24   five, six years from now when the Supreme Court says I

25   was right, you're going to say, why didn't I listen to

1  that old man sitting up there.

2            You hear what I'm saying?  So it might be

3  worth just sucking it a little bit, take a little pain.

4  I don't mean physical pain or mental abusive pain.  I

5  understand that.  But get these guys together, get you

6  out of being a pawn.  They're using you as a tool right

7  now and I don't like that.  I just don't like it at all,

8  okay?  So I'm going to stop and shut up while we have

9  enough on the record.

10           MR. ABDULLATIF:  Can I get something on the

11  record, if you don't mind, please?

12           THE COURT:  No, sir.  We're done for now.

13  You're gonna go do exactly what I told you to do.  You

14  don't have to, but you're going to wish you had.  You

15  get -- I want to be clear.  You tell them exactly what

16  you're going to take for her loan, the attorney's fees.

17  Tell them so that he can go back and get that bundle of

18  money and pay her, pay you, pay you, pay you; and then

19  we're going home.  Got it?  That's it.

20           This is something that Jeff -- Mr. Uzick

21  couldn't do that I can do because I've got lots of tools

22  in my -- I've got lots of arrows in my quiver.  I

23  haven't even pulled out the first one yet.  The only

24  person that's gonna have fun is me.

25           All right.  Let's go to work here.

1              **(Off the record)**

2              **(Proceedings adjourned)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  THE STATE OF TEXAS
   COUNTY  OF  HARRIS
2

3      I, Jodi Masera, Deputy Official Court Reporter in

4  and for the 312th Family District Court of Harris

5  County, State of Texas, do hereby certify that the

6  foregoing contains a true and correct transcription of

7  all portions of evidence and other proceedings requested

8  in writing by counsel for the parties to be included in

9  this volume of the Reporter's Record, in the

10 above-styled and numbered cause, all of which occurred

11 in open court or in chambers and were reported by me.

12     I further certify that this Reporter's Record of

13 the proceedings truly and correctly reflects the

14 exhibits, if any, admitted, tendered in an offer of

15 proof or offered into evidence.

16     I further certify that the cost for the preparation

17 of this volume is $300.00 and was paid/will be paid by

18 ALAN DAUGHTRY LAW.

19

20     WITNESS my hand this the 21st day of August, 2019.

21          /s/ Jodi Masera
            Jodi Masera, Texas CSR No. 4273
22          Expiration Date: 10/31/21
            Deputy Official Court Reporter
23          312th Family District Court
            Harris County, Texas
24          201 Caroline, 16th Floor
            Houston, Texas 77002
25          (281)204-7599