Case 23-34815 Document 513 Filed in TXSB on 06/17/24 Page 1 of 4

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 17, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-34815 |
| **GALLERIA 2425 OWNER, LLC,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 11 |

## ORDER

Before the Court is the Motion for Entry of Order Prohibiting Credit Bidding by National Bank of Kuwait, S.A.K.P. New York Branch Pursuant to 11 U.S.C. § 363(k) (ECF No. 353) filed by 2425 WL, LLC and Ali Choudhri ("Choudhri"). The National Bank of Kuwait, S.A.K.P. New York Branch ("NBK") filed its objection to the motion at ECF No. 455. Hearing was held on June 17, 2024.

The movants are requesting that the Court prohibit credit bidding[1] in any auction or sale of the debtor's property located at 2425 West Loop South, Houston, Texas (the "Property"), as there are bona fide disputes regarding whether NBK possesses any claim or rights to the Property based on the loan, deed of trust, and tax liens, and disputes exist relating to the validity of NBK's lien on the Property. Movants further argue that the right to credit bid will chill interest in the auction of the Property.

## BACKGROUND

NBK has filed two secured claims in this case, one in the amount of $3,864,455.06 (Claim No. 13) and one in the amount of $67,157,854.15 (Claim No. 14), totaling $71,018,309.21. Claim 13 is based on two Tax Lien Contracts and a Loan Modification Agreement, and Claim 14 is based on a Loan Agreement, a Promissory Note and a Deed of Trust on the Property. In support of their allegations, the movants referenced a Confidential Settlement Agreement dated August 22, 2022,[2] alleging that NBK breached the agreement, which increased NBK's claim against the debtor. NBK disputed those allegations and presented evidence that it was the debtor that breached the agreement and failed to comply with a state court order requiring it to close on a loan purchase or allow NBK to foreclose.[3]

NBK filed its Plan of Liquidation (ECF No. 194) on April 10, 2024 (the "NBK Plan"). The NBK Plan provides for the sale of the Property and dissolution of the debtor.

---

[1] Credit bidding is a term of art which permits a creditor to bid at a sale under Section 363(b) in an amount up to its entire claim. *In re Dalton Crane, L.C.* 641 B.R. 850 (Bankr. S.D. Tex. 2022).

[2] ECF No. 499-90 and ECF No. 508-7.

[3] ECF No. 498-1, pages 72 – 76 and ECF No. 90-3, pages 31, 34, 36, 40, 56, 58, 60 and 62 for the rulings by the court.

1 / 4

**EXHIBIT 10**

On April 10, 2024, the Chapter 11 Trustee filed a Notice of Proposed Stalking Horse Agreement at ECF No. 197. That agreement provides that NBK will purchase the Property through a credit bid in the amount of $18.6 million. The Bid Procedures approved by the Court on April 29, 2024, at ECF No. 254 set a bid deadline of June 14, 2024, at 5:00 p.m., set an auction date of June 18, 2024, at 1:00 p.m., if needed, and approved the form of the Stalking Horse Agreement but did not approve the sale of the Property to NBK, even if NBK is the only bidder. Instead, it provides that the Trustee should promptly seek approval of the Stalking Horse Agreement if NBK has the only qualified bid for the Property. The deadline to object to the sale is July 1, 2024, and the hearing, if needed, for the Court to consider a successful bid is scheduled for July 8, 2024, at 9:00 a.m.

In support of its objection, NBK points to the bidding process and the Chapter 11 Trustee's status report,[4] advising of the interest he has received in the sale of the Property and the efforts by potential bidders. Accordingly, there is the possibility that NBK credit bidding has not chilled interest in an auction. The bidding process consisted of two months of marketing and required a bid deposit of 10% of the cash purchase price.

## ANALYSIS

Section 363(k) of the Bankruptcy Code provides as follows: At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court **for cause** orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. §363(k) treats credit bids as a method of payment the same as if the secured creditor has paid cash.[5] The Supreme Court has held that debtor may not sell property free and clear of liens without allowing a lienholder to credit bid.[6] That case was similar in that the debtor proposed a plan which provided for a sale of property by auction, with the initial bid to be submitted by a "stalking horse" – a potential purchaser who was willing to make an advance bid of $47.5 million. The sale was to be free and clear of liens, with the secured creditor being paid out of the proceeds of the sale, and not allowed to credit bid. The debtor in that case sought to confirm the plan under the cramdown provisions of Section 1129(b)(2)(A). The secured creditor objected to the plan. Here NBK proposed the plan, is the "stalking horse," and it has sought a credit bid of $18.6 million.

The Fifth Circuit in a concurrence discussing *RadLAX,* advised that prudent bankruptcy courts routinely order transparent, broadly publicized auctions of debtors' assets that test the market for valuations as well as secured creditors' sincerity about credit bidding.[7] That was done in this case.

---

[4] ECF No. 452.
[5] *R&L Inv. Property, LLC v. Green,* No. 12-4171, 2014 WL 1807618, (Bankr.N.D. Tex. May 6, 2014) *citing In re Spillman Development Group, Ltd.*, 401 B.R. 240 (Bankr. W.D. Tex. 2009).
[6] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 132 S. Ct. 2065 (2012).
[7] *Baker Hughes Oilfield Operations, Inc. v. Morton (In re R.L. Adkins Corp.)*, 784 F.3d 978 (5th Cir. 2015).

Movants' initial objection to the credit bidding is that they contend that NBK does not have an allowed claim, and the extent or validity of its liens is genuinely in dispute. In support of this argument, it cites to *In re CS Mining*,[8] which found that the right of a lienholder whose lien was not in bona fide dispute may bid at a sale. The court used the fact that there was an objection to the claim and an adversary as a starting point in its analysis to determine if there was cause to deny credit bidding. It found that it was only one factor, however, in its overall analysis whether or not to change the existing bidding procedures that were in place in that case. There was no evidence presented at the hearing that demonstrated that the debtor complied with the provisions of the Confidential Settlement Agreement regarding the Settlement Payment, as the amount of $801,509.42 was not paid within 210 days of the Effective Date as set forth in that agreement.[9] In fact, there was evidence submitted that the payment was not made.[10] Additionally, when the payment date was extended to July 3, 2023 by state court action, again the Settlement Payment was not made.

The movants broadly claim that NBK has no interest in the subject property and that they have breached the Confidential Settlement Agreement or that there are other contract breaches. They alleged that "on June 28, 2023, NBK offered to sell the Loan and the Deed of Trust securing the Property to Choudhri for $27 million less credits resulting in a net purchase price of $26,038,490.58." The Court does not believe this to be true, there was no offer by NBK or valid acceptance by any party. The evidence does not support such an allegation. They further alleged that Choudhri's state court litigation [which has been removed to this court] raises substantial disputes relating to the NBK claim(s), including whether NBK has any rights to the Property whatsoever pursuant to the Loan and Deed of Trust. The Court entirely disagrees with this allegation.

The Court notes that there are various claim objections pending, however, the Court finds that these are not a sufficient dispute for the court to find cause to disallow or limit NBK's right to credit bid under 11 U.S.C. § 363(k). The Court finds that the moving parties have failed to meet their burden as to cause. Its second objection is that allowing NBK to credit bid up to $71 million would have the effect of chilling other interested parties from bidding on the Property.

It is clear that Section 363(k) allows a court discretion if cause if found to prohibit or limit credit bidding. One cause could be if permitting the lienholder to bid would chill the bidding process.[11] The Chapter 11 Trustee has filed a report on the marketing process.[12] The Court does believe that credit bidding in this case, just like a secured creditor bidding at a foreclosure sale, may impact the bidding process. However, if this was all that was needed to prohibit or limit credit bidding then Section 363(k) would simply disallow credit bidding, when it does exactly the opposite. The Court holds that there must be some sufficient dispute between the parties that it can find cause for disallowing or limiting credit bidding. Here it does not find any such cause and denies the motion in its entirety.

---

[8] *In re CS Mining, LLC*, 574 B.R. 259 (Bankr. D. Utah 2017) *citing in re RadLAX, supra*.
[9] ECF No. 508-7, page 4.
[10] ECF No. 498-1, page 18 "[t]here's no dispute that the payment wasn't made in full by March 20,"
[11] *In re Fisker Automotive Holdings, Inc.,* 510 B.R. 55 (Bankr. D. De. 2014) *citing* to 3 Collier on Bankruptcy 363.09[1].
[12] ECF No. 452.

3 / 4

The movants and especially Choudhri go to great lengths to pass the blame for their non-payment to NBK of the Settlement Payment, in effect that he or others could not pay due to the actions of NBK. The Court upon review of the documentary evidence does not believe these allegations. Additionally, and finally the Court recognizes that NBK is a liquid institution and that any possible claims made against it for money damages, by any party, if awarded will be paid. While the Court doubts the allegations of the movants and does not believe that they will be successful on any of their claims, if they do, to the extent they are entitled to money damages they will be paid. Still further the Court relies on the Chapter 11 Trustee's business judgment as to the lack of validity of the movants claims having heard no credible evidence to question his testimony.

For the reasons so stated the Motion to Prohibit Credit Bidding (ECF No. 353) is in all things denied.

**SO ORDERED**.

SIGNED 06/17/2024

_____
Jeffrey Norman
United States Bankruptcy Judge