# EXHIBIT 4

EXHIBIT
13

1          IN THE UNITED STATES BANKRUPTCY COURT

2            FOR THE WESTERN DISTRICT OF TEXAS

3                    AUSTIN DIVISION

4

5    In re:                        Chapter 11

6    TEXAS REIT, LLC               Case No.

7    Debtor                        24-10120-smr

8

9

10

11              REMOTE DEPOSITION OF

12                 OMAR KHAWAJA

13

14

15

16              September 11, 2024
                   10:15 a.m.

17

18

19         5051 Westheimer, Suite 1200
                Houston, Texas

20

21

22                                      EXHIBIT
                                           13
23

24

25      Cheryl Madriaga, Shorthand Reporter



OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                   2

1                    APPEARANCES OF COUNSEL:

2
   On behalf of Debtor, Texas Reit, LLC:
3
   STEPHEN W. SATHER, ESQ.
4    BARRON & NEWBURGER, P.C.
   7320 N. Mopac Expy, Suite 400
5    Austin, TX 78731
   (512) 476-9103
6    ssather@bn-lawyers.com

7
   On behalf of Deponent, Omar Khawaja:
8
   MICHAEL BALLASES, ESQ.
9    HOOVER SLOVACEK, LLP
   5051 Westheimer, Suite 1200
10    Houston, Texas 77056
   (713) 977-8686
11    ballases@hooverslovacek.com

12
   On behalf of Dalio Holdings I and II, LLC:
13
   LORI A. HOOD, ESQ.
14    SHACKELFORD, MCKINLEY & NORTON, LLP
   717 Texas Avenue, 27th Floor
15    Houston, TX 77002
   (832) 669-6081
16    lhood@shackelford.law

17
   Also Present:
18
   Dwayne Mason, Esq., Greenberg Traurig, LLP -
19    prospective counsel for Dalio Holdings I and II, LLC

20    Ali Chouhdri, pro se - in his individual capacity

21    Gene McCubbin - assistant to Lori Hood

22    Tammy Luu - assistant to Ali Choudhri

23    Osama Abdullatif - noticed deponent

24    John Quinlan - noticed deponent

25

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                                3

1                    INDEX TO EXAMINATION

2   EXAMINATION                        PAGE

3   Examination by Mr. Sather            6
    Examination by Ms. Hood             47
4   Examination by Ms. Hood             72
    Examination by Mr. Choudhri         126
5   Reporter's Certificate          229

6

7                    INDEX OF EXHIBITS

8   DEBTOR'S         DESCRIPTION              PAGE

9
    Exhibit 1    Proof of Claim              9
10
    Exhibit 2    Supplemental Notice of Lis      35
11            Pendens for 8052 Westheimer

12   Exhibit 3    Supplemental Notice of Lis     37
            Pendens for 8098 Westheimer
13
    Exhibit 4    Adversary Complaint - George Lee   38
14
    Exhibit 5    Debtor's Objection to Claim      44
15
    Exhibit 6    Motion for Leave to Withdraw     45
16            Claim Number 9

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE REPORTER:  We are on the record.  The date |
| 3 | is September 11th, 2024.  This begins the deposition |
| 4 | of Omar Khawaja. |
| 5 | My name is Cheryl Madriaga, representing |
| 6 | Esquire Deposition Solutions. |
| 7 | Will counsel please state their name on the |
| 8 | record and whom they represent? |
| 9 | MR. SATHER:  Stephen Sather -- |
| 10 | MR. BALLASES:  Michael Ballases -- |
| 11 | MR. SATHER:  -- attorney for -- |
| 12 | MR. BALLASES:  -- (unintelligible) Khawaja -- |
| 13 | THE REPORTER:  Sorry -- |
| 14 | MR. BALLASES:  -- John Quinlan, and Osama |
| 15 | Abdullatif. |
| 16 | THE REPORTER:  Okay.  Sorry.  I just had two |
| 17 | people speaking at once.  Could I start with one |
| 18 | counsel, please? |
| 19 | MR. BALLASES:  Sure.  Michael Ballases, |
| 20 | counsel of record for the deponent, Omar Khawaja, also |
| 21 | John Quinlan, also Osama Abdullatif. |
| 22 | THE REPORTER:  Thank you. |
| 23 | MR. SATHER:  Stephen Sather -- |
| 24 | MR. BALLASES:  You're welcome. |
| 25 | MR. SATHER:  -- for Texas REIT, LLC, the |

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    5

1    debtor in this case.

2          MS. HOOD:  Lori Hood of Dalio Holdings, a

3    creditor in the case.

4          MR. CHOUDHRI:  Ali Choudhri, a creditor in the

5    case.

6          THE REPORTER:  Okay.  Is there anything else,

7    or are we ready to have me swear in the witness?

8          MR. BALLASES:  Now, there are other people on

9    the call.  They need to make an appearance.

10         MR. MASON:  This is Dwayne Mason, prospective

11   counsel for Dalio with Greenberg Traurig.

12         MR. MCCUBBIN:  Gene McCubbin, assistant to

13   Lori Hood.

14         MR. BALLASES:  Okay.  I'm going to object --

15   this is Michael Ballases.  I'm going to object to Lori

16   Hood, her assistant, Ali Choudhri, and Dwayne Mason

17   being present on the call.  They're not -- they don't

18   represent Texas REIT.  They're not parties, they don't

19   have standing, and they cannot participate.  And this

20   is not a creditors' meeting.  So I want that to be on

21   the record.

22         MR. SATHER:  All right.  Your objection is

23   noted.  Let's proceed.

24         THE REPORTER:  Okay.  And just before we go on

25   the record, I just ask that we please do our best not

1  to speak over one another.

2          Mr. Khawaja, please keep your voice nice and

3  loud, allow counsel to finish his completely before

4  you begin your answer, and all answers must be verbal.

5  Thank you.

6          MR. CHOUDHRI:  Just confirming, Madam Court

7  Reporter, we are on the record; right?

8          THE REPORTER:  Yes, we are.

9          MR. SATHER:  All right.

10         MR. CHOUDHRI:  Okay.

11         MR. SATHER:  If you would swear in the

12  witness, please.

13              OMAR KHAWAJA,

14  having been first duly sworn, was examined and

15  testified as follows:

16              EXAMINATION

17         MR. BALLASES:  Real quick before we get

18  started -- this is Michael Ballases -- I assume we

19  have an agreement to take this deposition by the

20  Federal Rules of Civil Procedure and also the Court's

21  limiting instruction.

22         MR. SATHER:  Yes.

23         MR. BALLASES:  Okay.

24  BY MR. SATHER:

25     Q.  All right.  Mr. Khawaja, have you ever given a

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
7

1  deposition before?

2    A.  I don't think so, no.

3    Q.  All right.  But are you familiar with the

4  process for taking a deposition, sir?

5    A.  Yes.  Yes, I am.

6    Q.  And do you understand that your testimony

7  today is under oath?

8    A.  Yes, I do.

9    Q.  And is there anyone present in the room with

10  you where you are giving your testimony?

11    A.  Yes, my attorney, Michael Ballases, and the

12  other two parties, Osama Abdullatif and John Quinlan.

13    Q.  All right.  And, Mr. Khawaja, do you

14  understand that you cannot confer with any of the

15  parties in the room with respect to your answers?

16    A.  Yes, I do.

17    Q.  Tell me what you do for a living.

18    A.  I'm an attorney.

19    Q.  And are you familiar with a company called

20  Texas REIT, LLC?

21    A.  Yes, I am.

22    Q.  And how are you familiar with Texas REIT, LLC?

23    A.  So an entity that Ali Choudhri owns.

24    Q.  Okay.

25    A.  Or controls.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        8

1      Q.  And have you ever entered into a business

2   transaction with Texas REIT, LLC?

3      A.  No, I have not.

4      Q.  Do you claim to be an owner of Texas REIT,

5   LLC?

6      A.  No, I don't.

7      Q.  Have you ever filed a notice of lis pendens on

8   behalf of any party against Texas REIT, LLC?

9      A.  I may have, yes.

10     Q.  Okay.  And are you familiar with what a notice

11  of lis pendens is?

12     A.  Yes.

13     Q.  Are you familiar with Ali Choudhri, who is

14  present here today?

15     A.  Yes.

16     Q.  And how are you familiar with Mr. Choudhri?

17     A.  I have litigation against him.  He's defrauded

18  me.  He's defrauded people I know.  I represent people

19  against him.  And, you know, we're sitting here in

20  this case today, so I know him because I am a party in

21  this case.

22     Q.  All right.  Are you familiar with Jetall

23  Companies?

24     A.  Yes.

25     Q.  And how are you familiar with Jetall

1    Companies?

2      A.  It's an entity that Ali Choudhri controls or

3    owns, and I have judgments against them.

4          MR. SATHER:  All right.  I'm going to share my

5    screen and show Exhibit 1.

6          (Debtor's Exhibit No. 1 was marked for

7    identification.)

8      Q.  (BY MR. SATHER)  I have previously provided

9    this document to the court reporter and your counsel.

10          And so can you see Exhibit Number 1 on the

11    screen, sir?

12      A.  Yes, I do.

13          THE WITNESS:  Do you have a physical copy too,

14    Michael?

15      Q.  (BY MR. SATHER)  All right.  Now, are you

16    familiar -- are you aware that this is a proof of

17    claim filed with the United States Bankruptcy Court?

18      A.  Yes, I am.

19      Q.  And are you one of the claimants listed on

20    this proof of claim?

21      A.  I am.

22      Q.  And as I read the proof of claim, there are

23    three individuals who are listed as the current

24    creditor:  John Quinlan, Omar Khawaja, and Osama

25    Abdullatif.  What is the relationship between the

OMAR KHAWAJA                                            September 11, 2024
TEXAS REIT LLC                                                         10

1   three individuals with respect to the proof of claim?

2      A.  They're just judgment orders.

3      Q.  Okay.  But do each of you assert the claim

4   jointly and severally, or do each of you have

5   different pieces of the claim?

6      A.  You know, jointly and severally.

7      Q.  All right.  Now, do you have an agreement

8   between the three of you as to how any monies received

9   on the claim will be divided?

10     A.  Not particularly.  I mean, you know, we don't

11  have a written agreement, from my understanding.

12     Q.  Okay.  Now, if I could go --

13        MR. BALLASES:  (Unintelligible) Ballases.  I'm

14  going to object.  You're violating -- you're being

15  harassing and oppressive and that you're violating the

16  Court's limiting instruction.

17        I'm going to give you a little bit of leeway

18  to get into all this just because it's background, but

19  the purpose of this deposition is for you to ascertain

20  why my clients filed the proof of claim and why they

21  now want to withdraw it.  And so I'll give you some

22  leeway, but I'm just letting you know.

23        MR. SATHER:  All right.  I disagree with that

24  contention.  I've listened to Judge Robinson's ruling.

25  I think it's broader.  But I'm going to continue on,

OMAR KHAWAJA                                         September 11, 2024
TEXAS REIT LLC                                                      11

1   and if we run into a problem, we may have to take that

2   up with the Court.  But let me move on with my

3   questions.

4       Q.  (BY MR. SATHER)  Mr. Khawaja, did you sign the

5   proof of claim?

6       A.  I don't recall signing it.  I may have.  I

7   don't know.

8       Q.  Okay.  Did you authorize filing the proof of

9   claim?

10      A.  Yes, I did.

11      Q.  Did you read the proof of claim before it was

12  filed?

13      A.  Yes.

14      Q.  What steps did you take to ensure that the

15  proof of claim was accurate?

16      A.  I read it.

17      Q.  All right.  Now, I'm going to go down to Box 7

18  on the claim, and that has a dollar amount.  Do you

19  see that?

20      A.  Yes.

21      Q.  And do you know how that number was

22  calculated?

23      A.  I don't recall.

24      Q.  Going to page 8 of 54, there is a summary of

25  damages.  Does that refresh your recollection as to

OMAR KHAWAJA                                     September 11, 2024
TEXAS REIT LLC                                              12

1  how the proof of claim numbers were calculated?

2      A.  Can you enlarge it just a little bit so I can

3  look at it carefully?

4      Q.  Sure I can.  It does depend on my ability to

5  work this.  Does that help?

6      A.  Yeah, that -- that helps.  Thank you.

7      Q.  And so do you know where -- and let me scroll

8  up here.

9      A.  Sure.

10      Q.  Do you know where these numbers came from?

11      A.  This appears to be numbers that my counsel

12  provided.

13      Q.  And for the record, who is your counsel who

14  provided the numbers?

15      A.  Michael Ballases with Hoover Slovacek.

16      Q.  And have you taken any steps personally to

17  verify that these amounts are correct?

18      A.  I mean, I looked at the judgments before we

19  filed them.

20      Q.  Anything else?

21      A.  That's it.

22      Q.  Now I'm going to go to Box 9 and -- now, on

23  this page, it asks:  Is any -- all or any part of the

24  claim secured?  And it's not checked, but I'd like to

25  go to a subsequent page.  It may be a prior page.

1   Excuse me.

2       Okay.  Here we go.  Looking at Box 9, do you

3   see where the box of, Is the claim secured, checked

4   "Yes."  Do you see that, sir?

5       A.  I do see that.

6       Q.  What is the basis for the claim being secured

7   according to the proof of claim?

8       A.  I mean, I'd have to ask my attorney.

9       Q.  Okay.  But it says -- and I believe this is

10  probably a typo, but it says "les pendens."  You think

11  that's a reference to filing of a notice of lis

12  pendens?

13      A.  It could be.

14      Q.  And is it your contention that filing a notice

15  of lis pendens creates an interest in property?

16      A.  It doesn't create -- it doesn't create an

17  interest in property.

18      Q.  All right.  What do you believe that it does?

19      A.  It secures a potential claim against property.

20      Q.  Okay.  Now, it's my understanding that the

21  proof of claim is based upon three separate judgments.

22  Is that your understanding?

23      A.  I think that's accurate.

24      Q.  Now, would you agree with me that none of

25  these judgments were taken against Texas REIT, LLC,

1    the debtor in this case?

2        A.  I believe that's correct.

3        Q.  Now, I'm going to go down and look at the

4    different judgments, and I'm going to ask you some

5    questions about them.  And actually I'm just going to

6    start with the summary here.

7            Number 1 is -- Judgment 1 is called the "Davy

8    and Heil Judgment."  Do you see that?

9        A.  I do.

10       Q.  And this appears to be -- actually, I am going

11   to go to the judgment.  I apologize.  This appears to

12   be a judgment in a case from the Court of Appeal

13   styled Jetall Companies, Inc., Appellant, versus

14   Richard Heil, Todd Oakum, and Renee Davy, formerly

15   known as Renee Davy, formally known as Renee Oakum.

16           Do you see that?

17       A.  I do.

18       Q.  Now, you were not a party to this judgment,

19   were you, sir?

20       A.  I was not.

21       Q.  And what is your connection to the judgment

22   that would give you the authority to submit a proof of

23   claim in this case?

24       A.  The judgment was assigned to me.

25       Q.  Okay.  And is that -- was that a written

OMAR KHAWAJA                                   September 11, 2024
TEXAS REIT LLC                                                 15

1   assignment of judgment?

2      A.  Yes.

3      Q.  And I will represent to you that the

4   assignment of judgment is not part of the proof of

5   claim.  Do you know why that assignment was not

6   included?

7      A.  I don't know why.

8      Q.  And if we were to look at the assignment of

9   the judgment, would the assignee be just Omar Khawaja,

10  or would it be someone else?

11     A.  I believe my assignment would have my name on

12  it.  I'm not sure about the other assignments.

13     Q.  Okay.  So for this particular judgment, it was

14  assigned to you, Omar Khawaja?

15     A.  I don't have it in front of me.  It's possible

16  that Mr. Abdullatif and Mr. Quinlan's name are on the

17  assignment.

18     Q.  All right.  How much did you pay to have the

19  judgment assigned to you?

20     A.  I don't recall.

21     Q.  And did you pay anything to acquire the

22  judgment?

23     A.  Yes, I did.

24     Q.  Now, do you agree with me that this judgment

25  is against Jetall Companies and not Texas REIT?

1          MR. BALLASES:  Objection.  Form.

2      A.  This particular judgment is against Jetall;

3  that is correct.

4      Q.  (BY MR. SATHER)  All right.  And so do you

5  contend that Texas REIT, LLC, is liable for a judgment

6  against Jetall Companies, Inc.?

7      A.  Yes, I do.

8      Q.  And why do you contend that, sir?

9      A.  Because all of the entities that Mr. Choudhri

10  either controls or is involved in are essentially

11  shell companies for his own personal finances, so

12  any --

13      Q.  (Unintelligible)

14      A.  Any company are -- I'm sorry.  Would you like

15  me to continue, or --

16      Q.  Yes, please.

17      A.  -- do you want to --

18      Q.  I did not mean to cut you off.

19      A.  Sorry.  I was saying any entity that

20  Mr. Choudhri controls or owns is treated as if it is

21  his own personal asset with no respect for the

22  corporate form and, I believe, is responsible for --

23  one entity is responsible for the other entity's

24  conduct.

25      Q.  Now I'd like to scroll down to the second

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    17

1  judgment.  And this document says it's a judgment from

2  the 14th Court of Appeals in Jetall Companies, Inc.

3  Versus Hoover Slovacek, LLP.  Are you familiar with

4  this judgment?

5      A.  Yes, I am.

6      Q.  Is Hoover Slovacek the law firm that is

7  representing you today in connection with this

8  deposition?

9      A.  Yes, it is.

10        MR. BALLASES:  Objection.  Form.

11      Q.  (BY MR. SATHER)  You can answer.

12      A.  Yes.

13      Q.  What is your connection to -- your connection,

14  if any, to this judgment?

15      A.  I believe I acquired it.

16      Q.  Did you acquire it by way of a written

17  assignment?

18      A.  Yes.

19      Q.  And did you pay any consideration to Hoover

20  Slovacek to acquire their judgment?

21      A.  Yes.

22      Q.  And how much did you pay them to acquire this

23  judgment?

24      A.  I don't recall how much I paid.

25      Q.  And is it a regular part of your business to

OMAR KHAWAJA                                         September 11, 2024
TEXAS REIT LLC                                                        18

1  purchase judgments?

2      A.  Yes, it is.

3      Q.  Now, I may have asked this already, in which

4  case I apologize, but do you have a written assignment

5  of judgment?

6      A.  Yes -- yes, I believe there is one.  I don't

7  have it in front of me.

8      Q.  Is there a reason that assignment was not

9  included with the proof of claim?

10     A.  I don't know.

11     Q.  And do you know whether the assignment would

12  have been in favor of you, John Quinlan, Osama

13  Abdullatif, or some combination of the three of you?

14     A.  I believe all three of us.  It was assigned to

15  all three of us on the same instrument.

16     Q.  Now, do you agree with me that this judgment

17  is against Jetall Companies and not Texas REIT, LLC?

18     A.  Yes.

19     Q.  And why do you contend that Texas REIT, LLC,

20  is liable for a judgment against Jetall Companies?

21     A.  Because Texas REIT, LLC, is an alter ego of

22  Jetall Companies, Inc.

23     Q.  Now I'm going to go to the third judgment.

24  And this is a judgment in a case -- well, first of

25  all, do you see the judgment that I have up on the

OMAR KHAWAJA                                   September 11, 2024
TEXAS REIT LLC                                                  19

1   screen?

2      A.  I do.

3      Q.  And that appears to be a judgment in a case,

4   Osama Abdullatif, individually, and Abdullatif &

5   Company, LLC, versus Ali Choudhri and Houston Real

6   Estate Properties, LLC; is that correct?

7      A.  That's correct.

8      Q.  And do you have an interest in this judgment,

9   or is this just Mr. Abdullatif's judgment?

10     A.  This particular judgment is Mr. Abdullatif's

11  judgment.

12     Q.  All right.  So do you have any interest in

13  this judgment whatsoever?

14     A.  No, I do not.

15        MR. BALLASES:  Objection.  Form.

16     Q.  (BY MR. SATHER)  All right.  Do you assert an

17  interest in the judgment in Cause Number 2013-41273?

18     A.  No.

19        MR. BALLASES:  Objection.  Form.

20     Q.  (BY MR. SATHER)  Now, of the three judgments

21  we went through, you assert an interest in the first

22  two, but not the third; is that correct?

23        MR. BALLASES:  Objection.  Form.

24     A.  That's correct.

25     Q.  (BY MR. SATHER)  Now, continuing down in the

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
20

1   claim, there is a copy of an adversary proceeding that

2   was filed in the United States Bankruptcy Court for

3   the Southern District of Texas.  Are you familiar with

4   this adversary proceeding?

5       A.  Vaguely.

6       Q.  Okay.  And I see that you are named as one of

7   the movants in the adversary proceeding.  Do you see

8   that?

9       A.  Yes, I do.

10      Q.  Did you authorize the adversary proceeding to

11  be filed listing you as one of the participants?

12      A.  Yes, I did.

13      Q.  Did you read it before it was signed?

14      A.  Yes, I did.

15      Q.  Now, so what is your understanding of the role

16  that this adver -- or that this original complaint

17  plays with respect to the proof of claim that was

18  filed on your behalf?

19      A.  I mean, I'm not a bankruptcy attorney.  We're

20  doing whatever we need to do to try to collect our

21  judgment.

22      Q.  So you're an attorney; right?

23      A.  Yes.

24      Q.  And you -- when you represent clients, you

25  file pleadings on their behalf; correct?

OMAR KHAWAJA                                              September 11, 2024
TEXAS REIT LLC                                                          21

1      A.  That's correct.

2      Q.  And -- but your clients need to understand

3  what you're filing for them, don't they?  Isn't that

4  part of the rules regarding filing lawsuits?

5      A.  Yes.

6      Q.  What steps did you take to familiarize

7  yourself with the allegations in this adversary

8  proceeding?

9      A.  I reviewed the judgments, and I reviewed the

10  complaint.

11      Q.  And after reviewing them, did you conclude

12  that the allegations were true and correct?

13      A.  Yes, I did.

14      Q.  Now I'm going to read you a statement in

15  paragraph 1 of the adversary proceeding, which says:

16          This lawsuit shall prove that Jetall

17          Companies, Inc., Arabella PH 3201, LLC,

18          9201 Memorial Drive, LLC, 2727 Kirby 26L,

19          LLC, Texas REIT, LLC, Dalio Holdings I,

20          LLC, Dalio Holdings II, LLC, Houston Real

21          Estate Properties, LLC, Shahnaz Choudhri,

22          Ali Choudhri, Shepherd-Huldy

23          Development I, LLC, Shepherd-Huldy

24          Development II, LLC, and Galleria Loop

25          Note Holder, LLC, (collectively the

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        22

1          Choudhri defendants) are alter egos of

2          each other and intentionally acting in a

3          manner to defraud creditors and evade

4          legal obligations through a series of

5          fraudulent transfers.  The evidence will

6          demonstrate that Ali Choudhri is the

7          puppeteer controlling his web of business

8          entities, which hold his various

9          properties and other assets.  This web

10          includes Houston Real Estate Properties,

11          LLC, and Jetall Companies, Inc., as well

12          as the other named defendants.

13     Did I read that correctly?

14          A.  Yes, you did.

15          Q.  Do you have an understanding of what it means

16     to say that one person or company is the alter ego of

17     another person or company?

18          A.  Yes.

19          Q.  And what is your understanding?

20          A.  That one entity pays the debts or obligations

21     of another.  They commingle funds, commingle assets.

22     One principal is taking actions on behalf of any of

23     the various alter egos at any given time with no

24     respect for the corporate form.  Yeah, that's my --

25     that's my understanding.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        23

1        Q.  All right.  Now, is it your contention that

2    each of the 13 persons and companies named as

3    defendants is the alter ego of every other one of the

4    persons and companies named?

5        A.  That's what --

6           MR. BALLASES:  Objection.  Form.

7        A.  Yes.

8        Q.  (BY MR. SATHER)  So are you contending that

9    Texas REIT is the alter ego of Jetall Companies?

10           MR. BALLASES:  Objection.  Form.

11        A.  That's what it says.  Yes.

12        Q.  (BY MR. SATHER)  And are you alleging that

13    Texas REIT is the alter ego of Arabella PH 3201, LLC?

14        A.  Yes.

15           MR. BALLASES:  Objection.  Form.

16        Q.  (BY MR. SATHER)  Are you alleging that Texas

17    REIT is the alter ego of Dalio I Holdings (sic), LLC?

18           MR. BALLASES:  Objection.  Form.

19        A.  Yes.

20        Q.  (BY MR. SATHER)  And would your answers be the

21    same if I went through all of the rest of the names of

22    the defendants in this case?

23        A.  Yes, because Ali Choudhri controls all of

24    them.

25        Q.  All right.  And so are you alleging that Ali

OMAR KHAWAJA                                              September 11, 2024
TEXAS REIT LLC                                                           24

1    Choudhri and Shahnaz Choudhri are alter egos of each

2    other?

3        A.  Yes.

4            MR. BALLASES:  Objection.  Form.

5        Q.  (BY MR. SATHER)  So are you -- it's your

6    contention that any company or entity in which Ali

7    Choudhri has an interest is an alter ego of Ali

8    Choudhri?

9            MR. BALLASES:  Objection.  Form.

10       A.  I don't know if there's any.  I mean, are

11   there entities that I don't know about?  I don't know.

12       Q.  (BY MR. SATHER)  Were you aware that there was

13   an amended complaint filed that names 17 defendants?

14       A.  I believe --

15           MR. BALLASES:  Objection.  Form.

16       A.  I believe so.

17       Q.  (BY MR. SATHER)  And is it your contention

18   that each of the 17 defendants is the alter ego of

19   each of the other 17 defendants?

20       A.  If that's what the petition says, yes, that's

21   my contention.

22       Q.  The complaint alleges that each of the claimed

23   alter egos were, quote (Reading:)  ...intentionally

24   acting in a manner to defraud creditors and evade

25   legal obligations through a series of fraudulent

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    25

1    transfers.

2         Did I read that right?

3    A.  Yes, you did.

4    Q.  So are you claiming that every one of these 13

5    or 17 persons and companies listed made fraudulent

6    transfers to each and every other one of the persons

7    and companies listed?

8    A.  Yes.

9    Q.  So, for example, are you claiming that Shahnaz

10   Choudhri made fraudulent transfers to 2727 Kirby 26L,

11   LLC?

12   A.  I don't know about that.

13   Q.  As we sit here today, do you know of any

14   fraudulent transfers that any of these defendants made

15   to Texas REIT, LLC, the debtor in this case?

16   A.  I don't.

17   Q.  And so with respect to that particular

18   allegation about making fraudulent transfers, you're

19   not aware of any involving the debtor in this case;

20   correct?

21   A.  I'm not aware of any sitting as -- as I'm

22   sitting here right now.  But any specific one?  No.

23   Q.  And what would you need to do --

24        THE WITNESS:  Oh, Mr. Sather, I'm sorry.  I

25   need to just take a quick restroom break if you don't

1   mind.

2          MR. SATHER:  All right --

3          MR. CHOUDHRI:  No.  No.  No.  Hold on.  Let's

4   finish this line of questioning.  Please ask your

5   question --

6          MR. SATHER:  Mr. Choudhri -- Mr. Choudhri,

7   it's my questions.  I decide whether we're going to

8   take a bathroom break or not.

9          I don't have a problem with taking a break,

10  but do not discuss your testimony with your attorney

11  while we're off the record.

12         THE WITNESS:  Not a problem.

13         MR. SATHER:  All right.  And so five minutes?

14         THE WITNESS:  Five minutes should be good.

15         MR. SATHER:  All right.  Madam Reporter, we

16  will be off the record for five minutes.

17         THE REPORTER:  Off the record.

18         (A recess was taken.)

19         THE REPORTER:  All right.  We are back on the

20  record.

21      Q.  (BY MR. SATHER)  And, Mr. Khawaja, I want to

22  follow up on something I asked you earlier.  When I

23  asked you how you knew Ali Choudhri, you said that he

24  defrauded you.  Can you tell me what transaction that

25  he defrauded you with regard to?

1          MR. BALLASES:  Objection.  Form.

2      A.  It was an apartment complex that my family

3    owned.

4      Q.  (BY MR. SATHER)  And was it you personally, or

5    was it your family?

6          MR. BALLASES:  I'm going to instruct the

7    witness not to answer.  He's here to answer the basis

8    for his proof of claim and why he wants to withdraw

9    it.  That's not a part of his claim.  It's not alleged

10   in any of the documents, and therefore, it's outside

11   the scope of the judge's limiting instruction.

12     Q.  (BY MR. SATHER)  Is this prior transaction --

13   have anything to do with this case?

14     A.  I'm sorry.  Can you repeat that question?

15     Q.  Yes.  Does the prior transaction where you say

16   Mr. Choudhri defrauded you or your family -- does that

17   have anything to do with the proof of claim against

18   Texas REIT?

19     A.  No.

20     Q.  Now, earlier I asked you about whether your

21   business involved purchasing judgments, and I also --

22   you also testified that you're an attorney.  Are those

23   separate businesses that you're involved in?

24     A.  No.

25     Q.  And so do you purchase judgments through your

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                      28

1    law firm?

2         A.  Yes.

3         Q.  And about how many judgments have you

4    purchased in, say, the last five years?

5             MR. BALLASES:  Objection.  Form.

6         A.  I don't know.  I'm not sure, to be honest with

7    you.

8         Q.  (BY MR. SATHER)  More than ten?

9         A.  No, probably not more than ten.

10        Q.  And --

11            MR. BALLASES:  Objection.  Form.

12        Q.  (BY MR. SATHER)  -- have you -- do you

13   purchase judgments against anyone other than entities

14   related to Ali Choudhri?

15            MR. BALLASES:  Objection.  Form.

16        A.  Not that I can recall.

17        Q.  (BY MR. SATHER)  All right.  So when we talk

18   about your purchase of judgments, that -- at least as

19   you recall today, those relate to your dealings with

20   Ali Choudhri.

21        A.  Yes.

22        Q.  And how would you describe your relationship

23   with Mr. Choudhri?

24            MR. BALLASES:  Objection.  Form.

25        A.  What do you -- what do you mean?

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
29

1      Q.  (BY MR. SATHER)  Is it cordial?  Unpleasant?

2   Adversarial?

3          MR. BALLASES:  Objection.  Form.

4      A.  He owes me money.  I mean, that's about it.

5      Q.  (BY MR. SATHER)  Going back to the adversary

6   proceeding that's part of the proof of claim, I'm

7   going to go to paragraph 22.  And it's kind of a long

8   paragraph, so I'm just going to read you some

9   sentences towards the end where it says, quote

10  (Reading:)  Choudhri views HREP, Jetall, and himself,

11  as well as the other named defendants, as one and the

12  same and utilizes them in such a fashion.  In other

13  words, there is unity between Choudhri, HREP, Jetall,

14  and his other business entities such that the

15  separateness of the business entities has ceased, and

16  thus this Court should treat the Choudhri defendants

17  accordingly to protect plaintiffs/the creditors.  And

18  this is where the lawsuit begins.

19          So did I read that correctly?

20      A.  Yes.

21      Q.  And so what is the basis for your statement

22  that Mr. Choudhri views all of the Choudhri defendants

23  as one and the same?

24          MR. BALLASES:  Objection.  Form.

25      A.  It's in the petition, Counsel.  All of the

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    30

1  bases that we have are listed out in very clear, you

2  know, language, just like you read.

3      Q.  (BY MR. SATHER)  Can you articulate what any

4  of those bases are?

5      A.  It's -- I mean --

6          MR. BALLASES:  Objection.  Form.

7      A.  -- do you want me to -- do you want me to

8  start reading the petition for you?  I'm happy to read

9  it for you, but it's in the petition.

10      Q.  (BY MR. SATHER)  I'm asking you -- I mean,

11  without reading the petition, do you know what the

12  basis for the allegations is?

13      A.  I mean the -- without reading the petition,

14  the purpose of the petition was to articulate the

15  basis of the petition.  So it's in the petition

16  itself.  I'm happy to read through the petition for

17  you if you'd like me to, but in -- in plain language,

18  he treats every entity that he controls or owns as a

19  personal piggy bank, just like the petition states.

20  And that's the basis of the alter ego claim that we're

21  making.

22      Q.  All right.  And so your allegation is also

23  that he views his mother as one and the same with

24  himself?

25          MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    31

1       A.  Yes.

2       Q.  (BY MR. SATHER)  Now, you obviously don't

3   contend that they're the same person; right?  You --

4   they are different human beings.

5          MR. BALLASES:  Objection.  Form.

6          (Crosstalk)

7       A.  Sorry.  Is that a -- was that -- do you really

8   want me to answer that question?  I'm not sure.

9       Q.  (BY MR. SATHER)  Yes, I do.  I wouldn't have

10  asked it if I --

11      A.  You mean like Norman Bates, that kind of thing

12  or -- is that what -- I'm sorry.  It's just a

13  stupid --

14      Q.  (BY MR. SATHER)  I just want you to

15  acknowledge that these are two different human beings,

16  sir.

17      A.  Yes, sir.  Yes, they're two different human

18  beings.

19      Q.  And so is it your contention that there's no

20  separateness between, say, Houston Real Estate

21  Properties, LLC, and Texas REIT, LLC?

22          MR. BALLASES:  Objection.  Form.

23      A.  Again, I'm gonna -- I'm gonna refer you back,

24  Mr. Sather, to the petition.  That's what the petition

25  states.

OMAR KHAWAJA                                         September 11, 2024
TEXAS REIT LLC                                                        32

1        Q.  (BY MR. SATHER)  All right.  And you contend

2   that -- and you stand by the allegations in the

3   petition.

4        A.  Yes, sir.  I stand by each and every

5   allegation in the petition.

6          MR. BALLASES:  Objection.  Form.

7        Q.  (BY MR. SATHER)  And so is everything that you

8   know about this allegation of alter ego contained in

9   the petition?

10       A.  I mean, we don't -- I don't believe we

11  finished discovering the process, sir, so we're -- I'm

12  sure we're gonna get to learn a lot more about the

13  alter-ego basis on which Mr. Choudhri operates and the

14  other defendants.

15       Q.  And so did the petition set forth all of the

16  bases that you knew about at the time it was filed?

17       A.  In a good faith manner, yes.

18       Q.  All right.  What does that mean, "in a good

19  faith manner"?

20          MR. BALLASES:  Objection.  Form.

21       A.  To the best of our ability, right, on some --

22  on some evidence that we've been able to muster.

23       Q.  (BY MR. SATHER)  Did you intentionally omit

24  any bases for making an allegation of alter ego?

25       A.  No.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        33

1            MR. BALLASES:  No, I instruct the client not

2    to answer, simply because you're invading attorney

3    work product, legal privileges.  What we decided to

4    put in or not in our petition is subject to work

5    product and privilege.  Don't invade our privilege,

6    please.

7        Q.  (BY MR. SATHER)  All right.  Do you know of

8    any evidence that you decided not to include in the

9    petition?

10           MR. BALLASES:  Same assertion of privilege.

11       Q.  (BY MR. SATHER)  You can answer, sir.

12           MR. BALLASES:  It's work product and

13   privilege.  I'm instructing him not to answer.  It's

14   invading a legal privilege that he enjoys.

15           THE REPORTER:  And I'm sorry.  Counsel, if I

16   could just get you to just speak up a little bit as

17   well.  You're just sounding a little bit muffled.

18           MR. BALLASES:  Yes, ma'am.

19           THE REPORTER:  Thank you.

20       Q.  (BY MR. SATHER)  I'd like to go to

21   paragraph 23 where it says (Reading:)  Plaintiffs are

22   upstanding, honest, and respectable businessmen, real

23   estate developers, attorneys, and/or a combination of

24   all.

25           Which of those categories do you fall into,

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  34

1  sir?

2      A.  (Reading:)  Plaintiffs are upstanding, honest,

3  respectable businessmen, attorneys --

4        A combination.

5      Q.  Okay.  A combination of what?

6      A.  Of all.

7      Q.  Okay.  So you're a businessman, real estate

8  developer, and attorney?

9      A.  But I'm also upstanding, honest, and

10  respectable.

11      Q.  Okay.  Now, was it upstanding, honest, and

12  respectable for you to sponsor Mr. Choudhri's ex-wife

13  to claim to still be married to him and file notices

14  of lis pendens against all of his properties?

15      MR. BALLASES:  I'm going to instruct the

16  client not to answer.  You are violating the Court's

17  limiting instruction as to this deposition, and the

18  purpose of this deposition is to find the basis for

19  the filing of the proof of claim and why we are

20  willing to withdraw it now.  I'll let you go on and

21  get past that, but I'm going to start putting stops to

22  it if this is the kind of stuff we're going to have.

23      Q.  (BY MR. SATHER)  Okay.  But it's your

24  contention that you are, in fact, an upstanding,

25  honest, and respectable businessman, real estate

1  developer, and attorney, sir.

2      A.  Yes --

3          MR. BALLASES:  Objection.  Form.

4          MR. SATHER:  Now, I'm going to move on to a

5  different exhibit, Exhibit Number 2, assuming I can

6  bring it up on the screen.

7          (Debtor's Exhibit No. 2 was marked for

8  identification.)

9      Q.  (BY MR. SATHER)  Actually, one thing I didn't

10  ask you, Mr. Khawaja:  How old of a man are you?

11     A.  46.

12     Q.  And are you licensed to practice law in the

13  state of Texas?

14     A.  Yes, I am.

15     Q.  And when were you licensed?

16         MR. BALLASES:  Objection.  Form.

17     A.  2010.

18     Q.  (BY MR. SATHER)  I've brought up on the screen

19  what we've marked as Exhibit 2, which is titled

20  "Supplemental Notice of Lis Pendens."  Are you

21  familiar with this document?

22         MR. BALLASES:  Mr. Sather, we don't have

23  copies of that.  Could you please e-mail that to

24  myself and Steve Leyh and any other exhibits you'd

25  like to use?

1          MR. SATHER:  Sure.  Those should've been

2     provided to you in a ShareFile yesterday.

3          MR. BALLASES:  Could you resend them?

4          MR. SATHER:  I will -- yes, I will resend

5     those --

6          MR. BALLASES:  Please send them to Steve and

7     myself.

8          MR. SATHER:  My computer is lagging just a

9     little bit, so it'll take a second for them to load.

10    But I had tried to provide these to you ahead of time

11    so we could avoid this.

12          Okay.  And as you can see from the screen

13    share, I have sent the e-mail to you.

14          THE WITNESS:  Michael, I think he's addressing

15    you on the e-mail.

16          MR. BALLASES:  That's fine.

17     Q.  (BY MR. SATHER)  Now, what we've marked as

18    Exhibit Number 2 is a supplemental notice of lis

19    pendens.  And I'm going to scroll down to the end of

20    it, and do you see the real property description

21    there?

22     A.  I do, yes.

23     Q.  And are you aware that that is real property

24    owned by Texas REIT, LLC?

25     A.  Yes.

OMAR KHAWAJA                                         September 11, 2024
TEXAS REIT LLC                                                      37

1        Q.  And are you familiar with this notice of

2    lis pendens?

3        A.  I believe I looked at it before it was filed,

4    yes.

5        Q.  And it looks like it's filed by

6    Mr. Abdullatif, and he is one of the parties to the

7    proof of claim; correct?

8        A.  Yes.

9          MR. BALLASES:  Objection.  Form.

10        Q.  (BY MR. SATHER)  And did you approve of the

11    filing of this notice?

12        A.  I must have if it was filed.

13        Q.  And what's your understanding of the purpose

14    of this notice?

15        A.  To make sure that we secure any proceeds that

16    could potentially come to Ali Choudhri or his entities

17    that he owes to us.

18        Q.  And do you know why it was filed?

19        A.  For that reason.

20          MR. SATHER:  I'm going to show you another lis

21    pendens which we have marked as Exhibit Number 3.

22          (Debtor's Exhibit No. 3 was marked for

23    identification.)

24        Q.  (BY MR. SATHER)  And are you familiar with

25    this document?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    38

1      A.  Exhibit Number 3.  Sorry.  Yes.

2      Q.  And I see this was signed by Osama Abdullatif

3  as well.

4      A.  Yes.

5      Q.  And would your questions be the same -- or

6  your answers be the same with regard to this notice of

7  lis pendens as with the prior one?

8      A.  Yes.

9        MR. SATHER:  I'm going to switch gears now and

10  go to Exhibit Number 4, which is an adversary

11  complaint filed by George Lee against Texas REIT, LLC,

12  and Ali Choudhri -- or at Exhibit 4.  Excuse me.

13        (Debtor's Exhibit No. 4 was marked for

14  identification.)

15      Q.  (BY MR. SATHER)  Do you know George Lee?

16        MR. BALLASES:  I'm going to object to this

17  line of questioning and instruct the witness not to

18  answer as it exceeds the scope of the limited

19  deposition the judge granted you.  This has nothing to

20  do with our proof of claim or adversary proceeding.

21      Q.  (BY MR. SATHER)  Are you going to take your

22  counsel's advice?

23      A.  I am.

24      Q.  So let me just ask you by way of background.

25  Do you know George Lee?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    39

1          MR. BALLASES:  Objection.  Form.  Same -- same

2    instruction.

3       Q.  (BY MR. SATHER)  Are you refusing --

4          MR. CHOUDHRI:  So (unintelligible) --

5       Q.  (BY MR. SATHER)  -- to answer that you know

6    George Lee?

7          MR. BALLASES:  Objection to form.  Same

8    objection; this has nothing to do with our claim, and

9    you're exceeding the scope of the limited deposition

10   the judge granted.

11      A.  I'm taking my counsel's advice.

12         MR. CHOUDHRI:  I just want to make sure the

13   record is clear.  Are you instructing the witness not

14   to answer?

15         MR. SATHER:  Mr. Choudhri, let me --

16         MR. BALLASES:  Mr. Choudhri, please be quiet.

17   You're not a party involved in this.  You have no

18   standing to be here.

19         MR. SATHER:  He actually does under the

20   Court's ruling.  But, Mr. Ballases --

21         MR. CHOUDHRI:  Wait a second.  Wait -- wait --

22   wait a second.  I want to get this on the record.

23         Mr. Ballases, I am here, and I have a standing

24   to object.  Okay?  And so --

25         MR. BALLASES:  (Unintelligible)

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        40

1          MR. CHOUDHRI:  -- I have a standing to be

2    here.  So are you telling me on the record that you

3    are not going to cooperate and allow me to ask

4    questions on a deposition that I've cross-noticed?

5          MR. BALLASES:  That is correct.  You have no

6    party -- you're not a party in this proceeding.  You

7    have no standing.  We've also objected to your

8    cross-notice, so you better bet your bottom dollar.

9          MR. CHOUDHRI:  Okay.  Besides betting my

10   bottom dollar, Mr. Ballases, you understand that the

11   Honorable Judge Robinson made a ruling --

12         MR. BALLASES:  You're wasting your time --

13         MR. CHOUDHRI:  -- and said that --

14         MR. BALLASES:  -- (unintelligible) with the

15   judge's ruling.  Why don't you let your counsel ask

16   questions.

17         MR. CHOUDHRI:  No, no.  I'm here representing

18   myself pro se as a creditor.  I have filed a proof of

19   claim.  I'm a creditor.  I have standing.

20         Are you saying on the record that you are

21   going to instruct your client not to answer any of my

22   questions?  I just want to get this on the record so

23   it's clear.  Are you instructing your client not to

24   answer any questions, and is your client going to take

25   your advice?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                41

1          MR. BALLASES:  Yeah, so the way this

2    proceeding words, there's a court reporter who writes

3    down everything we say.  I've been clear in my speech

4    and what I say in my objections.  If you're confused,

5    you can ask the court reporter to read it back, or you

6    can just take better notes.  Be quiet, and let your

7    counsel ask questions.

8          MR. CHOUDHRI:  So just so the record is

9    crystal clear, Mr. Ballases, you are instructing your

10   client, Omar Khawaja, who is a deponent today, to not

11   answer any questions that I'm gonna have, and you're

12   also obstructing my ability to object or make any

13   objections in this deposition.  Is that all correct?

14   I just want to make sure the record is very crystal

15   clear.

16         MR. BALLASES:  Let Mr. Sather ask his

17   questions.  Please be quiet.

18         MR. CHOUDHRI:  Sir, I just want to clarify,

19   because I have a right to be here and object, and you

20   are --

21         MR. BALLASES:  Let --

22         MR. CHOUDHRI:  -- telling me to be quiet.

23         MR. BALLASES:  -- (unintelligible) questions.

24   So let your counsel ask questions.  You're wasting

25   everybody's time.

OMAR KHAWAJA                                                      September 11, 2024
TEXAS REIT LLC                                                                         42

1          MR. CHOUDHRI:  Okay.  Just so the record is

2    clear, you are refusing to allow me to participate and

3    object and ask questions in this deposition that I've

4    cross-noticed; is that correct?  So we're clear, is

5    that correct or not?

6          MR. BALLASES:  You are not a party.  You do

7    not --

8          THE REPORTER:  I'm --

9          MR. BALLASES:  Let me make it very clear for

10   you.  You are not a party to this dispute.  You are

11   not an attorney.  You lack standing.  This is not a

12   creditors' meeting.  We've objected to your

13   cross-notice.  Is that clear enough for you, buddy?

14         MR. CHOUDHRI:  Mr. Sather, please proceed.

15   We'll -- we'll deal with this on the record later and

16   deal with the Court.

17         And -- and as you know, Mr. Ballases, counsel

18   for Dalio is also on the line.  Are you also objecting

19   for them -- for Dalio's counsel to ask questions?  Is

20   that your --

21         MR. BALLASES:  Yeah.

22         MR. CHOUDHRI:  -- position?

23         MR. BALLASES:  Yeah.

24         MR. CHOUDHRI:  And you're gonna instruct your

25   client, Omar Khawaja, to not answer questions --

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        43

1          MR. BALLASES:  Mr. Choudhri, my point is you

2   like to play attorney, but you're not an attorney, and

3   you don't know the legal procedure or the rules or

4   regulations of court.  So please be quiet and let the

5   deposition proceed.  You're wasting everybody's time.

6          MR. CHOUDHRI:  Okay, Mr. Ballases.  You don't

7   have to be disrespectful.  I was -- you know, the

8   rules apply to all of us.  If I'm pro se or if -- or

9   if you're a lawyer, the rules apply equally.  And I

10  have to follow the rules, just like you have to follow

11  the rules.  And when a judge makes a ruling, it

12  applies, and it says what it says.  We all got to

13  honor it.  But you're refusing to honor the judge's

14  ruling.  I understand that.  You're refusing to honor

15  what --

16          MR. BALLASES:  (Unintelligible)

17          MR. CHOUDHRI:  -- Judge Robinson said on his

18  oral order.

19          THE REPORTER:  Sorry.  Just one person at a

20  time.

21          Mr. Ballases, I can hear you speaking in the

22  background, but I can't hear what you're saying while

23  Mr. Choudhri is speaking.

24          So just one person at a time if you'd like

25  this on the record, please.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        44

1       MR. BALLASES:  Mr. Sather, please continue.

2     Q.  (BY MR. SATHER)  Mr. Khawaja, I have brought

3   back up Exhibit Number 1, the proof of claim.  When

4   you authorized the proof of claim to be filed, did you

5   understand that it was being filed under penalty of

6   perjury?

7     A.  Yes.

8     Q.  And as a lawyer, do you know what penalty of

9   perjury means?

10    A.  Yes.

11      MR. BALLASES:  Objection.  Form.

12    Q.  (BY MR. SATHER)  Now, what was your purpose in

13  filing the proof of claim?

14    A.  The purpose in filing the proof of claim?  I

15  mean, it's to collect monies that are owed to us.

16    Q.  Any other purpose?

17    A.  No, that's it.

18    Q.  Now, I'm going to show you Exhibit Number 5,

19  and I'm going to try to make it bigger.

20      (Debtor's Exhibit No. 5 was marked for

21  identification.)

22    Q.  (BY MR. SATHER)  Were you aware that Texas

23  REIT, LLC, filed an objection to the proof of claim?

24    A.  Yes.

25    Q.  And were you aware that you have not filed a

1    response to this objection to proof of claim?

2        A.  No.

3        Q.  And do you see that this was filed with

4    negative notice language?

5        A.  I'm not sure what that means, sir.

6        Q.  Okay.  Fair question.

7            Next, I'd like to show you what we've marked

8    as Exhibit Number 6, which is --

9        A.  Yes.

10       Q.  -- a motion for leave to withdraw Claim

11   Number 9.

12           (Debtor's Exhibit No. 6 was marked for

13   identification.)

14       Q.  (BY MR. SATHER)  Do you see that?

15       A.  Yes, sir, I do.

16       Q.  And what is your understanding of the reason

17   why you filed a -- well, let me ask you this:  Did you

18   authorize the motion for leave to withdraw Claim

19   Number 9?

20       A.  I did.

21       Q.  And why did you authorize the claim to be

22   withdrawn?

23       A.  It appears there's no money in Texas REIT,

24   LLC.

25       Q.  Any other reason?

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                      46

1      A.  No, sir.  That's it.

2      Q.  And do you understand that the consequence of

3  withdrawing the claim means that you're not able to

4  assert a claim to any of the property in the Texas

5  REIT bankruptcy estate?

6         MR. BALLASES:  Objection.  Form.  You're going

7  beyond the scope of the limited purpose of this

8  deposition.

9         MR. SATHER:  I don't believe so.

10     Q.  (BY MR. SATHER)  Are you aware that Texas REIT

11  has objected to withdrawal of the proof of claim

12  unless it is withdrawn with prejudice?

13     A.  I wasn't aware of that, no.

14     Q.  All right.  Do you know what "with prejudice"

15  means?

16     A.  Yes, I do.

17     Q.  And you understand that if the claim is

18  withdrawn with prejudice, you can never make these

19  allegations against Texas REIT again.

20     A.  Yes, I understand that.

21         MR. SATHER:  All right.  At this point I will

22  pass the witness.  I know there are other counsel

23  present who wish to ask questions, and so I'm not

24  concluding the deposition.  I'm giving the other

25  parties present an opportunity to ask their questions.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        47

1    BY MS. HOOD:

2       Q.  Mr. Khawaja, my name is Lori Hood, and I

3    represent Dalio Holdings.  Nice to meet you.

4          MR. BALLASES:  Ms. Hood --

5       A.  Nice to meet you.

6          MR. BALLASES:  -- I'm going to go ahead and

7    just object.  I'm not going to let you ask questions.

8    You're not a party to this dispute, and you lack

9    standing to be here.  This isn't a creditors' meeting,

10   and so -- and of course, your notice was just filed

11   this morning, which we're going to object to.  So I'm

12   not going to let you ask questions.

13         MS. HOOD:  All right.  Mr. Ballases, my notice

14   was this morning because you failed to give notice to

15   all the creditors that this was taking place.

16         In my understanding -- and my client is a

17   creditor.  In my understanding of the judge's ruling,

18   it allows for creditors to be in attendance at this

19   deposition and to ask questions of your clients as to

20   the basis and motivation of their filing the proof of

21   claim.  We can argue all day long about whether you

22   agree with that or not.  If you don't allow me to take

23   questions -- ask questions today, then we're going to

24   have a do-over because we're going to go back to the

25   Court and seek a motion to compel your client's

OMAR KHAWAJA                                           September 11, 2024
TEXAS REIT LLC                                                        48

1   attendance at a deposition where I will ask my

2   questions.

3          MR. BALLASES:  So that's not the Court's

4   order.  The Court's order was to allow Mr. Sather to

5   take questions -- or to ask questions to determine the

6   basis to -- as to why we filed the proof of claim and

7   why it has been requested to be withdrawn.

8          It is not for creditors to ask questions.  The

9   creditors -- this isn't a creditors' meeting, and so

10  I'm not going to let you ask -- I mean, you can ask

11  him, but I'm going to instruct him not to answer

12  because I think you're violating the Court's ruling,

13  and I'm going to abide by the Court's ruling.

14         MS. HOOD:  So you're -- no matter what

15  question I ask him, you're going to tell him not to

16  answer me?

17         MR. BALLASES:  Yes, ma'am.

18         MS. HOOD:  Okay.  And that's --

19         MR. BALLASES:  You're violating the Court's

20  ruling, and I want to abide by it.

21         MS. HOOD:  All right.  So you want to abide by

22  the Court's ruling, and we have a difference of

23  opinion as to the impact and the breadth of the

24  Court's ruling.

25         I'm going to tell you I'm going to file a

1  motion to compel your client's attendance at a

2  deposition where I'm going to be allowed to ask

3  questions.  And when I do so, I'm going to ask for

4  compensation of my attorney's fees.  Do you understand

5  that?

6         MR. BALLASES:  I understand.

7         MS. HOOD:  All right.  And just to be clear on

8  the record, Madam Court Reporter, Mr. Ballases is

9  stating to me on the record that he's going to

10  instruct his client not to answer any of my questions

11  that I have prepared for today, all relating to the

12  filing of the proof of claim and the motivation for

13  filing the proof of claim and the motivation for

14  withdrawing the proof of claim, all of which go into

15  the merits of the judge's order.

16         And I'm objecting to Mr. Ballases' refusal to

17  allow me to take questions -- or ask questions of his

18  client and putting him on notice that I am going to

19  seek my attorney's fees as compensation for me having

20  to do a do-over with his client.

21         MR. BALLASES:  For the record -- so again,

22  this is Michael Ballases -- I believe Ms. Hood is

23  misinterpreting the judge's ruling.  She's not a party

24  to this -- her client is not a party to this dispute.

25  They lack standing.  This is not a creditors' meeting.

1    The basis of this deposition was for a limited purpose

2    to allow the debtor to inquire as to why we filed the

3    proof of claim and why we now want to withdraw it.  We

4    are abiding by the judge's ruling, and we will not

5    deviate from it.

6         MS. HOOD:  Mr. Ballases, please don't put

7    words in my mouth.  And just because, you know, we're

8    here taking a deposition doesn't mean you always have

9    to get the last word in.  We are in a disagreement

10   about your statements.  You're not going to allow --

11   you're going to instruct your client not to answer my

12   questions.  There's not much I can do about it if he's

13   going to sit here and not answer my questions.

14        I will go back to the Court and ask for him to

15   reappear and answer my questions related to the

16   subject of this deposition of which I represent a

17   creditor, and we are entitled to ask questions.

18        Your client's proof of claim has unnecessarily

19   complicated the underlying chapter proceeding and

20   gummed up a lot of other issues with regard to the

21   debtor's property, and even today they haven't

22   withdrawn their -- or released their lis pendens.  So

23   there's a lot to talk to him about with regard to the

24   filing of the proof of claim, the motivation, and

25   everything else.  And I've read the judge's

1  instructions on this issue, and I believe I'm

2  completely within my rights to ask these questions.

3          And you really don't have to answer, because I

4  don't need you to answer.  We're in a disagreement,

5  and I'm going to file the motion to compel.  So I

6  do --

7          MR. BALLASES:  (Unintelligible)

8          MS. HOOD:  I do not -- I do not pass the

9  witness.  I reserve my rights.

10         MR. CHOUDHRI:  And --

11         MR. BALLASES:  Thank you for telling me --

12         MR. CHOUDHRI:  -- I would like to make the

13  record -- I would also like to make the record very

14  clear.

15         So the record is clear, Mr. Khawaja, are you

16  taking your attorney's -- are you following your

17  attorney's instructions, and are you going to refuse

18  to answer any questions asked by Lori Hood or by my --

19  or any questions that I may ask you?

20         MR. BALLASES:  So no question's on the table,

21  Mr. Choudhri, so I think you're confused --

22         MR. CHOUDHRI:  Mr. Ballases -- Mr. Ballases,

23  please --

24         (Crosstalk)

25         THE REPORTER:  Sorry.  Just --

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        52

1          MR. CHOUDHRI:  Hang on a second.  I just

2   want --

3          THE REPORTER:  Sorry.  One at a time, please.

4   Thank you.

5          MR. CHOUDHRI:  I just want to make sure that,

6   Mr. Ballases, your client can affirm that he's taking

7   your instructions, and he's not going to answer any

8   questions, so we don't have to sit here and ask

9   questions if your instructions are going to be for him

10  to not answer any of my questions that I've properly

11  cross-noticed this deposition on pursuant to the

12  Court's order.  I just want to make sure the record is

13  clear that your client's not answering any questions

14  that I may ask.

15         MR. BALLASES:  For the record, the record is

16  clear.  I made the same objection that I made to

17  Ms. Hood as to you.  You are not a party.  You do not

18  have standing.  You're not an attorney.  This isn't a

19  creditors' meeting.  We are here to answer --

20         MR. CHOUDHRI:  Okay --

21         MR. BALLASES:  -- the debtor's questions about

22  the proof of claim --

23         MR. CHOUDHRI:  I'm --

24         MR. BALLASES:  -- and that's it.

25         MR. CHOUDHRI:  Okay.  We have the audio of the

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                53

1  order, oral ruling of Judge Robinson.  I would like to

2  play that at this point for the record.  So, please,

3  if we can play that for the record --

4        MR. BALLASES:  That's not --

5        (Crosstalk)

6        THE REPORTER:  I'm --

7        MR. CHOUDHRI:  Tammy or Gene, can y'all play

8  that?

9        THE REPORTER:  I'm sorry.  Sorry.  I have two

10 people speaking at once.  I can hear Mr. Ballases, and

11 I can hear Mr. Choudhri.  Could I please just get one

12 speaker on the record at a time.

13       MR. CHOUDHRI:  So I was speaking --

14       MR. BALLASES:  That's not --

15       MR. CHOUDHRI:  -- and --

16       (Crosstalk)

17       THE REPORTER:  Sorry.

18       MR. CHOUDHRI:  So the quote from the ruling

19 is -- and I'm quoting the judge (Reading:)  I'm going

20 to grant the motion as to the date and time of the

21 examinations, and my order is going to be very simple.

22 It's going to say that.  It's also going to further

23 order that the debtor and any creditor -- any other

24 creditor, for that matter, that cross-noticed this

25 deposition is permitted to take a deposition --

1          -- participate.  So I just want to be clear,

2   Mr. Ballases.  I want to give you one more chance so

3   we can conclude --

4          MR. BALLASES:  It's not unclear --

5          MR. CHOUDHRI:  -- and complete the deposition.

6          (Crosstalk)

7          MR. CHOUDHRI:  Can I finish?

8          MR. BALLASES:  You're being --

9          MR. CHOUDHRI:  Mr. --

10         MR. BALLASES:  You're being investigated

11  (unintelligible).  You're being investigated by the

12  Department of Justice.  You've been found by courts to

13  file lawsuits for improper purposes and harassment.

14  You're founded by courts and juries to have committed

15  fraud and libel, and you were just, on Monday, held by

16  Judge Norman to be a forger and a liar.  So anything

17  you say, I don't believe --

18         MS. HOOD:  How about if I -- how about if I

19  say it?

20         (Crosstalk)

21         THE REPORTER:  Sorry.  I'm sorry.  No --

22  sorry.  Sorry.  I need one person speaking at a time.

23  The record is not clear when I have multiple speakers.

24  Thank you.

25         MR. CHOUDHRI:  So let me just respond,

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        55

1  Mr. Ballases.  First of all, you are supporting

2  perjury.  Okay?  Mr. Ballases, your client has

3  solicited --

4        MR. BALLASES:  (Unintelligible)

5        MR. CHOUDHRI:  -- solicited people -- so,

6  please, all of this is all supported and solicited by

7  your client, and we'll get to the bottom of it --

8        MR. BALLASES:  (Unintelligible)

9        MR. CHOUDHRI:  -- which is why your client

10  doesn't want to answer questions.  I understand that.

11        THE WITNESS:  You'll be a great jailhouse

12  lawyer.

13        MR. CHOUDHRI:  This is proper --

14        THE REPORTER:  I'm sorry --

15        MR. BALLASES:  Can we start the next --

16        MR. CHOUDHRI:  Sorry?

17        MR. BALLASES:  -- deposition?  Can we start --

18        MR. CHOUDHRI:  Hold on.

19        MR. BALLASES:  -- the next deposition --

20        THE WITNESS:  You're going to be a great

21  lawyer --

22        MR. BALLASES:  -- if Mr. Sather doesn't have

23  any more questions?

24        THE WITNESS:  You'll be a great lawyer in

25  jail, man.

1     MR. CHOUDHRI:  Okay.  So -- so that's your

2  goal --

3     MR. BALLASES:  (Unintelligible)

4     MR. CHOUDHRI:  -- going around telling

5  people --

6     THE REPORTER:  I'm sorry --

7     MR. BALLASES:  -- let's jump to the next

8  witness --

9     MR. CHOUDHRI:  Please --

10     THE REPORTER:  I'm sorry.  Sorry.  Sorry.  I

11  am not getting Mr. Ballases' words on the record.

12     Mr. Ballases, if you have something to say, I

13  need just one speaker at a time.  I'm not getting

14  anything you're saying at this point.

15     MR. BALLASES:  Okay.  What I'm saying is --

16     MR. CHOUDHRI:  Please, Mr. Ballases, go ahead.

17     MR. BALLASES:  -- (unintelligible) remains the

18  same.  And if Mr. Sather has more questions, we're

19  happy to answer them.  If he doesn't, then let's go to

20  the next witness.

21     MR. CHOUDHRI:  No, no.  We're -- we're not --

22  we're not playing any games here.  Please play the

23  audio from the Court's ruling.  Let's do that right

24  now --

25     MR. BALLASES:  Okay (unintelligible) --

1        MR. CHOUDHRI:  -- so the record is crystal

2   clear.

3        THE WITNESS:  This is getting ridiculous.

4        MR. BALLASES:  I'm going to end the deposition

5   if Mr. Sather doesn't have any more questions, and we

6   can jump to --

7        MR. CHOUDHRI:  You can't end the deposition --

8        (Crosstalk)

9        MR. CHOUDHRI:  Unless all parties agree to go

10  off the record, we stay on the record.  That's the

11  rule, Mr. Ballases.  The rule applies to everyone.

12        Please play --

13        MR. BALLASES:  (Unintelligible)

14        MR. CHOUDHRI:  -- the audio --

15        (Crosstalk)

16        MR. CHOUDHRI:  Please play the audio --

17        MR. BALLASES:  I'm going to shut it down if

18  you don't take control of your client in the

19  deposition.  Your choice, Mr. Sather.

20        MR. CHOUDHRI:  I'm here as a creditor.  We're

21  going to play the audio --

22        MR. BALLASES:  (Unintelligible) Okay.

23        MR. CHOUDHRI:  Mr. --

24        MR. BALLASES:  We're going to -- we're all

25  ready to go forward with the next witness.  We're

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        58

1   here, and we're ready to go forward.

2         Mr. Sather, if you have more questions, let me

3   know, and he will stay and answer them.

4         MR. SATHER:  I am adjourning the deposition --

5         MR. CHOUDHRI:  I have the floor.  I have the

6   floor.  I'm a creditor.  I've cross-noticed this

7   deposition.  Please play --

8         MR. BALLASES:  (Unintelligible)

9         MR. CHOUDHRI:  -- the oral ruling from the

10  Court right now.  Go ahead.

11        MR. BALLASES:  Mr. Sather --

12        (Crosstalk)

13        (Audio file played.)

14        THE REPORTER:  I'm sorry.  Sorry.  I -- I'm

15  sorry.  Mr. McCubbin, I cannot hear anybody when I

16  have multiple speakers at once.  I don't know if you

17  want this on the record, but it's going in as

18  crosstalk because it's not coming through clearly.

19        MR. CHOUDHRI:  Yes, Madam Court Reporter.

20        MR. BALLASES:  Mr. Sather --

21        MR. CHOUDHRI:  I have the floor.

22        MR. BALLASES:  -- (unintelligible) the

23  questioning --

24        MR. CHOUDHRI:  Please stop interrupting,

25  Mr. Ballases.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  59

1        MR. BALLASES:  -- (unintelligible) not going

2   to the next witness.

3        MR. CHOUDHRI:  I am -- I am making the record.

4   Mr. Ballases, please let me speak, and please don't

5   interrupt me.  Okay?  Please --

6        MR. BALLASES:  Okay --

7        MR. CHOUDHRI:  -- play the audio ruling of

8   Judge Robinson --

9        MR. BALLASES:  We're going to --

10       MR. CHOUDHRI:  -- so it's clear on the record.

11  Go ahead.

12       (Audio file played.)

13       MR. CHOUDHRI:  No, we're -- we're --

14       (Audio file continues playing.)

15       MR. MCCUBBIN:  He just said any other

16  creditor (unintelligible) --

17       THE REPORTER:  I'm sorry, Mr. McCubbin.  You

18  just cut out for a second.

19       MR. MCCUBBIN:  He just said --

20       MR. CHOUDHRI:  Go and play that,

21  Mr. McCubbin --

22       MR. MCCUBBIN:  -- any other creditor --

23       MR. CHOUDHRI:  -- just so the record is clear.

24  Please go ahead --

25       MR. MCCUBBIN:  The judge just stated any other

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                     60

1  creditor.  I can replay it.

2        MR. CHOUDHRI:  Please replay it for the record

3  so the record is crystal clear, and it's the judge --

4        So, Madam Court Reporter, so the record is

5  clear, we are about to begin playing the oral ruling

6  of Judge Robinson.

7        THE REPORTER:  Okay.  So are you wanting me to

8  transcribe --

9        MR. CHOUDHRI:  Yes.

10        THE REPORTER:  -- this audio into the record?

11        MR. CHOUDHRI:  Yes.  Yes, Madam Court

12  Reporter.  He's about -- we're about to play the

13  judge's ruling -- oral ruling on the record so that

14  way we can have a simple and clean completion of this

15  deposition and end this shenanigan and argument with

16  Mr. Ballases.

17        Please, Mr. -- please, sir, please proceed

18  with the record -- the audio ruling of Judge Robinson.

19  Go ahead.

20        (Audio file played.)

21        THE REPORTER:  I'm sorry.  Sorry --

22        (Audio file continues playing.)

23        THE REPORTER:  Sorry.  The audio is not clear.

24  The audio is not crystal clear.  I hear Mr. Sather

25  responding on the audio, and it's not clear.

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    61

1          Typically in a transcript, we do not

2    transcribe audio played.

3          MR. BALLASES:  And I'm going to object --

4          MR. CHOUDHRI:  Time out.

5          MR. BALLASES:  I'm objecting --

6          MR. CHOUDHRI:  We're going to e-mail you --

7    Court Reporter, we're going to e-mail you this audio

8    right now, and he's going to adjust the volume and

9    play it again.

10         Go ahead.  Play it again, please.

11         And, Court Reporter, let us know if you're

12   getting a clear --

13         MR. BALLASES:  Mr. Sather --

14         MR. CHOUDHRI:  -- read on it.  Okay?

15         MR. BALLASES:  -- take control of the depo.

16   This is a waste of time.  It's a waste of the client's

17   time --

18         MR. CHOUDHRI:  Mr. Ballases, please -- please

19   stop talking.

20         MR. BALLASES:  -- (unintelligible) control of

21   the deposition --

22         MR. CHOUDHRI:  I have the floor --

23         MR. SATHER:  You don't have it yet,

24   Mr. Choudhri.

25         (Crosstalk)

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                        62

1        MR. BALLASES:  Let's just jump to the next

2   witness.  I'm not allowing the questions to be asked.

3   So it's not going to change.  We're just wasting

4   time --

5        MR. CHOUDHRI:  We're playing the oral ruling

6   of Judge Robinson.  Please, Mr. Ballases, be quiet so

7   we can play the ruling of Judge --

8        MR. BALLASES:  (Unintelligible)

9        MR. CHOUDHRI:  -- Judge Robinson's ruling.

10        MR. BALLASES:  (Unintelligible) we're not

11   going to play -- we're not -- that's not how

12   depositions work, Mr. Choudhri.  I'm sorry you like to

13   play an attorney --

14        MR. CHOUDHRI:  Well, please --

15        MR. BALLASES:  -- but that's not how this

16   works.  So either I'm going to --

17        MR. CHOUDHRI:  No.  No, no.  Please stop.

18        MR. BALLASES:  Again, I'm going to get off --

19   if you'd like to have another -- if you'd like to ask

20   questions of my other clients, I'm happy to do that,

21   and you're happy to ask questions, Mr. Sather.  But

22   these shenanigans are not --

23        MR. CHOUDHRI:  If your --

24        MR. BALLASES:  -- going to happen.

25        MR. CHOUDHRI:  -- responses, Mr. Ballases, is

1  gonna -- the shenanigans are yours, Mr. Ballases.  If

2  your responses are gonna be the same and you're not

3  going to allow cross-notice creditors who are here,

4  want to ask questions, then let's clarify this right

5  now so we can complete the deposition properly,

6  Mr. Ballases.  Please don't obstruct the discovery

7  right now.

8         Go ahead and play the oral ruling of Judge

9  Robinson.

10        MR. BALLASES:  I'm going to object --

11        (Audio file played.)

12        THE REPORTER:  I'm sorry.  I'm sorry.  I

13  cannot hear when Mr. Ballases is speaking --

14        MR. CHOUDHRI:  Mr. Ballases --

15        THE REPORTER:  I need one person --

16        MR. CHOUDHRI:  Mr. Ballases --

17        THE REPORTER:  -- at a time.

18        MR. CHOUDHRI:  -- intentionally --

19  Mr. Ballases intentionally interferes, interrupts when

20  we play the ruling of Judge Robinson that is gonna

21  clarify this issue that cross-notice creditors are not

22  allowed to participate and ask questions.

23        So please play the ruling of Judge Robinson.

24        And, Mr. Ballases, please refrain and be

25  quiet, because the court reporter cannot take

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    64

1   different people talking at the same time.

2          So please play the audio of Judge Robinson.

3          THE REPORTER:  Sorry --

4          MR. CHOUDHRI:  Go ahead.

5          THE REPORTER:  Sorry.  One second, please,

6   before you play it.

7          Mr. Sather, this is your deposition

8   transcript.  Normally if I can't hear, I can't

9   transcribe what's being said.  It would need to be

10  transcribed separately, because I'm not transcribing

11  this on the record right now if I cannot hear it

12  clearly.

13         MR. SATHER:  All right.  If you're unable to

14  hear it clearly, I suggest that we move on.  The judge

15  said what he said.  I do have one more question for --

16         MR. CHOUDHRI:  Hold on, Mr. Sather.  Just one

17  second, please, before we conclude anything here.  I

18  do want to take a break before we do conclude

19  anything, but I want to play this, and I think he can

20  do it a little bit louder.

21         Let's try if you can hear it again.  Ms. Court

22  Reporter, let's try one more time.

23         MR. BALLASES:  (Unintelligible)

24         MR. CHOUDHRI:  Go ahead.  Play the recording.

25         THE REPORTER:  I'm sorry.  Mr. Ballases --

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    65

1        MR. BALLASES:  The court reporter is saying

2   (unintelligible).

3        THE REPORTER:  I'm sorry.  Mr. Ballases, could

4   you please repeat that?

5        MR. BALLASES:  Sure.  I just was telling

6   Mr. Choudhri that you have instructed him you cannot

7   take it down in this manner, and so I'm just trying to

8   tell him that he's wasting more time.

9        Mr. Sather --

10       MR. CHOUDHRI:  Mr. Ballases, that's not what

11   she said.

12       MR. BALLASES:  -- if you want to go --

13       MR. CHOUDHRI:  Mr. Ballases, we're going to

14   try for her to hear it.  Okay?

15       MR. BALLASES:  Okay.  Call us when you're

16   ready --

17       MR. CHOUDHRI:  So she's being very cooperative

18   and polite.

19       Please, Mr. Ballases, be quiet.

20       Go ahead, Mr. -- sir.  Please play the -- play

21   the audio for the judge's ruling.

22       (Audio file played.)

23       MR. MCCUBBIN:  He said, And any other

24   creditor.

25       MR. CHOUDHRI:  Can you please --

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  66

1          MR. SATHER:  Madam Reporter --

2          MR. CHOUDHRI:  Please play the -- please play

3     the whole recording.

4          MR. MCCUBBIN:  The recording is starting --

5          MR. SATHER:  Okay.  Stop.  Stop.

6          Madam Reporter, were you able to get the last

7     excerpt?

8          MR. BALLASES:  Ms. Court Reporter, you told us

9     you couldn't take anything down in that manner.  It'd

10    have to be transcribed by the person who noticed the

11    deposition, Mr. Sather.  I assume you're going to

12    stick by what you stated earlier.

13          THE REPORTER:  Okay.  It's not crystal clear.

14    And because it's being played, I'm not sure where the

15    audio and where it is stopping.

16          MR. CHOUDHRI:  Well, let's take a five-,

17    ten-minute break.  Let's e-mail it to you, Madam Court

18    Reporter, and so we can be efficient, and that way we

19    don't have to interrupt the deposition and come back a

20    different day and go seek court intervention.  We can

21    save the Court's time and not bother the Court.

22          But if Mr. Ballases insists that we have to

23    bother the Court, then we'll seek emergency relief

24    from the Court.  But why don't we go ahead and e-mail

25    you right now.

1      And let's not allow anybody to bully anybody

2  here.  So, Mr. Ballases, please don't put words in her

3  mouth.

4      So let's go ahead and take -- because at this

5  point, this is -- I've cross-noticed the depo, and I

6  want the record to be clear.  If Mr. Ballases is going

7  to continue to not allow questions despite the order

8  by the judge being shown and heard for him -- so the

9  record is clear.  But we'll go ahead and take a --

10  let's go and take a ten-minute break.

11      Madam Court Reporter, we're going to e-mail

12  you the audio oral ruling of Judge Robinson so we can

13  have a smooth deposition and complete discovery, and

14  no one can obstruct this process.  Okay?  So can you

15  provide your e-mail address, Madam Court Reporter,

16  just so I have it?

17      MR. BALLASES:  Mr. Sather, are we moving on to

18  the next witness?

19      MR. SATHER:  Yeah, I don't think this is

20  productive.  Mr. Ballases has indicated that he is not

21  going to allow you to ask questions regardless of what

22  the Court ruled, and so it is my intent at this time

23  to adjourn the deposition subject to any future

24  rulings from Judge Robinson.  If Judge Robinson

25  allows --

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

68

1       MR. CHOUDHRI:  Well --

2       MR. SATHER:  -- the other parties to ask

3   questions, I may have -- I reserve the right to ask

4   follow-up questions.

5       MR. CHOUDHRI:  So -- so I --

6       MR. BALLASES:  Would you like to ask --

7       MR. CHOUDHRI:  No, no.  Hold --

8       MR. BALLASES:  Would you like to proceed --

9       (Crosstalk)

10      THE REPORTER:  I'm sorry.  I can't --

11      MR. BALLASES:  -- with Osama Abdullatif or

12   John Quinlan next?

13      THE REPORTER:  Mr. Ballases -- sorry --

14      MR. CHOUDHRI:  Hang on a second.

15      THE REPORTER:  -- Mr. Ballases --

16      MR. CHOUDHRI:  I have --

17      THE REPORTER:  -- could you --

18      MR. CHOUDHRI:  -- contacted the Court.  I'll

19   be e-mailing the Court right now.  We are not

20   suspending this deposition.  I want to go ahead and

21   pause the deposition.  We are going to contact the

22   Court.  Okay?

23      Madam Court Reporter, would you give us your

24   e-mail address, please?

25      THE REPORTER:  And I just want to note,

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    69

1   Mr. Ballases, I did not get anything you just said as

2   you were speaking at the same time as Mr. Choudhri.

3   So do you have anything to put on the record?

4        MR. BALLASES:  Myself, me?

5        THE REPORTER:  Yes.  I did not get what you

6   were saying while -- after what Mr. Sather said.

7        MR. BALLASES:  Sure.  I just asked Mr. Sather

8   if we're ready to move to the next witness.  I think

9   he indicated he was before Mr. Choudhri interrupted.

10   And so that's all I'm asking.

11        MR. CHOUDHRI:  So --

12        MR. BALLASES:  Do we want to move to the next

13   witness, Steve?

14        MR. CHOUDHRI:  So this part is -- at this

15   moment, I'd like to e-mail the court reporter the

16   judge's oral ruling, and let's take a 15-minute break.

17   And I've already reached out to the Court.  The Court

18   has asked for us to e-mail the Court for relief so we

19   can complete the deposition and not waste the Court's

20   time or disrupt the deposition and have to come back a

21   different day.  Everybody's schedules are -- are very

22   important.

23        Mr. Ballases, in the event we are able to

24   resume or reschedule the deposition, can you provide

25   us dates?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                 70

1          MR. BALLASES:  Steve, can we move on?  Can you

2  control your client to any degree?  I mean --

3          MR. SATHER:  Mr. Choudhri --

4          MR. CHOUDHRI:  I'm not his client.

5          MR. SATHER:  -- is not my client in his

6  individual capacity, and therefore --

7          MR. BALLASES:  I understand he's a principal

8  of Texas REIT, the debtor.

9          MR. SATHER:  He's also asserting his right to

10 appear as a pro se creditor and that I do not have any

11 control over that capacity.  If he wishes to contact

12 the Court, that is his business.

13         MR. BALLASES:  I understand that, but you've

14 noticed the deposition.  Do we want to proceed with

15 the next witness?  I've got my --

16         MR. CHOUDHRI:  And we --

17         MR. BALLASES:  -- clients here.  We've

18 rearranged our schedules for you.  Do you want to take

19 the deposition or not?  It's up to you, Steve.

20         MR. SATHER:  I want to proceed --

21         MR. CHOUDHRI:  We are resuming.  We are

22 pausing the deposition, and we're going to have a

23 conversation, and we'll come back in 15 minutes on the

24 record.

25         But in the meantime, Court Reporter, can I

1 have your e-mail address so we can e-mail you the

2 audio ruling of the judge?  And I think that'll solve

3 any issues and resolve the -- the objection or

4 position that Mr. Ballases is taking that the judge

5 said something the judge didn't say, so it's clear.

6 If I can get your e-mail address, we can e-mail you

7 the audio right now, and we can resume.

8        Let's -- let's resume the deposition at noon.

9 It's 11:40 right now.

10        THE REPORTER:  Okay.  May I go off the record,

11 please?  If we're pausing?

12        MR. CHOUDHRI:  Please.

13        MR. SATHER:  Yes, you may.  Yes.

14        MR. BALLASES:  Yes, you can go off the record.

15        THE REPORTER:  Okay.  So I am off the record.

16        (Discussion held off the record.)

17        (A recess was taken.)

18        THE REPORTER:  Back on the record.

19        MR. BALLASES:  So this is Michael Ballases,

20 counsel for John Quinlan, Omar Khawaja, and Osama

21 Abdullatif.  There is no written order, but I did

22 listen to the recording, and it appears he did say

23 "creditors."  And so I was mistaken, and so I will

24 allow creditors to ask questions, however, in the

25 limited capacity that he stated in the oral hearing.

1   So we can go forth with Mr. Khawaja.

2        Ms. Hood, if you want to ask questions, go for

3   it.

4        MS. HOOD:  Thanks.  Okay.  Steve, I may use

5   your exhibits, so if you can have those by the --

6        MR. SATHER:  I'm happy to --

7        MS. HOOD:  -- by the ready for me, I

8   appreciate it.

9        MR. SATHER:  -- put them up on the screen if

10  you need them.

11        MS. HOOD:  Thank you.

12  BY MS. HOOD:

13    Q.  Mr. Khawaja, my name is Lori Hood.  We've

14  never met before; correct?

15    A.  That's correct.

16    Q.  And I understand that you are an attorney

17  licensed in the state of Texas; correct?

18    A.  That's also correct.

19        MR. BALLASES:  Objection.  Form.

20    Q.  (BY MS. HOOD)  And do you practice law?

21    A.  Yes, ma'am.

22        MR. BALLASES:  Objection.  Form.

23    Q.  (BY MS. HOOD)  And do you have -- where do you

24  practice law?

25        MR. BALLASES:  Objection --

1       A.  At my own law firm.

2       Q.  (BY MS. HOOD)  And what is the name of that

3   law firm?

4       A.  The Law Offices of -- and my name.

5       Q.  And where is that?  Where are your offices

6   located?

7           MR. BALLASES:  Objection.  Form.

8       A.  On Richmond and Sage.

9           MS. HOOD:  If you'll -- thanks, Steve.  Can

10  you scroll down, Steve?

11          MR. SATHER:  Certainly.

12      Q.  (BY MS. HOOD)  In the proof -- if I understand

13  your testimony correctly, you stated that your proof

14  of claim is based upon some judgments that you had

15  assigned to you by virtue of purchasing those

16  judgments from third parties; is that correct?

17          MR. BALLASES:  Objection.  Form.

18      A.  Yes.

19          MS. HOOD:  Mr. Ballases, what is the basis of

20  your objection?

21          MR. BALLASES:  Asked and answered.  We've gone

22  through all this.

23          MS. HOOD:  And I understand that,

24  Mr. Ballases, but you were objecting quite frequently

25  to Mr. Sather's questions, and I just want to make

OMAR KHAWAJA                                           September 11, 2024
TEXAS REIT LLC                                                         74

1  sure that the record is clear with regard to what your

2  objection is.  I didn't know what your objection was

3  during his questioning, and so I'm just trying to make

4  sure that if the question needs to be rephrased or has

5  come out at a different angle, that the question is

6  clear to your client and that we're not going to deal

7  with objections in the transcript later on.  Is that

8  fair?

9        MR. BALLASES:  I'm going to make my objections

10  according to the rules.  You can respond how you think

11  appropriate pursuant to the rules.

12        MS. HOOD:  Okay.  I appreciate that.

13        Oops.  What's that?  No, take that down.

14        MR. SATHER:  Sorry.

15     Q.  (BY MS. HOOD)  All right.  So -- okay.  So

16  this proof of claim is your individual proof of claim;

17  is that correct?

18     A.  My individual proof of claim?  It looks like

19  my name is on there as well as Mr. Quinlan's and

20  Mr. Abdullatif's.

21     Q.  Right.  But this isn't a proof of claim you

22  filed on behalf of your law office; correct?

23     A.  Oh, yeah.  Yeah, that's filed on my behalf,

24  correct.  Mm-hmm.

25     Q.  And if I understand your testimony, the value

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    75

1   of the property that is included in Section 9 consists

2   of the total of the three judgments that form the

3   basis of your proof of claim; correct?

4       A.  That's right.

5       Q.  And you've used these three judgments as the

6   basis for filing an adversary action in the Southern

7   District but also attached the adversary action to

8   your proof of claim; is that correct?

9       A.  That sounds correct.

10      Q.  Okay.  So if I can drill down, we've got --

11  the basis for your proof of claim was, one, three

12  judgments and, two, an adversary action; is that

13  correct?

14      A.  That sounds correct.

15      Q.  All right.  And the basis of the adversary

16  action were the three judgments; is that correct?

17          MR. BALLASES:  Objection.  Form.

18      A.  Sorry.  Can you repeat the question?

19      Q.  (BY MS. HOOD)  Yeah.  The basis of your

20  adversary action is the three judgments that you claim

21  you're unable to collect; is that correct?

22      A.  That's correct.

23          MR. BALLASES:  I'm going to object to form.

24          MS. HOOD:  And what is the basis of your

25  objection?

1        MR. BALLASES:  I think it's vague and

2   ambiguous and misstates the evidence.  I mean, the

3   petition or the complaint speaks for itself.

4        MS. HOOD:  So last time I checked, documents

5   don't talk.  So let me correct my question just to

6   make it clear.

7    Q.  (BY MS. HOOD)  Mr. Khawaja, in your adversary

8   action which is attached to your proof of claim, you

9   reference three judgments; is that correct?

10   A.  Yes.

11   Q.  And you testified earlier, when Mr. Sather was

12  asking you questions, that the reason you brought the

13  adversary action was your inability to collect on

14  those judgments and that somehow all of these related

15  entities are alter egos of Mr. Choudhri; correct?

16   A.  Yes.

17   Q.  Okay.  Let me drill down on the judgments.

18       You state that you're an assignee of two of

19  these judgments; is that correct?

20   A.  That's correct.

21       MR. BALLASES:  Objection.  Form.

22       MS. HOOD:  All right.  What is the basis of

23  your objection?

24       MR. BALLASES:  Asked and answered.  This has

25  been already discussed and answered clearly by

OMAR KHAWAJA                                   September 11, 2024
TEXAS REIT LLC                                                77

1   Mr. Sather.

2        MS. HOOD:  Okay.  I disagree --

3        MR. BALLASES:  You're just rehashing --

4        MS. HOOD:  -- but -- okay.  Let me finish.

5   Q.  (BY MS. HOOD)  You have --

6        MS. HOOD:  Steve, can you go to the basis of

7   the damages that were attached?  And thank you for

8   being my paralegal.  I appreciate it.

9   Q.  (BY MS. HOOD)  All right.  So Judgment

10  Number 1, you have an assigned interest in; correct?

11  A.  Yes.

12       MR. BALLASES:  Objection.  Form.

13  Q.  (BY MS. HOOD)  Before you purchased your

14  assignment, did you do any due diligence on the

15  underlying pleadings in the case?

16       MR. BALLASES:  Objection.  Form.

17  A.  Yes.

18  Q.  (BY MS. HOOD)  And because you did underlying

19  due diligence in the case, you understand that nowhere

20  in that case is there any allegation of fraudulent

21  transfer; correct?

22  A.  In which case?

23  Q.  Judgment Number 1, Davy versus Heil.

24  A.  I mean, I didn't get into the facts of that

25  case.  There's a final judgment, I purchased it, and

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                 78

1  it was assigned to me.  Why do I care what happened in

2  that case?

3      Q.  Okay.  Well, I just asked you if you looked at

4  the underlying pleadings in the case, and you said

5  yes.  So now your testimony is that you did not look

6  at the underlying pleadings.

7      A.  I mean, I skimmed through them.

8      Q.  And as you were skimming through them, did you

9  understand that there was no cause of action for

10 fraudulent transfers?

11     A.  I don't recall.

12     Q.  Have you read the judgment?

13     A.  Yes, I have.

14     Q.  And did you read it before you purchased it?

15     A.  Yes, I did.

16     Q.  And do you understand that nowhere in that

17 judgment is there a finding of fraudulent transfers?

18     A.  Okay.  If you say so.

19     Q.  Well, no, I'm asking you if you've read it and

20 if you understand that.

21         MR. BALLASES:  Objection.  Form.

22     A.  I mean, if there isn't, I'm gonna take your

23 word for it and say there isn't.

24     Q.  (BY MS. HOOD)  Okay.  Well, take my word for

25 it.  There isn't.

1     Did you purchase this judgment at a discount?

2     MR. BALLASES:  Objection.  Form.

3   A.  I don't recall.

4     MS. HOOD:  What's the basis for your

5   objection?

6     MR. BALLASES:  Lacking relevance.  The purpose

7   of the deposition is to understand why the proof of

8   claim was filed and why it is now being withdrawn.

9     MS. HOOD:  All right.  Well, I think --

10     (Crosstalk)

11     MR. BALLASES:  (Unintelligible) an underlying

12   matter in the Southern District.

13     MS. HOOD:  All right.  I disagree with your

14   analysis, but we can argue that another day.

15   Q.  (BY MS. HOOD)  So you don't recall how much

16   you purchased the judgment for.

17   A.  Correct.

18   Q.  And you are one of three assignees of this

19   judgment; correct?

20   A.  That's correct.

21     MR. BALLASES:  Objection.  Form.

22   Q.  (BY MS. HOOD)  Before you purchased the

23   judgment, did you have an agreement with the other two

24   claimants, Mr. Quinlan and Mr. Abdullatif, as to why

25   you were purchasing the judgment?

1          MR. BALLASES:  Objection.  Form.

2      A.  Did I have an agreement as to why we were

3  purchasing the judgment?  I mean, the purpose of

4  purchasing the judgment is to collect on a judgment,

5  so that was the agreement.

6      Q.  (BY MS. HOOD)  So you sat down with the other

7  two gentlemen, and the three of you decided to

8  purchase this judgment together.

9      A.  I don't recall if we sat down together

10  anywhere and had that -- a sit-down discussion about

11  what was gonna happen.  I think maybe that did.

12      Q.  Maybe it did, or maybe it didn't?

13      A.  Yeah.  Maybe it was a phone call; maybe it was

14  a sit-down meeting.

15      Q.  When did you --

16          MR. BALLASES:  And just for the record --

17      Q.  (BY MS. HOOD)  Can you tell us when the

18  judgment --

19          MR. BALLASES:  Just so that I have --

20          THE REPORTER:  I'm sorry.  I'm sorry.

21          MS. HOOD:  Sorry.

22          THE REPORTER:  I hear somebody else speaking.

23          MR. BALLASES:  Sure.  I just -- I wanted to

24  caution Ms. Hood.

25          You're getting real close to attorney-client

1  privilege and/or work product legal privilege.  So I

2  don't think you're there yet, but you're close, so I

3  just wanted to warn you to keep that in mind.

4      Q.  (BY MS. HOOD)  Sure.  And, Mr. Khawaja, please

5  understand that I don't want to know what you talked

6  about with your lawyers, okay, ever, or what your

7  lawyers have discussed with you regarding their

8  strategy.  Okay?  So if you feel like you have to

9  reveal that kind of information in response to my

10  question, I don't want to know that stuff.  Okay?

11          And certainly you understand as a lawyer that

12  you have the right to discuss this kind of response

13  with your lawyer prior to answering; right?

14      A.  Yes.

15      Q.  Can you tell us when you -- when you purchased

16  the judgment?

17      A.  Sometime before this proof of claim was filed.

18  I don't recall exactly when, no.

19      Q.  Do you recall the year?

20      A.  I think it was --

21          MR. BALLASES:  Objection.  Form.

22      A.  I think it was 2023.

23      Q.  (BY MS. HOOD)  And how did it come about that

24  this judgment came across your desk to be purchased?

25          MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                             82

1    Q.  (BY MS. HOOD)  You can answer.

2    A.  I mean, that's -- that's privileged

3  information that I'm not gonna discuss.

4        MR. BALLASES:  I'll go ahead and assert the

5  attorney work product, attorney-client privilege.  I'm

6  going to instruct him not to answer.

7    Q.  (BY MS. HOOD)  How do you typically learn of

8  judgments that are available for you to purchase?

9    A.  I would say typically it is something that's

10  brought to my attention by a third party.

11   Q.  And which third party brought this particular

12  judgment to your attention?

13       MR. BALLASES:  Objection.  Form.  Assertion of

14  attorney-client and work product legal privileges.

15  Instruct client not to answer.

16   Q.  (BY MS. HOOD)  Did Mr. Abdullatif bring this

17  judgment to your attention?

18       MR. BALLASES:  Same assertion of privilege,

19  same instruction to the client not to answer.  It

20  violates attorney-client and attorney work product.

21   Q.  (BY MS. HOOD)  Mr. Khawaja, do you have any

22  sort of agreement with Mr. Abdullatif or Mr. Quinlan

23  regarding a joint prosecution of this proof of claim?

24   A.  We do.

25   Q.  And is that in writing?

OMAR KHAWAJA                                  September 11, 2024
TEXAS REIT LLC                                                83

1         MR. BALLASES:  Also joint litigation

2    privilege, I'll assert.

3      Q.  (BY MS. HOOD)  Okay.

4      A.  I'm not gonna answer.

5      Q.  Is your -- is your agreement in writing?

6         MR. BALLASES:  Instruct client not to answer.

7    He doesn't need to give work product, attorney-client,

8    or joint litigation privilege information away.

9      Q.  (BY MS. HOOD)  Back to my question.

10   Mr. Khawaja, do you have an agreement in writing with

11   Mr. Abdullatif and Mr. Quinlan with regard to pursuing

12   this proof of claim?

13        MR. BALLASES:  I'm going object again to the

14   question and assert the legal privileges of

15   attorney-client, work product, also joint litigation

16   privilege and instruct the client not to answer.

17     Q.  (BY MS. HOOD)  Mr. Khawaja, are you adhering

18   to your -- to your counsel's instruction?

19     A.  I am.

20     Q.  And refusing to answer my question?

21     A.  On advice of counsel, yes.

22     Q.  With regard to this particular Davy-Heil

23   judgment, do you know Mr. Heil?

24     A.  I don't.

25     Q.  Do you know Mr. Oakum?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    84

1    A.  I don't.

2    Q.  Do you know Renee Davy?

3    A.  Not personally.

4    Q.  Not personally?  How else would you know her?

5    A.  I've seen videos of her online.

6    Q.  Doing what?

7    A.  Stating that Mr. Choudhri's a fraud and a

8  thief and shouldn't be trusted.

9    Q.  Have you ever spoken to her?

10    A.  I have not.

11    Q.  When you purchased this judgment, who did you

12  pay?

13        MR. BALLASES:  Objection.  Form.

14        I'm going to also -- it's harassing and

15  oppressive.  I'm also going to assert the

16  attorney-client, attorney work product, and joint

17  litigation privilege and instruct the client not to

18  answer.

19    Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

20  follow your attorney's instruction and not answer my

21  question?

22    A.  I am.

23    Q.  When you guys purchased your assignment of

24  this judgment, the Davy-Heil judgment, did you each

25  provide separate payment, or did it come from one

1  source?

2       MR. BALLASES:  I'm going to assert the same

3  objection and the same assertions of legal privilege

4  and instruct the client not to answer, as I did to the

5  question before.

6     Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

7  follow your counsel's instruction and refuse to answer

8  my question?

9     A.  I am.

10     Q.  Mr. Khawaja, when you purchased your interest

11  in this judgment, did you purchase it via wire

12  transfer or a check?  Cash?  How did you purchase it?

13       MR. BALLASES:  I'm going to assert the same

14  legal objections and the same assertions of legal

15  privilege and instruct client not to answer, as I did

16  with the previous question.

17     Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

18  adhere to your client's (sic) instruction and refuse

19  to answer my question?

20     A.  My counsel's.  Yes, I am.

21     Q.  Mr. Khawaja, do you know a gentleman by the

22  name of Wayne Dolcefino?

23     A.  I've seen him online.

24     Q.  And was it one of Mr. Dolcefino's videos in

25  which Ms. Davy appeared?

1    A.  I think so, yes.

2        MR. BALLASES:  Objection.  Form.

3    Q.  (BY MS. HOOD)  Have you ever met

4  Mr. Dolcefino?

5    A.  I've met him, yes.

6        MR. BALLASES:  Objection --

7    Q.  (BY MS. HOOD)  In connection with any of your

8  cases related to Mr. Choudhri?

9    A.  No.

10       MR. BALLASES:  Objection.  Form.

11     Q.  (BY MS. HOOD)  With regard to this Judgment

12  Number 1 that was assigned to you, how much of -- how

13  much do you own of this judgment?

14       THE WITNESS:  I think that goes to the

15  privilege again.

16       MR. BALLASES:  I'm going to object to the

17  question as being oppressive and harassing and assert

18  the attorney-client, attorney work product, and joint

19  litigation privilege and instruct him not to answer.

20     Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

21  adhere to your lawyer's instruction not to answer my

22  question?

23    A.  I am.

24     Q.  As you sit here today, you're not going to

25  tell me how much of this $501,513.85 judgment that you

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        87

1  own.

2       MR. BALLASES:  Objection.  Form.

3    A.  On advice of counsel, I will not answer that

4  question.

5    Q.  (BY MS. HOOD)  And you testified that you

6  purchased this judgment sometime last year; correct?

7       MR. BALLASES:  Objection.  Form.

8    A.  I believe so, yes.

9    Q.  (BY MS. HOOD)  Okay.  And what have you done

10  to try and collect this judgment?

11    A.  Well, we filed --

12       MR. BALLASES:  Objection.  Form.

13    A.  -- in Bankruptcy Court or, I guess, in our

14  proof of claims.  And I think -- I think that's it at

15  this stage.

16    Q.  (BY MS. HOOD)  Have you filed any

17  post-judgment discovery in the underlying lawsuit in

18  the 152nd?

19    A.  I don't -- I don't -- I'm not aware of that.

20    Q.  Have you hired a lawyer to pursue

21  post-judgment discovery or collection of this

22  judgment?

23    A.  The only lawyer I've hired is Mr. Ballases.

24    Q.  And you're certainly not aware of Mr. Ballases

25  doing anything to try to collect this judgment outside

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    88

1   of the bankruptcy action; correct?

2        MR. BALLASES:  Objection.  Form.

3        Q.  (BY MS. HOOD)  You can answer.

4        A.  I'm not aware.

5        Q.  As an attorney in the state of Texas,

6   certainly you're aware of the fact that, as a judgment

7   creditor, you have the right to pursue post-judgment

8   collection efforts within the confines of the Court

9   that issued the judgment; correct?

10       A.  Sure.

11       Q.  And you've chosen not to avail yourselves of

12  those opportunities; correct?

13       MR. BALLASES:  I'm going to go ahead and

14  object to the question as misleading, also oppressive

15  and harassing, and assert attorney-client, attorney

16  work product, and joint litigation privilege.

17       What we do for collection, you do not get to

18  ask about to aid Mr. Choudhri and Jetall and his

19  companies to hide assets any further.  So we're not

20  going to answer that.

21       MS. HOOD:  All right.  I object to any

22  commentary about me helping anybody do anything.  All

23  right?  I'm here representing a creditor, and I'm

24  trying to determine the basis for the filing of this

25  proof of claim.  And part of that issue is any attempt

1   by the judgment creditor to collect the judgment

2   outside of filing a proof of claim in a bankruptcy

3   action, that has nothing to do with the underlying

4   judgment.

5       Q.  (BY MS. HOOD)  Mr. Khawaja, do you personally

6   know of any action taken in the public forum by you to

7   collect this judgment outside of this bankruptcy

8   action?

9       A.  I'm not aware of any.

10          MR. BALLASES:  I'm further going to instruct

11   you:  Don't answer any more questions regarding what

12   we've done to collect because that gets into attorney

13   work product, also attorney-client, and joint

14   litigation privilege.

15          THE WITNESS:  I understand.

16          MS. HOOD:  And certainly, Mr. Ballases, I

17   appreciate the nuances and everything else.  And

18   again, I don't want to know anything about your

19   strategy or anything else.  That's why I asked for

20   public record, because I can't find anything in the

21   public record that shows any attempt to try to collect

22   this judgment.  And so I'm just trying to clarify and

23   get commentary and testimony from your client

24   confirming that.

25          MR. BALLASES:  I appreciate that, but we don't

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    90

1  need to get into anything that could aid your client

2  or the principal who owns your client to hide assets

3  any further.

4        MS. HOOD:  I'm going to object to the sidebar

5  commentary there.

6     Q.  (BY MS. HOOD)  The judgment that you bought,

7  the judgment debtor is Jetall Companies, Inc.;

8  correct?

9     A.  Correct.

10     Q.  Certainly that judgment does not include my

11  client as a judgment debtor; correct?

12     A.  Yeah, it's not -- does not include?  Correct.

13     Q.  It certainly doesn't include Mrs. Choudhri as

14  a judgment debtor; correct?

15     A.  It does not include them as a judgment debtor,

16  correct.

17     Q.  It doesn't include Texas REIT as a judgment

18  debtor either; right?

19     A.  Correct.

20     Q.  On Judgment Number 2, I think you testified

21  that you don't own any part of that judgment; correct?

22     A.  Judgment Number 2, I believe I do own part of

23  it.

24     Q.  The Abdullatif judgment?

25     A.  Okay.  No, I do not.  Sorry.

1      Q.  Okay.  Are you aware of the fact that that

2  judgment has been bonded around?

3      A.  I'm not aware of --

4         MR. BALLASES:  Objection.  Form.

5      A.  I'm not aware of that.

6      Q.  (BY MS. HOOD)  And when you filed the proof of

7  claim that included Judgment Number 2, did you do any

8  due diligence on that judgment in order to satisfy

9  yourself that that judgment was not bonded around?

10        MR. BALLASES:  Objection.  Form.

11     A.  I -- minimally, not -- minimally.

12     Q.  (BY MS. HOOD)  What do you mean "minimally"?

13     A.  Meaning it was a final judgment, and that's

14  how I -- that was what I understood it to be.

15     Q.  Certainly as a lawyer in the state of Texas,

16  you understand that when a judgment is superceded,

17  that that stays any collection activities; correct?

18        MR. BALLASES:  I'm going to object to the

19  question as misleading and harassing and oppressive.

20     Q.  (BY MS. HOOD)  You can answer --

21     A.  I'm not aware of that --

22     Q.  You're not aware of that?

23     A.  I'm not aware of that being -- I'm not aware

24  of the judgment being superceded.

25     Q.  And did you take any independent actions to

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    92

1  determine whether or not this judgment, which is on

2  appeal, had been superceded?

3      A.  No.

4      Q.  Judgment Number 3, this HSLLP judgment.

5      A.  Yes.

6      Q.  All right.  That judgment, when did you

7  purchase that judgment?

8      A.  I think 2023, if I recall correctly.

9      Q.  And how did you become aware that that

10  judgment was available to purchase?

11      MR. BALLASES:  Objection.  Form.  Harassing

12  and oppressive.  I'm also going to assert

13  attorney-client, attorney work product, and joint

14  litigation privilege and instruct the client not to

15  answer.

16      Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

17  adhere to your client's -- excuse me -- to your

18  lawyer's instructions?

19      A.  I am.

20      Q.  And if I understand your testimony, you are

21  one of three owners also of this judgment; is that

22  correct?

23      MR. BALLASES:  Objection.  Form.

24      A.  That's correct.

25      Q.  (BY MS. HOOD)  And can you tell me how you

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    93

1   paid for the purchase of this judgment?

2        MR. BALLASES:  I'm going to object to the

3   question again as harassing and oppressive, assert the

4   attorney-client legal privilege, the work product

5   legal privilege, and the joint litigation legal

6   privilege and instruct the client not to answer.

7    Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

8   adhere to your lawyer's instruction?

9    A.  Yes.

10    Q.  Mr. Khawaja, can you tell me whether you paid

11   for -- excuse me.  Strike that.

12        Can you tell me who you paid when you

13   purchased this assignment of this judgment?

14        MR. BALLASES:  I'm going to assert the same

15   objection I just levied to the prior question as well

16   as the same assertion of legal privileges to the prior

17   question and instruct the client not to answer, just

18   like the prior question.

19    Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

20   adhere to your lawyer's instruction and not answer my

21   question as to who you paid for the purchase of this

22   judgment?

23    A.  I am.

24    Q.  I see that this judgment -- the judgment

25   creditor is Hoover Slovacek; correct?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    94

1      A.  That appears correct.

2      Q.  And that's the same law firm that is

3   representing you here today; correct?

4      A.  That's correct.

5         MR. BALLASES:  Objection.  Form.

6      Q.  (BY MS. HOOD)  Do you have any joint defense

7   agreements with Hoover Slovacek?

8         MR. BALLASES:  Objection.  Form.  I think --

9   well, objection.  Form.

10     A.  I'm not aware.

11     Q.  (BY MS. HOOD)  Do you have any prosecution

12  agreements with Hoover Slovacek?

13        MR. BALLASES:  Objection.  Form.

14     A.  I'm not aware of any.

15     Q.  (BY MS. HOOD)  At the time that you purchased

16  this judgment, were you represented by Hoover

17  Slovacek?

18        MR. BALLASES:  Objection.  Form.

19     A.  At the time I purchased the judgment, I was

20  represented by nobody.

21     Q.  (BY MS. HOOD)  So you were representing

22  yourself?

23     A.  Correct.

24     Q.  Who drafted the assignments?

25        MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        95

1      A.  I think that's a privileged answer.

2          MR. BALLASES:  Also assert the same legal

3   privileges we asserted in the previous questions,

4   which would be attorney-client, attorney work product,

5   and joint litigation and instruct the client not to

6   answer.

7      Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

8   adhere to your lawyer's instructions and not answer my

9   question?

10     A.  Yes.

11     Q.  When you purchased the assignment of this

12  judgment and the other two also purchased their

13  portion of the judgment, was it all done at one time?

14         MR. BALLASES:  Objection.  Form.

15         I'm also going to assert the same legal

16  privileges and instruct the client not to answer, as I

17  did with the previous question.

18     Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

19  adhere to your client's instruction and not answer my

20  question as to the timing of the purchase of the

21  assignment by the three of you?

22     A.  Yes.

23     Q.  Did you purchase the assignment of this

24  judgment from Mr. Abdullatif?

25         MR. BALLASES:  Objection.  Form.  Same

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                      96

1   objections, same assertions of legal privilege, same

2   instruction not to answer based on those legal

3   privileges as the question before.

4        Q.  (BY MS. HOOD)  Are you going to follow your

5   lawyer's instruction and not answer my question as to

6   who you purchased the assignment from?

7        A.  Yes.

8        Q.  When you purchased the assignment and you were

9   representing yourself, what lawyers did you deal with

10  for the other purchasers?

11       MR. BALLASES:  Objection.  Form.  I'm also

12  going to assert the same attorney work product and

13  attorney -- joint litigation legal privilege and

14  instruct the client not to answer.

15       Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

16  adhere to your lawyer's instructions and not answer my

17  questions?

18       A.  Yes.

19       Q.  Okay.  When you purchased your assignment, was

20  Mr. Abdullatif represented by counsel?

21       MR. BALLASES:  Objection.  Form.

22       Asserting the same legal privileges as the

23  previous question and instructing client not to answer

24  as I did with the previous question.

25       Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                      97

1   adhere to your client's instruction -- or to your

2   lawyer's instruction and not answer my question as to

3   whether or not Mr. Abdullatif had a lawyer at the time

4   of the purchase?

5       A.  Yes.

6       Q.  At the time you purchased your assignment of

7   this judgment, was Mr. Quinlan represented by counsel?

8           MR. BALLASES:  Objection.  Form.

9           I'm also going to assert the same legal

10  privileges as I did before and instruct the client not

11  to answer.

12      Q.  (BY MS. HOOD)  Mr. Khawaja, are you adhering

13  to your counsel's instructions and not answering my

14  question as to whether or not Mr. Quinlan was

15  represented by counsel at the time of the assignment

16  of the judgment?

17      A.  Yes.

18      Q.  Does your assignment include just your

19  signature, or is it an assignment that includes the

20  other purchasers' signatures?

21          MR. BALLASES:  I'm going to object to the

22  question -- object to the form of the question.

23  Excuse me.

24      A.  I don't -- I don't recall.

25      Q.  (BY MS. HOOD)  Do you have a physical copy, or

1   do you have the original of this assignment?

2        A.  I believe I do somewhere, not with me today.

3   I'm sure it was provided to me.

4        Q.  The copy or the original?

5        A.  The copy.

6        Q.  Do you know who holds the original of the

7   assignment?

8        A.  I don't.

9        Q.  Because you don't know who holds the original

10  of the assignment, you can't tell us whether or not

11  the assignment has been paid; correct?

12        MR. BALLASES:  Objection.  Form.

13        I'm going to assert the attorney-client and

14  attorney work product and attorney joint -- or excuse

15  me -- joint litigation privilege and instruct the

16  client not to answer.

17        A.  I'm going to follow advice of counsel.

18        Q.  (BY MS. HOOD)  And as you sit here today, you

19  can't tell us who holds the original of this

20  assignment.

21        A.  I can't.

22        MR. BALLASES:  Objection.  Form.

23        Q.  (BY MS. HOOD)  You can't?

24        A.  I cannot.

25        MR. BALLASES:  Objection.  Form.

1     Q.  (BY MS. HOOD)  Can you tell me why you didn't

2  include a copy of the assignment with your proof of

3  claim?

4          MR. BALLASES:  Objection.  Form.

5          Just -- and I'm -- and I apologize because I

6  know I'm not supposed to talk right now, but it's

7  attached to the actual complaint in the Southern

8  District, so you can pull it up.  It's public record.

9          MR. CHOUDHRI:  Mr. Ballases, please stop

10  coaching the witness.

11         MR. BALLASES:  Be quiet.

12         MR. CHOUDHRI:  I'm sorry.  Mr. Khawaja, did

13  you say something?

14         MS. HOOD:  Okay --

15         MR. BALLASES:  No, I told you to be quiet.

16  This is Mr. Ballases.

17         MS. HOOD:  Okay.  This is my time.  Okay?  You

18  guys can bicker and do your little boy thing when I'm

19  not talking.

20     Q.  (BY MS. HOOD)  So if I understand correctly,

21  this adversary action, which is based upon two

22  judgments that you claim to have an assignment in, was

23  originally filed in the Southern District of Texas; is

24  that correct?

25     A.  That's correct.

OMAR KHAWAJA                                     September 11, 2024
TEXAS REIT LLC                                                  100

1      Q.  And then you took that adversary and used it

2   as -- as an exhibit to your proof of claim that you

3   then filed in this action; correct?

4      A.  That's correct.

5      Q.  And if I understand your testimony, along with

6   this adversary action, you filed lis pendens against

7   the debtor's property in this action; correct?

8      A.  That's correct.

9      Q.  And if I remember the lis pendens, you did not

10  sign that lis pendens; correct?

11     A.  Correct.

12     Q.  Did Mr. Abdullatif have your permission to

13  sign that lis pendens that was filed against the

14  debtor's property in this action?

15     A.  Yes.

16     Q.  And when did you give him permission to file

17  that lis pendens?

18     A.  I'm not sure.  I'm assuming sometime before it

19  was filed.

20     Q.  Was it done prior to the time that you brought

21  the adversary action in the Southern District of

22  Texas?

23     A.  I don't know.

24        MS. HOOD:  Steve, my trustee paralegal, can

25  you bring up the first lis pendens, the supplemental

1  lis pendens, which I think is Exhibit -- yeah --

2  Exhibit 2, yeah.  Can you go down to the signature

3  page?

4        MR. SATHER:  Yes.

5     Q.  (BY MS. HOOD)  All right.  So Exhibit 2 is the

6  supplemental lis pendens that you authorized

7  Mr. Abdullatif to file against the debtor's property

8  in this action; correct?

9     A.  That's correct.

10    Q.  All right.  And the date of that says

11 August 22nd, 2023.  Do you agree with me?

12    A.  Yes.

13    Q.  Okay.  And would it be fair to say that you

14 gave Mr. Abdullatif your authority to sign on your

15 behalf somewhere around August 22nd, 2023?

16    A.  It could've been before that, but it sounds

17 correct.

18    Q.  Did you have a conversation with

19 Mr. Abdullatif about the filing of the lis pendens?

20       MR. BALLASES:  I'm going to object to the

21 question.  I'm also going to assert the

22 attorney-client, attorney work product, and joint

23 litigation privilege and instruct the client not to

24 answer.

25    A.  On advice of counsel, I'm not answering any

1  questions regarding my conversations with

2  Mr. Abdullatif or Mr. Quinlan.

3      Q.  (BY MS. HOOD)  Did you prov -- the authority

4  that you provided to Mr. Abdullatif for you -- for him

5  to sign on your behalf this lis pendens, was that

6  given verbally or in writing?

7         MR. BALLASES:  Objection.  Form.

8         Same assertion of legal privilege, same

9  instruction not to answer.

10     Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

11  adhere to your client's (sic) instructions and not

12  answer my question about how you gave permission to

13  Mr. Abdullatif --

14     A.  Yes, I am.

15         MS. HOOD:  Steve, can you bring up the --

16  Exhibit Number 3?

17     Q.  (BY MS. HOOD)  Exhibit Number 3 is the second

18  supplemental lis pendens that was filed also on the

19  debtor's property, and it looks to me that that also

20  is dated August 22nd, 2023.  Is that accurate?

21     A.  That looks accurate.

22     Q.  All right.  And is it fair to say that you

23  again gave Mr. Abdullatif permission or authorized him

24  to sign on your behalf somewhere around August 22nd of

25  2023?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                103

1      A.  Or prior to that, yes.

2      Q.  Certainly you didn't give him permission to

3  file it before you actually were an owner in the

4  judgment; correct?

5      A.  That's correct.

6      Q.  And again, just to summarize your testimony,

7  you think you recall purchasing your assignment in

8  this judgment sometime in 2023; correct?

9      A.  That's correct.

10      Q.  So we've got somewhere between January and

11  August 22nd that you purchased your interest in this

12  judgment; correct?

13      A.  That sounds right.

14      MR. BALLASES:  Ms. Hood, I don't mean to

15  derail your testimony, but if you look at the

16  complaint itself, it says when he obtained the

17  assignment.  It's February 17th, 2023.  You can read

18  it for yourself.  It's Exhibit 1.

19      MS. HOOD:  So I appreciate that, Mr. Ballases.

20  I'm trying to get your client's testimony on these

21  issues, not what's in a document that you wrote.  I

22  want his testimony, but I appreciate it.  He said he

23  couldn't recall, and that's fine with me.

24      Q.  (BY MS. HOOD)  On this judgment that you

25  purchased from Hoover Slovacek, prior -- prior --

1  sorry; my mouth is not working -- prior to your

2  purchase of the assignment, did you review the

3  underlying pleadings related to the lawsuit?

4      A.  Not really.

5      Q.  Can you be more specific than "not really"?

6  Is that you didn't look at them at all, or you kind of

7  looked at them?

8      A.  I may have briefly skimmed through them.

9      Q.  And by skimming through them, were you aware

10 that there were no causes of action for fraudulent

11 transfer, et cetera, against Jetall?

12     A.  No, I wasn't, but I'll take your word for it

13 that there were not.

14     Q.  And would you agree with me that the judgment

15 debtor in Judgment Number 3 is Jetall Companies, Inc.?

16     A.  Yes.

17     Q.  And the judgment debtor is not Arabella PH

18 3201; correct?

19     A.  No, they're an alter ego of Jetall Companies.

20        MS. HOOD:  Objection.  Non-responsive.

21     Q.  (BY MS. HOOD)  Arabella PH 3201 is not a

22 judgment debtor; correct?

23        MR. BALLASES:  Objection.  Form.

24     A.  That's correct.

25     Q.  (BY MS. HOOD)  9201 Memorial Drive is not a

1   judgment creditor; correct?

2       A.  Correct.

3          MR. BALLASES:  Objection.  Form.

4       Q.  (BY MS. HOOD)  2727 Kirby 26L, LLC, is not a

5   judgment debtor; correct?

6          MR. BALLASES:  Objection.  Form.

7       A.  Correct.

8       Q.  (BY MS. HOOD)  Texas REIT, LLC, is not a

9   judgment debtor; correct?

10      A.  Correct.

11         MR. BALLASES:  Objection.  Form.

12      Q.  (BY MS. HOOD)  Dalio Holdings I is not a

13  judgment debtor; correct?

14      A.  Correct.

15         MR. BALLASES:  Objection.  Form.

16      Q.  (BY MS. HOOD)  Dalio Holdings II is not a

17  judgment debtor; correct?

18      A.  Correct.

19         MR. BALLASES:  Objection.  Form.

20      Q.  (BY MS. HOOD)  Houston Real Estate Properties,

21  LLC, is not a judgment debtor; correct?

22      A.  (Unintelligible)

23         MR. BALLASES:  Objection.  Form.

24         THE REPORTER:  Sorry.  Was that "correct"?

25      Q.  (BY MS. HOOD)  What was your -- yeah, I didn't

1   hear your --

2       A.  That's correct.

3       Q.  -- answer either.  Yeah.

4       A.  Correct.  Correct.

5           MR. BALLASES:  And I object to the form.

6       Q.  (BY MS. HOOD)  Shahnaz Choudhri is not a

7   judgment debtor; correct?

8       A.  Correct.

9           MR. BALLASES:  Objection.  Form.

10      Q.  (BY MS. HOOD)  Ali Choudhri is not a judgment

11  debtor; correct?

12      A.  Correct.

13          MR. BALLASES:  Objection.  Form.

14      Q.  (BY MS. HOOD)  Shepherd-Huldy Development I is

15  not a judgment debtor; correct?

16      A.  Correct.

17          MR. BALLASES:  Objection.  Form.

18      Q.  (BY MS. HOOD)  Shepherd-Huldy Development II

19  is not a judgment debtor; correct?

20      A.  Correct.

21          MR. BALLASES:  Objection.  Form.

22      Q.  (BY MS. HOOD)  Galleria Loop Note Holder, LLC,

23  is not a judgment debtor; correct?

24      A.  Correct.

25          MR. BALLASES:  Objection.  Form.

1    Q.  (BY MS. HOOD)  What due diligence did you do,

2  if any, before you alleged in this adversary action,

3  which forms the basis of your proof of claim, that my

4  client, Dalio Holdings, LLC, is the alter ego of

5  Houston Real Estate Properties?

6    A.  What due diligence did I do personally?

7    Q.  Yeah.

8    A.  I mean, I think it's stated pretty clearly in

9  the petition what evidence we have.  There's a whole

10  court history of fraudulent transfers, commingling of

11  assets; you know, fraudulent, unethical conduct that

12  we have available as public record as to Mr. Choudhri

13  and, by extension, your client's conduct.  And that's

14  the due diligence I did to make these claims.

15    Q.  Okay.  So you based your due diligence off

16  your allegation that this is all public record.

17    A.  That's correct.

18      MR. BALLASES:  Objection.  Form.

19    Q.  (BY MS. HOOD)  What public records did you

20  look at?

21    A.  Well, if you -- everything that's stated in

22  the petition.  If you look at Lawsuit 2013-41273,

23  Harris County District Court, he was found to have

24  committed fraud, filed a fraudulent lien, and there

25  was no promissory note, and that was an entity that he

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    108

1   controlled, HREP.  If you look at -- on February 16th,

2   2017, in Case Number 2017-1 --

3        Q.  Let's go -- let's go back to the first one.

4   You --

5            MR. BALLASES:  I'm going to --

6        Q.  (BY MS. HOOD)  -- said that there was a --

7            THE REPORTER:  I'm sorry.

8        Q.  (BY MS. HOOD)  You claim to have a finding --

9            (Crosstalk)

10       Q.  (BY MS. HOOD)  You claim there's a finding of

11  fraud --

12           MR. BALLASES:  Ms. Hood --

13           THE REPORTER:  Sorry --

14           MR. BALLASES:  -- can you let my client answer

15  the question, please?

16           MS. HOOD:  I -- it's my question-and-answer,

17  and if I want to cut him off, I can.

18           MR. BALLASES:  Okay.  So you want to --

19           MS. HOOD:  I want to -- I want to drill down

20  on the first one.  Well, he's referencing a pleading

21  that I'm assuming that you wrote, so I just want to

22  find out what he knows personally about some of this

23  stuff.

24           MR. BALLASES:  Objection (unintelligible).

25       Q.  (BY MS. HOOD)  So you reference a lawsuit --

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    109

1   hang on.  Let me find it.

2          Is that the lawsuit involving HREP?

3   A.  Yes.

4   Q.  Okay.  And were you involved in that lawsuit?

5   A.  I was not.

6   Q.  So everything you know about that lawsuit, you

7   read as a matter of public record.

8   A.  That's correct.

9   Q.  Was there a finding of fraudulent transfers in

10  that case?

11         MR. BALLASES:  Objection.  Form.

12  A.  Other fraud, but I don't know if fraudulent

13  transfer was part of that.

14  Q.  (BY MS. HOOD)  I didn't see it.

15         MR. BALLASES:  Objection.  Sidebar.

16  Q.  (BY MS. HOOD)  All right.  That's the first

17  lawsuit that you said you looked at for public record

18  in order to determine that my client is somehow the

19  alter ego of all these other things; correct?

20  A.  That's correct.

21  Q.  Okay.  What other -- what other public records

22  did you review?

23  A.  There's also these videos by a guy named Wayne

24  Dolcefino I saw.

25  Q.  So you looked at videos.

OMAR KHAWAJA                                           September 11, 2024
TEXAS REIT LLC                                                      110

1    A.  Yes.

2    Q.  Anything else you reviewed?

3    A.  I think just generally people in the community

4  know that your client commits fraud.  He's known as a

5  fraudster.

6    Q.  Who are these --

7    A.  So many people have approached me.

8    Q.  Okay.  Who are these people?

9    A.  Yeah, I can't -- many people that he's

10  defrauded over the years.

11    Q.  Name one.

12    A.  Well, Judge Norman is one.  I don't know if

13  you know him.  He's in the Southern District.

14    Q.  Okay.  Who else?

15    A.  Let's see.  Who else in the community have

16  called him a fraudster?

17        Judge Landrum, Judge Michael Landrum in the

18  Harris County District Court, 164th District Court.

19  He considers your client a fraud.

20    Q.  And is that in relation to the HREP case?

21    A.  I just think generally.

22    Q.  Okay.  So Judge Landrum has spoken to you

23  about Mr. Choudhri being a fraudster?

24    A.  It's in a final judgment.  I can read that for

25  you if you'd like.

OMAR KHAWAJA                                     September 11, 2024
TEXAS REIT LLC                                              111

1    Q. No, I'm asking --

2    A. Do you want me to read it to you?

3    Q. No, no, no. I'm asking you. You said people

4  have told you; many people have told you. So I'm

5  asking who --

6    A. Yes.

7    Q. -- who's had a conversation with you about

8  Mr. Choudhri being a fraudster? And you've said Judge

9  Norman, and I'm assuming you didn't --

10   A. Yes.

11   Q. -- talk personally with Judge Norman. That's

12  out of an opinion; right?

13   A. Yes.

14   Q. Okay. The same as --

15   A. Members of the community --

16   Q. Okay. So who --

17   A. I'm sorry --

18      THE REPORTER: Sorry. One at a time, please.

19  Thank you.

20   Q. (BY MS. HOOD) What community?

21      MR. BALLASES: Objection. Form.

22   A. The real estate community, the Pakistani

23  community, basically anyone Mr. Choudhri has come in

24  contact with and done business with, people from those

25  communities.

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                        112

1      Q. (BY MS. HOOD)  Okay.  So we've got the real

2   estate community.  We've got the Pakistani community.

3      A.  His family members.  His own family members

4   have said the same.

5      Q.  Family members.

6         All right.  So who in the real estate

7   community have you had a specific conversation with

8   that have informed you that he's -- that he -- that my

9   client fraudulently -- my client, Dalio, is -- has

10   been the recipient or the instigator of fraudulent

11   transfers such that they're the alter ego of

12   Mr. Choudhri?

13      A.  Harold Polk.

14      Q.  Who?

15      A.  So just a -- Harold Polk.

16      Q.  And who is Mr. Polk?

17      A.  Somebody that your client knows that he ripped

18   off, I guess.

19      Q.  Well, how do you know him?

20      A.  He came to me and told me that your client

21   ripped him off.

22      Q.  Okay.  He came to you just out of the blue?

23      A.  Yeah.  I mean, you know, I don't know why he

24   came to me, but yeah, he did.

25      Q.  When did you have this --

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                  113

1    A.  He probably saw the --

2    Q.  When did you have this conversation with

3   Mr. Polk?

4    A.  Years ago.

5       MR. BALLASES:  Objection.  Form.

6    A.  I can't remember.

7    Q.  (BY MS. HOOD)  Years ago?  Okay.

8    A.  Yes.

9    Q.  Okay.  Who else?

10      MR. BALLASES:  Objection.  Form.

11     A.  I don't -- I can't recall.  I mean, a lot of

12   people.  A lot of people.

13      MR. BALLASES:  I'm going to object to the

14   question as exceeding the scope of the judge's

15   limiting order.

16       Can we please just stick to the basis for the

17   proof of claim and why we are willing to withdraw it?

18      MS. HOOD:  Objection.  Sidebar.

19       I've asked him, what due diligence did he do

20   in order to craft together the adversary proceeding,

21   which was attached to the proof of claim as evidence

22   supporting his proof of claim.  And I've got, so far,

23   two public lawsuits and some people in the community

24   that have spoken to him, one of whose name is Harold

25   Polk.  And he can't remember anybody else's name

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                      114

1   because there's just so many over so many years.

2       Q.  (BY MS. HOOD)  Is that correct?

3          MR. BALLASES:  No, he's identified several

4   people.

5          I'm going to object to sidebar.

6          If you want to engage in discovery in the

7   Southern District, we can do that, but right now we're

8   just trying to understand why we filed the proof of

9   claim and why we're willing to withdraw it.

10         MS. HOOD:  Yeah, I understand.

11         And I object to your sidebar.

12      Q.  (BY MS. HOOD)  Mr. Khawaja, certainly your

13   lawyer and Mr. Abdullatif had your permission to file

14   this proof of claim; correct?

15         MR. BALLASES:  Objection.  Form.

16      A.  Yes.

17      Q.  (BY MS. HOOD)  And you understand the proof of

18   claim was filed under penalty of perjury.

19      A.  Yes.

20         MR. BALLASES:  Objection.  Form.

21      Q.  (BY MS. HOOD)  And you understand that the

22   amount in the proof of claim is based upon these three

23   judgments; correct?

24      A.  Yes.

25      Q.  And we've run through the three judgments, and

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
115

1  one of which you don't even have an interest in;

2  correct?

3     A.  Yes, that's correct.

4     Q.  And you don't know anything about the

5  substance of that judgment; correct?

6     A.  That's (unintelligible).

7        MR. BALLASES:  Objection.  Form.

8        MS. HOOD:  Excuse me.  What was the answer?

9     A.  That was correct.

10    Q.  (BY MS. HOOD)  Do you own an assigned interest

11  in any other judgment related to any of these entities

12  that you claim are alter egos of Mr. Choudhri?

13    A.  I don't think so.

14       MR. BALLASES:  I object to the form of the

15  question.

16    Q.  (BY MS. HOOD)  Is it your habit to -- strike

17  that.

18       If one of these judgments became available to

19  purchase, would you buy it?

20       MR. BALLASES:  Objection.  Form.

21    A.  I don't know.  I don't know how much money

22  your client has.  It just depends.  Collectibility

23  matters, so...

24    Q.  (BY MS. HOOD)  Collectibility matters?

25    A.  Yes.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                   116

1      Q.  Did collectibility matter to you when you

2   purchased the assignment of the judgments that form

3   the basis of your proof of claim?

4      A.  Yes.

5          MR. BALLASES:  Objection.  Form.

6      Q.  (BY MS. HOOD)  Did you do any due diligence

7   prior to filing your proof of claim in this lawsuit as

8   to the debtor's ability to pay these judgments?

9      A.  Yes.

10          MR. BALLASES:  Objection.  Form.

11      Q.  (BY MS. HOOD)  What due diligence did you do?

12      A.  Reviewed public documents, spoke to people,

13   watched videos of Wayne Dolcefino online.

14      Q.  Okay.  So the public documents that you

15   reviewed prior to filing your proof of claim in this

16   lawsuit --

17      A.  Yes.

18      Q.  -- that -- let me finish -- that supported

19   your proof of claim regarding collectibility were

20   public records and the --

21      A.  Yes.

22      Q.  -- Dolcefino videos.

23      A.  That's correct.

24          MR. BALLASES:  Objection.  Form.

25      Q.  (BY MS. HOOD)  When did you learn that your

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                117

1    proof of claim was uncollectible?

2         MR. BALLASES:  Objection.  Form.

3    A.  I think the Texas REIT judge in that case said

4    that there wasn't enough money in the Texas REIT

5    matter to pay us.

6    Q.  (BY MS. HOOD)  When you filed your proof of

7    claim, how much money was in Texas REIT?

8         MR. BALLASES:  Objection.  Form.

9    A.  I'm not sure.  No idea.

10    Q.  (BY MS. HOOD)  If I understand correctly,

11    bankrupt debtors have to file documents that outline

12    their assets; correct?

13    A.  Yes.

14         MR. BALLASES:  Objection.  Form.

15    Q.  (BY MS. HOOD)  Did you look at any of those

16    filings by the debtor?

17    A.  I believe I did, but a lot of what your client

18    files is fraudulent, so -- or the debtor in this case.

19    So it's hard to trust those documents.

20         MS. HOOD:  Objection.  Non-responsive.

21    Q.  (BY MS. HOOD)  Did you look at any of the

22    documents filed by the debtor, the accounting

23    documents, prior to filing your proof of claim?

24         MR. BALLASES:  Objection.  Form.

25    A.  Yes.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                118

1    Q.  (BY MS. HOOD)  Which documents did you look

2  at?

3    A.  I'm sure I reviewed the schedules.  I don't --

4  I can't recall specifically what I looked at.

5        MR. BALLASES:  I'm going to go ahead on this

6  line of questioning and instruct him not to answer

7  because it gets into attorney work product.

8        MS. HOOD:  I'm just asking what he looked at.

9  I don't want to know what you looked at or what you

10  talked to him about.

11        MR. BALLASES:  I understand.

12        MR. CHOUDHRI:  I'm gonna object.

13        Mr. Ballases, you continue to coach the

14  witness, so I'm gonna object.  Please stop coaching

15  the witness.

16        MR. BALLASES:  What's your legal basis, sir,

17  for your objection?

18        MR. CHOUDHRI:  Mr. Ballases, because you're

19  making sidebar, coaching the witness.  Keep your

20  objections limited.  Don't coach the witness.  You've

21  been doing it throughout the whole depo, and you're

22  also objecting on a frivolous basis.  But regardless,

23  please stop coaching the witness.

24        MR. BALLASES:  Okay.  So what's your formal

25  objection for the record?

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                              119

1          MR. CHOUDHRI:  For the record, you're

2   improperly coaching the witness.  Refrain your

3   objections --

4          MR. BALLASES:  Okay.

5          MR. CHOUDHRI:  -- to just objections.

6          MR. BALLASES:  I want to make sure.  Okay.  I

7   just want to make sure your formal objection was on

8   the record.

9          THE WITNESS:  He's just buying time for his

10  lawyer to make up questions.

11         MS. HOOD:  What?  Mr. --

12         MR. CHOUDHRI:  Mr. Khawaja, what did you say?

13         MS. HOOD:  Yeah.  Excuse me, Mr. Choudhri.

14  This is my time.

15     Q.  (BY MS. HOOD)  First of all, there's no

16  requirement that I pepper you incessantly directly.

17  I'm going through my notes.  I don't need time to come

18  up with questions for you.

19         I'd actually like it if you would answer my

20  questions, but you've chosen not to do that.  So I'm

21  going through my notes to see if I can actually ask

22  some questions that you would be kind enough to answer

23  relating to your proof of claim and why you filed it.

24  So when you --

25         MR. BALLASES:  (Unintelligible) and what

1   you're doing, okay, or your sidebar.  And we are

2   answering questions.  I'm sorry you don't like them.

3          MS. HOOD:  You're not answering them.  You're

4   objecting.

5      Q.  (BY MS. HOOD)  At the time that you filed your

6   proof of claim, you had satisfied yourself that you'd

7   be able to collect your judgments through this debtor.

8      A.  Yes.

9          MR. BALLASES:  Objection.  Form.

10     Q.  (BY MS. HOOD)  Do you understand that in order

11  to collect your judgments through this debtor, you

12  would have to win on your adversary claim regarding

13  the alter egos?

14     A.  Yes.

15     Q.  And if I read your adversary complaint, it's

16  your assertion that Mr. Choudhri keeps his entities

17  devoid of assets in order to keep creditors from

18  collecting their judgments.  Is that a fair statement?

19     A.  I mean, I think that's one of many tactics

20  that he uses, but yes.

21     Q.  And certainly you have these judgments at your

22  ready; correct?

23         MR. BALLASES:  Objection.  Form.

24     A.  Yeah.  I'm sorry.  I didn't -- I didn't quite

25  understand the question.

1    Q.  (BY MS. HOOD)  Yeah, bad question.

2        You have these judgments that you own that you

3  could go out and try to collect absent filing

4  documents in Bankruptcy Court; correct?

5    A.  I guess.

6    Q.  And you've not chosen to pursue any

7  post-judgment collection of these judgments in Texas

8  State Court; correct?

9        MR. BALLASES:  Objection.  Form.

10       I'm going to instruct the client not to

11  answer.

12       You're invading attorney-client, work

13  privilege -- attorney-client, and you're also getting

14  into joint litigation privilege.  We're not going to

15  help Mr. Choudhri hide more assets.

16   A.  On advice of counsel, I will not answer that

17  question.

18   Q.  (BY MS. HOOD)  It's not -- okay.  The question

19  is this.  Okay?  Based upon public records, I find no

20  activity by you to collect these judgments in Texas

21  State Courts; is that an accurate statement?

22   A.  Yes.

23       MR. BALLASES:  I object to the form.

24   Q.  (BY MS. HOOD)  And rather than pursue

25  opportunities in State Court, you and your co-owners

1  have chosen to pursue unrelated third parties in

2  Bankruptcy Court; correct?

3        MR. BALLASES:  Objection.  Form.

4     A.  No, that's not correct.  "Unrelated"?  What do

5  you mean "unrelated"?  What is that supposed to mean?

6     Q.  (BY MS. HOOD)  Texas (sic) Real Estate

7  Properties, LLC, is not a judgment debtor; correct?

8  You've already admitted this.

9     A.  Does that mean -- you said "unrelated."

10  That's not -- they're very related.

11     Q.  In your mind, but they don't -- they're not a

12  party to the judgment; correct?

13        MR. BALLASES:  Objection.  Sidebar.

14     A.  In reality and on public record.

15     Q.  (BY MS. HOOD)  The debtor in this case is not

16  a judgment debtor; correct?

17     A.  Asked and answered.

18     Q.  Okay.  Now you're objecting to your own

19  questions?  Are you a lawyer or a witness?

20     A.  I am a lawyer, but I mean --

21     Q.  Okay.  Answer my question.

22     A.  -- just answering --

23     Q.  Answer my question.

24     A.  No, I'm not gonna answer that question.

25     Q.  This debtor is not a judgment debtor to you;

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                      123

1    correct?

2          THE WITNESS:  Do you want me to answer?

3          MR. BALLASES:  Objection.  Form.

4          You can answer.

5    A.  No.

6    Q.  (BY MS. HOOD)  And yet you chose to pursue

7    this debtor to try to collect your judgments that are

8    in the name of others; correct?

9    A.  This -- yes.  This debtor is an alter ego of

10   all the other debtor -- all the other defendants in

11   this case.

12   Q.  Tell me where there's a finding by a court of

13   law that this debtor is the alter ego of one of the

14   two entities in which you hold an assigned interest.

15   A.  We will prove it in this case.

16   Q.  Okay.  That's not my question.  Tell me where

17   I can find as a matter of law that Ali Choudhri and

18   Houston Real Estate Properties, LLC, are one and the

19   same.

20         MR. BALLASES:  Objection.  Form.

21   A.  We don't have that.

22   Q.  (BY MS. HOOD)  Tell me where I can find as a

23   matter of public record that Jetall is one and the

24   same with this debtor.

25         MR. BALLASES:  Objection --

1      A.  Based on his testimony in multiple cases.

2          MR. BALLASES:  Objection.  Form.

3      Q.  (BY MS. HOOD)  Tell me where I can find as a

4   matter of public record a finding by a trier of fact

5   that Jetall Companies is one and the same as this

6   debtor.

7          MR. BALLASES:  Objection.  Form.

8      A.  I don't -- I'm not sure if we'll find that.

9      Q.  (BY MS. HOOD)  There isn't one, is there?

10         MR. BALLASES:  Objection.  Form.

11     A.  We have multiple public record documents

12  indicating that Ali Choudhri is one and the same as

13  all of his entities.

14     Q.  (BY MS. HOOD)  And there's not a finding by a

15  trier of fact that this debtor is one and the same

16  with Jetall Companies, is there?

17     A.  Only admissions by your client.  That's it.

18         MR. BALLASES:  Objection.  Form.

19     Q.  (BY MS. HOOD)  There's no finding by a trier

20  of fact that this debtor is one and the same as Jetall

21  Companies; correct?

22         MR. BALLASES:  Objection.  Form.

23         (Phone ringing.)

24     A.  (Unintelligible)

25         THE REPORTER:  I'm sorry.  I'm sorry.  I

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    125

1  did -- sorry.  I did not hear your answer.  Could you

2  please restate your answer?

3      A.  I said -- I said, Correct, not by a trier of

4  fact, but by admissions through your client.

5          MS. HOOD:  Objection.  After "correct" --

6  objection.  Non-responsive after "correct."

7          Mr. Khawaja, I fully expect to go back to the

8  Court and try to get him to compel you to answer some

9  of my questions that I think were improperly objected

10  to, and so I can go through that with your lawyer

11  through motion practice.  I appreciate your time

12  today.  Based upon whether or not the other lawyers

13  and Mr. Choudhri have questions, I may or may not get

14  another pass at you, and I appreciate your time.

15          THE WITNESS:  Thank you.

16          MS. HOOD:  I'm going to pass the witness to

17  the next creditor in line, and I reserve my right to

18  come back and ask questions -- follow-up questions if

19  I deem necessary.

20          THE REPORTER:  Sorry.  Just before we go to

21  Mr. Choudhri, would it be possible to just take two

22  minutes to go to the bathroom?

23          MS. HOOD:  Oh, absolutely.  You're in charge.

24  You're the one doing the hard work.

25          THE REPORTER:  Thank you.  Just two minutes.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    126

1   Thanks.

2           MR. CHOUDHRI:  Absolutely, Cheryl.  Take your

3   time.

4           THE REPORTER:  Thank you.

5           (A recess was taken.)

6   BY MR. CHOUDHRI:

7       Q.  Mr. Khawaja, good afternoon.  How are you?

8       A.  I'm good, man.  Just -- let's get to your

9   questions.  I don't -- we don't have time for

10  formalities.  Thank you.

11      Q.  Mr. Khawaja, you're not looking at -- first of

12  all, who is present with you in the room there?

13          MR. BALLASES:  We've already answered that.

14          Objection.  Form.

15          We're also having trouble hearing you, so you

16  might want to turn up your volume --

17      A.  Yeah, you need to turn your speaker up.

18      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, can you hear

19  me now?

20      A.  Better, but you still need to speak up a

21  little bit.

22      Q.  So can you identify who's in the room there

23  with you, Mr. Khawaja?

24          MR. BALLASES:  Objection.  Form.

25      A.  Mr. Quinlan is here; my attorney, Michael

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                      127

1   Ballases.

2      Q.  Is Osama Abdullatif in the room with you?

3      A.  He has --

4         MR. BALLASES:  Objection.  Form.

5      A.  He's not in the room, like, at this minute.

6      Q.  (BY MR. CHOUDHRI)  But throughout this

7   deposition, you've had Osama Abdullatif and John

8   Quinlan sitting in the room with you, present;

9   correct?

10     A.  Yes.

11        MR. BALLASES:  Objection.  Form.

12        We've already answered that and said that.

13  Quit wasting everybody's time.

14        MR. CHOUDHRI:  Mr. Ballases, I would ask you

15  to please calm down and allow me to ask my questions.

16        MR. BALLASES:  Objection.  Sidebar.

17     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you had -- as

18  we started this deposition, you had said that I had

19  defrauded you?

20     A.  Ali, I'm sorry.  You're really going to have

21  to turn up your sound because I can't hear you and

22  neither can the people in the room.

23        MR. CHOUDHRI:  Is everybody -- can everybody

24  hear me okay?

25        Cheryl, can you hear me?

1          THE REPORTER:  I can hear you.

2          MR. CHOUDHRI:  Okay.  Maybe it's only

3    Mr. Khawaja who can't hear me, then.

4          THE WITNESS:  Osama, can you hear him?

5          MR. BALLASES:  It's difficult to hear you.

6          MR. ABDULLATIF:  No, I can't hear him without

7    hearing aid.

8       A.  Mr. Quinlan can't hear you and neither can

9    Osama, and they need to hear you.

10      Q.  (BY MR. CHOUDHRI)  Well, the court reporter

11   can hear me.  If they want me to come closer, they

12   can.  I would actually object to them even being there

13   and handing you notes, but we'll try to --

14         MR. BALLASES:  Objection.  Sidebar.

15         MR. CHOUDHRI:  -- get on with the deposition.

16         MR. BALLASES:  (Unintelligible)

17         MR. CHOUDHRI:  The court reporter could hear

18   me just fine.

19         THE WITNESS:  Okay.

20      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, how do you

21   know John Quinlan?

22         MR. BALLASES:  Objection.  Form.

23      A.  I'm not gonna answer that question.

24      Q.  (BY MR. CHOUDHRI)  You're not gonna answer the

25   question of how you know John Quinlan?

1      A.  I -- I met him in the real estate community.

2      Q.  When did you meet Mr. Quinlan?

3         MR. BALLASES:  Objection.

4         Ali, can you show yourself?  If you're going

5   to be asking questions, you need to show yourself.

6         THE WITNESS:  Yes.

7         MR. BALLASES:  Thank you.

8         MR. CHOUDHRI:  Okay.  Can you all see me now?

9   Is that okay?

10        MR. BALLASES:  Yes.

11     Q.  (BY MR. CHOUDHRI)  Okay.  Mr. Khawaja, you

12  were present earlier during the deposition when you

13  were being asked questions.  Did you happen to listen

14  to Judge Robinson's oral ruling?

15        MR. BALLASES:  Objection.  Form.

16     A.  I don't know what that has to do with

17  anything.

18     Q.  (BY MR. CHOUDHRI)  The deposition that we're

19  here on, Mr. Khawaja, is --

20     A.  Yes.

21     Q.  -- subject to a court order.  Do you

22  understand that?

23        MR. BALLASES:  Objection.  Form.

24        This has nothing to do with the proof of

25  claim.  Move on.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                   130

1      A.  Please get to the proof of claim,

2  Mr. Choudhri.

3      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, this is my

4  deposition.  I get to ask you questions, and you can

5  answer them.  This is my opportunity.

6          MR. CHOUDHRI:  And so, again, Court Reporter,

7  would you please repeat the question?

8          THE REPORTER:  The question is (Reading:)  The

9  deposition that we're here on, Mr. Khawaja, is subject

10  to a court order.  Do you understand that?

11     A.  I didn't -- I have not seen a court order.

12     Q.  (BY MR. CHOUDHRI)  Are you aware, earlier

13  today, that an oral ruling on an audio from the Court

14  was sent to your attorney, Michael Ballases?

15     A.  It -- it may have been.

16         MR. BALLASES:  Objection.  Form.

17     Q.  (BY MR. CHOUDHRI)  And are you aware, whether

18  written or oral, we are here pursuant to a court

19  order?  Are you aware of that?

20         MR. BALLASES:  Objection.  Form.

21     A.  Might -- that might be the case.

22     Q.  (BY MR. CHOUDHRI)  But you're not aware that

23  we're here pursuant to a court order.

24         MR. BALLASES:  Objection.  Form.

25     A.  It could possibly be the case.

1    Q.  (BY MR. CHOUDHRI)  But you don't know?

2    A.  I don't know.

3    Q.  And I've asked you earlier as how you know

4  Mr. Quinlan, and your answer was you're not going to

5  answer that; is that correct?

6        MR. BALLASES:  Objection.  Form.

7    A.  I think I told you after -- after that that I

8  met him in the real estate community.

9    Q.  (BY MR. CHOUDHRI)  And when did you meet him?

10        MR. BALLASES:  Objection.  Form.

11        Are you going to ask every question two or

12  three times?  Ask good questions.

13        MR. CHOUDHRI:  Mr. --

14    A.  I can't remember.

15        MR. CHOUDHRI:  Mr. Ballases -- Mr. Ballases,

16  for the record, I would ask you to please stop

17  interfering and obstructing the deposition.

18        MR. BALLASES:  Objection.  Sidebar.

19        So I would just request that you comply with

20  the judge's instruction to tailor the questions

21  narrowly to the reasons why the proof of claim was

22  filed and why it was withdrawn and not ask why he

23  knows people and who he knows people and not ask

24  things three times.

25    Q.  (BY MR. CHOUDHRI)  Is John Quinlan a

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                 132

1   co-claimant on the proof of claim?

2       A.  I believe so.

3          MR. BALLASES:  Objection.  Form.

4       Q.  (BY MR. CHOUDHRI)  Is Osama Abdullatif a

5   co-claimant on the proof of claim?

6          MR. BALLASES:  Objection.  Form.

7       A.  I believe so, yes.

8       Q.  (BY MR. CHOUDHRI)  When did you meet Osama

9   Abdullatif?

10         MR. BALLASES:  Objection.  Form.

11      A.  Maybe 2010.  2009 or '10, something like that.

12  I'm not sure.  Around the time you deprived me of my

13  property, I think.

14      Q.  Which property is that, Mr. Khawaja?

15      A.  The Avondale property.

16         MR. BALLASES:  Objection.  Form.

17      Q.  (BY MR. CHOUDHRI)  Can you tell us a little

18  bit about that, because you've mentioned it several

19  times in this deposition, and so I'd like you to tell

20  us a little more about the Avondale property.

21      A.  No --

22         MR. BALLASES:  Objection.  Form.

23         I'm going to instruct him not to answer

24  because you're violating the judge's instruction as to

25  this limited deposition.

1          Please stick to the proof of claim and the

2    reason why it's being withdrawn.

3          MR. CHOUDHRI:  Mr. Ballases, he's opening the

4    door.  He's answering my questions.  I have a right to

5    ask him questions.  Okay?

6          MR. BALLASES:  Yeah, so you're not a lawyer.

7    You don't know what you're talking about.

8          MR. CHOUDHRI:  Mr. Ballases, please be

9    respectful, sir.  I know it's difficult, but please be

10   respectful.

11     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

12         MR. BALLASES:  I am.

13     Q.  (BY MR. CHOUDHRI)  -- are you going to answer

14   my --

15         MR. BALLASES:  I'm respecting my client --

16     Q.  (BY MR. CHOUDHRI)  -- questions --

17         MR. CHOUDHRI:  Mr. Ballases, please stop

18   disrupting the deposition.

19     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you said you

20   met Mr. Osama Abdullatif when I deprived you of your

21   property.  Is that -- did I hear that correct?

22         MR. BALLASES:  Objection.  Form.

23     A.  Yes.

24         MR. BALLASES:  I'm going to instruct you not

25   to answer.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                134

1        We're not going to talk about this.

2        THE WITNESS:  Okay.  Sorry.

3        MR. BALLASES:  It has nothing to do with the

4   proof of claim.  It has nothing to do for the reason

5   for filing it.  It has nothing --

6     A.  Ali, we can grab a cup of coffee afterwards.

7   You can ask me all about that.  Let's please stick to

8   the purpose of this.  Okay?

9        MR. CHOUDHRI:  Let's have some decorum,

10   gentlemen.  This is a formal deposition.  I'm asking

11   the questions.  Mr. Khawaja just said yes, so why the

12   proof of claim was filed is very relevant.  And

13   Mr. Khawaja just answered that, so I have an

14   opportunity to explore that.

15        Mr. Ballases, you have a law license.  You

16   have to follow the creed that you've been licensed by,

17   so please don't frivolously object and coach the

18   witness.  Okay?  I --

19        MR. BALLASES:  Objection.  Sidebar.

20        MR. CHOUDHRI:  -- would like -- if everybody

21   wants, I'm happy to play the audio of the judge's oral

22   ruling so Mr. Khawaja is aware -- and so are you,

23   Mr. Ballases -- and we don't have to waste more time

24   like we did this morning about what the scope of the

25   deposition is about.  Would you like me to do that,

1  Mr. Ballases, so you can stop --

2       MR. BALLASES:  Objection.  Sidebar --

3       MR. CHOUDHRI:  -- interfering --

4       MR. BALLASES:  The only reason you're asking

5  questions is because I heard it.  So why don't you be

6  quiet and focus on asking questions if it's relevant

7  to the judge's scope.  Thank you.

8       MR. CHOUDHRI:  Madam Court Reporter, do you

9  have a -- do you have an ability to play at a certain

10  point of the audio?  Is that something you're able to

11  do for us?

12       THE REPORTER:  I am actually not authorized to

13  be playing audio or sharing exhibits during the

14  deposition.

15       MR. CHOUDHRI:  Okay.  Well, maybe we can then

16  play the audio at 23 minutes and 14 seconds, and then

17  we'll play it at 28 minutes and 12 seconds.

18     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you -- you

19  have indicated that you have not heard the oral

20  ruling, why we're here, by Judge Robinson; is that

21  correct?

22     A.  Let's assume for purposes of this question I

23  have.  What would you like me to answer?

24     Q.  Well, I just want to clarify because you keep

25  not answering, and Mr. Ballases keeps interfering and

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                136

1   interrupting, so I want to go ahead and get the

2   judge's ruling on the record, so --

3       A.  Just ask me the questions that you want the

4   answers to.  I'm happy to answer the questions.

5       Q.  Were you present or on the phone when the

6   hearing took place with Judge Robinson?

7       A.  I was not.

8          MR. BALLASES:  Objection.  Form.

9          MR. CHOUDHRI:  Let's go ahead and play at

10  23 minutes and 14 seconds.

11          Gene, can you play that right now?

12          MR. BALLASES:  So just for the record, we --

13  as I've told your counsel, we have to cut if off at

14  4:30.  If this is how you want to use your time, by

15  all means.  It's your dime.

16          MR. CHOUDHRI:  Mr. Ballases, you've been

17  interfering with the depo all day, and we're going to

18  do this by the rules and what the rules -- the federal

19  rules are and the timing.  So if you want to walk out

20  of a depo, that's really your choice --

21          MR. BALLASES:  (Unintelligible)

22          MR. CHOUDHRI:  -- and you'll suffer the

23  consequences.

24          THE REPORTER:  Okay.  So just before we play

25  the audio, as I let everybody know in the e-mail, I

1  cannot transcribe anything I cannot clearly hear.  If

2  you would like a separate transcription of this audio,

3  then you can contact our office.

4        MR. CHOUDHRI:  No -- no problem, Cheryl.

5  We'll do the best we can.

6        THE REPORTER:  Okay.  Thank you.

7        MR. CHOUDHRI:  And I'm sure you will too.  And

8  if it works, great.

9        THE REPORTER:  Thank you.

10       MR. CHOUDHRI:  So while we're getting ready to

11  do that -- go ahead, Gene.  Are you ready?

12       MR. MCCUBBIN:  Yeah.  You said 23:14.

13       MR. CHOUDHRI:  Correct, at 23 minutes and

14  14 seconds.  Let's start there.

15       MR. MCCUBBIN:  Yeah, this is, I think, 23:10.

16  Here we go.

17       (Audio file played.)

18       MR. MCCUBBIN:  There you go.

19       MR. CHOUDHRI:  Would you go to 23 minutes and

20  18 -- 28 minutes and 12 seconds, please?

21       MR. MCCUBBIN:  Yeah, give me a second.

22       MR. CHOUDHRI:  28 minutes and 12 seconds.

23  Let's get that on the record.  Go ahead.

24       MR. MCCUBBIN:  Okay.

25       (Audio file played.)

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        138

1          MR. MCCUBBIN:  There you go.

2     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, were you able

3  to hear the judge, Robinson?

4     A.  Yes.

5     Q.  Does that help you understand a little more

6  about what we're here about?

7     A.  What's your question?

8     Q.  Did you --

9          MR. BALLASES:  Objection (unintelligible) --

10    Q.  (BY MR. CHOUDHRI)  -- hear him say motivations

11  of filing the proof of claim?  Do you understand what

12  that means, motivations of filing the proof --

13    A.  Yes.

14    Q.  -- of claim?  Okay.

15    A.  Yes.

16    Q.  So again, I want to go back to some of my

17  questions, Mr. Khawaja.  You said that I defrauded you

18  of your property.

19    A.  Yes.

20    Q.  So can you explain how I defrauded you of your

21  property?  I want to understand the motivations here.

22    A.  I think we got a trial --

23          MR. BALLASES:  Objection.  Form.

24    A.  -- on that case coming up in a month.  Let's

25  wait till trial.  Let's wait till we get to trial on

1   that.

2      Q.  (BY MR. CHOUDHRI)  Well, Mr. Khawaja, you

3   filed this proof of claim in the Texas REIT bankruptcy

4   case; correct?

5      A.  Yes.

6          MR. BALLASES:  Objection.  Form.

7      Q.  (BY MR. CHOUDHRI)  And so your motivation,

8   when I asked you earlier -- and we can go back and

9   have the court reporter reread some of your answers

10  earlier in the deposition.  I've taken notes as well.

11  I just want to make sure the record is good and clear;

12  there's no confusion.

13         MR. BALLASES:  Objection.  Form.

14         Objection.  Sidebar.

15     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, I just want to

16  understand today; you're under no medication.  Right?

17     A.  Yes.

18         MR. BALLASES:  Objection.  Form.

19     Q.  (BY MR. CHOUDHRI)  And you're here and able to

20  answer truthfully under oath?

21     A.  Yes.

22         MR. BALLASES:  Objection.  Form.

23     A.  Yes.

24     Q.  (BY MR. CHOUDHRI)  And you understand you're

25  under oath as if you were in a courtroom; correct?

OMAR KHAWAJA                                       September 11, 2024
TEXAS REIT LLC                                                    140

1          MR. BALLASES:  Objection.  Form.

2     A.  Like I'm in front of a jury, yes.

3     Q.  (BY MR. CHOUDHRI)  Or a judge.

4     A.  Or a judge.

5     Q.  Okay.  So, Mr. Khawaja, can you tell us about

6  when you say, You defrauded me of my property, and you

7  said Avondale.  Did I hear that correctly?

8          MR. BALLASES:  Objection --

9     A.  Mr. Choudhri, here's the thing --

10         MR. BALLASES:  Objection.  Form.

11         I'm going to instruct my client not to answer

12  because it exceeds the scope of the deposition as to

13  what -- the judge's order.

14         Plus, as I understand it, based on what was

15  just said --

16         THE WITNESS:  There's a trial coming.

17         MR. BALLASES:  -- he got a trial coming up,

18  and I'm not going to let you ask him -- get a second

19  deposition of him in a wholly separate matter that's

20  irrelevant to our proof of claim.  Move along, please,

21  sir.

22         MR. CHOUDHRI:  Mr. Ballases, you have been

23  disrupting this deposition the entire time.  You

24  refused to let me answer -- ask questions, Ms. Lori

25  Hood.  We had to send you the audio.  You misstated

1   what the judge said.  You continue to disrupt the

2   deposition.  We're allowed -- I played the audio

3   ruling.  The judge says the motivation of filing the

4   proof of claim, and he says, Because you defrauded me

5   of my property, Avondale.  So I have a right to get

6   into that.

7          When he answers a question, Mr. Ballases, I

8   have a right to explore that because that's his

9   answer.  He opened the door.  Throughout this depo, he

10  opened the door, Mr. Ballases, so I am entitled to ask

11  those questions.  And if you're going to continue --

12          MR. BALLASES:  (Unintelligible)

13          MR. CHOUDHRI:  -- to instruct him wrongfully

14  to not answer that, then just instruct him, but stop

15  doing what you're doing and making talking objections.

16  Either object or instruct him not to answer, and we'll

17  keep moving on.  But keep your objections limited to

18  what's correct and not frivolous --

19          MR. BALLASES:  What's your legal objection,

20  sir -- what's your legal objection, sir, because I

21  didn't hear it.

22          MR. CHOUDHRI:  You continue to do sidebars

23  throughout the deposition and disrupt and frustrate

24  the deposition.  We're trying to have a smooth

25  deposition; you continue to have sidebars.  So please

1 refrain from that, Mr. Ballases.

2     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, when you

3 said --

4         MR. BALLASES:  Objection.  Sidebar.

5     Q.  (BY MR. CHOUDHRI)  -- you -- Mr. Khawaja, what

6 is the Avondale property?

7         MR. BALLASES:  Objection.  Form.

8         This has nothing do to with the proof of claim

9 or the withdrawal --

10        (Crosstalk)

11    A.  We're getting ready to stop this depo -- you

12 need to get to your questions.  We're not talking

13 about cases that are going to trial.  You know better

14 than that.  I'm not doing it.  So get to the questions

15 you have about this proof of claim.  I'm happy to

16 answer those, or we're done.

17    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, are you going

18 to comply with the Court's order on this --

19    A.  Yes.

20    Q.  -- now getting into motivations for filing the

21 claim?  And when asked, you said, Because you

22 defrauded me of my property.

23    A.  No, I didn't.  That's not true.  You asked

24 me --

25    Q.  That's not --

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                              143

1      A.  -- when did I meet Osama -- you asked me when

2    did I meet Osama Abdullatif, and I said, Around the

3    time you defrauded me of my property.

4      Q.  And when I -- when you said "my property,"

5    you're defining your property as Avondale; is that

6    correct?

7        MR. BALLASES:  Objection.  Form.

8      A.  Yeah, I'm not going to -- again, we're getting

9    ready to shut the depo down, so it's up to you.

10     Q.  (BY MR. CHOUDHRI)  So you're refusing to

11   answer these questions; correct?

12     A.  I'm refusing to answer questions that are

13   outside the scope of what you're permitted to ask,

14   correct.

15       MR. BALLASES:  Objection.  Form.

16     A.  You're not an attorney.

17     Q.  (BY MR. CHOUDHRI)  So because I'm not an

18   attorney, I can't ask you questions per the Court's

19   ruling --

20     A.  Outside --

21     Q.  -- is your objection?

22     A.  -- of the scope -- outside of the scope,

23   you're not.  That's correct.

24     Q.  So are you saying motivations for filing the

25   claim and you opening the door is outside the scope?

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                  144

1    A.  Yes.

2    Q.  Okay.

3        MR. BALLASES:  Objection.  Form.

4    Q.  (BY MR. CHOUDHRI)  And you're gonna refuse --

5   you're gonna refuse to answer any of those questions;

6   correct?

7        MR. BALLASES:  Objection.  Form.

8    A.  You've only asked me one that I'm not gonna

9   talk about because there's a trial coming up.  I think

10  the judge will understand that.  Your -- if your --

11  any of the attorneys that you're paying that are here

12  with you would care to speak up, they'll tell you,

13  Mr. Choudhri, you can't ask those questions.  So you

14  should ask them too.

15       MR. BALLASES:  I object to the form of the

16  question.

17   Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, did you -- you

18  mentioned Wayne Dolcefino; correct?

19   A.  Yes.

20       MR. BALLASES:  Objection.  Form.

21   Q.  (BY MR. CHOUDHRI)  And, Mr. Khawaja, is

22  somebody in the room coaching you?  Because you keep

23  looking at somebody else and talking and -- who's in

24  front of you right now that you keep looking at and

25  talking --

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                 145

1    A.  I don't need to be coached to answer your

2  silly questions, no.

3        MR. BALLASES:  Objection.  Sidebar.

4    A.  I can answer them with my eyes closed.  Do you

5  want me to do that?

6    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you can answer

7  them however you want.  I just want you to answer them

8  truthfully --

9    A.  Yes.

10   Q.  -- and honestly.

11   A.  Yes.

12   Q.  When did you meet Mr. Ballases?

13       MR. BALLASES:  Objection.  Form.

14   A.  I don't know, to be hon -- but, you know, you

15  understand he's my attorney, and this is all --

16  anything I discussed with him, ever, including when I

17  met him or where I met him, is protected by

18  attorney-client privilege.  You can't ask me those

19  questions.

20   Q.  (BY MR. CHOUDHRI)  So are you going to refuse

21  to answer my question on when you met Mr. Ballases?

22   A.  Yes, I am.

23   Q.  Mr. Khawaja, are you aware -- let's --

24       MR. CHOUDHRI:  Steve, are you there?  Would

25  you pull up that proof of claim, Steve?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                146

1        MR. SATHER:  Just give me just a moment.  I

2   need to turn my sharing back on.

3        MR. CHOUDHRI:  No problem.

4        THE REPORTER:  And just while he's doing that,

5   Mr. Khawaja, could you spell Avondale for me, please?

6        THE WITNESS:  A-V-O-N-D-A-L-E.

7        THE REPORTER:  Thank you.

8        MR. SATHER:  Okay.  I'm there.

9        MR. CHOUDHRI:  Would you go down, Mr. Sather?

10  Just scroll down a little bit, please.  Keep going.

11  Go to paragraph 9.  Stop right there.

12       Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, what does

13  Number 9 say on the proof of claim?

14       A.  9 --

15       MR. CHOUDHRI:  Time out.  Time out.  Before we

16  go there, Mr. Sather, would you scroll up just for a

17  second a little bit?  Stop right there.

18       Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, what does that

19  captioning say?  It starts at "24-10120."  Would you

20  read that, please, into the record?

21       A.  24-1010 (sic), and this is at Number 4?  Oops.

22  Sorry.  One second here.

23       MR. BALLASES:  Steve, would you mind -- this

24  is Michael Ballases.  Will you make it bigger?  I

25  can't read it on the screen.  Please.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                147

1     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, my question is

2  to you.

3         MR. BALLASES:  Thank you.

4         MR. CHOUDHRI:  Stop, please.

5     Q.  (BY MR. CHOUDHRI)  What does it say?  Claim

6  Number -- what exactly does that say?  Would you read

7  that -- that entire header --

8     A.  (Reading:)  Read the --

9     Q.  -- into the record?

10    A.  (Reading:)  Read the instructions before

11  filling out this form.  This form is for making a --

12    Q.  No --

13    A.  (Reading:)  -- claim for payment in a

14  bankruptcy case --

15    Q.  No.

16    A.  Which one?

17    Q.  No, Mr. Khawaja.  No, Mr. Khawaja.  Look on

18  top where it says -- where it has a case number,

19  starts off with a case number.  And then --

20    A.  Yes.

21    Q.  -- that's what -- would you read what's

22  highlighted, Mr. Khawaja, into the record?

23    A.  Yeah, twenty -- okay.  (Reading:)

24  24-10120-smr, Claim Number 9-1, filed 06/04/24, Main

25  Document page 1 of 3.

1    Q.  Yes.  Is that what you authorized to be filed?

2    A.  Yes.

3        MR. BALLASES:  Objection.  Form.

4        MR. CHOUDHRI:  Scroll down, Mr. Sather.

5    Scroll down, Mr. Sather.  Okay.  Stop right there.

6    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, what does it

7    say on paragraph 9?

8    A.  (Reading:)  Is all or part of the claim

9    secured?  Yes.  The claim is secured by a lien on

10   property.

11       Is that what you're referring to?

12   Q.  Yes.

13       MR. CHOUDHRI:  Stop right there.

14   Q.  (BY MR. CHOUDHRI)  So it's your contention

15   that your claim is secured by a lien on the property;

16   is that correct?

17   A.  I believe so, if that's what we filed.

18   Q.  Okay.  And you understand -- at least what

19   you're representing here is that a lis pendens is a

20   lien on property; correct?

21   A.  I'm assuming that's what we're referring to,

22   yes.

23   Q.  Okay.  Mr. Khawaja, you're familiar with the

24   property Texas REIT that --

25   A.  Yes.

OMAR KHAWAJA                                         September 11, 2024
TEXAS REIT LLC                                                      149

1      Q.  Let me strike that.  Let me strike that.  It's

2   a bad question.  Let me clear the record here.  Okay?

3          Mr. Khawaja, you're aware that debtor, Texas

4   REIT, LLC, is in the Western District of the

5   Bankruptcy Court.

6          MR. BALLASES:  Objection.  Form.

7      A.  I guess.  I mean, that's -- if that's where

8   you chose to file it.  I'm not sure.

9      Q.  (BY MR. CHOUDHRI)  You understand --

10     A.  The property's located here in Houston, Harris

11   County.

12     Q.  So my question, Mr. Khawaja, is that you are

13   aware that Texas REIT is the debtor that's in

14   bankruptcy in the Western District.

15     A.  Yes.

16     Q.  And Texas REIT owns a property.  Are you

17   familiar with the property that Texas REIT owns?

18     A.  Yes.

19     Q.  What do you know about the property that Texas

20   REIT owns?

21          MR. BALLASES:  Objection.  Form.

22     A.  That you have defrauded your partners out of

23   money in that property, that it's -- Walgreens left.

24   It's falling apart; a lot of homeless, a lot of crack

25   addicts in the area now.  It's not maintained

1   properly.  It's part of this case, that there's a

2   judgment against you on it, and it's basically -- and

3   it's in Houston, yeah.  It's in Houston, Texas, too.

4       Q.  Anything else that you want to add to it?

5       A.  No, that's it.

6       Q.  When did you become familiar with this

7   property?

8       A.  I think in the course of just monitoring

9   litigation against you.

10      Q.  And remind me what kind of lawyer you are,

11  Mr. Khawaja.

12          MR. BALLASES:  Objection.  Form.

13      A.  I do plaintiff's work.

14      Q.  (BY MR. CHOUDHRI)  Is that personal injury

15  mainly, what your --

16      A.  Yes.

17      Q.  -- focus is?

18      A.  Yes, correct.

19      Q.  Personal injury attorney?

20      A.  Yes, correct.

21          MR. BALLASES:  Objection.  Form.

22      Q.  (BY MR. CHOUDHRI)  And, Mr. Khawaja, so you

23  became familiar with this property through the course

24  of litigation, you said?

25      A.  Yes, just monitoring litigation.

1    Q.  When did you first become familiar with this

2  property?

3    A.  I couldn't say --

4       MR. BALLASES:  Objection.  Form.

5    A.  I couldn't say when.

6    Q.  (BY MR. CHOUDHRI)  Were you involved in any

7  way, shape, or form of filing any lis pendenses (sic)

8  on this property?

9    A.  No.

10      MR. BALLASES:  Objection.  Form.

11   Q.  (BY MR. CHOUDHRI)  You've never been involved

12  of filing any lis pendenses on this property?

13   A.  You mean --

14      MR. BALLASES:  Objection.  Form.

15   A.  You mean other than the one that's in this --

16  or is part of the bankruptcy case?

17   Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, my question is

18  very simple.  Are you or have you ever been involved

19  in filing, directly or indirectly, lis pendenses

20  against the property that the debtor owns?

21   A.  Not to my -- not to my understanding, no.

22      MR. BALLASES:  Objection.  Form.

23   A.  I'm not sure what that has to do with the

24  scope of this deposition either, by the way.

25   Q.  (BY MR. CHOUDHRI)  Do you know what a

1   bankruptcy stay is, Mr. Khawaja?  Do you know what an

2   automatic --

3       A.  Yes.

4       Q.  -- stay is?

5       A.  Yes.

6           THE REPORTER:  I'm sorry.  Do you know what

7   a --

8           MR. BALLASES:  Objection.  Form.

9           THE REPORTER:  -- what is?  I'm sorry.  Mr. --

10          MR. CHOUDHRI:  An automatic -- an automatic

11   stay.

12          THE REPORTER:  Okay.  Thank you.

13      A.  You have more experience than I do on that,

14   but I do know what it is, yes.

15      Q.  (BY MR. CHOUDHRI)  Have you violated any

16   automatic stays?

17          MR. BALLASES:  Objection.  Form.

18      A.  No, absolutely not.

19      Q.  (BY MR. CHOUDHRI)  Do you believe filing --

20   okay.  Who is Hira Azhar?

21          MR. BALLASES:  Objection.  Form.  And instruct

22   the client not to answer --

23          THE WITNESS:  (Unintelligible)

24          MR. BALLASES:  -- because it has nothing to

25   do --

OMAR KHAWAJA                                                    September 11, 2024
TEXAS REIT LLC                                                                 153

1        A.  It's not --

2            MR. BALLASES:  -- with our proof of claim or

3    the withdrawal of it, and it exceeds the judge's

4    limitations on this depo.  So I'm going to object to

5    the question as harassing and oppressive and instruct

6    the client not to answer.

7            THE WITNESS:  Thank you.

8        Q.  (BY MR. CHOUDHRI)  Did you participate with

9    Hira Azhar of filing a lis pendens against the subject

10   property?

11           MR. BALLASES:  Same objection, same assertions

12   of privilege, same assertions of -- same objections

13   and same instruction not to answer.

14       Q.  (BY MR. CHOUDHRI)  You can answer,

15   Mr. Khawaja.  What's your answer?

16       A.  I will not answer on advice of counsel.

17       Q.  Are you aware of any lis pendenses filed by

18   Hira Azhar against the debtor's property?

19           MR. BALLASES:  Objection.  Same objections,

20   same assertions of privilege, same instruction not to

21   answer.  This has nothing to do with the proof of

22   claim in this matter or the reason for withdrawal.

23       A.  I'm not going to answer.

24       Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, has it been

25   your motivation to prevent me or any of my entities

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
154

1  from transacting business?

2       MR. BALLASES:  Objection.  Form.

3    A.  No.

4    Q.  (BY MR. CHOUDHRI)  Is it your -- is it your

5  habit to contact people that me or my entities are

6  doing business with and tell them not to do business

7  with me?

8    A.  Never --

9       MR. BALLASES:  Objection.  Form.

10    A.  Never done that.

11       MR. BALLASES:  Can we please ask questions

12  about the purpose for the deposition today, the reason

13  for the filing of the proof of claim and the reason

14  for the withdrawal, sir?

15       MR. CHOUDHRI:  Mr. Ballases, stop wasting

16  time.  Keep it to objections.

17    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, do you -- what

18  is your phone number?

19       MR. BALLASES:  Object -- don't answer that.

20  Objection --

21    Q.  (BY MR. CHOUDHRI)  Your cell --

22    A.  You know my number.  You've called me.

23       MR. BALLASES:  Objection.  Stop.  Stop.

24       I'm going to instruct you not to answer.  Your

25  cell phone is not relevant to this proceeding today.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    155

1    You don't need to give it on the record.

2        It's oppressive -- objection of oppressive and

3    harassing.

4        Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, are you not

5    gonna answer the question about what your cell phone

6    is on the record today --

7        A.  Correct.

8        Q.  You refuse to answer --

9        A.  Yeah, on advice of counsel --

10       THE REPORTER:  I'm sorry --

11       A.  On advice of counsel --

12       THE REPORTER:  Just --

13       A.  On advice of counsel --

14       THE REPORTER:  -- one person --

15       THE WITNESS:  Sorry.

16       THE REPORTER:  -- at a time, please.  Thank

17   you.

18       THE WITNESS:  On answering the question that

19   Mr. Choudhri just asked, on advice of counsel, I will

20   not answer that question.

21       Q.  (BY MR. CHOUDHRI)  Isn't it true that you've

22   been involved with over 50 lis pendenses relating to

23   Texas REIT or any other entity that I have ownership

24   or control of?

25       A.  No --

OMAR KHAWAJA                                            September 11, 2024
TEXAS REIT LLC                                                        156

1          MR. BALLASES:  Objection.  Form.

2     A.  -- not true.

3     Q.  (BY MR. CHOUDHRI)  You have not participated

4  in any slander of title or fraudulent liens or

5  lis pendenses on any properties that Texas REIT or I

6  own or control.

7          MR. BALLASES:  Objection.  Form.

8     A.  Correct.

9     Q.  (BY MR. CHOUDHRI)  You've not participated or

10  been involved with any filing of any lis pendenses

11  relating to the debtor's property.

12     A.  That's correct.

13          MR. BALLASES:  Objection.  Form.

14          Are you referring to -- aside from the lis

15  pendens filed --

16          MR. CHOUDHRI:  Sir -- no, Mr. Ballases.  Stop.

17  Stop.  Stop coaching the witness.

18          I'm going to object to you, your sidebar.

19          You're continually coaching the witness.

20  Please stop.

21     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, do you use --

22          MR. BALLASES:  (Unintelligible)

23     Q.  (BY MR. CHOUDHRI)  -- text messaging as a form

24  of communication --

25          (Crosstalk)

1       THE REPORTER:  Sorry.  I'm sorry.  I'm getting

2  two speakers again.

3       MR. BALLASES:  Sure.  I just -- I'm just

4  trying to help Mr. Choudhri answer questions --

5       MR. CHOUDHRI:  No, please don't help.

6       MR. BALLASES:  -- on our --

7       MR. CHOUDHRI:  Please don't help me.  I don't

8  need your help, Mr. Ballases.  Please stop talking.

9  Object and limit your objections.  Stop talking.

10      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, do you use

11  text messaging as a form of communication?

12      MR. BALLASES:  Objection.  Form.

13      A.  Occasionally, sure.  I think we all do.

14      Q.  (BY MR. CHOUDHRI)  Have you texted Wayne

15  Dolcefino?

16      A.  No.

17      MR. BALLASES:  Objection.  Form.

18      Q.  (BY MR. CHOUDHRI)  Have you received any text

19  messages from Wayne Dolcefino?

20      A.  No.

21      MR. BALLASES:  Objection.  Form.

22      Q.  (BY MR. CHOUDHRI)  What's your answer,

23  Mr. Khawaja?

24      A.  No.

25      MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA
September 11, 2024
TEXAS REIT LLC
158

1    Q.  (BY MR. CHOUDHRI)  Have you ever paid Wayne

2   Dolcefino directly or indirectly, in any way?

3        MR. BALLASES:  Objection.  Form.

4    A.  (Unintelligible) no.

5        MR. BALLASES:  I'm going to -- your answer is

6   what?

7        THE WITNESS:  My answer is no.

8        MR. BALLASES:  The answer is no, but I'm going

9   to instruct him not to answer any more questions that

10   have nothing to do with the scope and purpose of this

11   deposition pursuant to the judge's instruction.

12        MR. CHOUDHRI:  Stop frivolously objecting,

13   Mr. Ballases.  He said he learned based on Wayne

14   Dolcefino's videos, so I definitely have an

15   opportunity to get into the line of questions that I

16   need to get into, and you're going to continue to

17   object and instruct him not to answer.  Is that what

18   you're going to say on the record?

19        MR. BALLASES:  Objection.  Sidebar.

20    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, just so the

21   record is clear, you have not ever, in any way, shape,

22   or form, paid Wayne Dolcefino any amount of money or

23   consideration?

24    A.  I'm not answering that question.

25        MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                     159

1        I'm going to instruct the client --

2        MR. CHOUDHRI:  I --

3        MR. BALLASES:  -- not to answer because it is

4    oppressive and harassing and has nothing to do with

5    the limited scope of the deposition, and he's already

6    answered it.

7        Move along.

8    Q.  (BY MR. CHOUDHRI)  Are you not going to answer

9    any questions relating to Wayne Dolcefino?

10       A.  That means, yes, I'm not going to answer any

11   questions relating to Wayne Dolcefino.  He has nothing

12   to do with this case at all.

13       Q.  Well, can I ask you why?  When Ms. Hood was

14   asking you, you mentioned that you -- you mentioned

15   Wayne Dolcefino and how you --

16       A.  He --

17          MR. BALLASES:  Objection.  Form.

18          (Crosstalk)

19          THE REPORTER:  I'm sorry.  One at a time,

20   please.

21          THE WITNESS:  I'm sorry.  Go ahead.

22          MR. BALLASES:  Objection.  Form, for the

23   record.

24       A.  Well, can I answer?  You asked very -- she

25   asked me very specifically where did I learn about the

OMAR KHAWAJA                                                    September 11, 2024
TEXAS REIT LLC                                                              160

1   potential for the claims that -- the basis of the

2   claims that we filed against you in this case, and I

3   answered, Through multiple sources, including Wayne

4   Dolcefino.  That's a factual answer.

5       Q.  (BY MR. CHOUDHRI)  And have you paid Wayne

6   Dolcefino any amount of money --

7          MR. BALLASES:  Objection.  Form.

8       Q.  (BY MR. CHOUDHRI)  -- or consideration,

9   directly or indirectly --

10          (Crosstalk)

11          MR. BALLASES:  -- (unintelligible) not to

12   answer your question.

13          MR. CHOUDHRI:  Mr. Ballases --

14          THE REPORTER:  I'm --

15          MR. CHOUDHRI:  Mr. Ballases, would you please

16   let the court reporter take her turn -- please take

17   turns.  When I'm asking the question, wait till my

18   question is over before you need to --

19          MR. BALLASES:  So you've asked -- you've asked

20   this question three times, and he's answered it three

21   times.  And all three times, I've told him -- I've

22   objected and told him not to answer.  So you don't

23   need to ask it a fourth time.

24          It's on the record clear.  I know you're not

25   an attorney, and you're not familiar with this, but

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                161

1    it's on the record and it's clear, I promise.  Move

2    along.

3        Q.  (BY MR. CHOUDHRI)  So the record is clear,

4    when I've asked you, Have you been -- have you paid

5    Wayne Dolcefino any amount of money, directly or

6    indirectly, or any consideration, your answer is:  I'm

7    not going to answer that question.  Is that -- is that

8    clear --

9           MR. BALLASES:  Objection --

10       Q.  (BY MR. CHOUDHRI)  -- for the record?

11          MR. BALLASES:  Objection.  Form.  I've --

12       A.  I'm not going to answer that question.

13          MR. BALLASES:  -- objected --

14       A.  I've already asked it -- answered.

15          MR. BALLASES:  -- to the form.  It's

16   oppressive and harassing.  The client's already

17   answered it.  I'm instructing him not to answer

18   because it's exceeding the scope of the deposition,

19   and it's oppressive and harassing, and it's asked and

20   answered.

21          Did you hear me, Mr. Choudhri?

22          MR. CHOUDHRI:  Mr. Ballases, throughout today,

23   you have been frustrating this deposition.

24          MR. BALLASES:  Objection.  Sidebar.

25          MR. CHOUDHRI:  You have been disrupting -- so

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                       162

1   please refrain from your -- your sidebar and your

2   objections.  Limit to your objections as form.

3       Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja --

4          MR. BALLASES:  Objection.  Sidebar.

5       Q.  (BY MR. CHOUDHRI)  -- have you paid --

6   Mr. Khawaja, have you paid -- no, let me back up.

7          Mr. Khawaja, who is Wayne Dolcefino?  What

8   does he do?

9          MR. BALLASES:  Objection --

10      A.  I'm not going to answer these questions.

11         MR. BALLASES:  Objection.  Form.

12      A.  I'm sorry.  You've got to move on to the

13  claim -- claim questions, Ali, or we're gonna end

14  this.

15      Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, are you

16  going to tell me that you're not going to describe --

17      A.  Yes.

18      Q.  -- who Wayne --

19      A.  I'm not going to.

20      Q.  -- Dolcefino is, and you're not --

21      A.  Correct.

22         MR. BALLASES:  Objection.  Form.

23         I'm going to instruct him not to answer

24  because your questions are oppressive and harassing,

25  and they exceed the scope of the limited deposition.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                163

1        I'm instructing him not to answer.  I'm doing

2   it, Mr. Ballases.

3        Q.  (BY MR. CHOUDHRI)  Are you taking his

4   instructions and not answering any questions as it

5   relates to Wayne Dolcefino, Mr. Khawaja?

6        A.  Yes, sir.  Yes.  I'm not.  I will follow

7   advice of counsel.

8        Q.  Who is Chris Wyatt, Mr. Khawaja?

9        A.  Again, that has nothing to do with this case.

10       Q.  So Chris Wyatt has nothing to do with this

11   case.  So -- I want the record clear.

12       A.  I -- Chris Wyatt is a witness, and he is a --

13   he was your former chief financial officer, and that's

14   how I know him -- or chief operating officer.

15       Q.  Has he ever given you documents from the

16   Jetall server?

17       A.  From the Jetall server?  I don't -- I don't

18   know that.  I don't know the answer to that question.

19       Q.  Has Mr. Wyatt --

20       A.  I don't know what the Jetall server is.

21       Q.  Has Mr. Wyatt ever given you any documents?

22       A.  No.

23       Q.  Mr. Chris Wyatt has never given you any

24   documents; that's a true statement?

25       A.  I cannot discuss anything pertaining to Chris

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    164

1   Wyatt because of attorney-client privilege, so we're

2   not talking about Chris Wyatt.

3       Q.  What is the privilege, Mr. Khawaja, with you

4   and Chris Wyatt?

5       A.  Attorney-client privilege.

6       Q.  Is Chris Wyatt an attorney?

7       A.  No, no.  I'm the attorney; he's the client.

8   He sought counsel from me, which I provided,

9   pertaining to this case, and I will not discuss

10  anything further regarding him.

11      Q.  Pertaining to this case, the case we're here

12  for today.

13      A.  No, pertaining to other matters involving you

14  and him.

15      Q.  So Chris Wyatt is your client; is that

16  correct?

17      A.  Yes.

18          MR. BALLASES:  Objection --

19      Q.  (BY MR. CHOUDHRI)  And Hira Azhar is your

20  client; correct?

21      A.  Yes.

22      Q.  And Azeemah Zaheer is your client; correct?

23      A.  Yes.

24          MR. BALLASES:  Objection.  Form.

25      Q.  (BY MR. CHOUDHRI)  And Osama -- and Osama

OMAR KHAWAJA                                         September 11, 2024
TEXAS REIT LLC                                                      165

1   Abdullatif is your client; correct?

2      A.  Yes.

3          MR. BALLASES:  Objection.  Form.

4      Q.  (BY MR. CHOUDHRI)  Is David Tang your client?

5      A.  No.

6          MR. BALLASES:  Objection.  Form.

7      A.  He's just a friend.

8      Q.  (BY MR. CHOUDHRI)  Is Rodney Drinnon your

9   client?

10         MR. BALLASES:  Objection.  Form.

11     A.  No.

12     Q.  (BY MR. CHOUDHRI)  Is Harold Polk --

13     A.  He's an attorney.

14     Q.  -- your client?  Is Harold Polk your client?

15         MR. BALLASES:  Objection.  Form.

16     A.  No, he's not.

17     Q.  (BY MR. CHOUDHRI)  Harold Polk is not your

18  client.

19     A.  Correct.

20         MR. BALLASES:  Objection.  Form.

21     Q.  (BY MR. CHOUDHRI)  How did you meet Chris

22  Wyatt?

23         MR. BALLASES:  Objection.  Form.

24     A.  Yeah, I can't talk about that.  I'm sorry.

25     Q.  (BY MR. CHOUDHRI)  Why can't you talk about

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                166

1   how you met Chris Wyatt?

2       A.  That's protected.

3       Q.  By what?

4       A.  Attorney-client privilege.

5       Q.  Are you refusing to answer when you met Chris

6   Wyatt?

7       A.  Yes.

8       Q.  When did the attorney-client privilege start

9   with Chris Wyatt?

10          MR. BALLASES:  Objection.  Form.

11      A.  Since I met him.

12      Q.  (BY MR. CHOUDHRI)  And when did you meet him?

13          MR. BALLASES:  Objection.  Form.

14      A.  Sometime after he left your employment.

15      Q.  (BY MR. CHOUDHRI)  You never met him while he

16  was employed as a paralegal for me?

17      A.  No.

18          MR. BALLASES:  Objection.  Form.

19      Q.  (BY MR. CHOUDHRI)  You never saw him come to

20  court in the divorce case when you were representing

21  the -- Hira Azhar?

22          MR. BALLASES:  Objection.  Form.

23      A.  No, I didn't, actually, to be honest with you.

24  No.

25      Q.  (BY MR. CHOUDHRI)  And you're not aware that

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                      167

1   Chris Wyatt worked on the case that Jetall has against

2   Khawaja?

3      A.  No --

4         MR. BALLASES:  Objection.  Form.

5      A.  -- I'm not aware of that.

6      Q.  (BY MR. CHOUDHRI)  You're not aware of that --

7      A.  If he --

8      Q.  -- is that correct?

9      A.  Correct.  If he did, he never discussed it

10  with me.

11      Q.  So you're not aware that Chris Wyatt did legal

12  work for me while he was employed for me.

13         MR. BALLASES:  Objection.  Form.

14      A.  No.

15      Q.  (BY MR. CHOUDHRI)  Isn't it true that Jetall

16  Companies has a judgment against Khawaja?

17         MR. BALLASES:  Objection.  Form.

18      A.  "Against Khawaja," what does that mean?

19      Q.  (BY MR. CHOUDHRI)  Against Khawaja Partners.

20      A.  Possibly.

21         MR. BALLASES:  Objection.  Form.

22      Q.  (BY MR. CHOUDHRI)  And that judgment has not

23  been appealed and not been superceded.

24      A.  Yes.

25      Q.  Is that one --

1      MR. BALLASES:  Objection.  Form.

2    Q.  (BY MR. CHOUDHRI)  -- of your motivations,

3  Mr. Khawaja?

4      MR. BALLASES:  Objection.  Form.

5    A.  No.

6    Q.  (BY MR. CHOUDHRI)  So Jetall owns an asset --

7  Jetall Companies owns an asset, and that's a judgment

8  against Khawaja Partners; correct?

9      MR. BALLASES:  Objection.  Form.

10    A.  I don't know if Jetall owns an asset or --

11  Jetall doesn't seem to be doing too well right now.

12    Q.  (BY MR. CHOUDHRI)  And how do you know that?

13      MR. BALLASES:  Objection.  Form.

14    A.  I mean, there was a great article about you

15  the other day in The Real Deal.  I don't know if you

16  saw that.

17    Q.  (BY MR. CHOUDHRI)  Have you spoken to The Real

18  Deal?

19    A.  I haven't --

20      MR. BALLASES:  Objection.  Form.

21    A.  -- but I read that article.

22      THE REPORTER:  Sorry --

23    A.  It's not a good look.

24    Q.  (BY MR. CHOUDHRI)  You haven't spoken --

25      THE REPORTER:  Sorry.  Sorry.  Just one at a

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        169

1   time, please.  Thank you.

2      A.  I haven't, no.

3      Q.  (BY MR. CHOUDHRI)  Has anybody on your behalf,

4   indirectly or directly, spoken to The Real Deal?

5         MR. BALLASES:  Objection.  Form.

6      A.  No, but a lot of people sent me that article,

7   like real estate -- people in real estate, legal.  A

8   lot of people sent it to me.

9      Q.  (BY MR. CHOUDHRI)  And Chris Wyatt testified

10  at the that hearing; correct?

11        MR. BALLASES:  Objection.  Form.

12     A.  I don't --

13        MR. BALLASES:  What hearing are you talking

14  about, sir?  I mean, come on.

15        MR. CHOUDHRI:  Mr. Ballases --

16     A.  You're all over the place.

17        MR. CHOUDHRI:  -- can you --

18     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, The Real Deal

19  quotes an order and mentions Chris Wyatt.

20        MR. BALLASES:  Objection.  Form.

21     A.  Okay.  Anything else you want to share with me

22  about the article?  I mean, that's fine.

23     Q.  (BY MR. CHOUDHRI)  And so have you paid Chris

24  Wyatt any money?

25     A.  No.

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                      170

1          MR. BALLASES:  Objection.  Form.

2      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you had

3   mentioned that you're in the business of buying

4   judgments.  Do you recall that line of testimony

5   earlier?

6      A.  Yes.

7      Q.  And you've bought less than ten judgments; is

8   that correct?

9      A.  I think so.

10      Q.  And your answers earlier were -- and I just

11   want to make sure the record is clear --

12          MR. BALLASES:  Objection.  Sidebar.

13      Q.  (BY MR. CHOUDHRI)  -- that the only --

14   Mr. Khawaja, are you done looking at your phone?

15      A.  Yes.  Sorry.  Go ahead.

16          MR. CHOUDHRI:  Just for the record, throughout

17   the deposition, Mr. Khawaja has been continuing to

18   look at his phone and make communications with other

19   people in the room and has constantly looked at his

20   phone throughout the entire duration of this

21   deposition.

22      Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, I just ask

23   you to please refrain from looking at your phone.

24   Okay?

25          MR. BALLASES:  Objection.  Sidebar.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                171

1          Don't instruct my client anything, and you are

2    incorrect with your assertions.

3          MR. CHOUDHRI:  Mr. Ballases, please stop

4    talking.

5      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, can you please

6    stop looking at your phone?

7          MR. BALLASES:  Objection.  Sidebar.

8      A.  I've got a sick relative in the hospital right

9    now.  That's what I'm worried about, so...

10     Q.  (BY MR. CHOUDHRI)  Well, I'm sorry about your

11   relative.  I hope they get better.

12         Mr. Khawaja, which judgments -- strike that.

13         Mr. Khawaja, it's your contention that any

14   entity that I -- at least if I heard your testimony

15   correctly earlier, that any entity that Ali Choudhri

16   has ownership or control in is an alter ego.  Is that

17   your contention --

18     A.  Of Ali --

19     Q.  -- Mr. Khawaja?

20     A.  Yes, it is.

21         MR. BALLASES:  Objection.  Form.

22     Q.  (BY MR. CHOUDHRI)  So any entity that Ali

23   Choudhri has any ownership or control of is an alter

24   ego of Ali Choudhri; correct?

25     A.  I believe that -- I believe that to be the

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  172

1    case, yes.

2         MR. BALLASES:  Objection.  Form.

3      Q.  (BY MR. CHOUDHRI)  Okay.  Mr. Khawaja, which

4    judgments have you acquired?

5         MR. BALLASES:  Objection.  Form.

6      A.  You mean other than yours?  Other than the

7    Jetall judgments?

8      Q.  (BY MR. CHOUDHRI)  Again, Mr. Khawaja --

9      A.  Are you there?

10      Q.  -- I believe your answers earlier were that

11    you have not acquired any judgments other than

12    judgments relating to Jetall or Ali Choudhri.

13      A.  I think that's --

14      Q.  Is that true?

15      A.  -- correct.  That's true.

16         MR. BALLASES:  Objection.  Form.

17      Q.  (BY MR. CHOUDHRI)  So what I want to do is I

18    want to go down, because your contention is Texas REIT

19    is an alter ego of Ali Choudhri; correct?

20      A.  Yes.

21         MR. BALLASES:  Objection.  Form.

22      Q.  (BY MR. CHOUDHRI)  So basically what you're

23    saying is any obligations of Ali Choudhri or any of

24    Ali Choudhri's entities are the obligations of Texas

25    REIT; is that correct?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                173

1      A.  Yes.  That's correct, yes.

2      Q.  So it's just basically one big pot.

3      A.  That's the way you've treated them, yes.

4      Q.  And that's your contention, and that's the --

5      A.  I believe the evidence will show that.  Yes.

6      Q.  And outside what's in your pleading, you don't

7   have any other evidence that --

8         MR. BALLASES:  Objection.  Form.

9      A.  Well, we've got to do discovery -- we have to

10  do discovery, sir, which you're obstructing, but yes.

11     Q.  (BY MR. CHOUDHRI)  Okay.  So the record is

12  clear, outside your pleading, there's no other

13  evidence other than the discovery you're yet to do.

14        MR. BALLASES:  Objection.  Form.

15     Q.  (BY MR. CHOUDHRI)  Is that correct?

16     A.  We're in the -- we're in the middle of

17  discovery.

18        MR. BALLASES:  Objection.  Form.

19     Q.  (BY MR. CHOUDHRI)  Is that correct?

20        MR. BALLASES:  Objection.  Form.

21     A.  Outside the pleading?  The pleading contains a

22  lot of evidence.  I don't know if you've seen the

23  attachments or not, but there's a lot.  There's a lot

24  more that will have to be done.

25     Q.  (BY MR. CHOUDHRI)  And so you're refusing to

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    174

1   answer any questions relating to Chris Wyatt; correct?

2        A.  Yes.

3           MR. BALLASES:  Objection.  Form.

4        A.  That's -- that encompasses attorney-client

5   privilege.  Correct.

6        Q.  (BY MR. CHOUDHRI)  So anything I would ask you

7   today about Chris Wyatt, you would refuse to answer.

8        A.  That's correct.

9           MR. BALLASES:  Objection.  Form.

10       Q.  (BY MR. CHOUDHRI)  Who drafted the affidavit

11  that was attached to the petition that's attached to

12  this proof of claim that Chris Wyatt signed?

13          MR. BALLASES:  Objection.  Form.

14       A.  I have no idea.

15       Q.  (BY MR. CHOUDHRI)  You don't know --

16       A.  It wasn't me.

17       Q.  -- who drafted -- it wasn't you.  Was it

18  Mr. Ballases?

19          MR. BALLASES:  Objection.  Form.

20          Instructing not to answer.  It violates

21  attorney work product, attorney-client privilege.

22       A.  I'm not answering on advice of counsel.

23       Q.  (BY MR. CHOUDHRI)  Does Mr. Ballases or Hoover

24  Slovacek represent Chris Wyatt?

25       A.  I don't think so.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  175

1    Q.  Does Ashish Mahendru represent Chris Wyatt?

2       MR. BALLASES:  Objection.  Form.

3    A.  I don't know.  I mean, ask Ashish.

4    Q.  (BY MR. CHOUDHRI)  Did you refer Chris Wyatt

5  to Ashish Mahendru?

6       MR. BALLASES:  Objection.  Form.

7    A.  I mean, again, I just told you I'm not

8  answering any questions about Chris Wyatt.

9    Q.  (BY MR. CHOUDHRI)  So can you explain to me

10  why the adversary where you claim alter ego and

11  fraudulent transfer has an attachment of Chris Wyatt

12  as a declaration?

13    A.  I mean, he had some evidence that you are an

14  alter ego, that you have alter egos that operate under

15  you, so he provided it.  It's evidence.

16    Q.  Do you hold any -- do you hold any contingency

17  claims or rights of any adverse parties to Ali

18  Choudhri or any of his related entities?

19       MR. BALLASES:  Objection.  Form.

20    A.  Do I hold any -- I mean, if I did, it's

21  attorney-client privilege, so I'm not answering that.

22    Q.  (BY MR. CHOUDHRI)  So any contingency claims

23  you hold against --

24    A.  Right.

25    Q.  -- Texas REIT or any other entity --

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                176

1      A.  Yes.

2      Q.  -- or party relating to Ali Choudhri is --

3    you're not going to answer because it's

4    attorney-client privilege?

5      A.  Yes.

6        MR. BALLASES:  Objection.  Form.

7      A.  And outside the scope of what you're allowed

8    to ask me about.

9      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, do you have

10   surveillance on me or any of my entities or companies?

11       MR. BALLASES:  Objection.  Form.

12       I'm going to instruct you not to answer.  It's

13   harassing and oppressive.  It has nothing to do with

14   the limited scope of this deposition.

15     A.  I'm not answering that.

16     Q.  (BY MR. CHOUDHRI)  Do you have any agreement

17   with George Lee?

18       MR. BALLASES:  Objection.  Form.

19     A.  I don't.

20       MR. BALLASES:  It's not relevant to the

21   limited scope of this deposition; therefore, I'm going

22   to instruct him not to answer.

23     A.  I should be asking you that question.  It's

24   gonna come up in trial.

25     Q.  (BY MR. CHOUDHRI)  Do you have any text

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                177

1   messages between you and George Lee?

2        MR. BALLASES:  Object --

3    A.  No --

4        MR. BALLASES:  Objection.  Form.

5    A.  -- I'm not gonna talk about that.

6        MR. BALLASES:  And I'm going to instruct

7   him not to --

8    A.  It has nothing to do with this.

9        MR. BALLASES:  I'm going to instruct you not

10  to answer.  It violates the scope of this deposition

11  that the judge indicated.  It's harassing and

12  oppressive.  This isn't a free-for-all discovery.

13       THE WITNESS:  Yeah.

14       MR. BALLASES:  It's just about why the proof

15  of claim was filed or why it's being withdrawn.

16   Q.  (BY MR. CHOUDHRI)  So is it your contention

17  that you have information you've received from Chris

18  Wyatt that has to do with the basis of your claim?

19       MR. BALLASES:  Objection.  Form.

20   A.  I mean, he provided an affidavit in this case,

21  so...

22   Q.  (BY MR. CHOUDHRI)  So again, when did he

23  become your client, and when did you establish that

24  attorney-client privilege?

25       MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                            178

1      A.  I'm not sure when.

2      Q.  (BY MR. CHOUDHRI)  Do you have text messages

3   between you and Chris Wyatt?

4         MR. BALLASES:  Objection.  Form.

5      A.  I mean, if I did, I wouldn't disclose them to

6   you, and nor would a court compel me to.  It's

7   attorney-client privilege.

8      Q.  (BY MR. CHOUDHRI)  Well, here's the thing,

9   Mr. Khawaja.  Here's the thing.  There's something

10  called a privilege log, right?  I'm entitled to know

11  if you have communications.  I'm not asking you --

12         MR. BALLASES:  Objection.  Sidebar.

13     Q.  (BY MR. CHOUDHRI)  -- about the content of

14  your communications.

15         MR. CHOUDHRI:  Mr. Ballases, please stop

16  interrupting.

17     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, I'm not asking

18  you about the contents of your --

19         MR. BALLASES:  (Unintelligible)

20     Q.  (BY MR. CHOUDHRI)  Let me finish my question

21  before you answer.  Okay?

22         I'm asking you not about -- so we're very

23  clear, I'm not eliciting or asking you for privileged

24  information.  I'm asking you if there are

25  communications, not the contents.  Do you have --

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                              179

1      A.  Even if it existed --

2      Q.  -- communications with Chris -- can I finish?

3         Do you have communications with Chris Wyatt,

4   yes or no?

5         MR. BALLASES:  Objection.  Form.

6      A.  Even if it existed, I would not disclose that

7   to you, nor would I be compelled to, nor is it a part

8   of this case.

9      Q.  (BY MR. CHOUDHRI)  So why are you adding the

10   declaration of Chris Wyatt as a part of this case?

11         MR. BALLASES:  Objection.  Form.

12      A.  It's evidence.

13      Q.  (BY MR. CHOUDHRI)  Well, do you understand

14   what a sword --

15      A.  It's evidence of the alter (unintelligible).

16      Q.  -- and shield is?

17         THE REPORTER:  I'm sorry --

18      Q.  (BY MR. CHOUDHRI)  It's evidence of the alter

19   ego?

20         I'm sorry.  Finish your question -- your

21   answer, Mr. Khawaja.  It's --

22      A.  It's evidence --

23      Q.  -- evidence of what?

24      A.  -- of the alter ego.  It's evidence of the

25   alter ego.

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                      180

1     Q.  So Chris Wyatt has evidence of the alter ego.

2  That's your answer?

3     A.  Yes.

4     Q.  And you're refusing to answer any questions

5  about Chris Wyatt.

6     A.  I'm not gonna talk about any attorney-client

7  privileged communications.  Correct.

8     Q.  So do you have any communications with Chris

9  Wyatt, yes or no?

10       MR. BALLASES:  Objection.  Form.

11     A.  I'm not gonna talk about it.

12       MR. BALLASES:  Objection.  Form.

13       MR. CHOUDHRI:  Mr. Ballases, being emphatic on

14  your objection doesn't change the objection.

15     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

16       MR. BALLASES:  Objection.  Sidebar.

17     Q.  (BY MR. CHOUDHRI)  -- are you refusing to --

18  are you refusing to answer the mere fact that

19  communications exist between you and Chris Wyatt?

20       MR. BALLASES:  Objection.  Form.

21     A.  I'm telling you that if they do exist -- I'm

22  not confirming that they do or don't, but they would

23  be privileged.  That's it.  And this is not the

24  case --

25     Q.  (BY MR. CHOUDHRI)  So how did --

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    181

1      A.  This is not the case that you're going to get

2   any of that information.

3      Q.  Now, you'll agree with me that Chris Wyatt --

4   that in your petition in adversary that you've

5   attached to this proof of claim, you've attached a

6   declaration of Chris Wyatt, true or false?

7      A.  True.

8      Q.  And you're refusing to provide me any

9   communications or the fact that any communications

10  even exist between you and Chris Wyatt, true?

11        MR. BALLASES:  Objection.  Form.

12     A.  True.

13     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, would you

14  please stop looking at your phone?

15     A.  I'm not looking at my phone.  I'm looking at

16  the petition that you just asked me about, the

17  adversary.

18        MR. BALLASES:  Objection.  Sidebar.

19        Don't instruct my client again.

20     A.  This is the adversary petition I'm reading.

21     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, what

22  contingency claims, if any, do you hold, indirectly or

23  directly, against me or any of my entities?

24        MR. BALLASES:  Objection.  Form.

25     A.  Outside the scope of this discussion.  I'm not

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        182

1   answering.

2        Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, it's your

3   contention that Texas REIT is an alter ego of every

4   one of those entities that I have interest in;

5   correct?  That's your contention.

6            MR. BALLASES:  Objection.  Form.

7        Q.  (BY MR. CHOUDHRI)  You're refusing to answer

8   what claims -- so is your statement or answer here,

9   under oath, that you're refusing to answer what

10   motivations and rights or claims or contingencies you

11   have against Texas REIT?  Now, when I --

12            MR. BALLASES:  Objection.  Form.

13       Q.  (BY MR. CHOUDHRI)  -- say "Texas REIT," that

14   applies to any and all entities that I have ownership

15   in, directly or indirectly; correct?

16       A.  Yes, based on alter ego.  Yeah, I'm not gonna

17   give you any -- whether I have any contingency-related

18   litigation against you on that.  If I do, you'll find

19   out about it at some point.

20       Q.  So you're refusing to disclose any claims you

21   have against the debtor.

22            MR. BALLASES:  Objection.  Form.

23       A.  Any claims I have against the debtor?  I don't

24   have any claims against the debtor other than the ones

25   I presented in this case.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                      183

1      Q.  (BY MR. CHOUDHRI)  So when you have

2  contingencies or claims against me, under your theory,

3  those would be claims against the debtor as well.

4          MR. BALLASES:  Objection.  Form.

5      A.  I don't know about that.

6      Q.  (BY MR. CHOUDHRI)  Do you use WhatsApp?

7      A.  Yes.

8          MR. BALLASES:  Objection.  Form.

9      Q.  (BY MR. CHOUDHRI)  Have you communicated --

10      A.  We're in some group -- we're in some groups

11  together on WhatsApp, I think.  Yes.

12      Q.  Mr. Khawaja, did you come to me for a job?

13          MR. BALLASES:  Objection.  Form.

14      A.  A job?  I'm not talking about that, no.

15      Q.  (BY MR. CHOUDHRI)  You never came to me for a

16  job.

17      A.  No.  Look, that's outside the scope of this

18  conversation.

19          MR. CHOUDHRI:  Mr. Osama Abdullatif needs to

20  stop talking in the background and coaching the

21  witness.

22          MR. BALLASES:  Objection.  Sidebar.

23          MR. CHOUDHRI:  Mr. Ballases, please stop.

24  Control Mr. Osama --

25          MR. BALLASES:  Objection.  Sidebar.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                 184

1        MR. CHOUDHRI:  -- (unintelligible) your

2   witnesses.

3     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

4        MR. BALLASES:  Objection.  Sidebar.

5     Q.  (BY MR. CHOUDHRI)  -- would you mind sharing

6   the camera around your office there?

7     A.  We're not gonna do that.

8     Q.  You're not gonna do that?  Okay.  You're

9   refusing to do that.

10       MR. BALLASES:  Objection.  Sidebar.

11       Objection.  Form.

12    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, did you ever

13  seek employment from Jetall Companies?

14       MR. BALLASES:  Objection.  Form.

15       I'm going to instruct the client not to

16  answer.  It's harassing and oppressive.  It exceeds

17  the limited scope of this deposition per the judge's

18  instructions.

19       Stop wasting time, sir.

20    Q.  (BY MR. CHOUDHRI)  You can answer,

21  Mr. Khawaja.

22    A.  On advice of counsel, I'm not gonna answer

23  that question.  Sorry.

24    Q.  Are you upset at Jetall Companies in any way,

25  shape, or form?

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                      185

1      A.  No.

2        Q.  Are you upset at Ali Choudhri in any shape,

3   way, or form?

4        A.  I mean, I want the money that I'm owed.  Just

5   pay me the money that you owe.  This will -- this will

6   go away.  It's nothing personal.

7        Q.  And how much money would it take to make this

8   go away?

9        MR. BALLASES:  Objection.  Form.

10        We're not -- I'm going to instruct my client

11   not to answer.  It has nothing do with the limited

12   scope of this deposition and exceeds what the judge's

13   orders were.

14      Q.  (BY MR. CHOUDHRI)  Are you going to answer the

15   question, Mr. Khawaja?

16      A.  I'm gonna follow the advice of counsel and not

17   answer.

18      Q.  So you say this is about money; Just pay me

19   the money you owe me, and I'll go away.  But you won't

20   tell me what that amount is.  Is that your answer?

21        MR. BALLASES:  Objection.  Form.

22      A.  Yeah, we're not --

23        MR. CHOUDHRI:  Is Osama Abdullatif --

24      A.  -- in a settlement --

25      Q.  (BY MR. CHOUDHRI)  No, this is not a

1   settlement.  I'm asking you -- again, this is not

2   settlement discussion.  This is a deposition under

3   oath on the record.

4        I'm asking you a follow-up to your answer that

5   this is not personal; it's about money.  That's all

6   you want.  You want money, and you'll go away.  That's

7   what you said.  Did I hear -- did I hear your

8   answer --

9        MR. BALLASES:  Objection --

10   Q.  (BY MR. CHOUDHRI)  -- incorrectly, or do we

11   need the court reporter to repeat your answer?

12        MR. BALLASES:  Objection.  Form.

13        Objection.  Sidebar.

14   Q.  (BY MR. CHOUDHRI)  Are you answering the

15   question --

16   A.  You need to move along, sir.  I'm not going to

17   answer that question.

18        MR. CHOUDHRI:  Ms. Court Reporter, would you

19   read back his statement or his answer earlier:  This

20   is not personal; it's just money; if you pay me the

21   money you owe me, I'll go away.

22        Would you read that back into the record so

23   it's clear?  There's been a lot of objections, and

24   I've been distracted.

25        THE REPORTER:  I'll need a minute to go

1  through and find that answer.

2        MR. CHOUDHRI:  Take your time.  No problem.

3        Mr. Khawaja is not on the screen any longer,

4  for the record.

5        MR. BALLASES:  Yeah, he is.

6        MR. CHOUDHRI:  Mr. --

7        THE REPORTER:  Sorry.  Just off the record.  I

8  just need to go off the record because I can't type

9  and look for the testimony at the same time.

10        MR. CHOUDHRI:  So why don't we take a five --

11        THE WITNESS:  Can you see me?

12        MR. CHOUDHRI:  I'll tell you what.  Why don't

13  we do this, Ms. Court Reporter.  It looks like we've

14  been going for a little bit here.  So it's 2:42.  Why

15  don't we come back in 15 minutes at 3:00.

16        MR. BALLASES:  No, we'll take a five-minute

17  break.

18        THE WITNESS:  We'll take a five-minute break,

19  and that's it.  We're done.

20        MR. CHOUDHRI:  Again, Mr. Khawaja, this is my

21  deposition.  I get to ask questions.  And with all due

22  respect, you really don't dictate the -- but if you

23  need to take a break, I'm happy to let you take a

24  break --

25        THE WITNESS:  I'll take a five-minute break,

1  and that's it.

2        No?  Okay.  No, we don't need a break.  Thank

3  you.

4        MR. CHOUDHRI:  So, Court Reporter, while

5  you're looking for the answer, let's go and take a

6  five-minute break.  We'll come back in five minutes.

7  We're off the record.

8        (A recess was taken.)

9        THE REPORTER:  So we are back on the record.

10  And I just please ask everybody, in order to keep the

11  record clear, please, one speaker at a time.

12        And, Mr. Khawaja, if your counsel does have an

13  objection, just please allow him to make the objection

14  and then answer afterwards, just so I don't have both

15  of you speaking.  Thank you.

16        THE WITNESS:  All right.  Thank you.

17        MR. BALLASES:  So just for the record,

18  Ms. Court Reporter, we've looked at the live schedule

19  that was filed by the debtor under declaration of

20  penalty and was signed by Mr. Ali Choudhri, and it

21  does not list Mr. Choudhri as a debtor anywhere on

22  here, and therefore -- or excuse me -- as a creditor

23  anywhere on here.  And so, therefore, him not being a

24  creditor based upon his own sworn document, he has no

25  legal basis to continue to ask questions here today.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                189

1          So I'd like to have -- if Ms. Hood or

2    Mr. Sather have any more questions, I'd like to finish

3    it up.  Mr. Khawaja does have to go because he has a

4    relative who is probably passing away relatively soon

5    in the hospital.  We can then move on --

6          MR. CHOUDHRI:  So --

7          MR. BALLASES:  -- with the next deponents.

8          MS. HOOD:  So --

9          MR. CHOUDHRI:  So, Mr. Ballases --

10   Mr. Ballases, this is my deposition.  If you want --

11   if there is a life/death situation, I'm not -- I'm

12   happy to work with you and Mr. Khawaja on schedules.

13   I have no problem doing that.  Family's important.  So

14   if we need to reset this deposition to tomorrow or

15   another day, I'm happy to accommodate that.

16          But what I don't want to do is have you

17   control the deposition and who can ask questions and

18   who can't, because I'm in the middle of my questioning

19   of Mr. Ballases (sic).  So --

20          MR. BALLASES:  Okay.  So --

21          MR. CHOUDHRI:  -- let's continue on with the

22   questions.

23      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, are you ready

24   to answer more questions?

25          THE WITNESS:  What do you think, Michael?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                190

1          MR. BALLASES:  It's up to you.  If you've got

2   to go to the hospital, then --

3      A.  Okay.  I can go for a little bit longer.

4          MR. CHOUDHRI:  Okay.  Madam Court Reporter,

5   would you please read the answer back while we took a

6   break?

7          THE REPORTER:  Okay.  One second.  Okay.  So

8   the question and answer was (Reading:)  Question:  Are

9   you upset at Ali Choudhri in any way, shape, or form?

10         Answer:  I mean, I want the money that I'm

11  owed.  Just pay me the money that you owe.  This will

12  go away.  It's nothing personal.

13     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, did she read

14  your answer correctly and accurately?

15     A.  Yes.

16     Q.  And so to follow up on that answer, what is

17  the amount of the money that you claim you're owed?

18     A.  Well, there's a certain amount of -- there's a

19  certain amount that's claimed in the judgment that

20  probably has gone up since we filed it.  And, you

21  know, you can go through that.  Your attorney can

22  discuss that with my attorney if you want to make an

23  offer.  Someone will --

24     Q.  I'm not asking about a settlement,

25  Mr. Khawaja.  I'm just asking about how much money

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    191

1  you're owed, because I can go to the oral ruling

2  that -- from Judge Robinson about how you came up with

3  the number, how you calculated it, and what that

4  number is.  And that's what we're here today to ask

5  you questions about on your proof of claim.

6       So you said, Owe me -- pay me the money you

7  owe, so my question is --

8     A.  Right.

9     Q.  -- what are you claiming you're owed?

10     A.  Do you have a copy of the adversary?

11     Q.  Go ahead, Mr. Khawaja.  What is the amount of

12  money you're owed?  That's my question.  Do you know?

13     A.  Yeah, it's somewhere north of $500,000.  Give

14  me one second here.

15       The total amount is $4,847,894.68.

16     Q.  I'm sorry.  Would you repeat that again?  The

17  total amount that you're owed is what?

18     A.  $4,847,894.68.

19     Q.  Sorry.  There's somebody talking in the

20  background.  I think Osama's helping you and talking,

21  so --

22       MR. BALLASES:  Objection.  Sidebar.

23     Q.  (BY MR. CHOUDHRI)  So what is the total amount

24  that you need to be paid so you can go away?

25       MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA                                         September 11, 2024
TEXAS REIT LLC                                                      192

1      A.  $4,847,894.68.

2      Q.  (BY MR. CHOUDHRI)  Okay.  Thank you for your

3   answer, Mr. Khawaja.

4          And you stand behind that number as being

5   truthful, accurate with all lawful offsets?

6      A.  I mean, I don't -- I don't know what that

7   means, but yeah, it's truthful, for sure.

8      Q.  Okay.

9      A.  There are no offsets.

10      Q.  There are no offsets?

11      A.  No.

12      Q.  Is that what you said?

13          Okay.  So there are no offsets; is that

14   correct?

15      A.  That's correct.

16      Q.  Okay.  Mr. Khawaja, is that the basis of -- so

17   let me just kind of set the table for a second.

18          So we said this earlier, and I just want to

19   make sure that I don't have to go through a list of,

20   you know, all these entities and all these other

21   parties.

22          So when we talk about Texas REIT, when you

23   answer the question that -- against Texas REIT, your

24   position is that any entity that I have ownership,

25   directly in or indirectly, is an alter ego of Texas

OMAR KHAWAJA                                                    September 11, 2024
TEXAS REIT LLC                                                              193

1    REIT; correct?

2          MR. BALLASES:  Objection.  Form.

3          A.  Alter ego of Ali Choudhri.  Yes.

4    Q.  (BY MR. CHOUDHRI)  Okay.  So --

5    A.  And Jetall Companies.

6    Q.  -- that's the basis?

7          THE REPORTER:  I'm sorry?

8    Q.  (BY MR. CHOUDHRI)  And Jetall.  So when the --

9          THE REPORTER:  And who?  Sorry.

10         THE WITNESS:  Sorry.  Of Ali Choudhri and

11   Jetall Companies.

12         THE REPORTER:  Thank you.

13         Q.  (BY MR. CHOUDHRI)  And so that is the basis of

14   several lis pendenses that have been filed; is that

15   correct?

16         A.  I don't know about several.  There's one

17   that's filed in this case.

18         Q.  Well, if you contend that any and all

19   liabilities and assets of Texas REIT's are alter egos

20   of Ali Choudhri, you have -- in this adversary that is

21   the basis of your proof of claim -- back up.

22         This proof -- the adversary is the basis of

23   your proof of claim; correct?

24         A.  Yes.

25         Q.  So in that adversary, you have filed many lis

OMAR KHAWAJA                                  September 11, 2024
TEXAS REIT LLC                                              194

1  pendenses on various properties, true or false?

2      A.  Yes.

3      Q.  And what real property interest do you contend

4  that you own in any of these properties?

5      A.  We're a judgment creditor.  So if you own it,

6  we own it.

7      Q.  So it's your contention that -- again, I just

8  want to get the whole scope here.  It's your

9  contention that, based on the fact that you're a

10  judgment creditor, you have real property interest in

11  all these various properties, true or false?

12      A.  Yes.

13      Q.  Is that true?

14      A.  True.

15      Q.  Outside of that, do you have any other real

16  property interest that you contend you own in any of

17  these properties?

18      A.  No.

19      Q.  And do you know where I live?

20        MR. BALLASES:  Objection.  Form.

21      A.  I think you live in 9201 Arabella.

22      Q.  (BY MR. CHOUDHRI)  9201 Arabella?

23        MR. BALLASES:  Objection.  Form.

24      A.  Let me see here.  Ninety -- sorry -- 9201.

25  You live at Arabella PH, whatever property Arabella PH

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                              195

1  3201, LLC, owns.  At the Arabella, I think, unless you

2  moved.

3      Q.  (BY MR. CHOUDHRI)  And you have knowledge that

4  I've lived there for how long?

5          MR. BALLASES:  Objection.  Form.

6      A.  I mean, I guess at least a few years.  Maybe

7  two.

8      Q.  (BY MR. CHOUDHRI)  And are you aware that --

9      A.  You sold your house and then -- I think so.  I

10 mean, look, I -- I'm not sure, to be honest with you.

11 I think you live there.  I can find out if you want me

12 to.

13     Q.  So you said I sold my house?

14         MR. BALLASES:  Ali, can -- Mr. Choudhri, can

15 you put yourself on the screen again so we know it's

16 you asking questions?

17     Q.  (BY MR. CHOUDHRI)  So you said --

18         MR. BALLASES:  Thank you.

19     Q.  (BY MR. CHOUDHRI)  -- I sold my house,

20 Mr. Khawaja, that you know I sold my house?

21     A.  Yeah.

22         MR. BALLASES:  Objection.  Form.

23     A.  You sold the River Oaks house; right?

24     Q.  (BY MR. CHOUDHRI)  I'm asking you,

25 Mr. Khawaja.  You said I sold my house.  What do you

OMAR KHAWAJA                                     September 11, 2024
TEXAS REIT LLC                                                196

1   mean by that?

2       A.  Yes.  I think you sold your River --

3          MR. BALLASES:  Objection.  Form.

4       A.  I think you sold the River Oaks house, and

5   then you moved.

6       Q.  (BY MR. CHOUDHRI)  And how do you know that?

7          MR. BALLASES:  Objection.  Form.

8       A.  I think -- I mean, that's just -- that's the

9   rumors.

10      Q.  (BY MR. CHOUDHRI)  And who told you that?

11         MR. BALLASES:  Objection.  Form.

12      A.  I think it was in The Real Deal.

13      Q.  (BY MR. CHOUDHRI)  Is that where you -- are

14  you saying that's where you know about it?

15      A.  Possibly.

16         MR. BALLASES:  Objection.  Form.

17      A.  I don't know, to be honest with you.

18      Q.  (BY MR. CHOUDHRI)  Do you know who Kevin

19  Powers is?

20         MR. BALLASES:  Objection.  Form.

21      A.  He's an attorney.  Yes.

22      Q.  (BY MR. CHOUDHRI)  Have you communicated with

23  Kevin Powers?

24         MR. BALLASES:  Objection.  Form.

25      A.  I think he called me once or twice, but no

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                197

1    real communication with him.

2       Q.  (BY MR. CHOUDHRI)  Have you ever texted him or

3    received texts from him?

4          MR. BALLASES:  Objection.  Form.

5       A.  Not that I recall.  I don't think so.

6       Q.  (BY MR. CHOUDHRI)  Do you know who WCW is?

7          MR. BALLASES:  Objection.  Form.

8       A.  Some entity that you owe money, I think.

9       Q.  (BY MR. CHOUDHRI)  Do you know who Steven Wu

10   is?

11      A.  Another guy that you --

12         MR. BALLASES:  Objection.  Form.

13      A.  -- that you owe money to.

14      Q.  (BY MR. CHOUDHRI)  And your contention is I

15   owe money to Steven Wu?

16      A.  You owe money --

17         MR. BALLASES:  Objection.  Form.

18      A.  -- to a lot of people, including me, but yes.

19      Q.  (BY MR. CHOUDHRI)  And what do you know about

20   what I owe to Steven Wu?

21         MR. BALLASES:  Objection.  Form.

22      A.  That you defrauded him, and they have --

23   they're seeking to recover the money that you owe them

24   and --

25      Q.  (BY MR. CHOUDHRI)  And how much money is

1  that --

2     A.  -- defrauded them in the Texas REIT --

3        THE REPORTER:  I'm sorry --

4     Q.  (BY MR. CHOUDHRI)  I defrauded in the Texas

5  REIT case, you said?

6     A.  Yes.  I think some Texas REIT case.  I'm not

7  sure which one, but it's millions of dollars.

8     Q.  And so is it Steven Wu that you contend that I

9  defrauded?

10    A.  Yes.

11       MR. BALLASES:  Objection.  Form.

12    Q.  (BY MR. CHOUDHRI)  And Steven Wu is owed money

13 by Texas REIT is your contention?

14       MR. BALLASES:  Objection.  Form.

15    A.  Yes, and there's probably many other creditors

16 out there I'm not aware of.

17    Q.  (BY MR. CHOUDHRI)  Which creditors are you

18 aware of?

19       MR. BALLASES:  Objection.  Form.

20    A.  Only the ones that I would know.  I mean, I'm

21 one of them.  So, I mean, whoever's listed in these

22 schedules, I guess.

23    Q.  (BY MR. CHOUDHRI)  Have you contacted TIG

24 Romspen?  Do you know who Romspen is?

25    A.  No.

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
199

1    MR. BALLASES:  Objection.  Form.

2    A.  I know who they are, but I have not -- I read

3  about them in The Real Deal, but I've not contacted

4  them.

5    Q.  (BY MR. CHOUDHRI)  Do you know who Mansoor

6  Chaudhry is?

7    A.  Yes.

8    Q.  Do you have an attorney-client privilege with

9  him?

10    A.  No, I don't.

11    MR. BALLASES:  Objection.  Form.

12    Q.  (BY MR. CHOUDHRI)  Have you ever texted him or

13  received texts from him?

14    A.  No.

15    MR. BALLASES:  Objection.  Form.

16    A.  I mean, yes, he's texted me.  Yes, he has.

17    Q.  (BY MR. CHOUDHRI)  So when did you meet

18  Mansoor Chaudhry?

19    A.  Maybe two years --

20    MR. BALLASES:  Objection.  Form.

21    Q.  (BY MR. CHOUDHRI)  Under what circumstance?

22    MR. BALLASES:  Objection.  Form.

23    A.  He's a -- he has a title company, and I've

24  done some title work with him.

25    Q.  (BY MR. CHOUDHRI)  So you do some title work

1  with him?

2      A.  Yes.

3          MR. BALLASES:  Objection.  Form.

4      Q.  (BY MR. CHOUDHRI)  What is the name of his

5  title company?

6          MR. BALLASES:  Objection.  Form.

7      A.  I think it's called Transact Title.

8      Q.  (BY MR. CHOUDHRI)  And is Transact Title a

9  tenant at 1001 West Loop?

10         MR. BALLASES:  Objection.  Form.

11     A.  Yes.

12     Q.  (BY MR. CHOUDHRI)  And have you filed a lis

13  pendens against 1001 West Loop?

14         MR. BALLASES:  Objection.  Form.

15     A.  If it's an alter ego of yours -- no, I don't

16  think so.  Maybe not.

17     Q.  (BY MR. CHOUDHRI)  You're looking at Osama to

18  answer the questions.  Do you understand this

19  deposition is me asking you, not Osama answering the

20  questions?  You understand that; right?

21         MR. BALLASES:  Objection.  Sidebar.

22         Don't pretend like you know what's happening

23  over here.

24         Objection.  Sidebar.

25     A.  I'm not looking at anybody.  But I don't know.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                      201

1    Do you want me to file a lis pendens on 1001 West

2    Loop?

3        Q.  (BY MR. CHOUDHRI)  As we sit here today, are

4    you telling me that you have not caused any lis

5    pendens to be filed on 1001?

6        A.  No.  I don't know.  I don't think so.

7        Q.  Do you contend 1001, the property, 1001, or

8    the entity that owns 1001, is an alter ego of Ali

9    Choudhri or Texas REIT?

10       A.  Yes.  Yes, it is.

11       Q.  Do you contend --

12       A.  Even if it's not listed by -- even if it's not

13   here, it is -- anything that you control or own is an

14   alter ego, because that's how you operate.

15       Q.  Okay.  Do you know who BridgeCo is,

16   Mr. Khawaja?

17       A.  Yes.

18          MR. BALLASES:  Objection.  Form.

19       Q.  (BY MR. CHOUDHRI)  Have you spoken to anybody

20   at BridgeCo?

21       A.  No.

22          MR. BALLASES:  Objection.  Form.

23       Q.  (BY MR. CHOUDHRI)  But you've sued BridgeCo;

24   correct?

25       A.  Yes.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                              202

1          MR. BALLASES:  Objection.  Form.

2      Q.  (BY MR. CHOUDHRI)  And are you aware that

3   BridgeCo made six loans?

4      A.  Yeah.

5          MR. BALLASES:  Objection.  Form.

6      Q.  (BY MR. CHOUDHRI)  Do you know which

7   properties BridgeCo made loans on?

8      A.  There were --

9          MR. BALLASES:  Objection.  Form.

10      A.  -- some properties in Austin and some

11   properties in Houston, but I don't know -- I couldn't

12   tell you it's this one or that one.

13      Q.  (BY MR. CHOUDHRI)  And you contend those

14   properties are alter egos of Ali Choudhri or Texas

15   REIT.

16          MR. BALLASES:  Objection.  Form.

17      A.  I mean, they would be.  If you own them, they

18   would be.  But I don't know if we're making that claim

19   in this case anymore.

20      Q.  (BY MR. CHOUDHRI)  Have you sued Cypress

21   BridgeCo and Magnolia BridgeCo in this case?

22      A.  I think we did.  And I'm not sure if we still

23   have maintained those claims.  But I know they

24   foreclosed on their interest.

25      Q.  So you're aware that BridgeCo foreclosed on

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                    203

1   the properties that you filed lis pendenses on.

2       A.  Yes.

3       Q.  And you realize that a lis pendens frustrates

4   and interferes with the sale of a property.

5           Please don't look at Osama for an answer.  I

6   know you really want to.

7           MR. BALLASES:  Objection --

8           MR. CHOUDHRI:  But, Mr. Abdullatif, would you

9   please stop helping Mr. Khawaja?

10          MR. BALLASES:  Objection.  Sidebar.

11          You don't know what you're talking about.

12          (Crosstalk)

13          MR. CHOUDHRI:  Madam Court Reporter, did you

14   get -- did --

15          (Crosstalk)

16          THE REPORTER:  Sorry.  What is your question,

17   Mr. Choudhri?

18          MR. CHOUDHRI:  What did Osama say?  I couldn't

19   hear him.

20          THE REPORTER:  I couldn't hear him either.  If

21   I can't hear him, I can't transcribe him.  And he's

22   not on the record.  Like, he's not --

23       A.  Let's please continue with the deposition.

24          MR. CHOUDHRI:  Mr. Osama Abdullatif, I can

25   hear you in the background calling me a liar.  That's

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
204

1  unprofessional.

2       MR. BALLASES:  Objection.  Sidebar.

3       Ask your question, or I'll --

4    A.  Or we're gonna cut this -- or we're gonna shut

5  this thing down.

6    Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, you're

7  aware -- let me back up.

8       You're in the real estate business as well;

9  right?

10       MR. BALLASES:  Objection.  Form.

11   A.  Not really.  A little bit.

12   Q.  (BY MR. CHOUDHRI)  Do you own real estate

13  outside of your home?

14   A.  Yes.

15   Q.  Which real estate?

16       MR. BALLASES:  Objection.  Form.

17   A.  I'm not gonna get -- I'm not gonna get into

18  that.

19   Q.  (BY MR. CHOUDHRI)  Are you refusing to answer

20  the question about what real estate you own --

21   A.  Yes, I'm --

22   Q.  -- outside of your house?

23   A.  I am -- I am refusing to answer that.

24       MR. BALLASES:  I'm instructing him not to

25  answer because it's outside the scope of the limited

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                      205

1    deposition that the judge ordered.

2        Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, we've

3    already established many, many, many times it's your

4    contention that any entity I own or control is an

5    alter ego of Texas REIT; correct?

6        A.  Yes.

7           MR. BALLASES:  Objection.  Form.

8        Q.  (BY MR. CHOUDHRI)  And so you're also aware,

9    Mr. Khawaja, that when you file a lis pendens on a

10   piece of property, you have to meet certain elements

11   to have a lis pendens on a piece of property.  Are you

12   aware of that?

13       A.  Yes.

14       Q.  And do you know what those elements are?

15          MR. BALLASES:  Objection.  Form.

16       A.  I don't.

17       Q.  (BY MR. CHOUDHRI)  You're unaware what the

18   elements are to file a lis pendens against real

19   property.

20       A.  I'm not sure.

21          MR. BALLASES:  Objection.  Form.

22       Q.  (BY MR. CHOUDHRI)  You're unaware, or you're

23   aware?

24       A.  I'm not aware.

25          MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                    206

1          MR. CHOUDHRI:  Mr. Ballases, it doesn't change

2  by you yelling on the objection, so --

3          MR. BALLASES:  Objection.  Sidebar.

4      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, how many

5  lawsuits have you been involved in where you have

6  instructed, sponsored litigation against Texas REIT or

7  any other entity that I own or control?

8          MR. BALLASES:  Objection.  Form.

9      A.  I don't know.  I don't -- I don't think many

10  at all.  Not as many as I could.  That's for sure.

11      Q.  (BY MR. CHOUDHRI)  And so you have filed a lis

12  pendens against a property at 2232 Swift Boulevard.

13  Are you aware of that?

14      A.  Yes.  Yes.

15      Q.  And you contend 2232 Swift Boulevard -- that

16  property and any interest in that property is an alter

17  ego of Texas REIT?

18      A.  Or Ali Choudhri.

19          MR. BALLASES:  Objection.  Form.

20      A.  Or Ali Choudhri.

21      Q.  (BY MR. CHOUDHRI)  Texas REIT or Ali --

22      A.  Or Jetall.

23      Q.  -- Choudhri; correct?

24      A.  Or Jetall.

25      Q.  Sorry?

OMAR KHAWAJA                                                September 11, 2024
TEXAS REIT LLC                                                          207

1      A.  Or Jetall Companies, Inc.

2      Q.  Okay.  So basically any and all entities that

3   I have any ownership in -- directly, indirectly --

4   it's an alter ego, and that's what you believe.

5      A.  I believe the evidence will show that, yes.

6         MR. BALLASES:  Objection.  Form.

7      Q.  (BY MR. CHOUDHRI)  But as we sit here today,

8   you don't have any evidence --

9      A.  No, we have plenty --

10        MR. BALLASES:  Objection.  Form.

11     A.  We've been talking about it all day.

12        MR. BALLASES:  Objection.  Form.

13     Q.  (BY MR. CHOUDHRI)  So outside of whatever we

14  talked about today, you don't have any other evidence.

15        MR. BALLASES:  Objection.  Form.

16     A.  Not until we get into the discovery, which

17  you're obstructing, but yes.

18     Q.  (BY MR. CHOUDHRI)  So this is your opportunity

19  to tell --

20     A.  You'll find out more after you and, I think,

21  your mom's deposition coming up.

22     Q.  Oh, okay.  So you've sued my mom; correct?

23     A.  Yes.  Don't try to get out of that deposition

24  either.  I'm gonna have a court reporter, translator,

25  everything.  So don't try to get out of that.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        208

1     Q.  Mr. Khawaja, have you -- let me pull this up.

2   Hold on.

3         Have you contacted anybody related to QB Loop

4   Property?

5         MR. BALLASES:  Objection.  Form.

6     A.  No.

7     Q.  (BY MR. CHOUDHRI)  Have you contacted --

8     A.  What's going on with that?

9         THE WITNESS:  Sorry.  Sorry.

10    A.  I have not.

11    Q.  (BY MR. CHOUDHRI)  Have you contacted -- would

12  you dispute if third parties made statements that you

13  contacted them and told them not to do business with

14  me?

15        MR. BALLASES:  Objection.  Form.

16    A.  I would dispute that, yeah.  I mean, tell

17  them -- who said that I said that?

18        MR. BALLASES:  Objection.  Form.

19    Q.  (BY MR. CHOUDHRI)  Have you ever contacted

20  anybody who I do business with, or any of my related

21  entities, and told them not to do business with me?

22        MR. BALLASES:  Objection.  Form.

23    A.  I mean, that's outside the scope of what we're

24  talking about, but no, unless I was specifically

25  asked.

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  209

1     Q. (BY MR. CHOUDHRI)  Have you contacted Anwar

2   Qadeer (phonetic) in relation to --

3     A. No.

4        MR. BALLASES:  Objection.  Form.

5     A. No.  Are you trying to sue Anwar now?  No.

6     Q. (BY MR. CHOUDHRI)  Have you contacted Qasim --

7   Abdul Qasim (phonetic)?

8        MR. BALLASES:  Objection --

9     A. Abdul Qasim?

10     Q. (BY MR. CHOUDHRI)  Abdul Qasim.

11        THE REPORTER:  Sorry.  One at a time, please.

12     A. I never contacted -- no, he's a friend of --

13        THE REPORTER:  Sorry.  One at a time, please.

14        Mr. Khawaja, could you please repeat your

15   answer?

16     A. I have not.

17        MR. BALLASES:  Objection.  Form.

18        Please stick to the limited purpose of this

19   deposition.

20     Q. (BY MR. CHOUDHRI)  And --

21     A. Don't get those guys in trouble.

22     Q. -- Mr. Khawaja, are you -- are you -- are you

23   done laughing?

24     A. Yes.  Yes.

25     Q. Thank you.  You understand this is a serious

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                 210

1  situation we're here, right?  This is a deposition.

2  It's not a joke --

3      A.  Oh, very much.

4          MR. BALLASES:  Objection.  Sidebar.

5      A.  Very much.  Very much so.

6      Q.  (BY MR. CHOUDHRI)  And, Mr. Khawaja, you're

7  taking this serious; correct?

8      A.  Oh, yeah, absolutely.

9          MR. BALLASES:  Objection.  Sidebar.

10      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, can you tell

11  me why -- you know, why you believe that the BridgeCo

12  entities are an alter ego of Texas REIT?

13          MR. BALLASES:  Objection.  Sidebar.

14          No, excuse me.  I'm gonna go ahead, and I'm

15  gonna actually object to this exceeding the scope of

16  the deposition that the judge ordered and instruct him

17  not to answer.

18      A.  I'm gonna take the advice of counsel.

19      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you're not

20  going to answer the question, I understand; is that

21  correct?

22      A.  Yes.

23      Q.  Mr. Khawaja, are you aware that when a lis

24  pendens is filed on a property, a property -- the

25  title is clouded, and it interferes with the ability

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                             211

1   for the property to be sold or refinanced?

2      A.  I mean --

3        MR. BALLASES:  Objection.  Form.

4      A.  -- you filed many of those, so you're pretty

5   aware of what it does, so yes.

6      Q.  (BY MR. CHOUDHRI)  And besides whatever we've

7   covered today, you don't have any other -- are you --

8      A.  Plans?

9      Q.  -- familiar with the -- sorry?

10     A.  Other plans?  I don't know.  I'm just trying

11   to guess what you were gonna say.

12     Q.  I'm sorry, Mr. Khawaja.  What was your

13   statement?

14     A.  I said -- you said, You don't have any other,

15   and then you just trailed off.  So I said, What,

16   plans?

17     Q.  What -- so I think I've asked this earlier,

18   and you've refused to answer.  I just want to make

19   sure the record is clear.  You're refusing to answer

20   any contingency claims or any claims you own or hold,

21   indirectly or directly, against me or any of my

22   entities.  You're refusing to answer any of those

23   questions.

24     A.  Yes --

25        MR. BALLASES:  Objection --

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                212

1      A.  -- that's correct.

2          MR. BALLASES:  Objection.  Form.

3      Q.  (BY MR. CHOUDHRI)  And you're aware that

4  2727 Kirby was foreclosed on.

5          MR. BALLASES:  Objection.  Form.

6      A.  That's what I understand.

7      Q.  (BY MR. CHOUDHRI)  And you're aware that

8  that's one of the properties you filed a lis pendens

9  on.

10         MR. BALLASES:  Objection.  Form.

11     A.  Sure.  You owe a lot of money on it.

12     Q.  (BY MR. CHOUDHRI)  Is there money owed to you

13  on 2727 Kirby?

14     A.  I mean, it's an alter --

15         MR. BALLASES:  Objection.  Form.

16     A.  -- ego of Jetall Companies, so yeah, we

17  should've gotten something out of it.

18     Q.  (BY MR. CHOUDHRI)  Is that why you filed a

19  lis pendens, so you could get something out of it?

20         MR. BALLASES:  Objection.  Form.

21     A.  To prevent you from committing fraudulent

22  transfers and defrauding people like you do.

23     Q.  (BY MR. CHOUDHRI)  And so let's elaborate.

24  How do I defraud people?

25         MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                      213

1      A.  I mean -- I mean, come on.

2      Q.  (BY MR. CHOUDHRI)  I just want to --

3        (Crosstalk)

4      A.  You really want me to answer that question?

5      Q.  (BY MR. CHOUDHRI)  Absolutely.  Go ahead.

6        MR. BALLASES:  Objection.  Sidebar.

7        It's not the opportunity to ask an improper

8   question.

9        THE WITNESS:  No.

10        MR. BALLASES:  It is your opportunity to ask

11   about why a proof of claim was filed and why it was

12   withdrawn.  You are mistaken, and you're exceeding the

13   Court's order.  Please stick to the Court's limited

14   deposition order.

15      Q.  (BY MR. CHOUDHRI)  Are you going to refuse to

16   answer the question, Mr. Khawaja?

17      A.  Yes.

18        MR. BALLASES:  Objection.  Form.

19      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you're aware

20   that following the filing of lis pendenses on various

21   properties, those properties were foreclosed after you

22   filed those lis pendenses, true or false?

23        MR. BALLASES:  Objection.  Form.

24      A.  After -- I mean, what does that mean, after I

25   filed those lis pendenses?  You lost those properties

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                        214

1   because you refused to pay on them, like you've done

2   on so many properties throughout your entire life.

3        So, you know, you excel at losing properties.

4   That's what happened.  That's what happened to

5   2425 West Loop.  Don't try to put that on me unless

6   you want more lawsuits.  We're happy to oblige.

7        Q.  (BY MR. CHOUDHRI)  Do you --

8        A.  Yes.

9        MR. BALLASES:  Objection.  Sidebar.

10       A.  No, I'm not done.  I'm just getting started.

11       Q.  (BY MR. CHOUDHRI)  So continue on.  I'm

12   listening.

13       MR. BALLASES:  There's no question on the

14   table.

15       Q.  (BY MR. CHOUDHRI)  You're just getting

16   started?

17       THE REPORTER:  I'm sorry --

18       Q.  (BY MR. CHOUDHRI)  What do you mean by "just

19   getting started" --

20       THE REPORTER:  I'm sorry.  Mr. Ballases, what

21   was your objection or your comment?

22       MR. BALLASES:  Objection.  Form.

23       There was no question on the table.

24       Q.  (BY MR. CHOUDHRI)  Go ahead, Mr. Khawaja.  If

25   you want to talk, you can talk.  You said you're just

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                    215

1  getting started --

2        MR. BALLASES:  Objection.  Sidebar.

3     A.  Stick --

4     Q.  (BY MR. CHOUDHRI)  Do you want to --

5     A.  Stick to the questions, please.  Stick to the

6  questions.

7     Q.  You're answering -- you're answering the

8  questions, so I'm allowing you to finish your answers.

9  And you said --

10        MR. BALLASES:  Objection.  Sidebar.

11     Q.  (BY MR. CHOUDHRI)  -- you're just getting

12  started.  What do you mean by, "I'm just getting

13  started"?  That was your answer.

14     A.  Yes.  We have --

15     Q.  (Unintelligible)

16     A.  We have a lot of -- we have discovery to

17  complete in this case.

18     Q.  And so what do you mean, "I'm just getting

19  started"?  Elaborate on that --

20        MR. BALLASES:  Objection.  Form.

21     A.  Yeah, we need -- we have to complete

22  discovery.

23     Q.  (BY MR. CHOUDHRI)  And what evidence or

24  information do you have that my mom is an alter ego of

25  Texas REIT?

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                216

1        MR. BALLASES:  Objection.  Form.

2     A.  Have you reviewed the -- have you reviewed our

3  evidence in this case?  Have you looked at what we've

4  been able to uncover, or no?  I hope your attorneys

5  are sharing it with you.  There's a lot.

6     Q.  (BY MR. CHOUDHRI)  So what evidence do you

7  have that Shahnaz Choudhri is an alter ego --

8     A.  Yes.

9     Q.  -- of Texas REIT?

10     A.  There's money flowing through bank accounts.

11  There's checks that she's written to entities that you

12  control.  There's personal payments going out to her

13  from entities that you control.  I mean, there's a

14  lot.  There's a lot.  We're gonna get into all of

15  that.

16     Q.  And so the evidence is all within your

17  pleadings.  Is that --

18     A.  Not all of it.

19        MR. BALLASES:  Objection.  Form.

20     A.  Not all of it.  There's just something --

21  there's discovery.  There's subpoenas.  There's --

22  there's things.  There's a deposition coming up that

23  you're aware of that you're gonna try to get out of.

24  We're not gonna let you.

25     Q.  (BY MR. CHOUDHRI)  Have you made statements to

1  third parties that Judge Norman is gonna do whatever

2  you ask him to do because you have him on payroll?

3       MR. BALLASES:  Objection.  Form.

4       And objection.  Sidebar.

5   A.  Man, come on.  Don't do stuff like that.

6  That's gonna get you --

7   Q.  (BY MR. CHOUDHRI)  Have you made a

8  statement to anybody --

9   A.  -- in a lot of trouble.

10       THE REPORTER:  I'm sorry.

11   Q.  (BY MR. CHOUDHRI)  Have you made --

12       THE REPORTER:  One person at a time, please.

13   A.  That's -- that's gonna get you into a lot of

14  trouble with the FBI.  I wouldn't do that.  That's a

15  mistake on your part.

16   Q.  (BY MR. CHOUDHRI)  Have you ever made any

17  statements like that?  Have you ever made any

18  statements --

19   A.  No.

20   Q.  -- like that?

21       MR. BALLASES:  Objection.  Form.

22   A.  That's very dangerous of you to say that.  I'm

23  just warning you.  It's very dangerous.

24       MR. CHOUDHRI:  Mr. Ballases --

25   Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

OMAR KHAWAJA                                      September 11, 2024
TEXAS REIT LLC                                                    218

1       THE WITNESS:  Make sure you get a copy of this

2   transcript, please --

3     Q.  (BY MR. CHOUDHRI)  -- you've never made --

4       THE WITNESS:  -- and provide that.

5     Q.  (BY MR. CHOUDHRI)  You --

6       THE REPORTER:  Sorry --  okay.

7     A.  I would stop if I were you.  I would stop

8   right now if I were you.

9     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, please.  I'm

10  asking the questions.  Okay?

11    A.  Yeah, you are.

12     Q.  Have you met with Anthony Gill or Kenneth

13  Shaitelman?

14       MR. BALLASES:  Objection.  Form.

15    A.  I'm not gonna --

16       (Crosstalk)

17       MR. BALLASES:  I'm going to instruct you not

18  to answer.  That has nothing to do with the proof of

19  claim that was filed or the reason that we've offered

20  to withdraw it, and therefore, I'm instructing not to

21  answer.  It exceeds the scope of the judge's order.

22       So I object to the form of the question.

23    A.  I'm not answering.

24     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, were you

25  present on September 6, 2023, when Chris Wyatt, your



OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                              219

1    client, testified on the stand in Judge Manor's court?

2         MR. BALLASES:  Objection --

3    A.  No.

4         MR. BALLASES:  Objection.  Form.

5    A.  I wasn't.

6    Q.  (BY MR. CHOUDHRI)  Were you present around

7    September 2023 in front of Judge Manor regarding a

8    case styled Naissance versus Zaheer?

9         MR. BALLASES:  Objection.  Form.

10        A.  I don't even know if I was or not, but that's

11   outside the scope of this purpose of this deposition,

12   so move on.

13        Q.  (BY MR. CHOUDHRI)  Are you aware that Chris

14   Wyatt, your client, testified that he has given you

15   my -- Jetall Companies' hard drive?

16        MR. BALLASES:  Objection.  Form.

17        A.  Not -- not in the -- within the scope of this

18   conversation -- I mean this deposition.  But if he

19   testified to that, I'd have to look back and see.

20   Maybe he did.

21        Q.  (BY MR. CHOUDHRI)  Is Chris Wyatt truthful?

22        MR. BALLASES:  Objection.  Form.

23        A.  You hired him.  What do you think?

24        Q.  (BY MR. CHOUDHRI)  Have you hired --

25        THE WITNESS:  Look, I'm done, Michael.  This

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                       220

1   is it.  This is getting into things --

2        MR. BALLASES:  Okay.

3        THE WITNESS:  -- that are unrelated.  So we

4   can --

5        MR. BALLASES:  And you've got to go see your

6   family --

7        THE WITNESS:  I have to go see my family --

8        MR. BALLASES:  Then we'll take it up with a

9   judge.

10       THE WITNESS:  Thank you.

11       (Crosstalk)

12    Q.  (BY MR. CHOUDHRI)  Are you going to walk out

13  of this deposition?

14       THE REPORTER:  I'm sorry --

15    A.  Yes.

16    Q.  (BY MR. CHOUDHRI)  No --

17       THE REPORTER:  Sorry.  One at a -- sorry.  One

18  at a time, please.  Thank you.

19       MR. CHOUDHRI:  I am not done with my --

20       THE WITNESS:  I have a medical --

21       MR. CHOUDHRI:  -- questions.

22       THE WITNESS:  -- emergency.

23    Q.  (BY MR. CHOUDHRI)  If you have a medical

24  emergency, we can agree to a rescheduling.  Your

25  medical emergency, Mr. Khawaja, is you have a family

OMAR KHAWAJA                                          September 11, 2024
TEXAS REIT LLC                                                      221

1  member in the hospital; correct?

2      A.  Yes, I do.

3          MR. BALLASES:  You don't need to answer any

4  more questions.

5          He has to get out of here.  You took up enough

6  time --

7          THE WITNESS:  We'll take it up with a judge.

8      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

9          MR. BALLASES:  Do you want a five-minute

10  break, or do you want to start?

11     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

12         MR. BALLASES:  You go.  I got it.

13     Q.  (BY MR. CHOUDHRI)  -- the deposition is still

14  going.  Are you going to get up and walk out?

15         MR. CHOUDHRI:  Madam Court Reporter --

16         MR. BALLASES:  Yes, he's got to --

17         MR. CHOUDHRI:  -- would you --

18         MS. HOOD:  Okay.  If I can weigh in here, I

19  had some follow-up questions for him; very few, but I

20  do have follow-up questions.

21         MR. BALLASES:  How much time?  Like, how much

22  would you estimate, Ms. Hood?

23         MS. HOOD:  Ten minutes.

24         MR. BALLASES:  It's up to you.  If you've got

25  to get out of here --

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                222

1           MR. CHOUDHRI:  But I'm not done --

2           MS. HOOD:  But it's -- I need -- Mr. Choudhri

3    hasn't passed the witness.  But I did want to go on

4    the record that I do have a few more questions for

5    him.

6           MR. BALLASES:  Okay.  Well --

7           THE WITNESS:  We'll take it up if we need to

8    with a judge.

9           MR. BALLASES:  Okay.  Then unless we're going

10   to go directly to your ten minutes, then he's got to

11   get to the hospital.

12          MR. CHOUDHRI:  Mr. Ballases, if he's got to go

13   to the hospital, is there a mutually agreeable time

14   before he leaves that we can agree to maybe --

15          MR. BALLASES:  No.

16          MR. CHOUDHRI:  -- pick this up?

17          MR. BALLASES:  No.

18          MR. CHOUDHRI:  Are you not agreeing to resume

19   the deposition at a convenient time after his

20   emergency for his visitor -- for his family member in

21   the hospital?

22          MR. BALLASES:  I'm not right now.  You've had

23   plenty of time to ask questions.  You've asked

24   questions that had nothing to do with the limited

25   scope of the deposition.  I let you ask them.  I

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  223

1  probably shouldn't have.  And so you used your time as

2  you saw fit.

3         Do you all want to take a two-minute break or

4  five-minute break before we start the next one, or no?

5         MR. CHOUDHRI:  Mr. Ballases, I am -- this is

6  still my deposition that I'm asking questions on.  I

7  want the record to be clear.  Have you instructed your

8  witness to leave?  Have you instructed the witness to

9  leave --

10         MR. BALLASES:  He's gone.  Yes, he is gone.

11  He is gone.  I've instructed him to leave because he

12  has a family member who is dying.  I don't know how

13  much clearer I can make that.  Stop repeating

14  yourself.

15         MR. CHOUDHRI:  Well, Mr. Ballases --

16         MR. BALLASES:  So you can either --

17         MR. CHOUDHRI:  -- as you know -- can I finish

18  talking, please, before you keep --

19         MR. BALLASES:  No --

20         MR. CHOUDHRI:  -- cutting me off?

21         MR. BALLASES:  -- you can't.  You waste

22  everybody's time.

23         So we can start with the next deposition.

24         It's clear that --

25         MR. CHOUDHRI:  Mr. Ballases --

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  224

1          MR. BALLASES:  -- he's left, and it's clear

2    you want to ask questions.

3          So we can start with the next deposition now

4    or in two minutes.  Please make your decision.

5          Stephen, if you want to make it because you're

6    the lead, that's fine.

7          MS. HOOD:  Can I just say on the record that I

8    would like to finish my questioning of the deponent

9    when he has the next available opportunity that's

10   convenient for everybody so I can ask my four

11   questions.

12         MR. BALLASES:  And I would -- that's fine.

13   You can take it up with the Court.  He was on record

14   for five hours.  Take away maybe the 30 minutes where

15   we argued about the judge's oral order.  Four and a

16   half hours, that's plenty of time for this deposition

17   to go forward and for y'all to complete it.

18         We have two more people here, and I have till

19   4:30.  I'd like to get started to go as fast as

20   possible, but it's y'all's call.

21         MS. HOOD:  Okay.  Well, I'll just --

22         MR. CHOUDHRI:  Mr. Ballases, the time is --

23   the time is 3:30 p.m.  Is that --

24         Or, Court Reporter, would you just confirm

25   what time we have right now?

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                            225

1        MR. BALLASES:  No one needs to confirm the

2   time.  Do you want to get started with the next one or

3   not?  I mean, stop wasting everybody's time?

4        MS. HOOD:  I just want to -- for my part of

5   this, I wasn't -- I didn't adjourn the deposition with

6   regard to this deponent for my questioning.  I was

7   waiting for it to come back, to cycle around with me

8   again.  I have a few more questions for him, and I

9   want to finish those.

10        And I understand he's left, and I understand

11   the basis for it, and I wish all Godspeed to his

12   family member.  And I don't want to get involved in

13   any sort of issue about whether someone needs to

14   leave, doesn't need to leave, that sort of thing,

15   right?  I just -- and if we have to go back to the

16   judge for my four questions, I'm happy to do it.

17        I just want that on the record for me.  What

18   the other lawyer does and what Mr. Choudhri does --

19        MR. BALLASES:  (Unintelligible)

20        MS. HOOD:  -- I'm not in control of that.

21        MR. BALLASES:  I understand.  You've made

22   it -- you've put it on the record twice.  That's fine.

23   I understand, and I'll stipulate that you do have more

24   questions.

25        Do we want to go to the next witness now?

1        MR. CHOUDHRI:  Mr. Ballases, would you at

2   least provide, subject to your client's availability,

3   times you're available to resume the deposition of

4   Omar Khawaja?

5        MR. BALLASES:  No.  No, I will not.  I've said

6   that twice now.

7        MR. CHOUDHRI:  Are you not --

8        MR. BALLASES:  Do we want to move to the next

9   deposition?

10        MR. CHOUDHRI:  Are you going to refuse to make

11   him available --

12        MR. BALLASES:  Stop wasting time.  I'm not

13   going to provide it unless we have an order from a

14   judge.  Do you understand?  Stop wasting time.  We've

15   got a limited amount --

16        MR. CHOUDHRI:  Well, I just want to --

17        MR. BALLASES:  -- of time --

18        MR. CHOUDHRI:  -- get this on the --

19        (Crosstalk)

20        MR. BALLASES:  -- basis to take a deposition.

21        Do we want to move to the next person or not?

22   Please tell me.

23        MR. CHOUDHRI:  Before --

24        MR. BALLASES:  I would say, Stephen, it's your

25   job to say it.

1      MR. SATHER:  Yeah, I'm prepared --

2      MR. CHOUDHRI:  Mr. --

3      MR. SATHER:  -- to move to the next --

4      MR. CHOUDHRI:  Mr. Ballases --

5      MR. SATHER:  -- witness --

6      MR. BALLASES:  All right.  Let's go.

7      MR. SATHER:  Who do you have --

8      MR. CHOUDHRI:  Mr. Ballases --

9      MR. SATHER:  -- up next?

10     THE REPORTER:  I'm sorry --

11     MR. BALLASES:  Osama.

12     THE REPORTER:  Okay.

13     MR. CHOUDHRI:  Mr. Ballases --

14     MR. BALLASES:  Osama's ready to go.

15     MR. CHOUDHRI:  Time out.  I just want to get

16   this on the record very clearly, Mr. Ballases.

17     MR. BALLASES:  Oh, Jesus.

18     MR. CHOUDHRI:  I just want to make it --

19     MR. BALLASES:  It's on the record clearly.

20   Stop wasting time.

21     MR. CHOUDHRI:  You are not willing to

22   cooperate to resume the deposition of Omar Khawaja

23   absent a court order.  Is that your position?

24     MR. BALLASES:  I've stated my position.  Let's

25   move forward.

OMAR KHAWAJA                                              September 11, 2024
TEXAS REIT LLC                                                          228

1          Let's take a two-minute break, and then

2    Osama's going to be in this chair.

3          THE REPORTER:  Okay.  So I am going off the

4    record.

5          (End of proceedings at 3:31 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                        229

1              CERTIFICATE OF REPORTER

2

3              I, CHERYL MADRIAGA, a Shorthand

4    Reporter and Notary Public in and for the State of

5    Texas, do hereby certify:

6

7         That the proceeding took place before me at

8    the time and place herein set forth; that the

9    testimony and proceedings were accurately captured

10   stenographically by me during the proceeding.

11

12        I further certify that I am not related to any

13   of the parties to this action by blood or marriage and

14   that I am not interested in the outcome of this

15   matter, financially or otherwise.

16

17        IN WITNESS THEREOF, I have hereunto set my

18   hand this 18th day of September 2024.

19

20        _____

21        CHERYL MADRIAGA, SHORTHAND REPORTER

22

23

24

25