```
                       UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                        .
IN RE:                                  .  Case No. 23-34815
                                        .  Chapter 11
GALLERIA 2425 OWNER, LLC,               .
                                        .  515 Rusk Street
                                        .  Houston, Texas 77002
                   Debtor.              .
                                        .  Thursday, December 5, 2024
. . . . . . . . . . . . . . . .         .  8:59 a.m.


              TRANSCRIPT OF HEARING ON EMERGENCY MOTIONS
                BEFORE THE HONORABLE JEFFREY P. NORMAN
                 UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the National Bank      Pillsbury Winthrop Shaw Pittman LLP
of Kuwait:                 By:  ANDREW M. TROOP, ESQ.
                           31 West 52nd Street
                           New York, NY 10019
                           (212) 858-1000

                           Pillsbury Winthrop Shaw Pittman LLP
                           By:  CHARLES C. CONRAD, ESQ.
                           609 Main Street, Suite 2000
                           Houston, TX 77002
                           (713) 276-7600


APPEARANCES CONTINUED.

Audio Operator:            Terry Lozano, ERO

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**EXHIBIT**
**20**

```
TELEPHONIC APPEARANCES (Continued):

For the Debtor:            Cecere PC
                           By:  JOSEPH C. CECERE, II, ESQ.
                           6035 McCommas Boulevard
                           Dallas, TX 75206
                           (496) 600-9455


For the National Bank      Pillsbury Winthrop Shaw Pittman LLP
of Kuwait:                 By:  PATRICK E. FITZMAURICE, ESQ.
                           31 West 52nd Street
                           New York, NY 10019
                           (212) 858-1000


For the Trustee:           Shannon & Lee LLP
                           By:  R.J. SHANNON, ESQ.
                           2100 Travis Street, Suite 1525
                           Houston, TX 77002
                           (713) 714-5770
```

1        (Proceedings commence at 8:59 a.m.)

2            THE COURT:  All right.  Good morning.  It's 9 a.m.,

3   and we're on the record for Thursday, December the 5th, 2024.

4   There's only one matter set at 9 a.m., and that is

5   Galleria 2425 Owner, LLC.  Appearances, please.

6            MR. TROOP:  Good morning, Your Honor.  Andrew Troop

7   with Pillsbury Winthrop Shaw Pittman on behalf of National Bank

8   of Kuwait for itself and the assignee.  I'm here with Charles

9   Robbins -- Charles Robbins, Charles Conrad; Charles Robbins was

10  my first partner -- Charles Conrad, and on the line also is our

11  partner, Patrick Fitzmaurice.

12           THE COURT:  Thank you.  Other appearances?

13           Mr. Cecere, you are apparently muted.

14           MR. CECERE:  Good morning, Your Honor.  This is

15  Carl Cecere appearing for Jetall Companies and 2425 WL in this

16  case.  I have also got Mark Snow on the phone, I believe, but

17  he is not able to get the link to work for him.

18           THE COURT:  All right.  Thank you.

19           MR. SHANNON:  Good morning, Your Honor.  This is

20  R.J. Shannon on behalf of Christopher Murray, trustee of the

21  liquidating trust.  We aren't a party to the actual motions

22  that are proceeding, but just here for the hearing and to

23  observe and to answer any questions the Court may have of us.

24           THE COURT:  All right.  Thank you.  All right.  I

25  reviewed the docket this morning, and I'm assuming the parties

1  are aware that there was a suggestion of bankruptcy filed by

2  Jetall.

3          MR. TROOP:  Yes, Your Honor.

4          THE COURT:  I reviewed the petition in the docket.

5  It's a little bit strange in that it looks like Jetall actually

6  filed an involuntary against itself, at least as you read the

7  docket, but there is a petitioning creditor in the schedules.

8  I looked, there does appear to be a legitimate company called

9  The Petitioning Creditor.  So I'll turn to the parties as to

10  what they want to see happen today, and I'll start with

11  Mr. Troop.

12          MR. TROOP:  Thank you, Your Honor.  Your Honor,

13  we're here on two motions today, right?  The first is -- there

14  are two motions.  I'm actually going to take them out of

15  order --

16          THE COURT:  Okay.

17          MR. TROOP:  -- given I think we're going to talk

18  about Jetall more.  The first motion is with respect to 2425 WL

19  and compelling it to release its lien against the property.

20  There is no bankruptcy filed by or against 2425 WL.  There is

21  no relief sought against Jetall in the emergency motion filed

22  against 2425 WL.

23          And in the response that was filed, identified as a

24  combined response by Jetall and 2425 WL, there is not a single

25  statement in opposition to the relief requested against

1  2425 WL.  And in fact, there can't be, Your Honor.  There can't

2  be.  You entered an order free and clear.  We could require

3  people to release liens.  If they didn't, we had the right to

4  come back to you.

5        When we were here -- well, not physically here in

6  this courtroom, but before you about ten year -- ten days ago,

7  we made the point that the past is prologue, and the past is

8  prologue.  We made a demand for the delivery of the release.

9  We heard nothing.  We heard that, well, if we withdraw the

10  motion, they might deliver -- they'd deliver a release, but

11  they didn't.  And there's just absolutely no reason to delay

12  cleaning up that part of the title pursuant to your free and

13  clear order.

14        And so on that, Your Honor, I would ask that you

15  grant the motion, and I'll cede the podium.

16        THE COURT:  Mr. Cecere?

17        MR. CECERE:  Your Honor, we disagree with the other

18  side, the movants, that they were requested by the movants with

19  regard to 2425 WL does not implicate Jetall, and I'm going to

20  share my screen.  This is their proposed order, 839-1,

21  Paragraph 6.

22        THE COURT:  If you're sharing your screen, I'm not

23  seeing it.

24        MR. CECERE:  Okay.  It's coming now.  Okay.  So I'm

25  sharing my screen, Paragraph 6.  They are not only requesting

1   that title agents and title insurance underwriting is given an

2   order saying that the lien is invalid and that the people

3   responsible for recording these instruments are going to put

4   something in the title record requiring that it be recorded

5   that this lien was invalid, they are also including in

6   Paragraph 6, a I think wildly overbroad and improper injunction

7   that would prohibit 2425 WL and any affiliate entity, including

8   without limitation Jetall Companies, Inc. -- that is the debtor

9   in bankruptcy -- and other affiliated entities from doing

10  anything and for being either enjoined and barred in bringing

11  any action in any court challenging titles to property.  That

12  clearly violates the stay to impose that kind of relief.

13          As we mentioned in our response, this was filed

14  from a combined response to both motions.  That would also

15  impact the state of the Texas relief bankruptcy because all of

16  the affiliated entities are alleged to be (indiscernible)

17  those.  We think the automatic stay therefore applies to all of

18  them.  And we also think that those parties aren't before the

19  Court.  There is no basis to order that now those parties be

20  enjoined from challenging titles in completely separate

21  proceedings when there's no other -- when only 2425 WL is

22  before the Court.

23          There's also been another development that I think

24  is important, and I don't quite know why Counsel isn't

25  mentioning it, and that is the disqualification of Pillsbury

1   Winthrop to bring any actions against any of these entities.

2   There was an order disqualifying Pillsbury specifically

3   intervening in the forceful injury detainer action.  We talked

4   about this in our last hearing.  That is -- that was -- it's

5   our Exhibit 847-4.  I'm going to share that one as well.

6           Now, this order doesn't just apply to actions

7   against Jetall.  It applies to any action against -- it applies

8   to Pillsbury Winthrop and disqualifies them from anything on

9   related issues that may appear in adversarial proceedings, and

10  the order specifically finds related issues to include matters

11  involving the property.  So we think anything related to the

12  property (indiscernible) in this case is also within the scope

13  of the disqualification order.

14          Now, late last -- late yesterday we learned that

15  the movant had received an order that purported to remove the

16  disqualification of Pillsbury, and I'm going to turn to --

17          MR. TROOP:  Objection, Your Honor.  Relevance.

18  There's no motion before you to disqualify, number one.  Number

19  two, there is an order of the JP Court which is on its docket

20  and easily reviewable by you which amends this order to state

21  specifically no disqualification of Pillsbury.

22          If anyone has a complaint about that, let them go

23  back to the JP Court.  This is not the issue that we had here,

24  which was the implication in terms of appearing before you, and

25  again trying to be prudent, this is -- there's just no basis

1  for this, Your Honor, and I don't think we should spend any

2  time on it.

3          THE COURT:  Mr. Cecere, I'm going to sustain the

4  objection as to relevance.  And as I said at a prior hearing,

5  that if you want to disqualify any lawyer in front of me, you

6  need to file such a motion in front of me.  I could really --

7  and I say this with all due respect, understanding that when I

8  say that, I really probably don't mean it, I'm not really

9  concerned with what the JP Court has done.  I take anything

10 they do with a grain of salt.  With all due respect to their

11 jurisdiction and what they can and cannot do, they are, you

12 know, an inferior court as far as I'm concerned.  So I'll

13 sustain that objection.

14          All right.  Go ahead.

15          MR. CECERE:  Your Honor, with that in mind, we feel

16 it's necessary to move to disqualify Pillsbury because they

17 are -- they were the co-counsel and they may have received

18 something (indiscernible).

19          THE COURT:  And if you would like to do that, I

20 would like you to file a written motion.  I'm not going to

21 entertain an oral motion for disqualification.  It's too late

22 at this point in time, and it's without notice specifically.

23 And I believe that there's been a district court judge who's

24 already said that you can't simply raise it at a hearing,

25 because it's too late, and that happened on an appeal in 2425.

1          So move on to something else because that's not
2    making any traction.
3          MR. CECERE:  Okay.  Thank you, Your Honor.  We --
4    with regard to the relief requested in the order, we did not
5    want to sign a voluntary lien release, at least without getting
6    some kind of assurance from the Court, from the other side,
7    that there would be no further consequences.
8          We didn't want to release the lien because
9    obviously we have several appeals dealing with 2425 WL's
10   asserted liens, and we were worried that voluntarily
11   relinquishing any interest in those liens would cause problems
12   for those, and they might say that we lacked standing or that
13   we lacked the decisionable interest in the lien after releasing
14   them.  They're making exactly those kinds of objections in the
15   appeals that are ongoing right now, so we didn't feel it was
16   prudent without some assurance from them that we would
17   voluntarily do those liens.
18         Now, with regard -- we don't oppose the idea of
19   them getting -- obtaining some sort of order, some form of
20   order by which they direct the title record keepers to
21   disregard a lien.  The liens has been invalidated.  They were
22   invalidated in the plan.  They were invalidated by this Court's
23   specific order invalidating them separately, and the sale order
24   gives the Court the power and the parties the right to request
25   that the records be changed.

1          What we object to in this case, however, again, and

2    I'm just going to bring you back to it, is Paragraph 6, which

3    is much too broad and invalid in this case, we think, because

4    not only does it deal with parties well beyond 2425 WL, when

5    you're only dealing with 2425 WL's lien in this case, it also

6    permanently enjoins them from ever bringing any action to

7    challenge title of a property, when we know from the eviction

8    action that we are challenging title of property.  We assert

9    that we still have a valid lease, and we think that is an

10   entirely valid contention and it has nothing to do with whether

11   or not this lien gets released.

12          Our lease is completely separate from that lien.

13   That's a completely different interest, so we don't think that

14   one should flow from the other or that we should be prohibited

15   from doing any kind of action in this other case because of the

16   release of lien in this case.

17          We think they're entitled to clear the property,

18   although we don't think there's any particular emergency that

19   requires us to do it right now.  But what we object to is the

20   idea that there be an injunction included in this order that

21   (indiscernible) directed to the title record keepers that

22   permanently enjoins us from ever challenging title in any

23   proceedings regarding any entity related to Mr. Choudhri.

24          We also will point out that that would also run

25   into problems with the automatic stay in the Texas

1   (indiscernible) case, because there's been allegations of alter

2   ego.  And as we outlined in detail in our response, an

3   allegation of alter ego subjects the alter ego to the automatic

4   stay in bankruptcy if one if the alter egos is a bankrupt party

5   because that -- the allegation of alter ego means that someone

6   is alleging that the property of one company is the property of

7   the other, that they're one and the same.  And that means the

8   alter ego is holding property of the estate and is subject to

9   the stay under (a)(3) (indiscernible).

10          So for all those reasons, we think that Paragraph 6

11   should be stricken from the order, if the Court is inclined to

12   grant this motion.

13          THE COURT:  Mr. Troop?

14          MR. TROOP:  If I may, Your Honor.  Andrew Troop for

15   NBK.

16          Your Honor, these parties are already enjoined in

17   an order from challenging title to the property.  That's what

18   your sale order says.  The -- in addition, not one of these

19   parties, not one of these parties objected to the entry of the

20   sale order.  Not one of these parties appealed the entry of the

21   sale order.

22          With respect to whether this is a violation of the

23   automatic stay, it is not a violation of the automatic stay for

24   you to say that your order conveyed the property free and clear

25   of someone -- of anyone's claim or interest in it.  That

1  predates the filing of the Jetall involuntary petition, and it

2  is an argument in connection with the alter ego lawsuit that

3  has been around for a long time and never raised.

4          Finally, Your Honor, I note that, with all due

5  respect to Judge Isgur, I actually think Judge Isgur's analysis

6  in the transcript that was attached, which I -- I'm sure you

7  read, has it backwards because what he says is that without any

8  affirmative relief being granted by the Bankruptcy Court in the

9  Western District of Texas extending the automatic stay, it

10 is -- it might be automatically extended to an alter ego

11 because the claims are that the creditors of the alter ego are

12 also creditors of the debtor, right?  That's what the claim is.

13         So what Judge Isgur said was, well, that means

14 there could be a diminution in the value of the estate,

15 presumably the Texas REIT estate, because creditors of these

16 non-debtor entities have claims against the creditors of the

17 non-debtor entities.  And, Your Honor, that's true against a

18 guarantor.  That's true against someone who's jointly and

19 severally liable.  That's true in a whole host of ways.

20         There's no automatic extension of the automatic

21 stay to a far-flung group of, we'll admit for argument

22 purposes, related entities.  And I think that Judge Isgur was

23 being very deferential to Judge Robinson, right, in Austin.

24 But with all due respect, and he's really often right, on this

25 one, I think he's got it wrong.

1            There is no implication from the Texas REIT

2    bankruptcy, and if the Texas REIT debtor, during the course of

3    its entire proceeding had thought that was true, would it not

4    have filed a motion to extend the automatic stay or for some

5    affirmative injunctive relief under Section 105?  There's just

6    no reason to give credence to that argument.

7            And secondly, Your Honor, telling someone that they

8    can't violate your existing order is not a violation of the

9    automatic stay, because what it's saying here is you can't

10   challenge my order which established title.  In fact, if they

11   want to do that, they should have come back to you.  Not a

12   collateral attack.  And they are not doing that.

13           Secondly, Your Honor, a claim is -- in this

14   context, right, is a claim that is either a right to money

15   damages or a right to equitable performance that gives rise to

16   money damages.  This doesn't ask for that.  This doesn't ask

17   for the establishment of a claim or a right to payment.  The

18   automatic stay doesn't apply to that.

19           And it's also not an argument that again, and I'm

20   repeating myself here, that they assert an interest in property

21   because what they assert is that your order didn't do what it

22   said, and they've waived that, period.

23           So I don't think there's any reason not to enter

24   Paragraph 6, but if that's what's preventing you from entering

25   this order, Mr. Conrad and I will talk about perhaps how we

1    could pare it back.  But it would be without prejudice to the

2    arguments that I just made.

3              THE COURT:  All right.  Mr. Cecere, I'll let you

4    respond one more time to the arguments of Mr. Troop, and then

5    we can go from there.

6              MR. CECERE:  Thank you, Your Honor.  What I heard

7    from Mr. Troop kind of confused two different stay issues.

8              As we mentioned, now that Texas -- now that Jetall

9    is in bankruptcy, no release can be entered against it.  And

10   the idea that this is no -- there's no harm, no foul, you know,

11   here because this is already -- they're already prohibited from

12   bringing lawsuits, that's not true at all.  We are entitled to

13   bring lawsuits on behalf Jetall.  I'm not saying there will be

14   (indiscernible).

15             THE COURT:  Whoa, whoa, whoa, whoa, whoa, whoa,

16   whoa, whoa.  Hold on for one second.  So you think that my

17   prior order doesn't prohibit Jetall from suing relative to

18   title to this property?  Because I think it does.

19             MR. CECERE:  Well, I mean, I think we have to -- I

20   think we have to (indiscernible) order.

21             THE COURT:  You have to comply with my prior orders

22   irrespective of the bankruptcy proceeding.

23             MR. CECERE:  Well, I mean, I think that your prior

24   orders speak for themselves in that regard, but I don't think

25   that they're blanket prohibitions on any kind of suit, and I

1    don't think they prohibit Jetall from suing (indiscernible).

2            THE COURT:  Okay.  So let me be clear, Mr. Cecere,

3    so that you're aware of where I stand, because I think I've

4    already said in one of my orders, I think that where we are now

5    is to a point of basically vexatious litigation.  And I've

6    warned in my prior order that if it continues, I will sanction.

7    I'll come down hard on the parties, and that includes you,

8    okay, just so you're aware of that.

9            So my orders say what they say.  It's a sale free

10   and clear of liens.  I don't think you can challenge title at

11   this point in time.  I'm worried about stepping on the

12   automatic stay, and I'll take those concerns into consideration

13   when I draft an order.  But I think your arguments that you

14   somehow have a right to challenge, in Jetall's case, I don't

15   think it exists, okay?  And I'll rule on that till the cows

16   come home, okay?  Just so you're aware.  All right?

17           MR. CECERE:  Okay.  And I certainly respect your

18   order.  I would just suggest as sensitivity (indiscernible) to

19   automatic stay and to not adjudicate any kind of claim that

20   that Paragraph 6 be stricken.

21           MR. TROOP:  Well, I think -- I think here's the

22   problem.  I think that this is the argument that's being made.

23   I've already -- I've already, in effect, ruled on the claim,

24   and all this is doing is confirming that.  But again, I am --

25   I'm a bankruptcy judge.  I don't want to step on the automatic

1    stay.  And I do understand that argument, all right?

2            MR. CECERE:  Well, I -- and I -- and just one final

3    point, if I might, Your Honor.  The fact that -- the fact that

4    you might have reason to invalidate the lien of one party in

5    this order doesn't really give any reason to, you know, even

6    get -- wade into the thicket of the automatic stay.  All of

7    those other entities are subject to their own orders that

8    you've already entered.  There's just absolutely no grounds to

9    put anything in this order that pertains to them.

10           And if the Court is concerned about the

11   vexatiousness, the alleged vexatiousness of these parties,

12   there are sanctions that can be imposed, and we want to steer

13   well clear of that, to be very clear.  But like -- but in

14   imposing this kind of injunction without notice to these

15   parties, without them being able to appear before the Court, we

16   think would be inappropriate.

17           And again we also think there's no emergency that

18   requires this.  You know, there's no -- there's been no

19   (indiscernible) of title by all of these associated entities in

20   Paragraph 6.  So I think that, given the sensitivity regarding

21   the stay, both in the Texas REIT case and in the Jetall

22   Companies' case, we would suggest that Paragraph 6 be -- 6 be

23   stricken.  And again, we understand where you are on that.

24           THE COURT:  All right.  Mr. Troop, I'll let you

25   close.

 1            MR. TROOP:  Thank you, Your Honor.  Thank you very

 2   much.  Your Honor, I think that the Western District of Texas

 3   Bankruptcy Court does not have exclusive jurisdiction in

 4   determining whether the automatic stay applies.  You have the

 5   ability to decide that the automatic stay does not apply in

 6   this case, whether it's the Texas REIT bankruptcy or the Jetall

 7   bankruptcy.  That is not a provision of the Bankruptcy Code

 8   that is -- that rests in the exclusive jurisdiction of the

 9   Court in which it was filed.

10            We see state courts all over the country ruling,

11   and ruling and being sustained in ruling about the application

12   of the automatic stay in the matter before them.  So I would

13   just ask that you consider that as well on -- as you think

14   about this.  And of course, as I said, Your Honor, if there is

15   a particular issue you would like us to address here or think

16   about, we're happy to do that as well.

17            THE COURT:  All right.  Thank you.  So here's what

18   I'm going to do.  As it relates to ECF Number 239, I'm going to

19   grant that motion.  However, I may modify the proposed form of

20   order.

21            I make a finding on the record that the automatic

22   stay in the Texas REIT case doesn't apply to the current case.

23   I've always been of the belief that if a debtor wants to extend

24   the automatic stay to a related entity, it requires a motion

25   and an order.  It doesn't just happen automatically.

1          So any sort of claims that there's an automatic

2   stay in the Texas REIT case I think are remote, not well-

3   founded, and I'll deny any sort of relief related to that.

4          As it relates to Jetall, I do have some concerns.

5   I'm going to review the code.  I'm going to review my prior

6   orders.  There may be some modification of the order that is

7   proposed by the movant relative to Jetall.  If I believe that

8   order basically steps on the rights of the Western District and

9   the automatic stay, I will alleviate those without prejudice to

10  coming back.

11          I also intend, just so the parties are aware, I

12  don't think a judge has been assigned to the Jetall involuntary

13  case yet.  It's probably going to be Judge Bradley or Judge

14  Robinson.  I'm -- I mean, I know them personally.  So when a

15  judge gets assigned, I will reach out to them and make sure

16  that, as a practical matter, they don't have concerns about me

17  perhaps signing this order, which may delay the order by a day

18  or two.  But if they have no concerns once they see the order

19  and we have some discussions, then perhaps the automatic stay

20  isn't even an issue at all.  All right?

21          MR. TROOP:  Thank you.

22          THE COURT:  Thank you.  All right, Mr. Troop, you

23  want to address --

24          MR. CECERE:  With respect, Your Honor --

25          THE COURT:  -- the next motion?

1          MR. CECERE:  -- can I -- can I say one more thing,

2   Your Honor?  We do object to you reaching out and discussing

3   the case with the other judges, but with that said

4   (indiscernible).

5          THE COURT:  Well, you can object all you want.  I'm

6   going to do it anyway.

7          MR. TROOP:  Okay.

8          THE COURT:  Okay.  Thank you.

9          MR. CECERE:  Okay.

10          MR. TROOP:  I --

11          THE COURT:  I think it's within my discretion.

12          MR. TROOP:  Your Honor, I agree.  But if you'd

13   like, I will file a motion for a joint sitting.

14          THE COURT:  Okay.  I don't think it's necessary.

15   Thank you.

16          All right.  So let's talk about the next motion.

17          MR. TROOP:  I will, but just before we do, I think,

18   on the record, you said you were going to do an order with

19   respect to 289?

20          THE COURT:  No, 239, isn't it?

21          MR. TROOP:  I think it's 839

22          THE COURT:  Oh, excuse me.  It is 839.  I'm looking

23   at -- I just for some reason said 239, but it's 839.  I

24   apologize.

25          MR. TROOP:  Thank you, Your Honor.  With regard to

1   the motion as it relates to Jetall, Your Honor, again, I don't

2   think the automatic stay applies.  This is an order confirming

3   your existing order for them to vacate the property.

4         And, Your Honor, I don't think that they can argue

5   that there is an interest in the property.  This property was

6   sold free and clear of all liens, claims, encumbrances, and any

7   other interest.  The lease was neither assumed nor assigned to

8   the buyer.  The buyer took the property free of the lease.

9   There is no leasehold relationship between a buyer and Jetall.

10         Jetall is at best, at best a tenant at sufferance,

11   which gives it no -- real no -- really no continuing interest.

12   And therefore, Your Honor, this is analogous to 362(b), I think

13   it's (5), which says specifically that the automatic stay does

14   not apply to a lease that's been terminated prior to the filing

15   of the bankruptcy, right?  It doesn't apply.

16         Here there was no lease, as I said, between the

17   assignee and Jetall.  So there's no prohibition in entering an

18   order, and you can decide that the automatic stay, if it might

19   otherwise apply to this case, as it was, and I'll come back to

20   that, but it doesn't apply here because of the exception.  It

21   doesn't apply here because of the exception.

22         Secondly, Your Honor, I have to say that it is

23   curious that an involuntary petition was filed at nine o'clock

24   last night by a single petitioning creditor.  And as I think I

25   saw the same thing you did, Mr. Cecere has already filed it.

1    Your Honor, that smacks of bad faith.  And whether you decide

2    that or the judge in the Western District of Texas will decide

3    that, I do think that's a significant issue here, a significant

4    issue here.  There may be other issues in connection with the

5    filing, but it's that as well.

6              Finally, Your Honor, it seems to me that this

7    Chapter 11 case, and the specific reason that it was filed, and

8    the specific fact that, until last night, Jetall's headquarters

9    and location was in Houston.  Its largest -- the petitioning

10   creditor is in Houston, the building is in Houston, the buyer

11   is in Houston, that this is really the first filed case.  And I

12   think you could, if you wanted, enter an order today

13   transferring that case here.

14             That would eliminate any need to coordinate with

15   Judge Bradley or Judge Robinson.  It would give you the ability

16   to say, without hesitation, I find the automatic stay doesn't

17   apply.  And if we have to file -- if we have to pay our filing

18   fee to do that for that, I will do that immediately.  And you

19   are able, as frankly, Your Honor, you should, even here,

20   enforce your order, your existing sale order.

21             This is not a case where there is a lease.  This

22   is -- this is not preserving an asset of the estate, of an

23   estate, an estate.  This is interposed to continue a pattern.

24   I would also say vexatious litigation, but at the very least

25   delay, at the very least delay.

```
 1              At an earlier hearing, Your Honor, I think, in
 2    connection with the confirmation and plan of reorganization, I
 3    looked at you and I said, enough is enough, it's time to move
 4    forward.  That's what this is, enough is enough.  There's no
 5    reason not to enter this order, there's no reason not to
 6    require Jetall to take its furniture.  Maybe it has an interest
 7    in the furniture, to take its furniture out, but it preserves
 8    the value of its estate if it does that.  But it has no
 9    interest.  The property has been sold free and clear of that
10    interest.
11              And, Your Honor, there is a -- an argument made in
12    the reply that somehow we've already given Jetall until
13    December 18th to get out.  Mr. Cecere was very clear when he
14    said, well, we'll give a release on the other part if we
15    don't -- if we know we're not going to get sued, but I'm not
16    waiving that right.
17              And here there's not a statement that says, oh, and
18    we'll get out by December 18th, we'll comply.  Not that that
19    would be acceptable under the circumstances, but it's not even
20    offered.  And instead, Your Honor, you can see the letter,
21    which both he and we attached as exhibits and filed as
22    exhibits.  I apologize, I don't remember the exhibit number off
23    the top of my head.
24              Can you -- the letter that we sent, we'll put that
25    in the record in just a minute.
```

1          But our reservation of rights, with respect to

2    coming here for relief for any purpose unrelated to, in

3    addition to, on a different time schedule than what was

4    filed -- what was sent as purely, purely a precautionary

5    measure, as it says in its -- in -- on its face.

6          Which, Your Honor, it's 14, Your Honor, I think

7    Exhibit 14.  And, Your Honor, when you put all that together,

8    there's simply no reason not to enter an order compelling

9    Jetall to vacate the property at 2425 West Loop South at this

10   time.  Thank you, Your Honor.

11          THE COURT:  All right.

12          Mr. Cecere?

13          MR. CECERE:  Your Honor, several responses, but I

14   would like to start with the contention that there's a

15   provision in the code that (indiscernible) evictions

16   (indiscernible) code that Mr. Troop claims doesn't exist, so I

17   don't quite know what he's talking about.  There are provisions

18   in the code that relate -- that have exceptions to the

19   automatic stay for residential reasons.  I can provide those to

20   you later on.

21          I don't want to exhaust (indiscernible), but

22   there's nothing that says anything about commercial property in

23   providing exemptions -- exceptions to the automatic stay,

24   allowing evictions just because it's a commercial property.

25   And I don't think that that -- I -- so I think that the

1   automatic stay is a dead letter for any argument about evicting

2   Jetall.

3           Now, I will reiterate the points that we made in

4   our motion, in our response.  There's no personal jurisdiction

5   here.  Jetall has never appeared in this proceeding.  It has

6   never been provided with service of process.  And all we did is

7   submit a claim, and submitting of the claim under

8   Granfinanciera, allowing the Court to be exercise

9   (indiscernible) authority with regard to adjudicating a claim,

10  but it doesn't allow it to be a roving commission, doing

11  whatever it wants to a creditor simply because that creditor

12  has to come to court.

13          So we object on that basis.  We've heard no

14  response on personal jurisdiction from Mr. Troop or the movants

15  in this case.  There's no subject matter jurisdiction to do the

16  eviction, especially under these circumstances, because there's

17  got to be some connection to the estate in order for

18  jurisdiction to attach.

19          And when this property was sold, the connection

20  between the debtor and the property and the estate and the

21  property was severed.  Now it's in the hands of a party that

22  has nothing to do with this bankruptcy, that didn't even exist

23  when the bankruptcy was filed, and it's an assignee of -- and

24  its only relationship to this case is that it's an assignee of

25  an interest of a plan proponent and creditor (indiscernible).

1    That is not enough to bring this case before the Court.  Now,

2    the movant has suggested that the fact that this involves your

3    sale order somehow makes this a core proceeding, but the

4    Court's authority to interpret its order and enforce its order

5    doesn't allow it to expand its orders in the areas where it

6    doesn't have jurisdiction.

7              And in this case, I disagree entirely with

8    Mr. Troop, and I haven't heard any real argument to the

9    contrary, the sale order does not -- does not order a change of

10   possession from Jetall to anyone else.  It does not -- it does

11   not effectuate anything at all in that regard.  It transfers

12   the property subject to any interest that may be attached, and

13   any wrinkle that may exist, to a new buyer.

14             And there is a provision that says it comes free

15   and clear of liens.  It's not even clear, and Mr. Troop hasn't

16   established that liens or encumbrances incorporate leases,

17   leasehold interest, which (indiscernible) under the property as

18   a whole, but just are interests that are also subject to the --

19   to the overall ownership of the property.  And in a commercial

20   property, you want to have tenants.  That's the idea of these

21   sorts of properties.

22             And so -- and we also respectfully disagree that we

23   don't have any kind of interest in the property as with regard

24   to our lease.  That really just flouts a number of code

25   provisions, in addition to the (indiscernible) under

1    Section 363, and that (b) and (f), "A sale free and clear

2    cannot destroy rights in a leasehold without adequate

3    protection," which the plan does not provide to Jetall.

4            And even if the debtor rejects the lease outright,

5    the lessee has the right to remain on the property through its

6    term under Section 365(h)(1)(A)(ii), "To the extent such rights

7    are enforceable under applicable non-bankruptcy law."

8            And under 103 (indiscernible) this is one of

9    (indiscernible) own cases.  And that cites, it interprets all

10   the authorities I've just mentioned, the Court, the Fifth

11   Circuit, held that the requirements of -- that if a tenant

12   (indiscernible) is current on its lease obligations -- and

13   there's been an allegation in this proceeding that Jetall was

14   not -- that the tenant can stay even after the sale is free and

15   clear.

16           That's what we show, and they have not

17   distinguished it.  They distinguished it on the fact -- by the

18   fact that the tenant in that case was evicted, but the tenant

19   in that case was behind on its rent.  So under non-bankruptcy

20   law, it could have been evicted.  But they have provided no

21   reason other than the existence of this bankruptcy and supposed

22   termination of our leasehold interest to suggest that they --

23   that we can be evicted in this case, and that termination of

24   our legal interest just simply didn't happen.  It didn't happen

25   (indiscernible)  because there was a sale free and clear

1   (indiscernible) and also it didn't happen because our lease was

2   being rejected under the plan, because that really put the

3   debtor in breach.

4            And that's 11 U.S.C. 365(b)(4), and I'm also

5   citing -- these are cases cited in our response.

6   (Indiscernible) Continental Airlines in saying that the -- a

7   (indiscernible) rejection does not terminate the lease.  It

8   just puts the debtor in violation of the lease.  So we think we

9   have a legal interest.  We do -- we have a valid lease.  We

10  have a right to be on the property, and that's one of the

11  reasons that, you know, living under the JP Court, they lost.

12  And they can try again if they want to prove otherwise, but

13  they can't -- they cannot come here and convert this Court into

14  a glorified justice of the peace.

15           The exclusive jurisdiction of the eviction

16  (indiscernible) with the justice of the peace.  That's defined

17  under the Texas law that they admit (indiscernible) provides

18  the only authority for them to (indiscernible) find any

19  (indiscernible) in any statute anywhere that would allow them

20  to evict us.  And they find no (indiscernible) in the code that

21  would allow them to anything of the kind.

22           And I would address some other points that they

23  made as well, in addition to the fact it was kind of a

24  (indiscernible) objections we've already made that

25  (indiscernible) will violate the automatic stay in both Texas

```
 1   REIT and in the Western District of Texas.

 2            The suggestion that this is in bad faith from two

 3   lines on a bankruptcy filing seems to me extraordinary

 4   (indiscernible) and I think frankly ridiculous.  They had no

 5   idea who (indiscernible) relationship to the -- to the debtor,

 6   and they -- and they also have no basis to conclude, based on

 7   two lines in a bankruptcy filing, that this was fictitious or

 8   that there's no office in Austin by which we can do this.

 9            If they want to make those allegations, they're

10   free to do so.  They -- I would respectfully suggest that they

11   come forward with actual proof.  But based on what they're

12   suggesting now, I think it's ridiculous of them to suggest that

13   this is bad faith or that there (indiscernible) here.

14            And now, what I find most extraordinary about

15   Mr. Troop's argument here is he says that we are trying to

16   delay things with this.  Now, that -- in that -- and that we

17   had promised that we would be gone by December the 18th.  I

18   don't see we ever made any type of promise that we would be out

19   of this office by December the 18th.  To be perfectly frank,

20   given the nature of the -- of our office space, we're not going

21   to be able to get out that fast under any circumstances.

22            What we're saying is we had a lease (indiscernible)

23   to do something.  That was the bare minimum, and that was the

24   bare minimum in the promise that they made to us.  They gave us

25   30 days to vacate.  They gave it to us four different times,
```

1   and on (indiscernible) to evict.  And that is, by the way, in

2   846-22 of their exhibits and 847-3 of ours.  Four different

3   times they say Jetall shall vacate the property by December the

4   18th, 30 days from the date of this notice.

5          Now, they just don't want to comply with their own

6   vacate notice.  They just don't want to comply with the promise

7   that they made that we would have 30 days at least to get out

8   of the property.  They just wanted (indiscernible) go faster.

9   That is not an emergency that justifies any kind of

10  extraordinary (indiscernible).  It certainly doesn't justify

11  having this Court step into the shoes of the justice of the

12  peace.  It definitely doesn't allow the Court to enter an order

13  that contradicts the terms of the -- of the justice of the

14  peace order, which said that we would get -- said we had to get

15  valid notice in the right to vacate, and (indiscernible)

16  satisfying the requirements that they have bound themselves to

17  under the Texas (indiscernible) to evict Jetall.

18         And I'll say one final thing.  The idea that they

19  can use the justice of the peace court for the purchase of the

20  property, can use the justice of the peace court and then come

21  to this court, violate (indiscernible) doctrine, but also

22  (indiscernible) and I heard no discussion about how they can

23  square the contention that as state court losers they can now

24  collaterally attack the justice of the peace's holding, do the

25  exact (indiscernible) form of relief that they sought from the

1    justice of the peace and the justice of the peace denied, and

2    we think that that is not going to fly, Your Honor.

3                    THE COURT:  All right.  Thank you.

4                    Mr. Troop, I'll let you close, and then I'll tell

5    you what I'm going to do.  Go ahead.

6                    MR. TROOP:  Thank you, Your Honor.  In -- I think

7    the order that the arguments were made, the argument with

8    regard to personal jurisdiction.

9                    Well, first I need to correct something.  I said

10   Mr. Cecere filed the (indiscernible).  We confirmed he didn't,

11   and I'll always stand up and tell you when I've made a mistake.

12   That doesn't, however, change my conclusion that there is

13   something that's (indiscernible) about this.

14                    Secondly, Your Honor, the issue with regard to

15   personal jurisdiction over Jetall.  Jetall, by its own

16   admission, resides here in Texas.  You have personal

17   jurisdiction nationwide, in fact, over parties, creditors,

18   counterparties to executory releases.  And there is no

19   requirement that in obtaining a sale (indiscernible) a summons

20   or a complaint needs to be filed.

21                    What has to happen is that notice has to be given,

22   and Jetall, as I recall, had a lawyer who appeared for it in

23   this case (indiscernible).

24                    MR. SHANNON:  Mr. Burkes.

25                    MR. TROOP:  What?

```
 1              MR. SHANNON:  Mr. Burkes.
 2              MR. TROOP:  Mr. Burkes appeared for it in this
 3  case.  Others I think appeared for it in this case.  And they
 4  had notice.  We gave notice to Jetall, as I recall.  We can
 5  check the certificate of service, but we're pretty good about
 6  stuff like that, as is Mr. Shannon.  The -- but regardless,
 7  personal jurisdiction isn't the question and a summons and
 8  complaint is not (indiscernible).
 9              Next, Mr. Cecere selectively refers you to your
10  sale order.  Whenever he talks about the sale free and clear,
11  he omits "and other interests."  What are other interests?
12  They have to be leases, easements, anything else that might
13  exist with regard to the property, which we had a right to take
14  (indiscernible).
15              And he also selectively forgets about the
16  provisions of the order that say no one -- that people will
17  surrender their property, if they're in possession of it, and
18  he admitted that Jetall is in possession of a piece of
19  property, and they have not surrendered it.  And there's
20  another provision in the order which says they won't interfere
21  with the enjoyment and use of the property, which they are
22  clearly doing.
23              With regard to in Royal Street Bistro, Your Honor,
24  as we identify in our papers, what that case says is don't
25  blindly file -- follow the Seventh Circuit's decision.  It
```

1   makes the question of whether or not there is a continuing

2   right under 365(h) to possess property even after a sale,

3   dependent on whether the sale took place while the lease was

4   neither assumed or rejected or after.  They say the test is was

5   the sale free and clear and did the bankruptcy court make the

6   requisite findings to do so.  And if so, it was free and clear.

7   It was free and clear.

8          And, Your Honor, the irony of the argument is,

9   assume for the moment that the lease had been assumed prior to

10  the sale.  In that circumstance, there would be no defense to a

11  sale -- free and clear sale order under 365(h).  If you ordered

12  it free and clear, it would be free and clear of the assumed

13  lease.  It might give rise against the estate, right, but it's

14  not an encumbrance that it can't be solved from.

15         The argument here says, well, because this lease

16  was ultimately rejected, we have better rights than someone

17  under an assumed lease would have.  That's why the Fifth

18  Circuit said it's not a timing question, it's a finding

19  question, a finding question under 363.

20         And then finally, Your Honor, I'm going to just

21  address briefly Mr. Cecere's argument, which I believe he made

22  last time a little bit, and I responded to it through that

23  motion (indiscernible).

24         He says that the JP Court effectively -- he says

25  this in his pleadings as well -- ruled against (indiscernible)

1  assignee for (indiscernible) given timely notice, appropriate

2  notice under (indiscernible).  I dare him to find that.  You

3  signed the order.  The order says no jurisdiction.

4           Did you find that case?

5           And, Your Honor, there's a state appeals court case

6  that I forgot the name of, which makes it really clear that the

7  failure to comply with notice is not jurisdictional.  You may

8  lose for not having given proper notice in an eviction

9  proceeding, but it's not for want of jurisdiction.

10  Jurisdiction says I can't decide this issue.  The JP Court said

11  I cannot decide this issue.  That order is on appeal, right?

12           We don't go back to the JP Court.  We're at --

13  we're at step one, looking at who has port -- who has the power

14  to compel Jetall to leave.  There may be another state court.

15  Who knows?  I'm not a Texas state court lawyer, but I am a

16  bankruptcy lawyer, Your Honor, and the cases are legion for

17  bankruptcy judges in enforcing their own orders to compel

18  parties to vacate the premises.

19           Your Honor, the case that I was referring to was

20  Alanis, A-L-A-N-I-S, v. Wells Fargo Bank National Association,

21  decided by the Court of Appeals not too far from here

22  (indiscernible) geography, right, the Fourth District, City of

23  San Antonio, Case Number 04-19-00461-cv.  And it has an

24  extensive discussion of what does it mean for a matter to be --

25  to have been dismissed for lack of jurisdiction as opposed to

1   for it having been dismissed for failure to give proper notice.

2   And with that, I commend that to the Court's review.

3            Your Honor, I go back to the beginning just very

4   quickly.  There's no interest in the property here that needs

5   to be (indiscernible) the automatic stay.  You are able to make

6   that decision.  You will not be stepping on Judge Robinson's or

7   Judge Brandon's toes if you do so.  The -- this is an issue of

8   you enforcing an existing order to vacate.  It is not an issue

9   to establish a claim or a right of payment.  This is a very

10   different issue than a common stay.

11            And if I -- if it says commercial or non-

12   commercial, 541 of the Bankruptcy Code makes clear that a lease

13   which has been terminated, commercial or not commercial, prior

14   to the filing of the bankruptcy, in accordance with its terms

15   and any applicable law, does not become property of the estate.

16            That's what happened here.  There was no lease that

17   went to the -- to the buyer that can be enforced against the

18   buyer.  I make this statement about whether there are claims,

19   and the lease was openly rejected, right?  They get an

20   unsecured claim in this case if they have one that they can

21   prove up, although I don't think they ever filed a proof of

22   claim, but they're going to do so.  But that's a trustee issue

23   and not my issue.

24            And there's no reason to permit further delay in

25   allowing NBK's asking you to get control of this property that

1    it bought for their benefit.  Thank you, Your Honor.

2              THE COURT:  Mr. Cecere, I'm going to kind of

3    deviate from what I typically do and allow the movant to close

4    and allow you just a few brief moments to respond to anything

5    that Mr. Troop has said.

6              MR. CECERE:  I appreciate that, Your Honor.  I

7    would like to start first with the notion that personal

8    jurisdiction exists because you have nationwide jurisdiction.

9    I'm going to take us a little bit back to World-Wide

10   Volkswagen, but the concept of personal jurisdiction has two

11   things involved in it.

12             One is has the Court exerted its power over a

13   person to bring them within their jurisdiction?  The second is

14   does that action comport with substantial -- fair play and

15   substantial justice.  Are minimum contacts with the forum that

16   allow that person to have notice that would they be

17   ill-informed.

18             That's two different requirements.  There's the --

19   there's the minimum contacts requirement.  There is -- and that

20   is really applicable in state court.  We're not suggesting that

21   that aspect of this case is decided here.  We're in Texas and

22   we're in the United States, but what's missing here, and I

23   think -- fundamentally I think where we are at loggerheads with

24   the movants in this case is the idea that there is no summons

25   or no need.  You get summonsed and (indiscernible) detainer

1     action.  We received summons (indiscernible) action, because

2     that is the only way that a court can acquire jurisdiction over

3     the person before it.  I mean, and if the person is a corporate

4     person, that's the same sort of thing.  So we don't have

5     that -- we're not -- we're not arguing that.  I don't want to

6     confuse the Court at all and suggest that's what -- I'm going

7     to make that kind of argument, but I want to clarify that

8              MR. TROOP:  Troop, not Trump.

9              MR. CECERE:  -- because I think that Mr. Troop's

10    coming in the wrong place on that.  Now, and (indiscernible)

11    required summons.  In fact, we cited a case in our brief, I

12    believe it is Conrad from the Fifth Circuit saying you need to

13    have valid service and service of summons before you can do a

14    forcible entry and detainer action at all.

15             I also know that they don't deal with

16    Granfinanciera.  That is the limitations by appearing in the

17    case to assert a claim against a (indiscernible).  That is just

18    not an assertion that the Court can do whatever it wants to

19    that person.  Again, the Court has dealt with personal

20    jurisdiction.  It's got to exert a power over the person in

21    order for -- and it's got to be proper, and it's got to be

22    through proper channels in order for the Court to have

23    jurisdiction over the person.  That is a fundamental aspect of

24    federal procedure.  It's also a fundamental aspect of due

25    process and state procedure, too.  And we're just running

1    roughshod over that in this case, and they don't really have an

2    answer for that problem.

3              I -- I'm not -- I'm (indiscernible) to hear from

4    Mr. Troop that we're selectively reading the sale order, that

5    the provisions requiring that the -- that the property go free

6    of liens and that we not interfere with their possession of the

7    property, that those are -- constitutes a transfer of

8    possession, but it simply does not do so.

9              An order transferring possession, you'd say this

10   property is transferred to this person.  That's what the

11   sale -- that's what the sale order does with the property

12   itself.  It says the property is transferred from the debtor to

13   the bank, and then the bank designee or assignee.  That is a

14   transfer of possession.  What we have here, at the very least,

15   would be some kind of implication of the defenses that we could

16   raise in an action -- in an action to acquire transfer of the

17   property.

18             But that's exactly why they had to go into the

19   forcible entry detainer, why they had to go to the justice of

20   the peace in the first place, is that the sale order didn't

21   do -- didn't effectuate a transfer of possession.  They always

22   contemplated the need for an eviction action in state court.

23             And I also -- I really appreciate the opportunity

24   to respond to my friend's challenge that there would be no

25   allegation of notice.  I would like to -- I would like to point

1  the Court to our answer in the Justice in the Peace Court.

2  This is Docket Number 846-7 of that -- theirs, and ours is

3  847-2.  The first paragraph of that -- of that order, of that

4  answer says we were not given notice.  And then it goes on to

5  challenge title, but that does not -- that doesn't make the

6  notice go away.

7           Now, the order itself does not specify whether it's

8  about notice or about title or something else.  But the Court

9  indicated in -- during the hearing, we have the affidavit of

10  Mark Hill, which (indiscernible) not contradicted.  It says

11  that the Court was specifically concerned with notice.

12          Now, they say that that would make it improper

13  grounds to dismiss for jurisdiction.  If they had a problem

14  with the way that the Court wrote its order, then they should

15  have solved that problem with the Justice Court or should have

16  filed an appeal.  They didn't do that -- either of those two

17  things.

18          And finally I want to address something that they

19  say.  You know, he said that they cited a number of cases in

20  their brief to suggest that you can use a sale order and use

21  that as a justification for an eviction.  We have distinguished

22  in our response, and I urge you to read the cases that we've

23  cited in detail and discussed.  Those cases are very fact-

24  dependent, and they depend upon a very particular fact.  An

25  order -- a prior order that actually transfers possession.

1              They arise in two different circumstances.  One is
2    in which there is an agreed order between the debtor and some
3    other party that if certain conditions are not met, the
4    property will be transferred.  Of course the Court has -- of
5    course the Court has jurisdiction to enforce that order by
6    doing -- enforcing the promise in the order.  If the conditions
7    fail, then the promised transfer of possession can occur.  That
8    is not this case.  We never promised anything.
9              The second set of circumstances involve situations
10   in which it is the debtor being evicted, and they -- and the
11   bankruptcy court uses the sale order as justification for the
12   eviction.  I have no quarrel with those cases, but those cases
13   do not pertain here.  The reason that those cases work is that
14   there is a transfer of possession in every sale order between
15   the debtor and whoever gets the property out of bankruptcy.
16   That's what the sale order does.  That's what the sale order
17   does in this case.
18             But the mere existence of a sale order that
19   transfers property between the debtor and somebody else is not
20   a transfer of property between a leaseholder and somebody else.
21   And the lease -- and the sale order in this case does not do
22   that.  And we think for all of those reasons, in addition to
23   the fact that evicting Jetall would be a very blatant and
24   willful violation of the automatic stay, we think the Court
25   should reject this order -- this motion entirely.

1          THE COURT:  All right.  Thank you.

2          Mr. Troop, I don't need a response.  So here's what

3   I'm going to do.  So just so you know, Christopher Bradley was

4   assigned Case Number 24-11544, which was the involuntary filed

5   against Jetall Companies in the Western District of Texas less

6   than 12 hours prior to this hearing.

7          I have reached out to Chris.  I've asked him if he

8   has any objection to me transferring the case to me.  Assuming

9   that he has no objections, I'm going to transfer the case to

10  myself by order.  All right?  If he does object, he can keep

11  the case.  All right?

12         I'm going to take 838 under advisement.  I'll make

13  the following findings on the record.  I think that my prior

14  orders terminated the lease between Jetall and the debtor.  I

15  don't think that there is a lease at this point in time, okay?

16  That's based purely on memory, and obviously there has been a

17  lot that has transpired in this case, so I could be totally

18  wrong in that regard, but that is my recollection.  And I think

19  if that is true, it will play a large part in what I do going

20  forward, taking 838 under advisement.

21         I have always been troubled by the fact that

22  justice of the peace courts, at least in Texas, have exclusive

23  jurisdiction for evictions.  But I will tell you that I have

24  personally seen Judge Isgur compel eviction when he's enforcing

25  a sale order, and so I don't think that I lack the ability to

1    do that.  I don't think that a summons is required.  I think

2    that I've seen Judge Isgur do it without a summons, basically

3    enforcing a sale order before.

4           I'm not sure the reasoning behind that.  I'm not

5    sure if he wrote on that issue, but I am currently of the

6    impression that I have the ability both jurisdictionally and,

7    you know, just by the sheer force of me being able to enforce

8    my own orders.  But I'll take 838 under advisement.  I'll read

9    the Well case from the Court of Appeals.  I'll look at

10   everything one more time.  You can expect a ruling and

11   hopefully a decision about whether I will take the Jetall

12   involuntary case probably by early this afternoon when I fly

13   back to Houston.  All right?  Thank you all for appearing.

14           MR. CECERE:  Your Honor, I'd like to just lodge for

15   the record of my -- our objection to your transfer.

16           THE COURT:  And that's fine, and that will -- that

17   will solely feel or be within Judge Bradley's discretion.

18   While I think I have the power to transfer the case to me

19   without asking him, I would not do that.  And if he says it's

20   okay, it'll be okay.  If it's not, it won't happen.

21           All right?  Thank you.

22           MR. TROOP:  Thank you, Your Honor, for your time.

23           THE COURT:  All right.  Thank you.  We're adjourned

24   until 10:30.

25       (Proceedings concluded at 5:38 p.m.)

1        **C E R T I F I C A T I O N**

2

3            I, Ilene Watson, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9    _____

10   ILENE WATSON, AAERT NO. 447    DATE:  December 7, 2024

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25