CAUSE NO. 201961734

| | | |
|---|---|---|
| **GROVE ENTERPRISES, LLC** § | | **IN THE COUNTY CIVIL** |
| Plaintiff § | | |
| § | | |
| vs. § | | **COURT AT LAW NO. 1** |
| § | | |
| **DALIO HOLDINGS I, LLC** § | | |
| Defendant § | | |
| v. § | | |
| § | | |
| **HAROLD GIBSON POLK, JR.** § | | **HARRIS COUNTY, TEXAS** |
| Third-Party Defendant | | |

### Plaintiff's Request to Inspect Original Documents

Plaintiff Grove Enterprises, LLC, and Third Party Defendant Harold Polk ("collectively "Movants") served their request to inspect original documents and would show the Court as follows:

Defendant DALIO is countersuing Movants for $3,520.206.70 pursuant to a purported promissory note signed by the Movants. Attached is a copy of the alleged promissory note that Defendants have filed in trial court's records as "***Dalio Exh. 8***" and other real property public records.

Based on information and belief, DALIO, through its owner/agent(s) Azeemeh Zaheer, Mirza Agha, Zeke Agha, and/or Brad Parker have forged the promissory note and caused to be introduced into evidence fake evidence.

Specifically, the purported promissory is six (6) pages with the first page and signatory/notary pages unnumbered. Specifically the first page is as follows:

**EXHIBIT 29**

HF 8179114v.2



The second through fourth pages show a specific page number as follows:

- 2 -

………..

- 3 -

………..

- 4 -

Notably, the footer from the first page, **<u>HF 8179114v.2</u>** is missing from the remaining five (5) pages.

Lastly, the signature page purportedly containing the Movants' signatures has a vast space that could have included the notary affirmation. However, the notary affirmation and seal is on the last page. These are the hallmarks of a forged document and phony evidence.

Regardless, Movants would respectful request that Defendants be ordered to produce all original documents for Movants to inspect at a neutral location and other just and equitable relief the Court deems proper.

> Respectfully submitted,
>
> /s/ David Tang
>
> David Tang, Esq.
> **State Bar No. 24014483**
> 6711 Stella Link, #343
> West University Place, Texas 77005
> (832) 287-2129
> (832) 217-3227 – Fax
> Email: dtangattorney@gmail.com
> **Attorneys for Plaintiff**

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the above and foregoing was served in accordance with the Texas Rules of Civil Procedure on all parties/counsel of record by placing same in the United States mail, certified mail, return receipt requested, by hand delivery or by telecopier, on July 19, 2020.

_____

DAVID TANG

Dalio Exh. 8

EXECUTION COPY

# PROMISSORY NOTE

$3,520,206.70　　　　　　　　　　　　　　　　　　　　　　　　　　　　Houston, Texas
　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____ (Date)

      **FOR VALUE RECEIVED, HAROLD GIBSON POLK, JR.** ("Polk"), an individual with an address at 917 Main Street, Houston, Texas 77002, and **GROVE ENTERPRISES, LLC** ("Grove"), a Texas limited liability company with an address of 3117 7th Street, Port Arthur, Texas 77642, jointly and severally as makers ("Borrowers"), hereby unconditionally promise to pay to the order of **Dalio Holdings I, LLC**, a Delaware limited liability company, having an address at 3139 W Holcombe Blvd #845, Houston, TX 77025 ("Lender"), or at such other place as the holder hereof may from time to time designate in writing, the maximum principal sum of **THREE MILLION FIVE HUNDRED TWENTY THOUSAND TWO HUNDRED and SIX AND 70/100 DOLLARS ($3,520,206.70)** in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Applicable Interest Rate, and to be paid in accordance with the terms of this Note, the 411 Deed of Trust, the 917 Deed of Trust and the 929 Deed of Trust (the "Deeds of Trust"), dated as of the date hereof, between Borrowers and Lender (the "Loan Agreement"). All capitalized terms not defined herein shall have the meanings set forth in the Pledge Agreement or the Deeds of Trust, as the case may be. This Note, the Pledge Agreement and the Deeds of Trust are sometimes collectively referred to as the "Loan Documents" or singly as "Loan Document."

## ARTICLE 1 - Payment Terms

      Borrowers agree to pay the principal sum of this Note, together with all accrued and unpaid interest thereon, all at the stated regular rate of fifteen percent (15.00%) per annum (the "Applicable Rate") on or before July 15, 2019 (the "Maturity Date"). Commencing February 15, 2019 and continuing on the 15th of each subsequent month until the Maturity Date, Borrower agrees to pay to Lender interest-only payments based on the principal sum of this Note and the Applicable Rate.

      Upon any prepayment or repayment (including in connection with an acceleration of the Loan), made on or before the stated Maturity Date, Borrowers shall pay to Lender on the date of such prepayment or repayment (or an acceleration of the Loan) the Spread Maintenance Premium applicable thereto. All Spread Maintenance Premium payments hereunder shall be deemed to be earned by Lender upon the funding of the loan which is the subject of this Note. The "Spread Maintenance Premium" means, with respect to any prepayment of principal (or acceleration of the Loan) on or before the stated Maturity Date (and, for the avoidance of doubt, a repayment on the stated Maturity Date shall also require the payment of Spread Maintenance Premium) an amount equal to the product of the following: (A) the amount of such repayment (or the amount of principal so accelerated), multiplied by (B) the Spread, multiplied by (C) a fraction (expressed as a percentage) having a numerator equal to the number of months' difference between the date such prepayment occurs) or the next succeeding payment date through which interest has been paid by Borrowers, and a denominator equal to twelve (12); provided, however, that the Spread Maintenance Premium shall be waived, but only if Borrowers tender the full amount due and owing hereunder on or before March 31, 2019.

HF 8179114v.2

If Borrowers fail to pay the amount stated in the preceding paragraph, together with all accrued and unpaid interest thereon on or before the Maturity Date, Borrower shall pay to Lender additional interest at the Default Rate of the lesser of eighteen percent (18.00%) per annum (the "Default Rate") or the maximum amount allowed by the laws for the State of New York.

### ARTICLE 2 - Default And Acceleration

The Debt shall without notice become immediately due and payable at the option of Lender if any payment of principal or interest required in this Note is not paid on or prior to the date when due or if not paid on the Maturity Date or on the happening of any other Event of Default and in addition, Lender shall be entitled to receive interest on the entire unpaid principal sum at the Default Rate pursuant to the terms of the Loan Agreement. This Article 2, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

### ARTICLE 3 - Loan Documents

This Note is secured by the Pledge Agreement and the Deeds of Trust. All of the terms, covenants and conditions contained in any other Loan Document are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Document which gives the Mezzanine the greatest protection or right shall govern.

### ARTICLE 4 - Savings Clause

This Note and the other Loan Documents are subject to the express condition that at no time shall Borrowers be obligated or required to pay interest on the principal balance of the Loan at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the Maximum Legal Rate. If, by the terms of this Note or any other Loan Document, Borrowers are at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of the Maximum Legal Rate, the Applicable Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to the Maximum Legal Rate and all previous payments in excess of the Maximum Legal Rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the sums due under the Loan, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan until payment in full so that the rate or amount of interest on account of the Loan does not exceed the Maximum Legal Rate of interest from time to time in effect and applicable to the Loan for so long as the Loan is outstanding.

### ARTICLE 5 - No Oral Change

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrowers or Lender, but only by

an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

## ARTICLE 6 - Waivers

Borrowers and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, notice of intent to accelerate, notice of acceleration, protest, notices of protest and/or of non-payment and any and all other notices of any kind except any such notice expressly required by this Note. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note or any other Loan Documents made by agreement between Lender or any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrowers, and any other Person who may become liable for the payment of all or any part of the Debt, under this Note, the Loan Agreement or the other Loan Documents.

No notice to or demand on Borrowers shall be deemed to be a waiver of the obligation of Borrowers or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Loan Agreement or the other Loan Documents. In the case of Grove, the agreements herein contained shall remain in force and be applicable, notwithstanding any changes in the members comprising Grove, and the term "Borrower" as used herein, shall include any alternate or successor limited liability company, but any predecessor limited liability company shall not thereby be released from any liability. (Nothing in the foregoing sentence shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, corporation or limited liability company which may be set forth in any Loan Document.)

## ARTICLE 7 - Transfer

Upon the transfer of this Note, Borrowers hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter accruing from and after the date of the transfer; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

## ARTICLE 8 - Governing Law

This Note shall be governed in accordance with the laws of the State of New York.

## ARTICLE 9 - Notices

All notices or other written communications hereunder shall be delivered to the respective addresses for each such party shown hereinabove, unless the party to whom notice is directed has given notice that its address has changed and provided the party from whom notice

is given its new address. Any notice delivered to Polk but not separately delivered to Grove shall be deemed delivered to Grove upon delivery to Polk and vice versa.

## ARTICLE 10 -

[Intentionally omitted.]

## ARTICLE 11 - Liability

The obligations and liabilities of each Borrower hereunder shall be joint and several.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day and year first above written.

**BORROWER:**

**GROVE ENTERPRISES, LLC**, a Texas limited liability company

By:
    **Its Manager**

By: _____
    Harold Gibson Polk, Jr.
    Its Manager

_____
**HAROLD GIBSON POLK, JR.**, Individually

## ACKNOWLEDGMENTS

STATE OF TEXAS         §
                       §
COUNTY OF HARRIS       §

On this the 18th day of January 2019, before me, a Notary Public, personally appeared **HAROLD GIBSON POLK, JR.**, who acknowledged himself to be (i) an individual borrower, and (ii) the Manager of **GROVE ENTERPRISES, LLC**, a Texas limited liability company, the other of the Borrowers herein, and, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of **GROVE ENTERPRISES, LLC**, by himself as its Manager.

In witness whereof I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

Print Name: Richard Melamed



My Commission Expires: 7-21-20