## Sale Agreement

This Sale Agreement (the "Agreement") is entered into as of December 18, 2012, between Ali Mokaram ("Mokaram") and Osama Abdullatif ("Latif") (jointly the "Parties").

WHEREAS, in 2006, Mokaram and Latif formed a partnership known as the Mokaram-Latif West Loop, Ltd. (the "Partnership"), for the purpose of acquiring and owning real estate;

WHEREAS, when the Partnership was created, Mokaram and Latif both owned 49.5% of the limited partnership interests in the Partnership, and the other 1% interest was held by Mokaram-Latif General, L.L.C. (the "GP"), a limited liability company owned 50% each by Mokaram and Latif, which is the general partner for the Partnership;

WHEREAS, in or about June of 2008, there was a disputed transaction where Mokaram assigned a 15% interest in the Partnership and a 15% interest in the GP (the "15% Transaction") to Ali Choudhri ("Choudhri"); Choudhri assigned to Mokaram 30% in Texas REIT, LLC ("Texas"), a limited liability company which owns real property; Mokaram assigned to Choudhri an interest in 2606 Fannin, L.L.C. ("Fannin"); Mokaram agreed to pay Choudhri $400,000 cash; and Mokaram agreed to give Choudhri a 50% interest in a Lamborghini Murcielago; which such disputed transaction is more fully described in Mokaram's First Amended Petition in Intervention in the lawsuit styled Cause No. 2012-27197; *Mokaram Latif v. Ali Choudhri, et al.;* In the 190th Judicial District Court of Harris County, Texas (the "Lawsuit");

WHEREAS, Mokaram has sued Choudhri over the 15% Transaction, including to rescind the transaction, as a result of Choudhri's fraud, as he clearly lied to Mokaram when he represented the amount of the loan against the shopping center was roughly equivalent to the loan against the West Loop property and when he represented the value of 30% of Texas was more than $1,000,000.00, when in fact, Choudhri knew the loans against the shopping center were more than $10,000,000.00 and 30% of Texas had no value, but still made these misrepresentations to Mokaram to induce him to transfer valuable assets and cash;

WHEREAS, in or about October of 2010, there was a disputed transaction where Mokaram assigned a 35% interest in the Partnership and the GP to Choudhri (the "35% Transaction") (this disputed transaction is also more fully described in Mokaram's First Amended Petition in Intervention);

WHEREAS, Mokaram has sued Choudhri over the 35% Transaction, including to seek a declaration that it was not consummated and Mokaram did not assign any interest to Choudhri because the entire agreement was contingent on Latif selling all of his interests in the Partnership and General Partner (the "Conditional Agreement"), which never occurred;

1

WHEREAS, the parties entered into an agreement for the purpose of pursuing Mokaram's fraud claims against Choudrhi, including that they would jointly fund the costs (50/50) for Mokaram to pursue his fraud claims against Choudhri including his claim to set aside the 15% Transaction); that they would split (50/50) any recovery from Choudhri for the fraud claims; that Mokaram would assign to Latif one-half (15%) of his 30% interest in Texas; that Latif would pay $175,000.00 to Mokaram; and that Latif would return the 15% interest in Texas to Mokaram to return to Choudhri if the 15% Transaction is rescinded.

NOW THEREFORE, Mokaram and Latif, for good and valuable consideration, agree as follows:

1. Mokaram agrees to sell, assign and convey all of his right, title and interest in and to the Partnership and the GP to Latif, and any interest he might acquire from Choudhri in the Lawsuit, along with any and all of Mokaram's rights relating to such ownership interests, including but not limited to Mokaram's claims in the Lawsuit against Choudhri relating to such interests.

2. Latif has paid and/or agrees to pay the amount of $800,000.00 to Mokaram (the "Payment Obligations"), as follows:

   (a) The $175,000.00 previously paid by Latif as referred to above in the recitals;

   (b) $200,000.00 to be paid on the earlier of:

      (i) December 31, 2014, or

      (ii) Upon the written request of Mokaram to Latif, which cannot occur prior to May 1, 2013;

   (c) $225,000.00 to be paid on the earlier of:

      (i) December 31, 2014, or

      (ii) Upon the written request of Mokaram to Latif, which cannot occur prior to December 31, 2013; and

   (d) $200,000 to be paid on or before December 31, 2014.

3. Latif agrees to pledge his 49.5% interest in the Partnership and his 50% interest in the GP, free and clear of all liens, claims and encumbrances, as collateral for the Payment Obligations set forth herein, and agrees to execute a security agreement (the "Security Agreement") to secure and perfect these interests as collateral for the Payment Obligations (including certificating and delivering the ownership interests of same to Mokaram to be held as collateral). The Security Agreement shall have such terms and conditions that are standard in a security agreement used by a commercial lender that are commercially reasonable, and shall be drafted by Mokaram's attorney, and shall be executed within 10 days after requested by Mokaram.

2

4. Mokaram agrees to prosecute the claims and causes of action asserted against Choudhri in the Lawsuit, including for Choudhri's fraud for lying about the amount of the loans and the value of 30% of Texas, and Mokaram agrees to first seek to set aside the 15% Transaction.

5. Latif agrees to pay the reasonable legal fees, costs and expenses incurred by Mokaram to prosecute his claims in the Lawsuit against Choudhri.

6. Mokaram hereby assigns and conveys to Latif one-half (15%) of his interest in Texas, and Latif understands that it is likely the 15% Transaction will be rescinded and set aside, and in such instance, Latif will return the 15% interest in Texas to Mokaram so that Mokaram can return the entire 30% interest in Texas to Choudhri.

7. Realizing it is possible that there may be no monetary recovery by Mokaram against Choudhri because it is likely that the 15% Transaction will be set aside and rescinded, the Parties agree to split (50/50) any consideration that Mokaram recovers or receives for his claims against Choudhri in the Lawsuit.

8. Latif understands and agrees that the assignments of Mokaram's interests herein are subject to Choudhri's contentions in the Lawsuit that he owns Mokaram's interests in the Partnership and the GP, and Latif agrees that no matter what the outcome of the Lawsuit, including the extremely unlikely event that Choudhri wins, that Latif will have not have any claims against Mokaram relating to the assignments made hereunder.

9. Mokaram agrees to resign as a manager for the GP immediately and to execute any and all further documents reasonably requested by Latif to evidence such resignation.

10. Mokaram has not settled any claims against Choudrhi and agrees he cannot settle his claims in the Lawsuit against Choudhri without the consent of Latif.

11. The Parties agree that Latif shall defend, indemnify and hold Mokaram harmless from and against any and all claims, causes of action, damages and relief asserted and/or sought by Choudhri in the Lawsuit, and from and against any and all claims, causes of action, damages and/or relief that Choudhri might assert or seek against Mokaram if it arises out of or relates to the allegations and/or transactions that are the subject of the Lawsuit. The defense and indemnity includes, but is not limited to, defense and indemnity for, from and against all claims, causes of action, derivative claims and/or causes of action, damages, punitive damages, costs, expenses, and attorneys' fees.

12. The Parties represent and warrant that they have not relied on any promises, statements, or representations that are not expressly set forth in this Agreement, and that no promises, statements, or representations have been made by any party or their agents to induce any other party to enter into this Agreement other than those expressly set forth or referenced herein. In entering into this Agreement, the parties have relied solely on the statements, representations, and/or warranties expressly set forth or referenced herein, and/or their own independent judgment, and/or the advice of their counsel, and nothing more. Notwithstanding any alleged informal, confidential or fiduciary relationships or duties between the Parties, the Parties recognize and acknowledge that even though some discovery has been conducted in the Lawsuit,

3

there may be material facts of which they are not aware. The alleged failure to disclose any material fact shall not be the basis for a claim by any party, including any claim to set aside this Agreement. No Party owes any duty to any other party to disclose anything.

13. This Agreement contains the entire understanding and agreement between the Parties, and it supersedes any prior or contemporaneous agreements, promises, understandings or representations, which shall be superseded, void and unenforceable, and this Agreement can only be modified hereafter by written agreement signed by all Parties that such modification affects. In other words, this is the only agreement between the Parties at this time. This Agreement does not terminate the Partnership Agreement, and does not in any way preclude Mokaram from pursuing his claims against Choudrhi in the Lawsuit.

14. After the execution of this Agreement, the Parties shall execute all further documents, including court papers, and shall take all further steps as may be necessary to further the purposes and intent of this Agreement.

**BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT, AND MY COUNSEL HAS EXPLAINED IT TO ME, AND THAT I AGREE TO ITS TERMS.**

Ali Mokaram _____

Osama Abdullatif _____

4