```
                    REPORTER'S RECORD
                  VOLUME 1 OF 1 VOLUMES
              TRIAL COURT CAUSE NO. 981,824

ERPILE, L.L.C.              ) IN THE COUNTY CIVIL COURT
                            )
vs.                         ) AT LAW NUMBER THREE (3)
                            )
OSAMA ABDULLATIF            )
AND STEPHEN HUNT            ) HARRIS COUNTY, T E X A S
```

_____

**HEARING**

_____

On the 7th day of June, 2011, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Linda Storey, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

```
 1                        APPEARANCES

 2   Mr. Michael Phillips
     SBOT NO. 15939000
 3   The Michael M. Phillips Law Firm
     515 North Velasco
 4   Angleton, Texas  77515
     Telephone:  (979) 849-4382
 5   Attorney for Plaintiff

 6   Mr. Michael P. Fleming
     SBOT NO. 00073060
 7   Michael P. Fleming & Associates
     440 Louisiana, Suite 1920
 8   Houston, Texas  77002
     Telephone:  (713) 221-6800
 9   Attorney for Plaintiff

10   Mr. Phillip L. Sampson, Jr.
     SBOT NO. 00788344
11   Mr. David W. Morris
     SBOT NO. 24046481
12   Bracewell & Giuliani
     711 Louisiana, Suite 2300
13   Houston, Texas  77002
     Telephone:  (713) 223-2300
14   Attorney for Defendants

15

16

17

18

19

20

21

22

23

24

25
```

```
1                THE COURT:  Can you tell me what they are?
2                MR. SAMPSON:  They are pleadings.  They
3    are judicially noted pleadings.
4                THE COURT:  Can I have them?
5                MR. SAMPSON:  Absolutely.  Exhibit No. 1
6    is the petition in this case.
7                THE COURT:  Why are you giving me the
8    petition in this case as an exhibit?  That's not
9    appropriate.
10               MR. SAMPSON:  Because you can take
11   judicial notice of it.
12               THE COURT:  But you don't need to offer it
13   as an exhibit.  That's just bulking my file.
14               MR. SAMPSON:  All right.  This is the
15   petition in the district court case --
16               THE COURT:  That one you can have.
17               MR. SAMPSON:  -- that was filed a month
18   before --
19               THE COURT:  Right.
20               MR. SAMPSON:  -- this cause which involves
21   the same subject matter.  And then, third, the second
22   exhibit, is a pleading filed by Richard Wakeland in that
23   other case bringing up the sole issue in this case in
24   the district court case.
25               THE COURT:  You are going to say that I
```

1  should have this case up there and they are going to say
2  no, no.
3              MR. SAMPSON:  Right.  I'm going to say
4  that based on the well-settled Texas law, the fact that
5  we have identity of parties in the district court case,
6  we have the issues --
7              THE COURT:  You have identity of a couple
8  of parties.  What about Stephen Hunt?
9              MR. SAMPSON:  Stephen Hunt is not a party
10 to this lawsuit.  They cribbed from a lawsuit that was
11 filed in January with that petition.  If you read
12 further in their petition, Stephen Hunt is not a
13 defendant in this case.  It's just Mr. Abdullatif.
14 Here, you can take a look at the first page of the
15 petition.
16             THE COURT:  Is he or isn't he?
17             MR. PHILLIPS:  He is not a party in this
18 cause, but it is the identical cause.  He was a
19 trustee --
20             THE COURT:  He's the identical cause.
21             MR. PHILLIPS:  Everything is identical.
22 The only difference is previously ERPILE had filed a
23 notice to repossess some property and Hunt was the
24 trustee.  You heard the injunction, and you granted the
25 injunction.  They are not attempting at this point to

```
 1  foreclose some properties, so Hunt wouldn't be a party;
 2  but it's the identical issue, who owns ERPILE?  Does
 3  Mr. Abdullatif own ERPILE or does --
 4              THE COURT:  And y'all settled that
 5  original one, right?
 6              MR. PHILLIPS:  We settled it.  Then,
 7  amongst other things, Mr. Abdullatif said he was on
 8  drugs and the settlement didn't count.  And he hired a
 9  lawyer to file an identical case in district court and
10  then they surrounded it with some other pleadings.  But
11  this is a standalone to be tried by the court case based
12  on the contracts.  And they've jumped into the district
13  court to get out of here is our position and none --
14              THE COURT:  This is a wonderful place.
15  You get heard quickly.
16              MR. SAMPSON:  It is, Your Honor.  What he
17  is saying is absolutely not true.  There was a case
18  pending before you in January.  That case was resolved
19  by a settlement agreement in late January.
20              THE COURT:  After I resolved it first.
21              MR. SAMPSON:  You granted a T.I.; and I
22  appreciate how understanding the Court was of
23  Mr. Abdullatif, who was here without counsel.  And I've
24  read the transcript from that hearing.  I know maybe it
25  was a difficult situation.
```

```
 1                    You granted a T.I.  The case was settled
 2    between a man named Ali Choudhri and Mr. Abdullatif.
 3    They entered into a settlement agreement in late
 4    January.  The settlement agreement which is attached to
 5    the petition in this case required about a
 6    2-million-dollar payment to my client.
 7                    Remember, this is a case where the other
 8    side was saying, "Abdullatif, you are not owed anything.
 9    You don't own anything.  We don't owe you a thing."
10    Well, they agreed to pay him about 3 million bucks in
11    the settlement agreement, 2 million of which was due in
12    late March.  That is set out by the evidence before you
13    which you have judicial notice of.  $2 million was not
14    paid.  They failed to pay my client $2 million in late
15    March.  Therefore, my client needed to sue and what we
16    have done is you can see from Exhibit No. 1 from the
17    petition in the district court case is we have sued
18    based on fraudulent inducement into that settlement
19    agreement and based on material breach of that
20    settlement agreement through which --
21                    *THE COURT:*  Fraudulent inducement?
22                    *MR. SAMPSON:*  Yes, absolutely.  The
23    representations that were made to my client to get him
24    to sign that are rampant and are set out in the petition
25    and will be proved over in Judge Hinde's court.
```

1           So, we sued to rescind that settlement
2  agreement based on material breach and fraud; and we
3  sued alternatively for breach of that settlement
4  agreement.
5           Another claim, I think it's on page nine
6  of our district court petition, is set out, it's the
7  exact same claim as the only claim in this case.  It's a
8  dec action saying that Mr. Abdullatif is the sole owner
9  of ERPILE.  The only issue in this case is Mr. Wakeland
10 says he is the owner of ERPILE.  They are the identical
11 issues.  And, Your Honor, the reason we're here and the
12 reason this is such an open and shut issue is because of
13 what Texas law says when you have a situation like this.
14          There are several Supreme Court cases that
15 we cited.  The Curtis case, for example, and I have
16 copies here for you, if you'd like to see it, the Curtis
17 case says the general common law rule in Texas is that
18 the court in which suit is filed first acquires dominant
19 jurisdiction to the exclusion of other coordinate
20 courts.  Any subsequent suit involving the same parties
21 and the same controversy must be dismissed as a party of
22 that suit calls the second court's attention to the
23 pendency of the prior suit by plea in abatement.  And
24 that is absolutely what we've done, because those are
25 the exact facts we have.

1           *THE COURT:*  How does that not apply all
2    the way back to the original suit?
3           *MR. SAMPSON:*  Good question, Your Honor.
4    And the reason is because that case was nonsuited on
5    February 9th of this year.  The court lost plenary
6    power, any continuing jurisdiction over that case, in
7    early March.  Therefore, there was no continuing
8    jurisdiction from this court over the settlement
9    agreement.  But even more so my client sued over breach
10   of the settlement agreement and for other issues, to the
11   extent that the agreement is rescinded, the damages are
12   in the range of $3 million, so, we couldn't sue in this
13   court, Your Honor, because the amount in controversy is
14   too high.  So, there's no requirement that we come back
15   to this court.
16           I have a case on that as well, Your Honor.
17   This is the <u>B.Z.B. versus Clark</u> matter where the 14th
18   Court of Appeals said when a dispute arises over a
19   settlement agreement while the trial court still has
20   jurisdiction over the underlying action, any claim to
21   enforce a settlement agreement should, if possible, be
22   asserted in the original court under the original cause.
23   That's if you still have jurisdiction.  This Court lost
24   jurisdiction in early March.  The settlement agreement
25   wasn't breached until late March and suit wasn't filed

```
 1   until late April, about a month before this suit.
 2              THE COURT:  Let me have the case.  I get
 3   it.
 4              MR. SAMPSON:  The court goes on to say
 5   that --
 6              THE COURT:  I get it.  I'm going to give
 7   y'all an opportunity to give me some cases since y'all
 8   haven't seen these, have you?
 9              MR. SAMPSON:  They've seen them since
10   Thursday.
11              MR. PHILLIPS:  With very limited time on a
12   matter --
13              THE COURT:  Since I have time blocked out
14   Thursday, I was going to give you to Thursday to respond
15   to this, the cases.
16              MR. PHILLIPS:  That would probably be
17   inadequate in the time.  Let me add something, Your
18   Honor.  Today all that is in front of you is whether or
19   not to dissolve this injunction for two days until the
20   Thursday hearing.  That's all that's in front of you
21   right now.
22              THE COURT:  I don't think they want me to
23   dissolve it.
24              MR. PHILLIPS:  So on limited notice --
25   there are discovery issues.  Based on his cases, there
```

1  are matters of discovery because -- okay.  Let me make
2  my presentation, since he has finished.  I've got the
3  cart in front of the horse.  I have filed a response to
4  this --
5              *THE COURT:*  I read it.
6              *MR. PHILLIPS:*  -- that I think is
7  absolutely germane and it falls outside every bit of
8  case law.  None of this case law has anything to do with
9  what the courts of Harris County are going to do or
10 somebody form shops a case over to the district court
11 that belongs in the county court based on the tractions.
12 This is all one court system.  The legislature set it
13 up.  The legislature gave you the power to determine the
14 title.  Now, all we asking you to do, that the claims
15 with regard to the title to ERPILE attract back to you.
16             There was an injunction where -- you
17 entered an injunction where Mr. Latif could not act as
18 ERPILE.  Nothing has happened since then.  In fact, the
19 settlement agreement said that my client controls and
20 has any interest in ERPILE.
21             *MR. SAMPSON:*  It doesn't.
22             *MR. PHILLIPS:*  He turns around and
23 files -- Mr. Latif sues as ERPILE a bunch of third
24 parties not dissimilar to telling someone when he didn't
25 own a company to foreclose the note and so now ERPILE

```
 1  has become a plaintiff in the district court when in
 2  this court he was enjoined from doing that.
 3              He enters into a settlement.  I mean, all
 4  his cases have different exceptions even to the rule if
 5  we reach it.  But I think administratively your
 6  administrative judge, the civil administrative judge,
 7  would probably agree that this nonjury ERPILE case, and
 8  this is a nonjury case --
 9              MR. SAMPSON:  I don't know why that is.
10              MR. PHILLIPS:  -- based on the
11  participation agreement.  The parties signed a
12  participation agreement that said all resolutions shall
13  be nonjury.  The participation agreement was -- was
14  imbedded or into the contract.  So, everything
15  associated with the ownership of ERPILE is nonjury.
16              THE COURT:  Do you want to say something?
17              MR. FLEMING:  I just --
18              MR. SAMPSON:  Are you counsel in this
19  case?
20              MR. FLEMING:  For this hearing, I am,
21  yeah.
22              THE COURT:  It just looked like you wanted
23  to say something.
24              MR. FLEMING:  Yeah, I would like to add a
25  couple of things.  Judge, as you know I was here in the
```

```
 1  first case.
 2                  THE COURT:  Right.
 3                  MR. FLEMING:  Just a couple of
 4  observations.  This isn't a case of Smith versus Jones
 5  in this court and Jones versus Smith in the other court.
 6  There's the issue which was in the first case of who can
 7  file suit on behalf of ERPILE and who controls ERPILE.
 8                  Now, as you recall at the injunction
 9  hearing that we had here with Mr. Abdullatif testifying,
10  we went through these documents that set up his company
11  and whether or not he signed them.  He went through
12  these machinations, "Well, no, that's not my signature.
13  Well, looks like my signature.  Well, it is my signature
14  but I didn't sign that document."  And after that
15  injunction hearing was entered, then he goes and enters
16  this settlement agreement.
17                  Mr. Phillips touched on something that
18  they claimed, but Mr. Sampson hasn't really addressed
19  it.  And that is that in the petition they filed over in
20  district court, he actually alleged the settlement
21  agreement he entered into should be rescinded because he
22  was on drugs.  Therefore, his signature on that
23  settlement agreement isn't effective.  It's the same as
24  the rigmarole he was giving to you during that
25  injunction hearing.
```

1               When the settlement agreement was signed,
2  Mr. Choudhri gave him $750,000 to Mr. Abdullatif which
3  Mr. Abdullatif subsequently deposited into his bank
4  account.  I don't know if he was on drugs when he
5  endorsed the check, but he deposited $750,000.
6               Now, they could have certainly said, well,
7  that agreement, that settlement agreement that was
8  signed in this case, in the prior case in this court is
9  void because he was on drugs and come back here to you
10 and say, "We need to rescind this agreement," but they
11 didn't.  What they've done is they've either decided
12 before the settlement agreement was signed or afterwards
13 to somehow use that and the drug issues and adding these
14 other issues to get out of this court.  That's what
15 they've got.
16              *THE COURT:*  Sounds an awful lot like form
17 shopping to me.
18              *MR. SAMPSON:*  What's form shopping is Mr.
19 Phillips coming to this court when he has all of the
20 opportunity in the world to go to Judge Hinde and get
21 injunctive relief --
22              *THE COURT:*  Except that they were already
23 here on the same cause of action.  I've already made
24 rulings against your client.
25              *MR. SAMPSON:*  You're right.  They were

```
 1  here on a cause of action that was gone.
 2              THE COURT:  And your client's testimony in
 3  this court was interesting.  And I am using that word
 4  loosely.
 5              MR. SAMPSON:  I know and, again, I
 6  appreciate the fact that you handled that hearing with
 7  such care.  I have gone through the transcript.  One
 8  thing is clear, my client throughout the hearing said he
 9  did not sign those documents.
10              THE COURT:  Yes, he did.
11              MR. SAMPSON:  He did; and you had
12  questions about where is this document and where is that
13  document, good questions.  He didn't have them, because
14  he wasn't prepared.  We have documents showing -- and
15  you probably don't remember -- we have his formation
16  documents showing how he formed himself solely ERPILE.
17  We have documents showing that $600,000 where there were
18  apparently checks which I've never seen.
19              The $600,000 that you kept asking
20  Mr. Abdullatif, well, what was this for; where did this
21  money go, where's some documentation and he said it was
22  for a different foreclosure sale.  We have the receipt
23  from that foreclosure sale showing the $600,000 went to
24  a totally different property.  They are trying to say it
25  was for some participation agreement that my guy never
```

1  signed.  All of those issues are teed up in front of
2  Judge Hinde and they are teed up there properly.
3              As I told you, Your Honor, we couldn't
4  have even come to this court because this court doesn't
5  have jurisdiction for matters for $3 million.  And so in
6  order to attack the settlement agreement and to
7  establish its validity or invalidity, as well as to
8  establish ERPILE'S ownership, we went to a court of
9  proper jurisdiction, absolutely, not form shopping.  We
10 had to go there with our claims.
11             *THE COURT:*  What is your response?
12             *MR. FLEMING:*  They could have come here
13 and said this agreement is void.  They could have done
14 that.
15             *MR. SAMPSON:*  We could have --
16             *MR. FLEMING:*  One other thing I want to
17 add, Your Honor, and then I'll let Mr. Phillips talk, is
18 this, I don't know what they, Mr. Abdullatif, why it's
19 such an emergency that he needs to control ERPILE for
20 the next two days.  What is he planning on doing?  Why
21 can't they just wait until your injunction hearing on
22 Thursday?  I mean, why are we here today when you are
23 handling the injunction on Thursday?
24             *THE COURT:*  They are arguing we don't have
25 the right to have the injunction hearing.

```
 1                    MR. FLEMING:  You can do it at the same
 2   time.
 3                    THE COURT:  I don't see what the emergency
 4   is between now and then.
 5                    MR. FLEMING:  If you rule on the
 6   injunction, you deny that temporary injunction, this is
 7   pretty much moot anyway.
 8                    THE COURT:  Let me ask you:  Do you have
 9   anything to say?
10                    MR. SAMPSON:  He's with me.
11                    THE COURT:  I know.  I'll let him talk.
12                    MR. SAMPSON:  No, he's with me.
13                    We are here on an emergency basis because
14   every time that we spend time and money dealing with the
15   same issues that are going on over there right here, it
16   is a waste of this Court's judicial resources and the
17   party's as well.
18                    THE COURT:  I get it.  I am not going to
19   make a ruling today.  You are going to have to come back
20   Thursday anyway, because I'm going to have to read all
21   of this, the cases and carefully with the exceptions.
22   Do you have any cases you want to give me?
23                    MR. PHILLIPS:  At this point in time, we
24   haven't had an opportunity to address it.  This is a
25   significant issue that really can't be, I mean --
```

```
 1                    THE COURT:  It can be and needs to be.
 2                    MR. PHILLIPS:  Let me make one momentary
 3    observation, Your Honor.  We have Bracewell and Giuliani
 4    with unlimited staffing and lawyers, and they took
 5    whatever time they needed before they filed the
 6    litigation and developed these theories.  Now, we've had
 7    a limited time.  I can go into all my other commitments.
 8    If you are interested in knowing -- I mean, I have a
 9    whole bunch of other commitments that involve hundreds
10    of thousands and some millions of dollars --
11                    THE COURT:  You were planning to be here
12    Thursday, right?
13                    MR. PHILLIPS:  Yes, ma'am.
14                    THE COURT:  All I've said, I am going to
15    read his cases and I am inviting you to give me some
16    between now and Thursday.
17                    MR. PHILLIPS:  And all I am suggesting,
18    Your Honor, is I will do my best; but I would like to
19    have past Thursday to give you matters if you are going
20    to take them up as a matter of law to consider --
21                    THE COURT:  I really can't, because you
22    want me to rule on Thursday on the injunction.  They are
23    bringing up a plea to the jurisdiction abatement issues,
24    and I have to rule on those first.
25                    MR. PHILLIPS:  I understand that.
```

```
 1                    THE COURT:  The case law is pretty clear.
 2    And your injunction order expires Thursday.
 3                    MR. PHILLIPS:  I understand that.
 4                    THE COURT:  So, Thursday is the day.  Give
 5    me what you got by Thursday.  Thank you.
 6                    MR. SAMPSON:  Thank you, Your Honor.
 7                    MR. FLEMING:  Thank you.
 8                    (Proceedings concluded.)
 9                                *
10                                *
11                                *
12                                *
13                                *
14                                *
15                                *
16                                *
17                                *
18                                *
19                                *
20                                *
21                                *
22                                *
23                                *
24
25
```

```
 1  STATE OF TEXAS
 2  COUNTY OF HARRIS
 3
 4       I, Laura M. Cutherell, Official Court Reporter in
 5  and for County Civil Court at Law No. 3 of Harris, State
 6  of Texas, do hereby certify that the above and foregoing
 7  contains a true and correct transcription of all
 8  portions of evidence and other proceedings requested in
 9  writing by counsel for the parties to be included in
10  this volume of the Reporter's Record in the above-styled
11  and numbered cause, all of which occurred in open court
12  or in chambers and were reported by me.
13       I further certify that this Reporter's Record of the
14  proceedings truly and correctly reflects the exhibits,
15  if any, offered by the respective parties.
16       I further certify that the total cost for the
17  preparation of this Reporter's Record is $_____ and
18  was paid/will be paid by _____.
19
20                              _____
                                Laura M. Cutherell, CSR
21                              Texas CSR 3049
                                Official Court Reporter
22                              County Civil Court at Law No. 3
                                Harris County, Texas
23                              201 Caroline, 5th Floor
                                Houston, Texas 77002
24                              Telephone: (713) 368-6658
                                Expiration: 12/31/2012
25
```