1   REPORTER'S RECORD
    VOLUME 1 OF 2 VOLUMES
2   TRIAL COURT CAUSE NO. 981,824

3   ERPILE, L.L.C.                    ) IN THE COUNTY CIVIL COURT

4   vs.                              ) AT LAW NUMBER THREE (3)
                                     )
5   OSAMA ABDULLATIF                 )
    AND STEPHEN HUNT                 ) HARRIS COUNTY, T E X A S

6

7

8   _____

9                        **HEARING**

10  _____

11

12      On the 9th day of June, 2011, the following

13  proceedings came on to be held in the above-titled and

14  numbered cause before the Honorable Linda Storey, Judge

15  Presiding, held in Houston, Harris County, Texas.

16      Proceedings reported by computerized stenotype

17  machine.

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **APPEARANCES** |
| 2 | Mr. Michael Phillips |
| | SBOT NO. 15939000 |
| 3 | The Michael M. Phillips Law Firm |
| | 515 North Velasco |
| 4 | Angleton, Texas  77515 |
| | Telephone:  (979) 849-4382 |
| 5 | Attorney for Plaintiff |
| 6 | Mr. Michael P. Fleming |
| | SBOT NO. 00073060 |
| 7 | Michael P. Fleming & Associates |
| | 440 Louisiana, Suite 1920 |
| 8 | Houston, Texas  77002 |
| | Telephone:  (713) 221-6800 |
| 9 | Attorney for Plaintiff |
| 10 | Mr. Paul Dobrowski |
| | SBOT NO. 05927100 |
| 11 | Dobrowski, L.L.P. |
| | 4601 Washington Avenue, Suite 300 |
| 12 | Houston, Texas  77007 |
| | Telephone: (713) 659-2900 |
| 13 | Attorney for Plaintiff |
| 14 | Mr. Phillip L. Sampson, Jr. |
| | SBOT NO. 00788344 |
| 15 | Mr. David W. Morris |
| | SBOT NO. 24046481 |
| 16 | Bracewell & Guiliani |
| | 711 Louisiana, Suite 2300 |
| 17 | Houston, Texas  77002 |
| | Telephone:  (713) 223-2300 |
| 18 | Attorney for Defendants |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

**CHRONOLOGICAL INDEX**

**VOLUME 1**

**HEARING**

| June 9, 2011 | | PAGE | VOL. |
|---|---|---|---|
| Motion | | 5 | 1 |
| Court's Ruling | | 35 | 1 |
| Injunction Hearing | | 35 | 1 |

| Plaintiff's Witnesses | Direct | Cross | Voir Dire |
|---|---|---|---|
| Osama Abdullatif | 38 | 69 | 76 |

| Adjournment | 79 | 1 |
|---|---|---|
| Reporter's Certificate | 80 | 1 |

1

## EXHIBIT INDEX

| PLF'S NO. | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---|---|---|---|---|
| 1 | Reporter's Record taken 1/14/11 | 35 | 37 | 2 |
| 3 | E-mail, 3/20/11 | 44 | 45 | 2 |
| 4 | Copy of Check No. 6240 | 41 | 41 | 2 |
| 5 | Settlement Agreement | 41 | 41 | 2 |
| 6 | Letter from Michael Fleming | 44 | 44 | 2 |
| 7 | Participation Agreement | 52 | 53 | 2 |
| 9 | Settlement Agreement | 55 | 55 | 2 |

| DEFT'S NO. | DESCRIPTION | OFFERED | ADMITTED |   |
|---|---|---|---|---|
| 1 | Membership Regulations | 75 | 78 | 2 |

1          *THE COURT:*  Do you have any case law?

2          *MR. PHILLIPS:*  Yes, Your Honor, I do.

3    Here are the cases that I referred to in a brief that I

4    filed.  I don't know if it reached you.

5          *THE COURT:*  I hope you brought me a copy.

6    You know about mythical filing.  If you e-filed it, I am

7    not going to get it.

8          *MR. PHILLIPS:*  It was hard-copied.

9          *THE COURT:*  Would that be it?  It's on top

10   of the file.  I haven't read this.  You want to give me

11   the highlights of your brief?

12         *MR. PHILLIPS:*  Yes, Your Honor.

13   Succinctly, the highlights of the brief are that you

14   start off in the abatement determining whether there's a

15   substantial identity of the parties and in the brief we

16   explained why there is not a substantial identity.

17         *THE COURT:*  Because they seem awfully

18   identical to me.  Tell me how they are not.

19         *MR. PHILLIPS:*  The reason why they are not

20   a substantial identity is you start off in the district

21   court and you have Osama --

22         *THE COURT:*  Remember, we started off here.

23         *MR. PHILLIPS:*  Correct, Your Honor.  We

24   start off here with ERPILE suing Osama --

25         *THE COURT:*  Saying don't be ERPILE.

```
 1              MR. PHILLIPS:  -- saying you are not
 2    authorized to take action as ERPILE.  What would have
 3    been a res judicata standpoint, I guess it gets
 4    dissolved, you have a finding that he is not ERPILE, so
 5    he loses.
 6              THE COURT:  Just so you know I haven't
 7    forgotten to get to that point we have a lot of
 8    "interesting," and that's in quotes, testimony from your
 9    client.
10              MR. SAMPSON:  I've read the transcript,
11    Your Honor.
12              THE COURT:  I know.
13              MR. PHILLIPS:  Within a matter of days, he
14    is calling and there's a settlement and he enters into a
15    settlement which results in this nonsuit and he cashes a
16    check for $750,000, three days after the settlement.
17    Then he employs counsel at some point but it's
18    evidentiary when, based on the briefing we are giving
19    you, and he determines to file a suit where he now is
20    ERPILE one more time but it's Osama as ERPILE and he
21    starts a vast array of claims against other people.
22              Coincidentally they have a direct
23    connection of the people who owned ERPILE who there was
24    an initial finding that they owned ERPILE at the time of
25    your injunction.  He adds some jurisdictional claims
```

```
 1    that would be beyond your jurisdiction but it's
 2    ERPILE -- and then they toss in a declaratory judgment
 3    claim.  It's not clear whether ERPILE is asking the
 4    Court to declare who owns it or whether it's Osama.  We
 5    are talking about identical parties.
 6                THE COURT:  Who is Stephen Hunt?
 7                MR. FLEMING:  Stephen Hunt is the trustee
 8    that was set to foreclose on that note when he came here
 9    last time.  He was the attorney and then we nonsuited
10    him.
11                THE COURT:  He is the defendant upstairs?
12                MR. PHILLIPS:  No, ma'am.  He's gone
13    because that note has not attempted to be foreclosed and
14    so there was no reason to bring him in, but it's the
15    identical lawsuit.
16                THE COURT:  So, what you are saying, they
17    have about four more parties upstairs than you had down
18    here?
19                MR. PHILLIPS:  Yes, ma'am.  And when you
20    look at the pleadings, which they put in evidence,
21    ERPILE up there is not ERPILE down here.
22                THE COURT:  I know.  ERPILE down here is
23    your client.
24                MR. PHILLIPS:  They lose the identity of
25    parties with regard to this ERPILE claim at that point.
```

```
 1                    THE COURT:  Because two different people
 2      are pretending to be ERPILE or purporting to be.
 3                    MR. PHILLIPS:  And according to our brief,
 4      you can exercise discretion at that point and say I
 5      don't find that these are the same parties.  They
 6      haven't met the burden.
 7                    THE COURT:  Pause there.  ERPILE is
 8      technically the same, but I have two different people
 9      purporting to be ERPILE.  So, how is that an identity of
10      parties?  It's sort of ERPILE 1 and ERPILE 2, not ERPILE
11      the same.
12                    MR. SAMPSON:  Sure.  Do you mind if I go a
13      little bit deeper --
14                    THE COURT:  Yes, I do mind, because I am
15      going to give you the floor.  But just real quick in the
16      middle of his deal, I want you to address that.
17                    MR. SAMPSON:  Sure.  It's absolutely
18      identity because it's ERPILE, LLC which is a fictitious
19      entity.  It's a creation of the State of Texas Secretary
20      of State.  It is ERPILE, LLC, the exact same entity with
21      the exact same filings.  Different people are acting on
22      behalf of ERPILE.
23                    THE COURT:  I get it.
24                    MR. SAMPSON:  And each of those persons is
25      a party in the district court case.  Mr. Wakeland is
```

1  acting on behalf of ERPILE here.

2          *THE COURT:*  Who is Mr. Wakeland?

3          *MR. PHILLIPS:*  He is a lawyer that worked

4  for Ali Choudhri.

5          *MR. SAMPSON:*  It's complete identity of

6  the parties, because ERPILE is ERPILE.  There are not

7  two different corporate ERPILEs.

8          *THE COURT:*  I get it.  I get what you're

9  saying.  There seem to be two or three different

10  corporate Erpiles, but I get it.  ERPILE can take on a

11  lot of different personalities is what I'm saying.

12          *MR. SAMPSON:*  And they can fight again

13  like we're trying to do in district court over who owns

14  it.

15          *MR. DOBROWSKI:*  Judge, my name is Paul

16  Dobrowski.  I also represent the plaintiffs here.

17          I think Mr. Phillips' point is this:  When

18  you do an analysis for plea in abatement, you're

19  assuming you're in the second filed court and we'll just

20  assume that for the sake of argument, that they filed

21  first, we filed second.

22          *THE COURT:*  I don't know.

23          *MR. DOBROWSKI:*  Let's humor them.  The

24  point is, though, that when you are sitting in the

25  second suit, what you consider on the identity of

 1   parties' issue is whether you should abate because the

 2   argument is, is that those same parties who are in the

 3   second suit can bring the claims as counterclaims in the

 4   first suit, i.e., the plaintiffs down here are normally

 5   and typically the defendants in the first filed suit.

 6   And they're compulsory counterclaims and so you just

 7   have it in one nice neat little box.  Here's the

 8   problem.  The problem with what Mr. Sampson is saying is

 9   ERPILE is the plaintiff in the first filed suit in his

10   suit.  The claim that we are bringing here is by ERPILE

11   against Mr. Osama, and Mr. Osama is the one controlling

12   ERPILE in the first suit and is a co-plaintiff.  So --

13             *THE COURT:*  Hold on.  You have to humor me

14   on this.  You are late to this game.

15             *MR. DOBROWSKI:*  Big time.

16             *THE COURT:*  We are going to call the first

17   suit here No. 1 and the suit upstairs No. 2 and now

18   we're in Suit No. 3.  That's why I got involved in Suit

19   No. 1, the real Suit No. 1.

20             *MR. DOBROWSKI:*  My point being, Your

21   Honor, if I may --

22             *THE COURT:*  Yeah, you just can't bring the

23   counterclaim.

24             *MR. DOBROWSKI:*  Right, because think about

25   it, what would you do?  We would have to tell the ERPILE

```
 1   that is controlled by Osama to sue Osama, because we
 2   have the claim here that ERPILE is suing Osama.  Well,
 3   the problem with Mr. Sampson's argument is there's not a
 4   complete identity of parties, because the ERPILE in No.
 5   2, the district court case, is a co-plaintiff with
 6   Osama.  And our claim, if you were to abate here, what
 7   would we do, bring ERPILE from this case, ERPILE 2 and
 8   intervene in that case and then sue Osama?  I mean, it's
 9   just crazy, Judge.
10              THE COURT:  I'm sure it can be done.  I
11   don't think that's prohibited.  Everybody stop for a
12   second.  The original suit was merely a suit to enjoin
13   Mr. Abdullatif from using ERPILE from doing anything at
14   all on behalf of ERPILE.
15              MR. PHILLIPS:  Enjoining them from any
16   action --
17              THE REPORTER:  Hold it.  One at a time.
18              THE COURT:  Including filing independent
19   lawsuits, in fact.
20              MR. PHILLIPS:  You're correct, Your Honor.
21              THE COURT:  Hang on.  Were there any other
22   issues in that original case?  Mr. Fleming, you were the
23   attorney in that case.  You may be best suited to answer
24   that.
25              MR. FLEMING:  It was, I think as you
```

1    recall, it was a stop foreclosure and stop from taking

2    any action on behalf of ERPILE.

3            *THE COURT:* Right, and I entered an

4    injunction to that effect.

5            *MR. PHILLIPS:* And to determine title.

6    That was the basic suit.

7            *THE COURT:* So, the suit upstairs is all

8    the counterclaims out of my jurisdiction and, et cetera,

9    and then Suit No. 3, where you are back here, what

10   exactly is your version of ERPILE and your client asking

11   you to do?

12           *MR. PHILLIPS:* We are only asking you to

13   do that which we asked you to do originally before we

14   were tricked into dismissing it.  We were tricked into

15   dismissing it as a result of a settlement that Osama

16   never intended to go through with.  And when you look at

17   the pleadings on the face of the pleadings that they

18   offered into your record for this hearing, he says, "I

19   was on drugs and I didn't know what I was doing."

20           *THE COURT:* His testimony, slash, in

21   quotes, the things he said -- I'm trying real hard not

22   to use the word perjury -- "I might have been on drugs"

23   but I'm not seeing why this suit harms anything upstairs

24   except for the fact that I determine who has the right

25   to be ERPILE which, in fact, I already have done and did

1    first.

2              *MR. SAMPSON:*  In a temporary injunction

3    setting without the full trial of the merits, you did,

4    Your Honor.  It harms the suit upstairs for a number of

5    reasons.  To begin with, Mr. Wakeland, who is behind

6    ERPILE in this No. 3 lawsuit, has answered and appeared

7    as a party in the district court case and set a Rule 12

8    motion to show authority which is set for a hearing in

9    front of Judge Hinde on July 8.  So, Judge Hinde is

10   going to make a ruling in his case about whether or not

11   I have the authority to represent ERPILE, LLC --

12             *THE COURT:*  Because there's a big question

13   whether anybody under the legal authority of ERPILE

14   hired you.

15             *MR. SAMPSON:*  Exactly.  Mr. Wakeland set

16   it for a hearing.  If you issue an injunction in this

17   case prohibiting Mr. Abdullatif from making any

18   arguments or statements or any representations --

19             *THE COURT:*  That hearing is not going to

20   go real well for you.

21             *MR. SAMPSON:*  Well, I would just beg to

22   differ, Your Honor, and I'll show you the case in a

23   second.  It's their case.  There's really not a

24   discretion here because of the identity of the parties

25   and because of the priority of that suit and the

1     issues --

2                    THE COURT:  Whether there's priority is an

3     issue.  Who wants to tell me about that?

4                    MR. SAMPSON:  May I finish my point?  If

5     you issue an injunction here, that means I can't even

6     show up and make an argument in front of Judge Hinde at

7     the Rule 12 motion which is something that Mr. Wakeland

8     has set up.  It would do great harm that I couldn't go

9     forward in the case that we filed because of a breach of

10    settlement agreement.  They are to pay on a settlement

11    agreement which wasn't done which is why --

12                   THE COURT:  Settlement agreement out of

13    this court, right?

14                   MR. SAMPSON:  Settlement agreement which

15    caused a nonsuit in this case.  This Court, as we talked

16    about before, lost any jurisdiction even before the

17    breach of the settlement agreement by the failure to pay

18    by Mr. Choudhri.  It was after the breach which was

19    after this Court lost plenary jurisdiction that my

20    client had to decide, okay, what am I going to do about

21    it?  Am I just going to not get paid or am I going to

22    sue on this settlement agreement?

23                   THE COURT:  Sit down.

24                   MR. SAMPSON:  And so you didn't.

25                   THE COURT:  Sit down.  Let me throw the

1    football over to your team.

2                    *MR. PHILLIPS:*  I'm ready.

3                    *THE COURT:*  My biggest issue is the thing

4    he just said is that when my plenary power ran out and

5    y'all voluntarily dismissed the case, I'm just not sure

6    how I retained the jurisdiction to assert the right of

7    first refusal, so to speak.

8                    *MR. PHILLIPS:*  It's twofold in two ways.

9    Both represent your rights to exercise discretion

10   because under the law it is you who has to be asked to

11   abate, not the other judge.

12                   *THE COURT:*  Right, because I am

13   technically now Case No. 2 and not Case No. 1.  The real

14   Case No. 1 has effectively gone away, and I don't have

15   jurisdiction.

16                   *MR. PHILLIPS:*  In the brief that we

17   provided you when you have the opportunity to confirm

18   what I'm saying as being within these four corners and

19   the law that I'm saying is in there that I've cited in

20   our other cases, if you did, for argument's sake, find

21   substantial identity, which I don't think is there, then

22   we reach this next point and the case law is unequivocal

23   that we, the party resisting the abatement, are entitled

24   to an evidentiary hearing on bad faith fraud estoppel.

25   And that, because of the fraud issue, permits us to make

1  inquiry to lawyers because there's no attorney-client

2  privilege if a lawyer participated in a fraud and what

3  is the fraudulent act.  You've got this settlement that

4  you don't intend to go through with.

5        THE COURT:  They weren't hired yet.

6        MR. PHILLIPS:  It doesn't matter.  We

7  don't know that.  A lawyer can do an act of fraud if a

8  client says I do not want to be in Judge Linda Storey's

9  court, what do we have to do about that?

10       Let's don't sue until the plenary power is

11 out and once the plenary power is gone, we'll bring a

12 suit in a court where she can't have the monetary

13 jurisdiction.  Her case is dead and we are going to get

14 this for you, where it was the client's intention to get

15 out of here.  So, he entered into a fraud, a settlement.

16 From the circumstantial evidence you can look at it and

17 say this man never intended to go through with the

18 settlement.  So, he got them to dismiss this case.

19 That's part of the equitable jurisdiction.

20       If you reach that there's a substantial

21 identity and at this evidentiary hearing once we show

22 fraud, we may have testimony from the lawyers confirming

23 the fraud if it's fraudulent intent, because they don't

24 have an attorney-client privilege, we haven't had a

25 chance to do the discovery, you may find it just from

1   the circumstance of the various evidence and you may

2   very well do that but it's, you know, a lawyer always

3   wants to come to court with all of his bullets.  That's

4   why I had identified that initially in my first brief.

5   That's why I filed a continuance in the first brief.  I

6   have no problem with it being a continuance overruled

7   because you brought it over here today.  You got a

8   chance now to bring a very comprehensive breach and we

9   are entitled to a trial with evidence and affidavits in

10  an --

11          *THE COURT:*  I get it.  They have a pretty

12  good point.  I haven't read the cases they are citing,

13  but assume the cases say what they say, they have a

14  pretty good point about being entitled to establish that

15  your client is just fraud left and right, perjury,

16  saying whatever he wants to say and doesn't have the

17  right to rely on his suit.

18          *MR. SAMPSON:*  It's much more limited than

19  that.  I'll read you what the cases say.

20          *THE COURT:*  I'll read the case.  I'm just

21  saying, they have a pretty good point but you can tell

22  me without reading what your counterpoint is.

23          *MR. SAMPSON:*  The exception and

24  Mr. Phillips can talk about fraud and deceit and can use

25  those terms however he likes.

1          THE COURT:  Don't forget I've met your

2   client --

3          MR. SAMPSON:  As have I, Your Honor.

4          THE COURT:  -- and his interesting, quote,

5   "testimony."

6          MR. SAMPSON:  And I have got to say that

7   my client is honest and my client has told you the truth

8   and we will prove at trial that he is telling the truth

9   and we are going to expose what is really the most

10  brazen fraud I have ever seen through the real property

11  records that, not just Mr. Wakeland, that's alleged in

12  our petition, but all of his affiliates and all of these

13  affiliate companies that are engaged in.  Mr. Abdullatif

14  wasn't going to have to get into any of that because he

15  settled his claim.  There was a settlement in late

16  January that called for him to be paid about $3 million.

17         THE COURT:  You keep saying that.  I get

18  it.

19         MR. SAMPSON:  Mr. Choudhri did not pay

20  2 million of the 3 million by March 22nd.  That is why

21  we had to file the lawsuit.  These exceptions go to two

22  different instances.  One, where a party files their

23  case first, you know, race to the courthouse, files

24  their case first but then doesn't do anything to

25  prosecute it.  If that is the case, then the second

1    filed court can say, okay, that clearly was done just as

2    a race to the courthouse.  You're not prosecuting your

3    action.  That's an exception to this abatement rule.

4    That clearly is not the case here.

5               THE COURT:  The second one is what?

6               MR. SAMPSON:  The second one is if the

7    party in the first filed action does something -- again,

8    a race to the courthouse situation where the party who

9    files the first action does something to prevent the

10   other party from filing their action first.  For

11   example, and the example used in cases is if two parties

12   are arguing about a dispute and the defendant is saying,

13   "Look, I'll settle with you.  I'll settle with you.

14   Don't file your suit.  Don't file your suit" and then

15   files their suit first to supersede the true claimant.

16   That is the second exception.  And that also simply

17   based on the review of the exhibits and the evidence

18   before you is clearly not the case here.  This lawsuit

19   was filed as a reaction and a response to Mr.

20   Abdullatif's lawsuit on the settlement agreement.  If

21   that lawsuit had never been filed, this lawsuit would

22   never have been filed.  All they are doing here is

23   complaining about him taking action in the district

24   court.  So, this is not --

25               THE COURT:  Who did the settlement

1    agreement give the right to proceed as ERPILE?

2              *MR. FLEMING:*  Can I clarify something in

3    response to what Mr. Sampson said?  It is a race to the

4    courthouse.  What happened is, and I am sure Mr. Sampson

5    will acknowledge, is that this lawsuit he filed up in

6    district court was filed only after Mr. Abdullatif

7    received a demand letter from me telling him to comply

8    with the settlement agreement.  This was received by

9    him.  It was sent on the 20th.  Their lawsuit was filed

10   on the 26th.  They filed the lawsuit, because I sent the

11   demand letter, so, yeah, their lawsuit was a race to the

12   courthouse.

13             *MR. SAMPSON:*  May I respond briefly?

14             *THE COURT:*  No, no.  Somebody answer the

15   question I actually asked.

16             *MR. PHILLIPS:*  Let me answer it, please,

17   Your Honor.

18             *THE COURT:*  If you're going to answer, who

19   had the right to be ERPILE in the settlement agreement?

20             *MR. PHILLIPS:*  The answer is Ali Choudhri,

21   the owner of ERPILE, albeit he has his lawyer as the

22   owner.  It's Ali Choudhri who is the principal owner.

23   The issue, though, that is, what he is not telling you

24   is, two things, one, the cases say it can be wrongful --

25   not fraudulent, meets the burden but it can be wrongful

1  or fraudulent conduct in getting you out of this

2  original court.  That's what the law is, not a race to

3  the courthouse.  He is reading in the facts that

4  happened to be involved in the particular case but not

5  the principle of law.  And the principle of law is you

6  have the discretion to hold the hearing on wrongful

7  conduct or fraud and I have a right to demand it

8  meaning --

9            *THE COURT:*  Would you sit down for a

10  second?  I have a question for Mr. Phillips.  Let's say

11  I assume that you are right.  I read your cases and they

12  say what you say they are saying.  I decide, no, I am

13  not going to abate the case.  So, what happens to the

14  second case, the one upstairs?

15            *MR. PHILLIPS:*  The second case?

16            *THE COURT:*  Not to mention the court of

17  appeals who has an opinion on the issue now as well.

18            *MR. PHILLIPS:*  The second case, Mr. Osama

19  is free to go forward with all of his claims.  So he can

20  go forward.  No statutes have run but you are going to

21  have this one quick rifle shot and that's addressed in

22  my brief.  You are going to have to decide, up or down,

23  who owns it.  Once you have that ruling, then Mr. Osama,

24  if he wins, as counsel says when he says we welcome

25  Mr. Osama to be in front of the Court, we welcome him to

1    be in front of you, the Court, to show he is a truthful,

2    honest man.  Up or down he either is the legal owner,

3    Choudhri or, you know, his lawyer is the legal owner.

4    If Wakeland is a legal owner, all the cases that ERPILE

5    has filed against Ali, his mama, his daddy, every

6    company that he's had anything to do with since this

7    transaction, all of these cases disappear.  Now, on the

8    other hand when counsel wins here, he goes back and he

9    goes forward with his cases.

10               Now, the timing of asserting Osama's

11   independent claims is up to him.  He can go forward with

12   them.  The statute hadn't run.  He can either go forward

13   with Osama's independent claims or he can say, "All

14   right, Judge, I have a motion to abate."  I represent to

15   you, certainly, we would say, sure, abate.  You have

16   this rifle-shot issue and it may even be a non-jury

17   trial.  So, boom, it's going to be done very quickly,

18   effectively with judicial economy as a non-jury trial in

19   your court.

20               *THE COURT:*  Mr. Fleming?

21               *MR. FLEMING:*  At the time of the

22   settlement agreement who owned ERPILE, Mr. Wakeland

23   owned ERPILE at the time the settlement was entered into

24   which is also the time the settlement agreement with Mr.

25   Abdullatif released, quit, discharged all these small

1    claims that accrued to Osama due to the parties --
2    that's when he signed the settlement agreement.
3              *THE COURT:*  Now you're up.
4              *MR. SAMPSON:*  I would encourage the Court
5    to take a look at the settlement agreement if you really
6    are interested in the question of what does it say about
7    the ownership of ERPILE, because it does not establish a
8    thing about who owns ERPILE.  It does not say
9    anywhere -- it's an agreement between Ali Choudhri and
10   Osama Abdullatif.  Nowhere within any terms of that
11   settlement agreement does it say such and such owns
12   ERPILE.  Such and such does not own ERPILE.  It doesn't
13   say a word about who owns it.  There's a release
14   provision in it.  The release only pertains to Ali
15   Choudhri and his affiliate entities regarding,
16   essentially, any claims that can be brought.  Even the
17   release doesn't necessarily foreclose my client from
18   claiming an interest in ERPILE.  If he had been paid his
19   money which is all that ERPILE did was hold the note, if
20   he had been paid that under the settlement agreement, we
21   wouldn't even be here.  May I respond to a few other
22   points, Your Honor?
23              *THE COURT:*  Okay.
24              *MR. SAMPSON:*  First of all, if there is a
25   case in your trial, if this case does proceed, and

1  notwithstanding Texas law, there will be a jury trial.

2  There's no requirement of a bench trial with respect to

3  the ownership of ERPILE issues.  Secondly --

4          THE COURT:  Unless it's a matter of law.

5          MR. SAMPSON:  Unless it's decided as a

6  matter of law, but I can tell you --

7          MR. FLEMING:  Or contract.

8          MR. SAMPSON:  -- both sides have a number

9  of arguments about how, why they do or don't own ERPILE.

10          THE COURT:  Let's cross that jury bridge

11  when we get to it.

12          MR. SAMPSON:  Secondly, the facts and the

13  chronology are borne out undisputedly that a case was

14  settled.  A 2 million-dollar payment was to be made in

15  late March.  The payment was not made.  That's why my

16  client sued.  And in terms of, again, as I say, we'd be

17  happy to be anywhere if we needed to be in district

18  court because of the size of the claim.  But it's the

19  Wyatt, Supreme Court case, that says as long as the form

20  is a proper one, it is the plaintiff's privilege to

21  choose the form.  They can't dictate where my guy files

22  suit.

23          THE COURT:  Unless your guy fraudulently

24  got himself out of this court, because he was on drugs

25  when his testimony was here, according to him.

1          *MR. FLEMING:*  And he took $750,000.

2          *MR. SAMPSON:*  There was an agreement.

3     There absolutely was an agreement.

4          *THE COURT:*  I get that, counsel.  People

5     do a lot of things to get out of court which is my

6     concern.  $750,000 flowed from them to you, not the

7     other way around.

8          *MR. SAMPSON:*  Yeah, to my client.  Then an

9     additional 2 million was owed, never paid.  Is he

10    supposed to just not do anything about that?

11         *MR. FLEMING:*  He's supposed to, what he's

12    supposed to do when he gets a letter from all these

13    lawyers saying you haven't done all these things, you

14    took $750,000.  You signed the settlement agreement; you

15    waived any claims regarding ERPILE; do the following

16    certain things under the settlement agreement, you are

17    supposed to do them.  That's what he is supposed to do.

18    He is not supposed to run upstairs and file another

19    lawsuit before he comes back here.

20         *MR. SAMPSON:*  May I make a breach comment,

21    Your Honor, about the identity of the parties issue?  I

22    had a brief moment to take a look at their brief as I

23    walked in and I'm glad I did, because one of the cases

24    that they cite, they argue if there's not a complete

25    identity of the parties, then it's discretionary for the

```
 1    Court in terms of whether to grant an abatement.  And
 2    they cite the Home Savings Association versus Beavers
 3    case, 745 S.W. 2d 504.  I actually read the case.  What
 4    the case says is that -- in this case the first filed
 5    case had three parties in it.  The second filed case had
 6    six parties in it.  Among those six were the first
 7    three.
 8                    THE COURT:  I get it.  It's like the, you
 9    know, assault being included in the murder charge.  I
10    get it.
11                    MR. SAMPSON:  Right.  What the court says
12    is that that is an identity of the parties.
13                    THE COURT:  I get it, counsel.
14                    MR. SAMPSON:  The court says that that
15    takes discretion away.
16                    THE COURT:  You're not listening.  I get
17    it.  I was there before you even argued the point.
18    Trust me.
19                    MR. SAMPSON:  I appreciate it.
20                    MR. DOBROWSKI:  There are a few other
21    items that --
22                    THE COURT:  Are you co-counsel or do you
23    represent somebody in particular?
24                    MR. DOBROWSKI:  Co-counsel.  May I?
25                    THE COURT:  Go ahead.
```

1            MR. DOBROWSKI:  Just because I know that

2    Mr. Phillips was answering direct questions, I wanted to

3    fill out the picture on the issue you have to decide on

4    this abatement issue.  There are a couple of other cases

5    that I have copies of and will share with you.

6            THE COURT:  Because I don't have enough.

7            MR. DOBROWSKI:  You do not.  I don't want

8    to inundate you just yet because I am waiting to see

9    what you do.  But a couple of other points, Your Honor.

10   The three issues that control abatement are, one,

11   promoting justice; two, avoiding prejudice; and, three,

12   promoting judicial economy.  As Mr. Phillips pointed out

13   to you this is a rifle-shot case.  There can be no doubt

14   that you are considering those three items, which you

15   must, that it --

16           MR. PHILLIPS:  Your Honor --

17           THE COURT:  I get it.

18           MR. DOBROWSKI:  -- in favor of you

19   declining the abatement.  Because there's no doubt the

20   judicial economy on that issue, the issue that we laid

21   out solely in our pleadings is better served by you.

22   You've already heard testimony about the issue.  You've

23   already issued an injunction about the issue.  If you

24   grant this additional injunction, I believe the Rules of

25   Civil Procedure provide for an expedited trial on the

1   merits in an injunction case.  So, therefore, we'll have

2   a short fuse on discovery and have that issue --

3            THE COURT:  I get it, counsel.  Everybody

4   stop.  Don't say anything else.  From you I would like

5   to borrow, borrow, your copy of the transcript.  Y'all

6   go get a cup of coffee.  I am going to read your copy of

7   the transcript.  I know you bought it because I would

8   like to read it.

9            MR. PHILLIPS:  I did.

10           THE COURT:  Whoever bought it.  I am going

11  to read the cases.  Have a cup of coffee and be back at

12  2:35.

13           MR. FLEMING:  Your Honor, would you like

14  to see the settlement agreement, too?

15           THE COURT:  Sure.  Let me read some of

16  this tone that has arrived between now and the last time

17  I was here.

18           MR. SAMPSON:  I have one very last point

19  to you.

20           THE COURT:  Only on the jurisdiction

21  issue.

22           MR. SAMPSON:  This goes to jurisdiction in

23  terms of the court and --

24           THE COURT:  I get it.

25           MR. SAMPSON:  There will be zero harm to

1   anybody, this goes to the T.I. issue, zero harm to

2   anybody for the court to abate this matter and allow the

3   issue to be resolved in less than a month, Your Honor,

4   in front of Judge Hinde.  Mr. Wakeland, who is the

5   plaintiff in this case, has teed the issue up in front

6   of Judge Hinde for July 8th, asked for it to be

7   resolved.  There's zero harm for letting it happen

8   there.  And that's what Texas law requires must happen.

9                  *MR. PHILLIPS:*  Your Honor, I'm sorry, may

10  I say one thing?  Mr. Wakeland is not a party in this

11  case.  He called him a plaintiff in this case.

12                 *THE COURT:*  He is a party upstairs.

13                 *MR. PHILLIPS:*  He is simply in his own

14  individual capacity as for that.  He didn't ask for it

15  as ERPILE.

16                 *THE COURT:*  I get it.  Let me go read a

17  little bit.  I'll be back in half an hour.

18                 *(Recess taken)*

19                 *THE COURT:*  I read most of this, and thank

20  you.  I don't know whose transcript I have.  I borrowed

21  one.

22                 *MR. PHILLIPS:*  We will offer it to attach

23  to the record so it will be there.

24                 *THE COURT:*  Hang on to it for a second.  I

25  want to de-clutter the file.  Since it not my regular

1     court reporter who did it, it's probably a good thing

2     to hold onto it.  Okay.  Final comments before I make a

3     ruling on jurisdiction.  Anybody?  New lawyer.  Tell me

4     your name again.

5                    MR. DOBROWSKI:  Paul Dobrowski.  Your

6     Honor, as Mr. Phillips pointed out, this is an abuse of

7     discretion.  You have pure discretion on this to decide.

8     I don't want to keep repeating what he said.  Besides

9     the three points that I made earlier about judicial

10    economy, et cetera, the issue about the identity of

11    parties we talked about at the beginning, I want to make

12    sure the Court also understands for the abatement you

13    have to look at an identity of parties and identity of

14    issues.  My point on the whole explanation of ERPILE 1

15    versus ERPILE 2 is that you can't have an identity, not

16    only do we not have an identity of parties, we also

17    can't have an identity of issues because they couldn't

18    bring that crossclaim.  So, it's really two-fold,

19    because abatement requires identity of parties and

20    identity of issues.  As a matter of law, you don't have

21    it here because of the unique, I must say unique,

22    structure of the way these cases are set up with both

23    parties claiming the right.

24                    THE COURT:  You need to wrap it up.

25                    MR. DOBROWSKI:  I will.  The inequitable

1   conduct here is that I think the Court really needs to

2   consider is not only the settlement to avoid an adverse

3   decision in this suit, but he did receive $750,000, Your

4   Honor.  The release he gives says I release all claims

5   to ERPILE --

6                 THE COURT:  I'm not resolving the dispute

7   about the settlement agreement.  That is outside the

8   context.

9                 MR. DOBROWSKI:  Thank you.

10                THE COURT:  Mr. Fleming, anything you want

11  to wrap up with?

12                MR. FLEMING:  No, Your Honor.

13                THE COURT:  Mr. Phillips?

14                MR. PHILLIPS:  No, ma'am.

15                THE COURT:  Mr. Sampson, and that makes

16  you Galtney.

17                MR. MORRIS:  Morris.

18                THE COURT:  Well, who's Galtney?

19                MR. GALTNEY:  I am, Your Honor.  I am

20  inadvertently on the pleadings.  I have not appeared in

21  this lawsuit.

22                THE COURT:  Who do you represent?

23                MR. GALTNEY:  I represent Richard Wakeland

24  in the lawsuit upstairs.

25                THE COURT:  You are spectating, and who

1    are you?

2                 MR. SCARBOROUGH:  I'm his boss.

3                 THE COURT:  Do you have a name?

4                 MR. SCARBOROUGH:  Harry Scarborough,

5    counsel for Mr. Wakeland who in this court would be the

6    owner of ERPILE who is also a defendant --

7                 THE COURT:  Allegedly.  Of Faubus &

8    Scarborough, you are Scarborough.

9                 MR. SCARBOROUGH:  Mr. Sampson said the

10   issue of this could be decided by Judge Hinde as a

11   result of the Rule 12 motion to show authority that we

12   filed.  It's not really a correct statement.  If you

13   grant the injunction because he would -- it's a show

14   cause to Mr. Sampson.

15                THE COURT:  I get it.

16                MR. SCARBOROUGH:  There's nothing by

17   enjoining ERPILE that would prevent him from defending

18   himself.

19                THE COURT:  My only problem with letting

20   you talk in this official proceeding is you are not

21   officially here.  Okay.  Mr. Sampson?

22                MR. SAMPSON:  Thank you, Your Honor.

23                The evidence before the Court squarely

24   meets all the requirements.  The evidence before the

25   Court, any reading of it, takes it out of the limited

1  exceptions.  You've seen the cases about identical

2  parties.  We have it as between these two lawsuits.  The

3  issues are the same.  It's the ownership of ERPILE.

4  Even the identity and the issues don't have to be

5  squarely identical but they are, Your Honor, under

6  the --

7           THE COURT:  I am not going to not let you

8  finish.  The one thing I didn't take back with me was

9  your original petition.

10          MR. SAMPSON:  Would you like that?

11          THE COURT:  That's your original petition,

12  really?

13          MR. SAMPSON:  It's only about this much.

14          THE COURT:  I am only borrowing it.  I am

15  pretty sure you filed it.

16          MR. SAMPSON:  We entered it and a second

17  exhibit at the hearing.

18          THE COURT:  Hand me your original petition

19  for loaner purposes.

20          MR. SAMPSON:  Sure, Your Honor.

21          THE COURT:  Then I'm going to let you

22  finish your sentence.  I'm going to hand it right back

23  to you.  I want to look at one thing.  Now you can

24  continue your paragraph.

25          MR. SAMPSON:  I'll just conclude, though,

```
 1  Your Honor, to the extent that judicial economy should
 2  be a factor in your decision-making here, that can only
 3  lead to one conclusion which is let the district court
 4  and Judge Hinde rule on this issue in less than a month.
 5  That's the most judicious, most economical way to do it.
 6  It's already set up.  Judge Hinde will decide whether or
 7  not Mr. Abdullatif can retain us to sue on behalf of
 8  ERPILE.  If we lose that, then he's not suing on behalf
 9  of ERPILE, what they want out of this case, they get and
10  we're done.  If he decides otherwise, again, those
11  issues are squarely before him in his court, then we
12  proceed under ERPILE.  The judicial economy is
13  absolutely served by allowing what's already in place
14  and what has been in place just prior to this lawsuit
15  being filed to go forward and that is what these cases
16  are all about, Your Honor.
17              THE COURT:  I didn't catch your name.
18              MR. MORRIS:  David Morris.
19              THE COURT:  Mr. Morris, do you have
20  something to say?
21              MR. MORRIS:  I do not, Your Honor.
22              THE COURT:  You're sure.  You can't just
23  make something up?
24              MR. MORRIS:  No, Your Honor.
25              THE COURT:  Do you work together?
```

 1              *MR. SAMPSON:* We do, Your Honor.

 2              *THE COURT:* Give me a second. Okay.

 3    Anybody have anything else?

 4              *MR. DOBROWSKI:* Just to pick up so it's

 5    officially part of the record, since he is not a party,

 6    and rebutt what Mr. Sampson just told you, the hearing

 7    in 30 days will not resolve the issue of who owns the

 8    claim or who should act on behalf of ERPILE. Thank you.

 9              *THE COURT:* I must look dumber than mud

10    today because of my mouth, but I actually get it.

11              Here's my ruling. Ruling part one, your

12    motion to abate is denied. That gets us to the second

13    part of the hearing. Which tee's you-all up again,

14    right?

15              *MR. PHILLIPS:* I'm sorry, Your Honor?

16              *THE COURT:* Their motion to abate is

17    denied. Now we are here on an injunction hearing. Go.

18              *MR. PHILLIPS:* We call Mr. Abdullatif,

19    Your Honor.

20              *THE COURT:* Come on up.

21              *MR. PHILLIPS:* For the purposes of the

22    record, we would like to have this marked as a formal

23    exhibit and tender to counsel and offer it into

24    evidence.

25              *THE COURT:* Are you going to object to

```
 1   their formal exhibit, to No. 1?

 2              MR. SAMPSON:  I am.

 3              THE COURT:  First, let me tell everybody,

 4   y'all, at this point, need to pick a lawyer.  Are you

 5   it?

 6              MR. PHILLIPS:  I am.

 7              THE COURT:  You are it, because he is

 8   helping.

 9              MR. SAMPSON:  Yes.

10              THE COURT:  The way I want objections, I

11   want you to stand up and give me, objection, hearsay;

12   objection, blah.  I don't need paragraphs.  Give me a

13   legal reason.

14              MR. SAMPSON:  Objection, no

15   authentication.  It's not a certified copy of the

16   transcript.

17              THE COURT:  Says "Original" on it.

18              MR. SAMPSON:  I think Mr. Phillips told me

19   when he gave it to me he didn't get a certified copy.

20              MR. PHILLIPS:  I did not.

21              THE COURT:  It's not certified?

22              MR. PHILLIPS:  It is certified.

23              THE COURT:  Before you introduce exhibits,

24   show them to the other side.

25              MR. PHILLIPS:  I did.
```

1          THE COURT:  I want everybody to know not

2     just you, before you introduce an exhibit, show it to

3     the other side.  Let him look at it so that I'll know if

4     they have an objection.

5          MR. SAMPSON:  I'll object on the basis of

6     relevance.  A bunch of information here that has nothing

7     to do with their T.I. elements here in this matter.

8     Secondly, to the exhibits, there are several of exhibits

9     that are part of the transcript which I definitely have

10    objections based on lack of foundation.

11         THE COURT:  That's all part of the law of

12    the case, though.  Remember, I am not abating the case.

13         MR. SAMPSON:  It's still a new case, Your

14    Honor.

15         THE COURT:  It is a new case.  So, there

16    are so many ways they are going to get those in.

17         MR. SAMPSON:  If they bring the right --

18         THE COURT:  I admitted them in the first

19    trial.  He was pro se.  Really, wasn't making profound

20    or even good objections or really any -- because I did

21    just reading the transcript, part where he said I

22    object.  And I said why.  And he said I don't know, I'm

23    not a lawyer.  I'll overrule your objection.

24    Plaintiff's 1 is in.

25              The other thing I need to get to the top

```
 1   of my pile is the current original petition in this
 2   lawsuit, Lawsuit No. 3.
 3                   MR. SAMPSON:  You wouldn't let me make it
 4   an exhibit, although I wanted to.
 5                   THE COURT:  I don't want it to be an
 6   exhibit, counsel.  There's a case out there that says
 7   that's not appropriate.
 8                   MR. SAMPSON:  I know, Judge.
 9                   THE COURT:  I think I've got it.  Okay.
10   Did we find the witness?
11                   Mr. Abdullatif, I need you to speak loudly
12   today.  I have seven lawyers listening.  Get up here and
13   use the microphone after I swear you in.  Raise your
14   right hand.
15                           OSAMA ABDULLATIF,
16   having been first duly sworn, testified as follows:
17                   THE COURT:  Speak into the microphone.
18   Have a seat.  Speak loudly, please.
19                          DIRECT EXAMINATION
20   BY MR. PHILLIPS:
21       Q.   State your name, please, sir.
22       A.   Osama Abdullatif.
23       Q.   How are you employed?
24       A.   Self-employed.
25       Q.   By what company name?
```

1     A.   Latif and Company.

2     Q.   Do you have other names that you go by?

3     A.   I have other names.  Individual?

4     Q.   Do you have other names that you also use in

5  addition to Latif and Company?

6     A.   I have other companies, yes, sir.

7     Q.   Do you know Ali Choudhri?

8     A.   Yes.

9     Q.   How many years have you known him?

10     A.   Probably six or seven.

11     Q.   Do you know Nyeem (phonetic) Choudhri?

12     A.   Yes.

13     Q.   How many years have you known him?

14     A.   Almost same thing, about six or seven years.

15     Q.   How long have you been in the business you are

16  currently in?

17     A.   Ten years.

18     Q.   I'm sorry?

19     A.   Ten years.

20     Q.   In that business do you have occasion to need

21  to have immediate access to hundreds of thousands of

22  dollars to make purchases?

23     A.   Yes.

24     Q.   In that business do you have occasion to borrow

25  millions of dollars on loans that are made by lenders on

 1   real estate?

 2        *A.*   I don't get your question.  Say that again,

 3   please.

 4        *Q.*   I'll restate it.  I'll make it clearer.

 5        *A.*   Okay.  Thank you.

 6        *Q.*   Have you ever made a representation to Ali

 7   Choudhri that you have lending contacts whereby in a

 8   matter of a few days you can get a loan approved for

 9   three, four, $5 million, depending on the proper

10   appraisal of real estate?

11        *A.*   How many days, three or four days?  Impossible.

12        *Q.*   Four or five days?

13        *A.*   No, sir.

14        *Q.*   What time periods are involved for you to

15   borrow five or $6 million from your lenders?

16        *A.*   Depends on the deal and depends on the lender

17   who is working on the deal.  It went from two months to

18   six months.

19             *THE COURT:*  Repeat to me the beginning of

20   that sentence.

21             *(The record was read as requested.)*

22        *Q.*   *(BY MR. PHILLIPS)* Now, sir, I want to show you

23   what's been marked as Exhibit No. 2.

24             *MR. PHILLIPS:*  May I approach the witness,

25   Your Honor?

1          THE COURT:  If you show it to --

2          MR. PHILLIPS:  I've already done so.

3          MR. SAMPSON:  I object.  Hearsay.

4          MR. PHILLIPS:  I haven't tried to lay a

5   predicate yet.

6          THE COURT:  I'll give him an opportunity

7   to lay a predicate before I make a ruling, because I

8   don't know what it is yet.

9          MR. PHILLIPS:  I have Exhibits 2, 3, and

10  4.  I have already given them to counsel to review.  I

11  don't think there's an agreement to admit any of them.

12          THE COURT:  You know you have to prove

13  them all up.  Go ahead.

14          MR. SAMPSON:  Exhibit 4, I'm fine with.

15          MR. PHILLIPS:  I'll offer Exhibit 4.

16          THE COURT:  Four is admitted without

17  objection.  For the purposes of this, y'all are going to

18  be plaintiffs.

19          MR. PHILLIPS:  How about 5?

20          MR. SAMPSON:  That's fine.

21          THE COURT:  Plaintiff's 5 admitted without

22  objection.

23          MR. PHILLIPS:  May I briefly publish 4 and

24  5?

25          THE COURT:  To me?

```
 1              MR. PHILLIPS:  Yes.  Exhibit No. 4 is a
 2    check for 750,000 paid to Osama Abdullatif.
 3              THE COURT:  Bear in mind I'm not trying to
 4    issue who breached what.
 5              MR. PHILLIPS:  I understand, Your Honor.
 6              THE COURT:  I assume that's what that
 7    check is, a check from your client to them?
 8              MR. PHILLIPS:  I'm proving my injunction.
 9    Five is a settlement agreement.
10              THE COURT:  Okay.
11              MR. PHILLIPS:  May I approach the witness?
12              MR. SAMPSON:  Do you have another copy of
13    the exhibits?
14              THE COURT:  Let's move things along.
15       Q.  (BY MR. PHILLIPS) Now, sir, I want to show you
16    what's been marked as Plaintiff's Exhibit No. 2.  It's a
17    letter to you from a lawyer named Michael P. Fleming.
18    Do you have a present recollection today of having
19    received the original of that letter?
20       A.   Yes.
21       Q.   And is that an exact copy of the letter which
22    you previously received from Mr. Fleming absent his
23    signature?
24              MR. SAMPSON:  Objection, hearsay, Your
25    Honor, at this point.
```

1          THE COURT:  Wait until he offers it.  He

2     hasn't offered it yet.  Restate your question.

3          Q.   (BY MR. PHILLIPS)  Is that an exact copy of the

4     letter you received from Mr. Fleming absent his

5     signature?

6          A.   It's the only letter I received, so it appears

7     to be.

8               THE REPORTER:  I'm sorry?

9               THE WITNESS:  That appears to be.

10              MR. PHILLIPS:  At this time offer Exhibit

11     2.

12              MR. SAMPSON:  Objection, hearsay.

13              THE COURT:  I'm going to sustain it.  It's

14     not a signed copy.

15              MR. FLEMING:  Could I have the signed

16     copy?  I gave it to you.  I don't have the original.

17              THE COURT:  Was it in the package of the

18     stuff?

19              MR. PHILLIPS:  If I may, Your Honor, I

20     would like to substitute an original for the copy.

21              THE COURT:  Is that one signed?

22              MR. PHILLIPS:  It is signed, Your Honor.

23              THE COURT:  It does appear to be on Mr.

24     Fleming's letterhead.  Show that one to him.

25              MR. PHILLIPS:  Do you have an objection to

1  my substituting?

2          THE COURT:  Call it a different exhibit

3  and show it to him.

4          MR. SAMPSON:  I don't care if he

5  substitutes that.  It's still hearsay.

6          THE COURT:  Let me make that decision, but

7  I get that's your objection.

8    Q.   (BY MR. PHILLIPS) Is this the letter that you

9  received?

10   A.   Yes.

11          MR. PHILLIPS:  Offer 6, Your Honor.

12          MR. SAMPSON:  Objection, hearsay.

13          THE COURT:  Six is now the original letter

14  that is signed?

15          MR. PHILLIPS:  Yes, Your Honor.

16          THE COURT:  Overruled.

17   Q.   (BY MR. PHILLIPS) I'll show you what's been

18  marked for identification as Plaintiff's 3.  Did you

19  receive that e-mail?

20   A.   That looks like e-mail that I received, yes.

21          MR. PHILLIPS:  Offer Plaintiff's 3.

22          MR. SAMPSON:  Objection, hearsay.

23          THE COURT:  E-mail from whom to whom about

24  what?

25   Q.   (BY MR. PHILLIPS) Who is this e-mail -- who was

1    it e-mailed to?

2         *A.*    To Osama1966@sbcglobal.net.

3         *Q.*    That's you?

4         *A.*    That's my e-mail.

5         *Q.*    And who is it from?

6         *A.*    From Ali@jetallcompanies.com.

7         *Q.*    That's Ali Choudhri?

8         *A.*    Yeah.

9         *Q.*    And the date?

10        *A.*    It is March 10, 2011.

11        *Q.*    And the subject?

12        *A.*    I don't see a subject.

13        *Q.*    What was the subject of the e-mail without

14   looking at the contents?

15                *MR. SAMPSON:*  Objection, hearsay.

16                *THE COURT:*  Overruled.  It's from their

17   client to your client.

18                *MR. SAMPSON:*  It's not their client.  It's

19   Ali Choudhri, not a party to the case.

20                *THE COURT:*  Okay.  But he is the principal

21   of the firm, one of the alleged principals.  Overruled.

22                *MR. PHILLIPS:*  It's admitted?

23                *THE COURT:*  Yes.  Still want to know what

24   it's about.  All I've heard is did you get an e-mail.  I

25   don't know what it's about or how it is relevant to the

 1  case.

 2              MR. PHILLIPS:  I wanted to get the

 3  exhibits in and then I was going to develop my evidence.

 4              THE COURT:  It's easier to offer them and

 5  get them in as you do it as you're developing your

 6  evidence.

 7              MR. PHILLIPS:  I understand, Your Honor.

 8  I'll keep that in mind with additional exhibits.

 9              THE COURT:  Let's move along.

10      Q.   (BY MR. PHILLIPS) Were you sitting in Ali

11  Choudhri's office when the ERPILE entity was formed at

12  the secretary of state's office?

13      A.   You will have to say that again for me.

14      Q.   Were you sitting in Ali Choudhri's office when

15  the ERPILE entity was chartered with the secretary of

16  state?

17      A.   I can't remember that.  What date was that?

18  What are you referring to?  I sat in Ali's office

19  several times.  What are you referring to?

20              THE COURT:  Stop.  When I talk, don't

21  talk.  When he talks, don't interrupt.  The court

22  reporter has to write down people.  She can write one

23  person at a time.

24              THE WITNESS:  Yes, Your Honor.

25              THE COURT:  And especially if I'm talking,

1   you need to stop.  He said that he didn't know the

2   answer to that question.  Did you have a date that you

3   could help him clarify?

4               MR. PHILLIPS:  I don't have -- at this

5   second I'm getting it, but I'll go to another line of

6   inquiry.

7               THE COURT:  Okay.  Then we're going to

8   live with I don't know.

9               MR. PHILLIPS:  I understand that, Your

10  Honor.

11  Q.   (BY MR. PHILLIPS) Do you have a present

12  recollection today of Ali Choudhri asking you for your

13  credit card to pay for it?

14               THE COURT:  Pay for?

15  Q.   (BY MR. PHILLIPS) Pay for the charter of the

16  ERPILE.  Does that refresh your memory?

17  A.   I know I bid for it with my credit card.  If

18  you ask me for the card, I really have no idea.

19  Q.   Now, sir, who selected the name ERPILE?

20  A.   I don't understand your question.

21  Q.   Do you have a recollection that it was Ali

22  Choudhri who selected the name ERPILE?

23  A.   We discussed different company names and

24  different deals.  I don't remember who selected ERPILE

25  or how --

1    *Q.*   What is your present recollection that you did

2    when forming ERPILE or in connection with the formation

3    of ERPILE, LLC?

4    *A.*   My recollection that we filed with the

5    secretary of state to get a charter number for ERPILE,

6    LLC.

7    *Q.*   When you say "we," do you mean you and Ali

8    Choudhri?

9    *A.*   Let me rephrase it.  I filed for the ERPILE,

10   LLC using my credit card to get a charter number for the

11   company.

12   *Q.*   Was Ali Choudhri present at the time you did

13   those acts -- strike that.  I withdraw the question.

14            Is it your testimony that you individually

15   contacted the secretary of state's office?

16   *A.*   We don't have to contact the secretary of

17   state.  We go online to do that.  The answer, I did not

18   contact the secretary of state.  I went online and

19   applied.

20   *Q.*   Are you saying that it was you as the operator

21   of the computer who went online to go to the secretary

22   of state's Web site to charter ERPILE, LLC?

23   *A.*   I can't remember that part.

24   *Q.*   You do not remember?

25            *THE COURT:*  I cannot understand you.  You

```
 1    need to speak up into the microphone, please.
 2                  THE WITNESS:  I thought I was.
 3                  THE COURT:  You're not.
 4                  THE WITNESS:  Okay.
 5         A.   Say that again for me.
 6         Q.   (BY MR. PHILLIPS) Did you, yourself, go online
 7    to charter ERPILE, LLC with the secretary of state?
 8         A.   I can't remember.
 9         Q.   Do you have any present recollection that it
10    was not Ali Choudhri who went online and chartered
11    ERPILE?
12         A.   What do you mean chartered ERPILE?
13         Q.   Contacted the secretary of state and filled out
14    the forms so ERPILE, LLC would go into existence as a
15    business entity in the State of Texas.  Now that's what
16    I mean.  Based on that definition do you have any
17    present knowledge that would exclude that Ali Choudhri
18    was the one who actually was in control of the computer
19    and taking all the actions?
20         A.   I can't remember that.
21                  THE COURT:  Can I help you, counsel?
22    These questions are a little bit painful.
23                  Do you remember, did you get on the
24    computer and do it or did Ali Choudhri do it?  Is it
25    possible Ali Choudhri did it?
```

1          *THE WITNESS:*  It's possible.

2          *THE COURT:*  Does that help?

3          *MR. PHILLIPS:*  Yes, ma'am.

4     Q.   *(BY MR. PHILLIPS)* Did you enter into an

5 agreement with Ali Choudhri to furnish $1,800,000 and he

6 agreed to put in 600,000 in the ERPILE investment to

7 purchase the note?

8     A.   You are going to have to say that again for me.

9 Give me the documents if you want me to look at it.

10    Q.   All right.

11          *MR. PHILLIPS:*  Your Honor, at the last

12 hearing, the transcript of which is in evidence, the

13 originals were tendered to the witness as the record

14 indicates and then copies were substituted.  For the

15 purpose of this hearing, I would like to use those

16 originals.  I'll identify them.

17          *THE COURT:*  Is there some need that the

18 copies are not sufficient that we can't all agree to use

19 the copies?  Are the originals unique?

20          *MR. PHILLIPS:*  They have pen, ink.

21          *THE COURT:*  Okay.  Thoughts, Counsel.

22          *MR. SAMPSON:*  Are you about to offer an

23 exhibit?

24          *MR. PHILLIPS:*  There's an exhibit that is

25 already in evidence.

1          *THE COURT:*  There's a portion of an

2    exhibit he wants to pull out.  The problem -- how do you

3    have the original?

4          *MR. PHILLIPS:*  Because they were returned

5    to us at the conclusion by the reporter after there was

6    an agreement that copies could be substituted for the

7    originals

8          *THE COURT:*  You-all agreed with the court

9    reporter to substitute copies so you-all are now in

10    possession of the originals.  You got them directly back

11    from the court reporter.

12          *MR. PHILLIPS:*  Yes.

13          *THE COURT:*  I don't mind them using the

14    originals.  Show them to counsel before you start

15    talking, because he is going to have objections to every

16    one of them.

17          *MR. SAMPSON:*  Is counsel trying to

18    substitute the original settlement agreement for the one

19    in evidence?

20          *THE COURT:*  He wants it to be its own free

21    thrown exhibit that he can talk to the witness about,

22    right?

23          *MR. PHILLIPS:*  Yes, Your Honor.

24          *THE COURT:*  That whole set is already in.

25    Now he is saying I have the original document.  I got it

1  back from the court reporter and I want to talk to the

2  witness about the original document.  I am saying I

3  think it's a good idea to talk to him about the original

4  anyway, so I'm going to let him do that.  He hasn't

5  offered it yet.  When he does, I know you have an

6  objection and I will entertain it.

7       Q.   (BY MR. PHILLIPS) I want to show you this

8  participation agreement that is in evidence.

9            THE COURT:  It's not in evidence yet.

10  It's in evidence as a piece of Exhibit A, but you are

11  going to re-introduce it now.  I have already admitted

12  everything because it was an exhibit to Exhibit A which

13  I admitted or Exhibit 1.

14            MR. SAMPSON:  You're right, yes.

15            THE COURT:  In a sort of different lawsuit

16  about the exact same thing and exact same parties.

17            MR. SAMPSON:  As soon as he offers it,

18  I'll make my objection.

19            MR. PHILLIPS:  Is Your Honor's preference

20  I re-mark these as new exhibits?

21            THE COURT:  That's my preference.

22            MR. PHILLIPS:  At this time I tender to

23  counsel what's been marked as Plaintiff's Exhibit No. 7,

24  8.

25            THE COURT:  Hand him one and talk about

1   one and prove up one and then hand him some other one.

2           MR. PHILLIPS:  Yes, Your Honor.  I tender

3   7 to counsel represented as an exact duplicate of the

4   exhibit.

5           THE COURT:  I thought it was the exact

6   original.

7           MR. PHILLIPS:  It's the original.

8           THE COURT:  That makes it an original of

9   what the duplicate is as part of Exhibit 1.  We get

10  that.  That's already been admitted.  It's already in.

11          MR. SAMPSON:  I haven't looked through it,

12  if it's represented as the exact same as the original.

13          THE COURT:  It is the original.

14          MR. SAMPSON:  I'm fine with that.

15          THE COURT:  Plaintiff's 7 is admitted.

16          MR. SAMPSON:  I want to make sure I see

17  the one you are entering.  You did offer me the original

18  of the settlement agreement that has some handwriting on

19  it.

20          THE COURT:  This isn't the settlement

21  agreement.

22          MR. SAMPSON:  Exhibit 7, I object to

23  foundation, absolutely.

24          THE COURT:  It's already admitted,

25  counsel.

1            MR. SAMPSON:  I am going to urge the

2   objection.  There's no foundation.

3            THE COURT:  Overruled.  Exhibit 7 is in.

4   I haven't given him a chance to lay a foundation, so go

5   ahead.

6       Q.   (BY MR. PHILLIPS) Mr. Abdullatif, do you

7   recognize Exhibit No. 7?

8       A.   As an exhibit that was admitted before, yes.

9            THE COURT:  He wants you to recognize it

10  for what it is, not that it was an exhibit that was

11  admitted before.

12      Q.   (BY MR. PHILLIPS) Do you recognize that

13  exhibit?

14      A.   I don't understand what you mean by recognize

15  the exhibit.  It was an exhibit that was given to have

16  me before.  Looks like the same document.

17      Q.   It is.

18      A.   Okay.

19      Q.   It has your signature on it?

20           THE COURT:  All he is saying is have you

21  ever seen it before.  If your answer is only in this

22  courtroom, feel free to say that.

23      A.   I've seen it in this courtroom, and I've seen

24  when it was submitted to me through service when I was

25  served.

1    *Q.   (BY MR. PHILLIPS)* On what's entitled page

2    number ten, there's an original signature under your

3    name, correct, under the name of ERPILE, LLC?

4    *A.*   Yes.

5    *Q.*   Is that your original signature?

6    *A.*   Looks like my signature.

7    *Q.*   Is there anything about this -- did you sign

8    this document?

9    *A.*   I did not sign this document.

10   *Q.*   Do you have a recollection as to whether or not

11   at the time ERPILE, LLC was formed that there was a

12   participation agreement used in the formation of that

13   company?

14   *A.*   No.  There was no special agreement used for

15   the formation of the company.

16   *Q.*   That's all I need.  I'll show you what's marked

17   as No. 9.

18              *MR. SAMPSON:*  Show me.

19              *MR. PHILLIPS:*  I handed him an exhibit

20   that I hadn't purged an extraneous document from.

21              *THE COURT:*  Counsel, that is not good.  I

22   wouldn't do that again.  No extraneous documents.

23              *MR. SAMPSON:*  No objection.

24              *THE COURT:*  Plaintiff's 9 is admitted

25   without objection.  Tell me what it is.

1           *MR. PHILLIPS:*  It's a settlement

2    agreement.

3           *THE COURT:*  I, the judge, stapled Exhibit

4    No. 9.  The original is not actually stapled.  I don't

5    want it to get lost in the huge file.

6        Q.   *(BY MR. PHILLIPS)* I want to show you what's

7    marked in evidence entitled a settlement agreement.  Do

8    you recognize the signature on this agreement?

9        A.   Can I see it?

10       Q.   Certainly.  Take all the time that you need.

11       A.   Yes, I do.

12       Q.   Is that your signature?

13       A.   Yes.

14       Q.   Now, do you recognize the signature of Ali

15   Choudhri?

16       A.   Yes.

17       Q.   Does that appear to be his signature?

18       A.   I think so, yes.

19       Q.   Do you have a present recollection of meeting

20   with Ali Choudhri and executing this document?

21           *THE COURT:*  By executing, he means

22   signing.  Let's use common language where we can.

23       Q.   *(BY MR. PHILLIPS)* Do you have a present

24   recollection of signing this document?

25       A.   Yes.

1      *Q.*   To be sure of the pages, did both you and Ali

2  Choudhri sign the first page?

3      *A.*   Yes.

4      *Q.*   Did you and Ali sign the second page?

5      *A.*   Yes.

6      *Q.*   Did you and Ali sign the third page?

7      *A.*   Yes.

8      *Q.*   Did you and Ali sign the fourth page?

9      *A.*   Yes, initials.

10            *THE COURT:*  You mean sign in full name or

11  initials?

12            *MR. PHILLIPS:*  Initials or signatures.

13            *THE COURT:*  There's a difference.  When a

14  whole lot of this suit is about original signatures and

15  what is and what isn't, let's be specific.

16      *Q.*   *(BY MR. PHILLIPS)* Actually Ali used his full

17  signature and you had a partial signature, correct, on

18  each of those pages?

19      *A.*   Yes.

20      *Q.*   This is dated January 22, 2011?

21      *A.*   Yes.

22      *Q.*   Do you have a recollection today that this

23  document was actually signed on that date?

24      *A.*   Was around the midnight --

25            *THE REPORTER:*  I'm sorry.  Say that again.

1          *A.*   Was around the midnight but very close to
2     midnight.
3                *THE COURT:*  Midnight of that date but you
4     remember that.
5          *A.*   Yes, Your Honor.
6                *THE COURT:*  You are qualifying it was
7     midnight, so possibly after the next day.
8          *Q.*   *(BY MR. PHILLIPS)* How many days had passed
9     during the negotiation of that document?
10                *THE COURT:*  I don't understand what that
11    means, counsel.
12         *Q.*   *(BY MR. PHILLIPS)* How many days were you
13    negotiating the terms of that document?
14         *A.*   I would say about a few hours in the evening.
15    The only time I've seen that document was Sunday
16    evening.  I think it was Sunday night.  Was not is.
17         *Q.*   Did you and Ali negotiate this settlement for
18    two or three days preceding the actual preparation of
19    that document?
20         *A.*   No.
21         *Q.*   Did you have any negotiations with Ali Choudhri
22    prior to your seeing that document?
23         *A.*   We had discussion with Nyeem (phonetic) right
24    before the hearings of January 14 and a few days after
25    the hearing that took place in Judge Linda's court.

 1               *THE COURT:*  Judge Storey's court.

 2               *THE WITNESS:*  I'm sorry.

 3               *THE COURT:*  That's all right.

 4          *Q.  (BY MR. PHILLIPS)* Is it your testimony that all

 5     of the terms of this document were presented to you and

 6     there was no preceding negotiation?

 7          *A.*   You want me to refer to something specific in

 8     here?  What is it you are asking me?

 9          *Q.*   I am trying to find out, generally, whether or

10     not you entered into any negotiations before that

11     document was put in final form and signed.

12          *A.*   Some of the items they were regarding loans,

13     different assets was done before the December 13, 2010

14     date before I discovered -- before I find out the fraud

15     that was committed against my note.  There was

16     discussions conducting other deals to obtain a loan.  We

17     were looking at different assets at that time, yes.

18          *Q.*   Did you leave with a copy of that settlement

19     agreement?

20          *A.*   Yes.

21          *Q.*   Now, when was the first occasion that you

22     advised Ali that you were intoxicated on medication and

23     did not know what the contents were?

24          *A.*   Intoxicated on medication, I had been on

25     medication for painkillers I was taking.  I informed him

1  that night around 7:00 o'clock or 8:00 o'clock when we

2  met, me and him, at night.

3      Q.   What was the medication you took?

4      A.   I didn't bring them with me today.  I had three

5  types of pain medication that was prescribed to me at

6  that time.

7      Q.   What was the pain medication?

8              THE COURT:  Did you say three what, three

9  kinds?

10             THE WITNESS:  Three different

11 prescriptions.

12             THE COURT:  I'm sorry.  I didn't

13 understand what you said.

14             THE WITNESS:  No problem.

15     Q.   (BY MR. PHILLIPS) What were the three

16 prescriptions of pain medication?

17     A.   I cannot recall the medical terminology names

18 of them, but I have my instruction.  I do not remember

19 the exact name.  I know one of them is --

20     Q.   What doctor prescribed them?

21             THE COURT:  He was about to tell you what

22 one of them was.  You interrupted him.

23     Q.   (BY MR. PHILLIPS) Please complete your answer.

24 Please complete your answer, if you were.

25     A.   I am thinking to put the name together.  I

 1   cannot remember the name of the medical terminology.  I

 2   can provide you with a prescription, if I need to.

 3        Q.   What doctor prescribed them?

 4        A.   Dr. Abdullatif, my brother doctor, initially,

 5   and another during in The Methodist Hospital when I was

 6   admitted in The Methodist Hospital at that time.

 7        Q.   When did you first receive the prescriptions?

 8        A.   I would say December, around December 20th or

 9   so when I was admitted into Methodist Hospital.

10        Q.   For what ailment?

11        A.   I had what was described as a nervous

12   breakdown.  I had one of my nerve when my neck got stuck

13   in one direction.  I was given Valium.  That was one

14   items I was given was Valium.

15        Q.   So you had been taking these prescriptions for

16   the better part of a month?

17        A.   Almost.

18        Q.   You knew the effects of the prescriptions?  You

19   knew how they acted on your body because you had been

20   taking them for a month, right?

21        A.   I said I was taking them for almost a month,

22   yes.

23        Q.   You were taking them regularly?

24        A.   Yes.

25        Q.   Taking them as prescribed?

1    *A.*   They were -- they were --

2    *Q.*   Taking them as prescribed?

3    *A.*   As prescribed and I --

4    *Q.*   You didn't take too many?

5             *MR. SAMPSON:*  Objection.  Let him finish

6    the answer.

7             *THE COURT:*  You have to let him finish his

8    sentence, counsel.

9             *MR. PHILLIPS:*  I apologize.

10   *A.*   Some indication was as needed.  I was taking

11   them as needed, especially in January.

12   *Q.*   *(BY MR. PHILLIPS)* Have you taken them since the

13   settlement?

14   *A.*   After, a few days after the settlement, I

15   stopped taking the pain medication.  I would say the end

16   of January when I stopped.

17   *Q.*   The name of the pharmacy?

18   *A.*   CVS.

19   *Q.*   Which CVS Pharmacy?

20   *A.*   Stella Link and Holcombe.

21   *Q.*   Now, when was the first time you recognized

22   that this drug description caused you not to be able to

23   understand the consequences of the contract that you

24   signed, this settlement?

25   *A.*   Specifically that night I took the pain as

1    needed and at the same time I also took around 7:00
2    o'clock a pain medication Mr. Nyeem (phonetic) give me
3    in their office.  It was supposed to be, not pain
4    medication, but supposed to be a double Advil that he
5    had.  In fact, I did not get your question very clearly.
6        Q.   Did you receive a 750,000-dollar check that
7    night?
8        A.   Yes.  Are you going to submit it?
9             MR. SAMPSON:  That's already in.
10            THE COURT:  It's 4.
11       Q.   (BY MR. PHILLIPS) Is this the 750,000-dollar
12   check?
13            THE COURT:  A copy of it.
14       Q.   (BY MR. PHILLIPS) A copy of it?
15       A.   Yes.
16       Q.   Did you negotiate it three days later?
17       A.   I would think so.  I don't know if it was the
18   next day or the day after.  Whatever the Monday or
19   Tuesday was.
20       Q.   In what account did you place that money?
21       A.   In Latif and Company accounts.  One of my bank
22   accounts.
23       Q.   Did you deposit that money after you recognized
24   that, the drugs that caused you to sign -- have you read
25   the petition that your lawyer has filed where he alleged

1    words to the effect that this contract should be set

2    aside because you were on drugs and didn't know what you

3    were signing?

4         A.   I was taking pain medication that night.

5              THE COURT:  That wasn't the question.

6    Have you read your lawyer's petition making that

7    allegation?

8              THE WITNESS:  Yes.

9         Q.   (BY MR. PHILLIPS) That's what you told your

10   lawyer was the truth, right --

11             MR. SAMPSON:  Objection.

12             MR. PHILLIPS:  -- to put in that

13   allegation?

14             MR. SAMPSON:  Objection.

15             THE COURT:  Don't ask attorney-client

16   privilege stuff, counsel.

17        Q.   (BY MR. PHILLIPS) That was a representation you

18   intended to make in the litigation?

19        A.   That I was on pain medication, yes.

20        Q.   Why did you cash the 750,000-dollar check if

21   you planned to disavow being bound to the agreement?

22        A.   I didn't do that.  I didn't -- repeat your

23   question.

24             MR. SAMPSON:  Objection to the extent --

25             THE COURT:  Everybody, three people cannot

1   talk at once.

2           *MR. SAMPSON:*  Objection.  The question

3   calls for a legal conclusion to the effect of the

4   various pleadings --

5           *THE COURT:*  Your objection is overruled,

6   because I don't think he did that.  I think he needs to

7   answer the question.  You interrupted him while he was

8   trying to answer it.  I actually didn't hear any of

9   that.  Ask a clear question again and you answer it

10  clearly and answer the question he asked and I'll deal

11  with your objection in a minute if it comes back up.

12      *Q.*   (BY MR. PHILLIPS) Why did you cash a check for

13  $750,000 when you intended to disavow being bound to the

14  contractual agreement?

15      *A.*   I did not have any intention to disavow the

16  agreement.  I didn't have any intention whatsoever.

17      *Q.*   So when you cashed the check, you intended to

18  be bound by the agreement?

19      *A.*   Yes, sir.

20      *Q.*   And in that agreement you extinguished any

21  rights to your being able to sue on behalf of ERPILE for

22  any of the matters related to the terms of that

23  settlement agreement, correct?

24          *MR. SAMPSON:*  Objection, calls for a legal

25  conclusion, relevance.

1          *THE COURT:*  Sustained.

2     *Q.*   *(BY MR. PHILLIPS)* Whatever is in that agreement

3  you intended to be bound by, correct?

4     *A.*   Yes.

5     *Q.*   Whatever obligations that are in that

6  agreement, you expected to perform?

7     *A.*   Yes.

8     *Q.*   Whatever obligations that Mr. Ali Choudhri had,

9  you expected him to perform?

10    *A.*   Yes.

11    *Q.*   Today do you acknowledge that you have no

12 ownership rights regarding ERPILE?

13    *A.*   You will have to say that again.

14    *Q.*   Today do you acknowledge that you have no

15 ownership rights to ERPILE?

16    *A.*   No.

17    *Q.*   Today had Ali Choudhri fully complied with that

18 agreement, would you have any ownership rights to

19 ERPILE?

20    *A.*   If he bid me the obligation that he had, I

21 would have had to release to him my ownership upon a

22 full consideration on the matters bid.

23    *Q.*   And you acknowledge that that document released

24 all of your ownership rights to ERPILE?

25          *MR. SAMPSON:*  Objection, calls for legal

 1   conclusion, relevance.

 2              THE COURT:  I'm not sure it calls for a

 3   legal conclusion.  Rephrase it.

 4        Q.   (BY MR. PHILLIPS) You have just testified that

 5   had Ali Choudhri complied with all the terms of that

 6   agreement, you would have had no ownership rights in

 7   ERPILE, correct?

 8        A.   Are you done?

 9        Q.   I'm done.

10        A.   Upon the full payment, if it was performed on

11   March 22nd, I would release to him all my interest in

12   ERPILE upon a full consideration payment.

13        Q.   You have a dispute about whether or not Ali

14   Choudhri has breached that contract?

15        A.   He breached the contract.  He materially

16   breached the contract.

17              THE COURT:  No, no.  We're not going to

18   say he did or he didn't.  We're not here to decide that.

19   The question was, there's a dispute, right?  Phrase it

20   in the form of a question.

21        Q.   (BY MR. PHILLIPS) Do you have a dispute with

22   Ali Choudhri as to whether or not he performed under

23   that contract, the settlement agreement?

24              THE COURT:  Do you have a dispute?

25        A.   I did not see the dispute.

 1                    THE COURT:  Let me rephrase.  You filed a

 2     whole entire lawsuit based on the fact you think he

 3     breached it, right?

 4                    THE WITNESS:  It was other than the fact

 5     that he just breached it, Your Honor.

 6                    THE COURT:  I get that.  That was in

 7     there, wasn't it?  You have a dispute about it, right?

 8                    THE WITNESS:  Was part of it, yes.

 9        Q.   (BY MR. PHILLIPS) Is there any document other

10     than that agreement which is the basis of your statement

11     if Ali Choudhri had complied with this settlement, I

12     would have no ownership rights to ERPILE?

13        A.   I don't have any other documents.  There's no

14     other documents.

15        Q.   So you rely upon the settlement agreement

16     solely to contain a transfer of any ownership rights you

17     had in ERPILE to Ali Choudhri if he performed; is that

18     fair?

19        A.   You want a yes or no?

20                    THE COURT:  Don't lean back and talk to

21     me.  I can only hear you if you talk into the

22     microphone, please.

23                    THE WITNESS:  I got you.

24                    THE COURT:  Remember, these guys out here

25     have to hear you.

1          *THE WITNESS:*  Can you hear me back there?

2          *THE COURT:*  Just answer the question.

3    Speak into the microphone, please.

4     *Q.   (BY MR. PHILLIPS)* Now, sir, pursuant to that

5    document or was there, were there any events pursuant

6    to, subsequent to that document that you had to perform

7    on behalf of ERPILE?

8     *A.*   This document doesn't show anything for

9    additional performance on behalf of ERPILE.

10    *Q.*   As a matter of fact, you knew that as of the

11   time you signed that document, you had been removed by

12   the resignation and assignment, correct?

13    *A.*   Well, none of that stuff was part of the

14   settlement agreement.  The main point was of it that,

15   the claim that I assigned a hundred percent of my

16   ownership.

17          *MR. PHILLIPS:*  Pass the witness.

18          *THE COURT:*  You want to ask him some

19   questions?

20          *MR. SAMPSON:*  I would, Your Honor.

21          *THE COURT:*  Go ahead.

22                    **CROSS-EXAMINATION**

23   **BY MR. SAMPSON:**

24    *Q.*   Mr. Abdullatif, first of all, regarding status

25   quo for the three weeks leading up to the filing of this

1  lawsuit on May 19th, what was the status of your

2  relationship with ERPILE, LLC?

3      *A.*   I am the owner of ERPILE, LLC.

4      *Q.*   For the three weeks leading up to the filing of

5  this case, what actions had you been taking on behalf of

6  ERPILE?

7      *A.*   I sued on behalf of ERPILE, LLC.

8      *Q.*   If this Court enters an injunction to keep you

9  from acting on behalf of ERPILE, LLC, what will that do

10  to the relationship, the status of the relationship that

11  existed for at least the three weeks prior to the filing

12  of this lawsuit?

13          *THE COURT:*  I think you are asking for a

14  legal conclusion, counsel.  How is what you just asked

15  not asking him for a legal conclusion?

16          *MR. SAMPSON:*  I am asking him for what is

17  going to happen with the status of his relationship.

18          *THE COURT:*  With who?

19          *MR. SAMPSON:*  With ERPILE.  I am not

20  asking to give a legal conclusion as to whether or not

21  there's a reversal of the status quo.  I want to know

22  what will happen in his mind the status of his

23  relationship --

24          *THE COURT:*  Well, whatever happens in his

25  mind is not necessarily the law.  I don't understand how

1  that is not a legal conclusion.  What is going to happen

2  with this relationship with ERPILE is going to be

3  determined by how the facts play out in here.  Your

4  question by definition calls for speculation.

5            MR. SAMPSON:  Your Honor, one of the

6  things you have to consider is whether or not an

7  injunction keeping him from acting on behalf of ERPILE

8  will maintain what has been going on or will alter it.

9            THE COURT:  Maybe my problem is when you

10  use words like what has been going on, that's vague.  Be

11  more specific in your questions, and maybe I'll

12  understand better.

13       Q.  (BY MR. SAMPSON) Mr. Abdullatif, what will

14  happen to the relationship that you have maintained with

15  ERPILE since April 26 if the Court issues an injunction

16  keeping you from acting on behalf of ERPILE?

17            MR. PHILLIPS:  Objection, calls for

18  speculation, calls for a legal conclusion.

19            THE COURT:  It's just not a good question

20  counsel.  Sorry.  His relationship with ERPILE is he

21  basically said I am president of it and I'm going to

22  take action on its behalf.  If I said, no, you can't do

23  that, nothing is going to happen to a relationship he

24  had.  Because he's been doing it.  It's not a good

25  question.  Ask a new question.

1    *Q.   (BY MR. SAMPSON)* Will you be able to continue

2    to do what you have been doing since April 26 on behalf

3    of ERPILE --

4            *THE COURT:* Now that's a good question.

5    *Q.   (BY MR. SAMPSON)* -- if the Court enjoins you

6    from acting on behalf of ERPILE?

7    *A.*   No.

8    *Q.*   Do you have any interest in harming ERPILE?

9    *A.*   Absolutely not.

10   *Q.*   What are you trying to do for ERPILE in the

11   district court lawsuit?

12   *A.*   Pull all the money that was owed to ERPILE that

13   was never paid.

14           *THE COURT:* Remind me, because I don't

15   remember.  ERPILE, not the people, own the big expensive

16   building, right?

17           *MR. SAMPSON:* No, Your Honor.  ERPILE owns

18   a note and a lien.

19           *THE COURT:* On the big expensive building?

20           *MR. SAMPSON:* Yes.

21           *THE COURT:* There's a lot of money riding

22   on who owns ERPILE.

23   *Q.   (BY MR. SAMPSON)* What is the only action that

24   you have been taking on behalf of ERPILE since April 26?

25   *A.*   File a lawsuit in the 269th District Court.

1    *Q.*   Where has all of your conduct concerning ERPILE

2    taken place?

3    *A.*   In the 269th District Court.

4    *Q.*   So your only activity on behalf of ERPILE has

5    been in front of a sitting Harris County District Court

6    judge?

7    *A.*   Yes.

8            *THE COURT:*  You mean within the last three

9    weeks.

10           *MR. SAMPSON:*  Since April 26.

11           *THE COURT:*  Because the whole lawsuit

12   is -- he has been taking a lot of action on behalf of

13   ERPILE.  Their contention is he didn't have a right to.

14   I am saying ask more specific questions that are legally

15   correct.  I actually know the facts.  I just a few

16   minutes ago reread the transcript.  Not only did I

17   remember most of them, I mean, it refreshed me.  You

18   have to be specific, counsel.  Maybe I am working with

19   an unfair advantage because I've done this twice now.

20           *MR. SAMPSON:*  At the time you did it the

21   first time, Your Honor, he did not have claims on behalf

22   of ERPILE pending in front of a district court judge.

23           *THE COURT:*  I get that.  But nothing else

24   has changed.

25           *MR. SAMPSON:*  That's my only point.

1          *THE COURT:*  But nothing else has changed.

2          *MR. SAMPSON:*  I'm not sure what you mean

3     by that.

4          *THE COURT:*  I'm saying, when you say those

5     are the only acts you've ever taken on behalf of ERPILE,

6     that's a global question.  That is not specific and it's

7     not legally correct or isn't actually correct.

8          *MR. SAMPSON:*  I believe my question

9     was and if it wasn't I'll ask it again, since April 26.

10          *THE COURT:*  I didn't hear the qualifier.

11    I heard it after the fact when I started bugging you,

12    but it wasn't -- I don't think you actually said it.

13          *MR. SAMPSON:*  All right.

14    *Q.*   *(BY MR. SAMPSON)* The plaintiff in this case

15    claims that it will suffer imminent irreparable harm if

16    an injunction is not issued.  Do you understand that's

17    their claim?

18    *A.*   Yes.

19    *Q.*   How long did the plaintiff, ERPILE, through Mr.

20    Wakeland in this case, wait to the take any action in

21    this lawsuit after the time that you filed suit on

22    behalf of ERPILE?

23    *A.*   Almost a month.

24          *MR. PHILLIPS:*  I'll have an objection.

25          *THE COURT:*  Did you say you do or you

1   don't?

2                    MR. PHILLIPS:  I said I will.

3                    THE COURT:  It's knowing what to be

4   prepared for.

5                    MR. SAMPSON:  May I approach?

6                    THE COURT:  Sure.

7        Q.   (BY MR. SAMPSON) Mr. Abdullatif, could you

8   identify that document for the Court?

9        A.   Membership regulation, ERPILE, LLC.

10       Q.   Who signed this document, sir?

11       A.   I did.

12       Q.   For what purpose was this document created?

13       A.   It's to form, after the formation of ERPILE,

14  LLC to regulate ERPILE, LLC, to regulate the company.

15                   THE COURT:  To regulate the company?  Is

16  that the word you're saying?

17                   THE WITNESS:  Yes, ma'am.

18       Q.   (BY MR. SAMPSON) Is this a true and correct

19  copy of ERPILE's membership regulations?

20       A.   Yes.

21       Q.   When was it signed?

22       A.   Signed October 23, 2009, last time that I

23  formed it.

24                   MR. SAMPSON:  We would offer as

25  Defendant's Exhibit 1 the membership regulations of

1    ERPILE.

2                    THE COURT:  What's your objection?

3                    MR. PHILLIPS:  Might I take the witness to

4    ask him a couple of questions about the date of

5    preparation so I can make the proper objection?

6                    THE COURT:  Yes.

7                    **VOIR DIRE EXAMINATION**

8    **BY MR. PHILLIPS:**

9        Q.   Was that document in existence on the date that

10   you signed it?

11       A.   Yes.

12                   THE COURT:  I don't think that makes

13   sense.  He couldn't have signed it if it didn't exist,

14   counsel.  Was it in existence on October 23, 2009, the

15   date he alleges to have signed it, is what you meant.

16   Answer that question.

17       Q.   (BY MR. PHILLIPS) Was the document in existence

18   on October 23, 2008?

19       A.   No, 2009.

20                   MR. PHILLIPS:  2009.

21       A.   Yes.

22       Q.   (BY MR. PHILLIPS) Who prepared it?

23       A.   I had prepared documents.  It could have been

24   my assistant at the office or other LLC that we use.  We

25   have those documents usually in the office.

1    *Q.*   The name of the person who prepared that

2    document is what I'm asking.

3    *A.*   I cannot remember who prepared it for me.

4         *THE COURT:*  What?  Repeat exactly what you

5    just said.

6         *THE WITNESS:*  I cannot recall exactly.  I

7    have to check who actually prepared this.

8         *THE COURT:*  When I ask you to repeat

9    something, I mean verbatim because occasionally you're

10   saying words I just don't understand.

11   *Q.*   *(BY MR. PHILLIPS)* You said that that document

12   was a form that you had in existence prior to

13   October 23, 2009?

14   *A.*   We had similar forms, but we changed the

15   company names usually in it.

16   *Q.*   It is your testimony that this document had

17   been prepared effective that date and not at a later

18   date?

19   *A.*   No, it was effective -- that's the time we

20   created the ERPILE, LLC charter.  That's when the

21   regulation was done, yes.

22   *Q.*   Now, provide us the identity of the individual

23   who might have performed it since, who might have

24   prepared that document since you said you did not

25   prepare it that day.

1    *A.*   Say that again, please.

2    *Q.*   Provide us the name of any of the individuals

3    who might have prepared that document on the date of

4    October 23, 2009.

5    *A.*   It's possible to be my assistant or --

6                *THE COURT:*  What's your assistant's name?

7    *A.*   Beth Mendez and her attorney Peggy Foreman.

8    *Q.*   *(BY MR. PHILLIPS)* Do they still work for you?

9    *A.*   My assistant still works for me.  Peggy Foreman

10   works for me occasionally.

11               *MR. PHILLIPS:*  I have no other questions.

12   I have no objection based on that testimony.

13               *THE COURT:*  You are offering this?

14               *MR. SAMPSON:*  Yes.

15               *THE COURT:*  It's exhibit what?

16               *MR. SAMPSON:*  Defendant's 1.

17               *THE COURT:*  It's Defendant's 1.  Okay.

18   Let's take a five-minute break.

19               *(Recess taken)*

20               *MR. PHILLIPS:*  Are you going to carry the

21   injunction, the TRO?

22               *THE COURT:*  I am going to carry it through

23   Monday.

24               *MR. PHILLIPS:*  After we recess I want to

25   make sure I have the originals, because I'm sure the

1  court reporter is going to keep the ones that are in

2  evidence.

3          THE COURT:  I am not locking the courtroom

4  at a quarter till so you'll have time to look at the

5  papers, if that's what you're saying.

6          MR. PHILLIPS:  Yes, ma'am.

7          THE COURT:  Do you need to deal with the

8  court reporter?

9          MR. PHILLIPS:  Yes, ma'am.

10         THE COURT:  Do you want to stop now?

11         MR. SAMPSON:  It's fine to stop now.

12         (Proceedings adjourned.)

13                              *

14                              *

15                              *

16                              *

17                              *

18                              *

19                              *

20                              *

21                              *

22                              *

23                              *

24

25

```
1   STATE OF TEXAS

2   COUNTY OF HARRIS

3

4       I, Laura M. Cutherell, Official Court Reporter in

5   and for the County Civil Court at Law No. 3 of Harris,

6   State of Texas, do hereby certify that the above and

7   foregoing contains a true and correct transcription of

8   all portions of evidence and other proceedings requested

9   in writing by counsel for the parties to be included in

10  this volume of the Reporter's Record in the above-styled

11  and numbered cause, all of which occurred in open court

12  or in chambers and were reported by me.

13      I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits,

15  if any, offered by the respective parties.

16      I further certify that the total cost for the

17  preparation of this Reporter's Record is $975.50 and

18  will be paid by Mr. Michael Phillips.

19

20                      _____

21                      Laura M. Cutherell, CSR
                        Texas CSR 3049
22                      Official Court Reporter
                        County Civil Court at Law No. 3
23                      Harris County, Texas
                        201 Caroline, 5th Floor
24                      Houston, Texas 77002
                        Telephone:  (713) 368-6658
25                      Expiration:  12/31/2012
```