UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ALI CHOUDHRI §<br>  Plaintiff, § § | |
| vs. § | Civil Action No. _____ |
| § | |
| DOLCEFINO COMMUNICATIONS, LLC, §<br>D/B/A DOLCEFINO CONSULTING §<br>WAYNE DOLCEFINO § | |
|   Defendants. § | JURY REQUESTED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff Ali Choudhri ("Plaintiff") complaining of Dolcefino Communications, LLC, d/b/a Dolcefino Consulting and Wayne Dolcefino ("Defendants") and would show the Court as follows:

## SUMMARY

This is an action to enforce the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521 (the "ECPA"), and the Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02).

1. Defendants purport to be an investigative consultant. In reality, Wayne Dolcefino, through his entity Dolcefino Communications, LLC, d/b/a Dolcefino Consulting, is a paid-for-hire blogger who was retained by Plaintiff's business competitors in order to harass and defame Plaintiff.

2. Defendants violated the law by intentionally: (1) intercepting, attempting to

intercept, or having someone intercept a wire, oral, or electronic communication; (2) disclosing or attempting to disclose to another person the contents of an illegally obtained wire, oral, or electronic communication; and/or (3) using or attempting to use the contents of an illegally obtained wire, oral, or electronic communication.

3. Defendants also defamed Plaintiff by making untrue accusations that Plaintiff engaged in criminal conduct.

## PARTIES

4. Plaintiff Ali Choudhri is a citizen of Texas.

5. Defendant, Dolcefino Communications, LLC, d/b/a Dolcefino Consulting, is a Texas limited liability company and may be served by and through its registered agent, Wayne Dolcefino, 1951 RICHMOND AVE HOUSTON, TX 77098-3401.

6. Defendant, Wayne Dolcefino, (hereinafter "Dolcefino") is an individual residing in Harris County, Texas and may be served at 3701 Kirby Drive, Suite 560, Houston, Texas 77098.

7. The term "Defendants" shall hereinafter collectively refer to Dolcefino Communications, LLC, d/b/a Dolcefino Consulting and Dolcefino.

8. Defendants are hereby notified that they are being sued in all their names.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction as claims in this suit are based upon

a federal question pursuant to the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521.

10. This Court has personal jurisdiction over Defendant because this lawsuit arises out of, and is connected with, the purposeful acts committed by Defendant in Texas.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF ECPA CLAIM

12. Chris Wyatt is a former employee for one of Plaintiff's businesses, Jetall Companies ("Jetall"). Wyatt stole corporate files including electronic communications and secretly recorded oral phone communications between Plaintiff and his counsel, Lloyd Kelley.

13. Defendants received the illegal recordings of Plaintiff's conversations with Mr. Kelley and then proceeded to publish them continuously in an attempt to "launder" them.

14. Prior to Defendants obtaining a copy of said tapes, Plaintiff had sued Wyatt and received a restraining order regarding the confidential company information he stole.

15. Upon information and belief, Defendants were aware of said restraining order,

that Wyatt was a former employee of Jetall, and that Wyatt was not a participant on any of the recorded conversations he stole. Further, Defendants knew that Jetall and Choudhri had denied any consent to record said conversations. Defendant also knew that Mr. Kelley was the lawyer for Plaintiff and Jetall.

16. It was a violation of federal and state law for Wyatt to record and then disseminate the phone conversations between Plaintiff and his lawyer. Under state law, the penalty is a felony.

17. Defendants have repeatedly disclosed or attempted to disclose to other persons the contents of an illegally obtained wire, oral, or electronic communication. Such acts violate federal and state law.

18. The ECPA prohibits intentionally disclosing or attempting to disclose to another person the contents of an illegally obtained wire, oral, or electronic communication.

19. Defendants were warned that the tapes of the private communications between Plaintiff and his lawyer were unlawfully obtained. However, Defendants intentionally ignored the state court litigation and the fact that Wyatt is nowhere on the tapes and thus not a party to any of the conversations. Defendants were aware that Wyatt was an employee of Jetall and, as such, owed a fiduciary duty to that company. Defendants nonetheless aided and abetted the breach of Wyatt's fiduciary duty by publishing the emails and private conversations publicly.

4

20. Such acts are criminal in Texas and Texas provides for civil relief under Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02).

21. 18 U.S.C. § 2515 provides that whenever any wire or oral has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority… of a State or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

22. Plaintiff seeks a declaration that the Wyatt stolen electronic information and illegally taped conversations may not be used by Defendants or any of his agents, agencies, or clients or used in any court proceeding or other government or quasi-government proceeding.

23. Plaintiff seeks damages against Defendants for each use or attempted use of the unlawfully obtained material.

24. Unless Defendants and their agents are restrained, they will continue to violate the law.

25. Defendants defamed Plaintiff by direct false accusations and by innuendo.

## DEFAMATION (SLANDER AND LIBEL)

26. Plaintiff re-alleges and by reference incorporate all allegations in the

preceding paragraphs.

27. Defendants, either directly or through his agents, published (i) false statements about Plaintiff (ii) that were defamatory (iii) while acting with either actual malice, or negligence, regarding the truth of the statement.

28. Defendants contacted a bank utilized by Plaintiff, Veritex Bank, on multiple occasions and claimed he had acquired a tape recording of Plaintiff's conversations. During his calls to employees of the bank, including Michael Carp and Glenn Bell, Defendants defamed Plaintiff by falsely accusing Plaintiff of committing fraud and bank fraud. Defendant's false statements constitute slander per se.

29. Defendants have made a habit of posting videos containing false representations about Plaintiff in what is, at its core, merely a calculated and targeted character assassination campaign. Defendants post these defamatory videos and statements to his website, YouTube Channel, and on other social media sites.

30. Defendants' website and YouTube channel specifically references Plaintiff by name in the text description below in each of these videos, verbally by name in the videos, and by depictions of the Plaintiff in pictures and video clips.

31. In several videos, Defendants' statements would cause audiences to infer that Plaintiff lied to judges or committed fraud, among other things. Defendants, without any evidence, continuously cooks up crafty montages of video clips and statements in such an order that it leads audiences to imply that Plaintiff is a bad actor. These

6

same types of depictions usually also show up on Defendants' Facebook, YouTube and Instagram on or near to the same dates the videos are posted on Defendants' website, which causes severe harm to Plaintiff's personal and business reputation and standing in the local community.

32. There is not just one injurious and egregiously skewed video on Defendants' website that references Plaintiff. In fact, so many videos exist that an entire category in Plaintiff's name has been created on Defendants' website, which further shows that Defendant is systematically engaging in a bad-faith, targeted campaign designed specifically to defame Plaintiff, harm his reputation, and interfere with his existing and prospective business relationships. By way of example, some headlines of these videos state things like: "*Would You Do Business With This Guy?*", "*Houston Judge Punishes Plaintiff*", or "*Who Is The Real Racketeer?*".

33. Defendants contemplated the falsity of their statements, but chose to act with disregard for the truth, which is proven by his own statements in the posted videos. For example, Defendants definitively states at one point that "Choudhri hid the Briar Hollow deal from his ex-wife" and "We do know Choudhri hasn't yet disclosed any of this in the legal filings of his divorce case" and later goes on to contradict this definitive statement that Plaintiff committed fraud on the Courts by saying "how will Veritex explain the release of this audio? It shows they knew a full year ago about the *possible* fraud on the divorce court. . . ". (emphasis added). In the first statement

7

Defendant alleges <u>definite</u> fraud was committed, and the second statement he claims that the conduct may <u>possibly</u> have been fraudulent.

34. Many false and defamatory allegations of fraud are alleged by Defendants across various videos and platforms. One video states "Will the appeals court now look at this evidence of possible fraud and want to take a closer look at how Ali may have tricked his wife in Pakistan?", ending on a still photo of Plaintiff, so as to ensure Plaintiff is recognized, and isolated by people in his community because of Defendants' false statements. The video continues, switching to a still photo of Plaintiff's face, and Defendants state "Will banks take notice of Choudhri's growing legal complaints of fraud and cut off his money?", making wildly unfounded, false, and extraordinarily harmful accusations that Plaintiff of criminal activity.

35. Defendant published a written statement in conjunction with a video containing several statements, all of which are asserted as fact by Defendant.

    a. The written description provided for the video posted by Defendants on May 10, 2021 states Defendants have "an audio recording that includes a confession the judge in the case was lied to" and states that the person "busted" is Plaintiff.

    b. The video posted frames Plaintiff's divorce proceeding in Harris County, Texas as "the famed sharia law divorce case" and makes an assertion that Plaintiff "tricked" his ex-wife. This framing is further

8

enforced when the video states "Mr. Choudhri better hope the appeals court upholds his sharia law gambit because if they don't, well we have an audio recording, it's going to cause a lot of trouble."

c. The video posted frames loans taken by Plaintiff as "trouble loans".

d. The video states "Choudhri hid the Briar Hollow deal from his ex-wife". This is confirmed later when the video states "We do know Choudhri hasn't yet disclosed any of this in the legal filings of his divorce case."

e. The video states "We have looked at 50 Briar Hollow early on in our widening investigation of this Houston developer, who's gaining quite the reputation as a real estate racketeer." This video attempts to confirm the reputation of Plaintiff as a racketeer, or a person engaged in racketeering activity as defined by federal and state statute, by showing a post from Defendants themselves asking "Would You Do Business With This Guy?" and categorizing this video and post in the Choudhri category of dolcefino.com along with another post by Defendants titled "Who Is The Real Racketeer?"

f. The video states "Even self-proclaimed multi-millionaires, well, they need government assistance every once in a while. Wonder if the feds will now ask questions about all those bailouts?" This statement is made in the context of Defendants ascribing several federal loans taken by

9

companies alleged to have connections with Plaintiff as "bailouts" and the indication that these loans were made 10 days prior to property taxes of a "mansion" alleged to be Plaintiff's property being paid off late.

g. The video states "After hearing evidence of what can only be described as a smoking gun, evidence of fraud, on a court", declaring that Plaintiff has engaged in fraud based on the evidence alleged to have been provided in the video.

36. Defendants' statements involved matters of private concern. Specifically, Defendants' statements concern Plaintiff's business dealings and a divorce case, neither of which relate to any political, social, or other community concern or to any general public interest.

37. Defendants' statements referred to Plaintiff by name. Specifically, Plaintiff's name Ali Choudhri is referenced in the text statement on the post in full, and the video uses Plaintiff's full name, first name singularly, and last name singularly while displaying Plaintiff's face.

38. Defendants' written and graphic statements were libel per se as defined by Texas Civil Practice & Remedies Code § 73.001 as they injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, or financial injury, impeached Plaintiff's honesty, integrity, virtue, or reputation, and described Plaintiff's natural defects and exposed Plaintiff to public hatred, ridicule, or financial injury.

10

Defendants knew this, stating the video and its contents were "going to cause a lot of trouble" for Plaintiff.

39. Defendants' written and graphic statements were defamatory per se under the common law. Defendant's statements injured Plaintiff in his profession, and business relationships. Defendant's statements falsely charged Plaintiff with crimes, namely fraud on a court, perjury, and claims arising from improper use of federal loan funds.

40. Defendants' statements were false.

41. Defendants knew the statements were false or acted with reckless disregard for the truth. Alternatively, Defendants were negligent in determining whether the statements were true.

42. In his paid-for-hire-blog cast, Defendant further defamed Plaintiff by falsely claiming Plaintiff set "up a fake trust to hide secret ownership" of assets, "committed bribery to keep it secret," and committed a "shocking betrayal of a number of judges," as well as other false statements and innuendo. Defendant's false statements constitute libel per se.

## TORTIOUS INTERFERENCE (PROSPECTIVE & EXISTING BUSINESS RELATIONSHIPS)

43. Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

44. Plaintiff has or at all relevant times had a valid contract with Veritex Bank

11

for a loan on real property, and various other contracts with other companies.

45. Defendants knew or had reason to know of plaintiff's contract with Veritex, and Plaintiff's other vendors, and Defendant's knew of Plaintiff's interest in the contracts. This is proven by Defendants' own admissions in the videos Defendants recorded and posted on their website and social media accounts.

46. Defendants willfully and intentionally interfered with Plaintiff's contracts with Veritex Bank, and other vendors, by posting false and misleading statements about Plaintiff on Defendant's website and social media accounts.

47. In addition to other counts, Defendant interfered with Plaintiff's prospective business relationship with Veritex Bank, and other prospective lenders and vendors for Plaintiff.

48. Plaintiff had an ongoing business relationship with Veritex Bank, and several other financial institutions, private investors, and real estate contacts, and had ongoing and prospective relationships for current and future real estate transactions with each.

49. Defendants knew of Plaintiff's business relationship with Veritex Bank and its other vendors, and intentionally interfered with these relationships, as stated above.

50. Defendants' false and defamatory statements and publications were independently tortious or unlawful, regardless of the effect those actions had on

Plaintiff's business relationship with Veritex Bank or its other vendors.

51. Plaintiff suffered actual damages or loss because of Defendants' interference prevented Plaintiff from entering prospective new contracts with Veritex Bank, and its other vendors, or from continuing Plaintiff's business relationship with Veritex Bank and/or its other vendors.

52. Defendants' interference proximately caused injury to Plaintiff, which resulted in actual damages, benefit of the bargain damages, lost profits, damage to business's credit reputation, and loss of goodwill.

53. Plaintiff seeks damages within the jurisdictional limits of this Court.

54. <u>Exemplary Damages</u>. Plaintiff's injury resulted from Defendants' malice or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## CONDITIONS PRECEDENT AND DAMAGES

55. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred. As a result of Defendants' aforementioned actions and misconduct, Plaintiff has suffered damages in excess of the minimum jurisdictional limits of this Court. Defendants' conduct has directly resulted in damages to Plaintiff.

56. Plaintiff seeks recovery of reasonable attorney's fees pursuant to enforcement of the ECPA, 18 U.S.C. §§2510-2521, and Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02) the Texas statutory regime

set forth above, and otherwise as allowed at law or in equity and as otherwise plead for herein.

## APPLICATION FOR INJUNCTIVE RELIEF

57. Plaintiff moves this Court to issue an injunction and permanently restrain and enjoin Defendants, including his agents, employees, successors, attorneys, and all those in active concert or participation with them, from violating the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, and the Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02). Defendants and their agents should be immediately enjoined from disclosing or attempting to disclose to another person the contents of any wire, oral, or electronic communication between Plaintiff and his attorney; and/or using or attempting to use the contents of any wire, oral, or electronic communication between Plaintiff and his attorney.

58. The statutes provide for injunctive relief.

## PRAYER

WHEREFORE, Plaintiff prays that the Court (a) enjoin Defendants from violating the law and from disclosing or attempting to disclose to other person(s) the contents of any wire, oral, or electronic communication between Plaintiff and his attorney; and/or using or attempting to use the contents of any wire, oral, or electronic communication between Plaintiff and his attorney, (b) award Plaintiff

damages, punitive damages, and attorney's fees as provided by law and for such other relief that Plaintiff may show himself entitled.

Plaintiff prays that the Court enter judgment in his favor and against Defendants for the following relief:

1. That the Court issue a permanent injunction as plead for herein;

2. All actual, compensatory, and consequential damages of Plaintiff proven and supported by the pleadings;

3. All punitive, statutory and exemplary damages and remedies against Defendants proven and supported by the pleadings;

4. Prejudgment and post judgment interest as provided by law;

5. Attorney's fees;

6. Costs of suit;

7. Such other and further relief at law or in equity to which Plaintiff may be justly entitled.

DATED: May 10, 2023.                    Respectfully submitted,

MACGEORGE LAW FIRM, PLLC

/s/ *Jennifer L. MacGeorge*
Jennifer L. MacGeorge
State Bar No. 24093627
1001 West Loop South, Suite 700
Houston, Texas 77027
Telephone: (713)-560-2737
jmac@jlm-law.com
**ATTORNEY FOR PLAINTIFF ALI CHOUDHRI**